**No. 22-56012**

In the

# United States Court of Appeals
## For the Ninth Circuit

---

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TRIANGLE MEDIA CORPORATION, *et al.,*

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., proposed Intervenors,

*Movants-Appellants,*

---

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of California
The Honorable Larry Alan Burns
Case No. 3:18-cv-01388-LAB-WVG

---

**OPENING BRIEF OF APPELLANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.**

---

*(Counsel listed on following page)*

---

March 8, 2023

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
Jenny Yi
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com
jyi@mcguirewoods.com

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Wells Fargo & Company and Wells Fargo Bank, N.A. state that:

1. Wells Fargo Bank is a national banking association organized under the laws of the United States and is a wholly-owned subsidiary of Wells Fargo & Company.

2. Wells Fargo & Company is the parent corporation of Wells Fargo Bank, N.A. Wells Fargo & Company is a publicly traded corporation organized under the laws of Delaware. No other publicly held corporation owns 10% of Wells Fargo's stock.

Dated: March 8, 2023      */s/ Brian D. Schmalzbach*
                               Brian D. Schmalzbach

                               *Counsel for Movants-Appellants*
                               *Wells Fargo & Company and Wells Fargo Bank, N.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................2

ISSUES PRESENTED............................................................................3

STATEMENT OF THE CASE.................................................................4

I.     The FTC brings an enforcement action against principal Defendants. ..........4

    A.    The claims against Triangle for fraud and credit card laundering. ................................................................................4

    B.    Wells Fargo's role as third-party witness............................................6

    C.    The *Triangle* Defendants settle for over $171 million.........................6

II.    The district court modifies the Stipulated Judgments to extend the receivership and allow for a suit against Wells Fargo....................................8

III.   The Supreme Court holds Section 13(b) never permitted recovery of equitable monetary relief. ..............................................................10

IV.   The Receiver exercises his purported authority to sue Wells Fargo for money damages. ......................................................................12

V.    The district court denies Wells Fargo's motion to intervene. .....................14

SUMMARY OF ARGUMENT ..............................................................17

STANDARDS OF REVIEW ..................................................................19

ARGUMENT ........................................................................................20

I.     Wells Fargo has Article III standing to intervene. ...................................20

    A.    The district court erred in disregarding Wells Fargo's injury of being subjected to a Receiver unlawfully appointed specifically to sue Wells Fargo based upon the Stipulated Judgments. ................20

    B.    Wells Fargo's injury is redressable. ....................................................22

    C.    Wells Fargo's injury can only be redressed by the district court that issued the challenged orders........................................................26

II.    Wells Fargo is entitled to intervene as of right..............................................28

    A.    Wells Fargo has a significant protectable interest. .............................28

B.     Wells Fargo cannot protect its interests without intervening.............30

C.     Wells Fargo timely moved to intervene. ...........................................32

     1.     Wells Fargo could not intervene before commencement of the Wells Fargo Litigation.................................................34

     2.     The case is still open as to the Receiver's actions. ..................37

     3.     The parties will not be prejudiced by Wells Fargo's intervention. .............................................................................38

D.     No existing party adequately protects Wells Fargo's interests. .........40

III.     The district court abused its discretion in denying permissive intervention. .......................................................................................41

CONCLUSION ...................................................................................................41

STATEMENT OF RELATED CASES ...............................................................43

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Capital Management, LLC v. Federal Trade Commission*,
  141 S. Ct. 1341 (2021) ..................................................................................*passim*

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
  712 F.3d 1349 (9th Cir. 2013) .........................................................................19

*Ciesniewski v. Aries Cap. Partners, Inc.*,
  No. 1:16-CV-817-WTL-TAB,
  2018 WL 4491211 (S.D. Ind. Sept. 19, 2018) ...........................................21, 30

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ............................................................3, 19, 29, 40

*Dilks v. Aloha Airlines*,
  642 F.2d 1155 (9th Cir. 1981) .........................................................................36

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ...........................................................................19

*Engelson v. Burlington N. R.R. Co.*,
  972 F.2d 1038 (9th Cir. 1992) .........................................................................19

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
  548 F.3d 1184 (9th Cir. 2008) .........................................................................23

*FTC v. AMG Cap.*,
  910 F.3d 417 (9th Cir. 2018) ...........................................................................35

*FTC v. AMG Cap. Mgmt., LLC*,
  998 F.3d 897 (9th Cir. 2021) ...........................................................................11

*FTC v. AMG Servs., Inc.*,
  558 F. Supp. 3d 946 (D. Nev. 2021) ................................................................12

*FTC v. Apex Cap. Grp., LLC*,
  No. 2:18-cv-9573-JFW-JPR (C.D. Cal. filed Nov. 14, 2018) ...........................13

*FTC v. Apex Cap. Grp., LLC*,
  No. CV189573JFWJPRX, 2022 WL 1060486 (C.D. Cal. Mar. 10, 2022) ........29

*FTC v. AT&T Mobility Ltd. Liab. Co.*,
  883 F.3d 848 (9th Cir. 2018) ................................................39

*FTC v. Cardiff*,
  No. EDCV182104DMGPLAX,
  2021 WL 3616071 (C.D. Cal. June 29, 2021) ...................................12

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993) ................................................24

*FTC v. Gem Merch. Corp.*,
  87 F.3d 466 (11th Cir. 1996) ................................................24

*FTC v. Hoyal & Assocs., Inc.*,
  859 F. App'x 117 (9th Cir. 2021) ...........................................11

*FTC v. Noland*,
  No. CV-20-00047-PHX-DWL,
  2021 WL 4318466 (D. Ariz. Sept. 23, 2021), *appeal dismissed*,
  No. 21-16679, 2021 WL 6426079 (9th Cir. Dec. 14, 2021) ................11, 30

*FTC v. Publishers Bus. Servs., Inc.*,
  849 F. App'x 700 (9th Cir. 2021) ...........................................11

*FTC v. U.S. Oil & Gas Corp.*,
  748 F.2d 1431 (11th Cir. 1984) ..............................................5

*FTC v. VPL Med., Inc.*,
  846 F. App'x 561 (9th Cir. 2021) ...........................................11

*Grant v. A.B. Leach & Co.*,
  280 U.S. 351 (1930)..........................................................27

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) ............................................21, 36

*Kalbers v. United States*,
  22 F.4th 816 (9th Cir. 2021) ................................................37

v

*Koon v. United States*,
    518 U.S. 81 (1996) ............................................................................... 19

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992) .............................................................................. 22

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) ............................................................. 25

*Made in the USA v. United States*,
    242 F.3d 1300 (11th Cir. 2001) ........................................................... 23

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) .................................................. 19, 22, 26

*McCraner v. Wells Fargo, et al.*,
    No. 3:21-cv-1246-LAB (S.D. Cal. filed July 8, 2021) ....................... 12

*McNamara v. Wells Fargo, et al.*,
    No. 3:21-cv-1245-LAB (S.D. Cal. filed July 8, 2021) ................. 12, 14

*Mullis v. U.S. Bankr. Court for Dist. of Nev.*,
    828 F.2d 1385 (9th Cir. 1987) ......................................... 1, 26, 27, 31

*Orange Cnty. v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986) ............................................................... 38

*Ord v. United States*,
    8 F. App'x 852 (9th Cir. 2001) ............................................................ 31

*Perry v. Schwarzenegger*,
    630 F.3d 898 (9th Cir. 2011) ............................................................... 28

*Republic of Marshall Islands v. United States*,
    865 F.3d 1187 (9th Cir. 2017) ............................................................. 23

*United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cir. 1992) ............................................................... 12

*Scholes v. Tomlinson*,
    No. 89 C 8407, 1991 WL 152062 (N.D. Ill. July 29, 1991) ............... 24

vi

*Shulman v. Kaplan*,
　58 F.4th 404 (9th Cir. 2023) .................................................................23

*Smith v. Los Angeles Unified Sch. Dist.*,
　830 F.3d 843 (9th Cir. 2016) ...........................................18, 32, 33, 38

*Smith v. Marsh*,
　194 F.3d 1045 (9th Cir. 1999) ............................................................38

*Smith v. Pangilinan*,
　651 F.2d 1320 (9th Cir. 1981) ............................................................41

*So. Cal. Edison Co. v. Lynch*,
　307 F.3d 794, *modified on other grounds*, 353 F.3d 648 (9th Cir. 2003) ..........29

*Sw. Ctr. for Biological Diversity v. Berg*,
　268 F.3d 810 (9th Cir. 2001) ..............................................................28

*TransUnion LLC v. Ramirez*,
　141 S. Ct. 2190 (2021)........................................................................20

*United States v. Alisal Water Corp.*,
　370 F.3d 915 (9th Cir. 2004) ........................................................28, 29

*United States v. Oregon*,
　745 F.2d 550 (9th Cir. 1984) ......................................................32, 33, 40

*United States v. Palomar-Santiago*,
　141 S. Ct. 1615 (2021)........................................................................30

*United States v. Aerojet Gen. Corp.*,
　606 F.3d 1142 (9th Cir. 2010) ...........................................................36

*United States v. Phila. Nat'l Bank*,
　374 U.S. 321 (1963)............................................................................39

*Venegas v. Skaggs*,
　867 F.2d 527 (9th Cir. 1989) .............................................................19

*Warth v. Seldin*,
　422 U.S. 490 (1975)............................................................................22

*Wilderness Soc. v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ...........................................................28

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991) ......................................................21, 29

**Statutes**

15 U.S.C. § 45 ..............................................................................2, 4, 39

15 U.S.C. § 53(b) ...............................................................................2, 5

15 U.S.C. § 57b ..............................................................................10, 24

15 U.S.C. § 1693e(a) ..........................................................................2, 4

15 U.S.C. §§ 8401–04 ..........................................................................4

15 U.S.C. § 8404(a) ..............................................................................2

28 U.S.C. § 1291 ..................................................................................3

28 U.S.C. § 1331 ..................................................................................2

28 U.S.C. § 1337 ..................................................................................2

28 U.S.C. § 1345 ..................................................................................2

28 U.S.C. § 1651 ..................................................................................5

**Rules**

Fed. R. App. P. 4(a)(1)(A) ....................................................................3

Fed. R. Civ. P. 24 ........................................................................*passim*

Fed. R. Civ. P. 65 ..................................................................................5

**Other Authorities**

Complaint, *McNamara v. Wells Fargo*,
  No. 3:21-cv-1245-LAB (S.D. Cal. July 8, 2021), Dkt. 1 ....................14

Data on Refunds to Consumers, FTC,
    https://www.ftc.gov/enforcement/recent-ftc-cases-resulting-
    refunds/data-refunds-consumers (last accessed Mar. 8, 2023)...........................11

Monitor's Final Report and Accounting, *FTC v. AMG Servs., Inc.*,
    No. 2:12-cv-00536-GMN-VCF (D. Nev. Nov. 23, 2021), Dkt. 1364...............36

*Triangle Media Refunds*, FTC.GOV, available at
    https://www.ftc.gov/enforcement/cases-proceedings/refunds/
    triangle-media-refunds (last accessed Mar. 8, 2023)...........................................7

Status Report, *AMG Services, Inc*.,
    No. 2:12-cv-00536-GMN-VCF (D. Nev. July 7, 2021), Dkt. 1333 ...................12

Wells Fargo's Motion to Intervene, *FTC v. Apex Cap. Grp., LLC*,
    No. 2:18-cv-9573-JFW-JPR (C.D. Cal. Jan. 18, 2022), Dkt. 219...............35, 36

# INTRODUCTION

The fundamental issue of this appeal is whether Wells Fargo can intervene to challenge a district court's orders permitting the Receiver to pursue litigation against Wells Fargo based on an invalid theory of authority. The district court appointed a federal equity receiver to pursue monetary claims against appellant Wells Fargo based on Section 13(b) of the Federal Trade Commission Act ("FTC Act"). But in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021), the Supreme Court held that Section 13(b) does not authorize monetary relief, thereby demolishing that cornerstone of the appointment orders. When Wells Fargo moved to intervene to challenge the appointment orders under *AMG Capital*, the district court effectively barred the courthouse door and left Wells Fargo with no avenue to challenge the district court orders. This Court should reverse that denial of Wells Fargo's motion to intervene and allow Wells Fargo to prove that the Receiver's litigation campaign against it is unlawful, root and branch.

The exclusion is especially pernicious because Wells Fargo cannot challenge the Receiver's appointment elsewhere. This Court's precedent requires Wells Fargo to seek redress from the appointment orders in *this* case – in which the contested orders were issued. *See Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1393 (9th Cir. 1987) ("[C]ollateral attacks on the judgments, orders, decrees or decisions of federal courts are improper"). So even though Wells Fargo is subject to

1

separate lawsuits seeking nine figures in damages, Wells Fargo must challenge the Receiver's appointment here. The district court's refusal to let Wells Fargo intervene has created a catch-22 to which no litigant should be subjected.

None of the district court's rationales for excluding Wells Fargo has merit. First, Wells Fargo has Article III standing because the appointment orders authorized the Receiver to pursue an aggressive litigation campaign at Wells Fargo. Second, Wells Fargo timely moved to intervene once the Receiver filed the action against Wells Fargo. Third, the collateral attack doctrine means that Wells Fargo cannot challenge the appointment orders in other district court proceedings. And because Wells Fargo satisfied all the requirements for intervention here, the district court's ruling effectively foreclosed Wells Fargo from challenging the Receiver's unlawful appointment anywhere. For these reasons and those below, this Court should reverse the district court.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, as this is an action brought by the Federal Trade Commission under 15 U.S.C. §§ 45(a) and 53(b) (FTC Act); 15 U.S.C. § 8404(a) (Restore Online Shoppers' Confidence Act ("ROSCA")); and 15 U.S.C. § 1693e(a) (Electronic Fund Transfer Act ("EFTA")). 3-ER-324–49.

The district court denied Wells Fargo's motion to intervene on September 30, 2022. 1-ER-3–12. Wells Fargo timely noticed this appeal on October 27, 2022. 3-ER-350–64; *see* Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction because the denial of a motion to intervene as of right is a final appealable order. *See* 28 U.S.C. § 1291; *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011). This Court has jurisdiction over the denial of Wells Fargo's motion for permissive intervention because the denial was an abuse of discretion and in error. *Id.*

## ISSUES PRESENTED

I.  Whether Wells Fargo has Article III standing to challenge an order that unlawfully deputized a Receiver to pursue monetary damages against Wells Fargo based on a conception of injunctive powers under Section 13(b) of the FTC Act that the Supreme Court overruled in *AMG Capital*.

II.  Whether Wells Fargo has a right to intervene under Rule 24(a) to challenge the Receiver's unlawful appointment where: (A) Wells Fargo has a significant protectable interest in freeing itself from the litigation campaign by an unlawfully appointed Receiver; (B) Wells Fargo cannot protect that interest absent intervention because this Court's collateral attack doctrine requires challenging that appointment order in the case in which it was issued; (C) Wells Fargo timely moved to intervene

3

after it knew that its interests were not protected by the parties; and (D) it is undisputed that the existing parties now do not protect Wells Fargo's interests.

III. Whether the district court abused its discretion in denying permissive intervention under Rule 24(b) based on the same legal errors that led it to deny intervention as of right.

## STATEMENT OF THE CASE

## I. The FTC brings an enforcement action against principal Defendants.

### A. The claims against Triangle for fraud and credit card laundering.

On June 25, 2018,[1] the Federal Trade Commission ("FTC") brought an enforcement action against Defendants Triangle Media Corporation, its principal owner Brian Phillips ("Phillips"), Jasper Rain Marketing, LLC, and Hardwire Interaction, Inc. (collectively, "*Triangle* Defendants"). 3-ER-324–49. The Complaint charged the Defendants with conducting a multi-tiered scheme that utilized deceptive practices and payment methods to sell millions of dollars of goods to customers. 3-ER-328–29. It alleged four separate violations of the FTC Act, 15 U.S.C. § 45(a), a single violation of Section 4 of the Restore Online Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401–04, and a single violation of Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a). 3-ER-339–47. The Complaint

---

[1] A First Amended Complaint was filed on December 11, 2018. 3-ER-157–83. As it relates to this opening brief, the two Complaints do not materially differ.

4

sought both equitable and statutory relief, including disgorgement, restitution, and sales refunds under Section 13(b), 15 U.S.C. § 53(b). 3-ER-348.

Upon filing the Complaint, the FTC moved *ex parte* and under seal for a temporary restraining order ("TRO"), an asset freeze, and the appointment of a temporary receiver (among other things) pursuant to Section 13(b). 3-ER-244–323. In its request for the district court to exercise its equitable powers to appoint a temporary receiver, the FTC cited a Section 13(b) case, *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984), as support for the district court's equitable authority to appoint a receiver. 3-ER-315.

In a sealed order, the district court granted the TRO, finding generally that the "Court has authority to issue this Order pursuant to Sections 13(b) of the FTC Act, 15 U.S.C. §§ 53(b); Fed. R. Civ. P. 65; and the All Writs Act, 28 U.S.C. § 1651" without tying any particular mandates of the order – including appointment of the receiver – to any specific source of statutory authority. 3-ER-215–16 (citing "[g]ood cause" for appointment of Thomas McNamara as Receiver). The TRO set forth the scope, duties and authority of the Receiver—terms that have since remained substantively unchanged. 3-ER-229–34; 3-ER-200–03. The district court asserted "exclusive jurisdiction" over the Receivership's assets and designated the Receiver to serve "solely" as "the agent of this Court" with the "full powers of an equity receiver." 3-ER-229; 3-ER-236. The district court further empowered the Receiver

to pursue monetary relief by "su[ing] for, collect[ing], and receiv[ing] all Assets of the Receivership Entities . . ." and by "institut[ing . . .] or otherwise becom[ing] party to any legal action . . . to preserve or recover the Assets of the Receivership Entities, or to carry[ing] out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers." 3-ER-230; 3-ER-232.

### B. Wells Fargo's role as third-party witness.

Neither the FTC's Complaint nor the First Amended Complaint ascribes any involvement in, or knowledge of, wrongdoing by Wells Fargo or its employees. Instead, Wells Fargo's limited involvement in the *Triangle* proceedings was as a cooperative, third-party corporate witness that complied with court processes by freezing accounts and providing information relating to select accounts opened by Defendants. As a non-party, Wells Fargo was not served with court filings.

### C. The *Triangle* Defendants settle for over $171 million.

In May 2019, the parties agreed to two settlements that fully resolved the FTC's claims against the *Triangle* Defendants. 2-ER-149–53; 2-ER-125–48; 2-ER-100–24. The Court accepted these settlements when, on May 30, 2019, it entered a Modified Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips, in which it imposed equitable monetary relief of $48,110,267.14 (the "Triangle Monetary Judgment"), and a Modified Stipulated Order for Permanent

6

Injunction and Monetary Judgment as to Defendants Hardwire Interactive Inc., Global Northern Trading Limited, and Devin Keer, in which it imposed equitable monetary relief of $123,095,438.18 ("Hardwire Monetary Judgment") (together, the "Stipulated Judgments"). 2-ER-136–38; 2-ER-110–12. Through these settlements, the FTC agreed – and the Court subsequently ordered – that the *Triangle* Defendants needed to pay only a miniscule fraction of the actual judgment imposed, with the remainder to be suspended pending successful completion of post-settlement compliance requirements. 2-ER-136–38; 2-ER-110–12. Specifically, the parties to the Triangle Monetary Judgment only were required to pay $399,795.00 of the $48,110,267.14 judgment (approximately 2.4%), and the parties to the Hardwire Monetary Judgment only were required to pay $3,027,388.36 of the $123,095,438.18 judgment (approximately 0.8%). 2-ER-136–38; 2-ER-110–12. When coupled with approximately $5,500,000 recovered from the Receivership Estate, the FTC required the *Triangle* Defendants to pay, and *Triangle* Defendants did pay, approximately $9,000,000 of the $174,000,000+ combined monetary judgments (approximately 5%).[2] 2-ER-78–81. The *Triangle* Defendants, in turn, agreed to exceptionally broad concessions in which they "waived all rights to appeal

---

[2] The FTC's public summary of the *Triangle* action notes that it has distributed "checks totaling more than $8.7 million to 187,425 people" who acquired Triangle products through the fraudulent scheme. *Triangle Media Refunds*, FTC.GOV, https://www.ftc.gov/enforcement/cases-proceedings/refunds/triangle-media-refunds (last accessed Mar. 8, 2023).

or otherwise challenge or contest the validity of this Order." 2-ER-126; 2-ER-101.

## II. The district court modifies the Stipulated Judgments to extend the receivership and allow for a suit against Wells Fargo.

In May 2019, as part of the Stipulated Judgments resolving all claims between the FTC and the *Triangle* Defendants, the parties agreed to a 90-day period for the Receiver to complete his duties under previously entered orders. 2-ER-140–41; 2-ER-114–15. This Court adopted the parties' stipulations and instructed the Receiver to transfer the $4,000,000 previously acquired from the *Triangle* Defendants' companies and assets to the FTC, liquidate any remaining corporate assets, prepare a final report, and submit a final bill as part of the wind-down process. 2-ER-140; 2-ER-114.

On August 27, 2019 (one day before the ordered termination date), the Receiver asked the Court to extend its authorization for an additional 90 days to allow it "to complete the investigation and evaluation of a potential receivership estate lawsuit against a domestic financial institution." 2-ER-97. In support of this request, the Receiver cited to its duty to recover "assets of the Receivership Entities and institute . . . proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities" and claimed, without documentation, that its review of "troubling conduct" by the financial institution (subsequently identified as Wells Fargo) indicated that there "may be a viable lawsuit against the financial institution." 2-ER-98. The

Receiver further noted that the expected litigation costs from this potential suit would be high, requested the Court to authorize him to retain contingency fee counsel, and noted that he would immediately shut down the Receivership if the lawsuit were not pursued as it was "the last issue to resolve prior to terminating the Receivership." 2-ER-98.

The FTC filed a "statement of non-opposition" to this request. 2-ER-85–87. The Defendants opposed the request to extend the Receivership, in part because the Receiver had been in possession of the documents on which the lawsuit against Wells Fargo would be predicated since July 2018 and should have proceeded with its lawsuit in a more timely manner. 2-ER-93–95. This Court initially resolved this dispute by halving the Receiver's extension request to 45 days. 2-ER-91–92. When the Receiver later indicated his intent to sue Wells Fargo to seek what he identified as a potentially "significant" monetary settlement, the Court, on November 18, 2019, ordered that: (1) the case be "administratively closed" as to the Defendants; (2) the Receiver's request to hire contingency fee counsel be granted; (3) the Receiver's authorization would be extended "for the sole purpose of pursuing litigation against Wells Fargo"; and (4) until that lawsuit resolved, the Court would "continue to retain jurisdiction over the Receivership [and that . . .] matters related to the Receivership or enforcement of the Court's judgments, filings and other proceedings in this matter may therefore continue until further order of this Court." 2-ER-89; 2-ER-84.

9

**III.    The Supreme Court holds Section 13(b) never permitted recovery of equitable monetary relief.**

On April 22, 2021, the Supreme Court unanimously demolished the cornerstone of the Receiver's authority to sue Wells Fargo to enforce the Stipulated Judgments by holding that Section 13(b) "does not grant the [FTC] authority to obtain equitable monetary relief." *AMG Capital,* 141 S. Ct. at 1352. In doing so, the Supreme Court acknowledged that its decision invalidated the principal enforcement mechanism the FTC had used for decades, albeit without lawful authority, to recover billions of dollars in damages and disgorgement. *Id.* at 1346–49. Central to the Supreme Court's holding was its finding that the FTC and the lower courts had profoundly misinterpreted the breadth of equitable authority that Section 13(b) provides, as it is limited purely to prospective injunctive relief. *Id.* at 1349, 1350 ("the scope of equitable relief that a provision authorizes 'remains a question of interpretation in each case'"; "to read § 13(b) to mean what it says, as authorizing injunctive but not monetary relief. . ."). The *AMG Capital* Court, in turn, explained that the FTC Act gave district courts the authority to "impose limited monetary penalties" to redress consumer injuries – but did so under Section 19 – which includes a series of substantive and procedural restrictions, including a three-year statute of limitations. *Id*. at 1348–49; *see also* 15 U.S.C. § 57b.

Following the *AMG Capital* decision, this Court vacated all FTC matters on direct appeal that included monetary awards based on Section 13(b) and remanded

10

these matters for further proceedings consistent with *AMG Capital*. *See, e.g.*, *FTC v. AMG Cap. Mgmt., LLC*, 998 F.3d 897 (9th Cir. 2021) (summarily reversing district court's award of equitable monetary relief and remanding to district court for further proceedings); *FTC v. Hoyal & Assocs., Inc.*, 859 F. App'x 117 (9th Cir. 2021) (vacating the district court's equitable monetary judgment under *AMG Capital* but affirming the permanent injunction issued under Section 13(b)); *FTC v. Publishers Bus. Servs., Inc.*, 849 F. App'x 700 (9th Cir. 2021) (same); *FTC v. VPL Med., Inc.*, 846 F. App'x 561 (9th Cir. 2021) (vacating monetary judgment under Section 13(b)).

The FTC, in turn, has conceded that Section 13(b) cannot be a basis for securing monetary relief in cases pending on direct review before a district or circuit court.[3] *See, e.g., FTC v. Noland,* No. CV-20-00047-PHX-DWL, 2021 WL 4318466, at *5 (D. Ariz. Sept. 23, 2021), *appeal dismissed*, No. 21-16679, 2021 WL 6426079 (9th Cir. Dec. 14, 2021) ("Everybody [including the FTC] agrees that, in light of AMG Capital, the FTC's § 13(b) claims no longer provide a basis for keeping the asset freeze in place."). In addition, two district courts, including the court in *AMG Capital*,[4] have terminated receiverships/monitorships in accordance with the *AMG*

___

[3] The FTC has publicly announced that *AMG Capital* invalidated the Commission's ability to obtain refunds for consumers under Section 13(b) of the FTC Act. Data on Refunds to Consumers, FTC, https://www.ftc.gov/enforcement/recent-ftc-cases-resulting-refunds/data-refunds-consumers (last accessed Mar. 8, 2023).

[4] McNamara, who is the Receiver in the instant action was also the court-appointed Monitor in *AMG Capital*. After the Supreme Court decided that case, he conceded that the Monitor "no longer has the authority to pursue the [related litigation

*Capital* decision in Section 13(b) proceedings. *FTC v. AMG Servs., Inc.*, 558 F. Supp. 3d 946, 967–68 (D. Nev. 2021) (granting summary judgment for defendants, denying re-instatement of $1.27 billion judgment, and ordering termination of monitorship, which had been involved in collections, settlement negotiations, and litigation against third parties); *FTC v. Cardiff*, No. EDCV182104DMGPLAX, 2021 WL 3616071, at *6, 7–8 (C.D. Cal. June 29, 2021) (ordering termination of receivership after determining that no ROSCA-based damages would issue).

## IV. The Receiver exercises his purported authority to sue Wells Fargo for money damages.

The Receiver filed his lawsuit, *McNamara v. Wells Fargo, et al*., No. 3:21-cv-1245-LAB (S.D. Cal. filed July 8, 2021), against Wells Fargo in the Southern District of California on July 8, 2021 (the "Wells Fargo Litigation"). The Receiver's contingency counsel also filed a separate putative class action the same day on behalf of consumers, *McCraner v. Wells Fargo, et al*., No. 3:21-cv-1246-LAB (S.D. Cal.

---

stemming from the underlying FTC action which were initiated pursuant to the duties conferred upon him by the court] in light of the Supreme Court's reversal of the monetary judgment" and that he "is of the view that he must dismiss the litigation as part of the wind down process." *See* Status Report, *AMG Services, Inc*., No. 2:12-cv-00536-GMN-VCF (D. Nev. July 7, 2021), Dkt. 1333 at 1–2. Although the district court declined to consider those documents without explanation [1-ER-6], this Court can take judicial notice of the Receiver's filings in those other courts. *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

filed July 8, 2021), despite the Receiver also bringing his action to make consumers "whole." Both lawsuits seek punitive and exemplary damages.

To maximize his leverage, the Receiver also combined claims from the *Triangle* case with those from a separate FTC action arising in a separate district against separate defendants, *FTC v. Apex Cap. Grp., LLC*, No. 2:18-cv-9573-JFW-JPR (C.D. Cal. filed Nov. 14, 2018),[5] into the Wells Fargo Litigation and seeks to hold Wells Fargo accountable for the more than $200,000,000 in underlying monetary judgments. Those judgments were imposed pre-*AMG Capital* against the defendants in those cases—*i.e.*, the actual wrongdoers—and the FTC voluntarily elected to suspend those judgments as part of its Stipulated Settlements in each case. The Wells Fargo Litigation specifically concedes that the Receiver is seeking damages "to satisfy the FTC judgments" to "make whole the consumers who were defrauded as a result of the *Apex* and *Triangle* frauds that Wells Fargo facilitated," and to cover the FTC's costs of defending the *Triangle* and *Apex* matters (including

---

[5] As in the *Triangle* case, the FTC's Complaint in the *Apex* action did not ascribe any involvement in, or knowledge of, wrongdoing by Wells Fargo or its employees. As in the *Triangle* case, McNamara served as the Receiver. As in the *Triangle* case, the FTC entered stipulated settlements in which the charged defendants secured suspended judgments, for which they paid only a small fraction of money. As in the *Triangle* case, McNamara sought to pursue Wells Fargo for the outstanding damages. As in the *Triangle* case, Wells Fargo moved to intervene in the *Apex* matter to raise its *AMG Capital*-based challenges to the Receivership. Wells Fargo's intervention motion was denied on March 10, 2022, and was appealed to this Court, No. 22-55342. The *Apex* appeal has been fully briefed and has been related to this *Triangle* appeal.

13

Receivership costs in each matter). *See* Complaint at ¶ 240, *McNamara v. Wells Fargo*, No. 3:21-cv-1245-LAB (S.D. Cal. July 8, 2021), Dkt. 1. The Wells Fargo Litigation also seeks treble and punitive damages, increasing the Receiver's potential recovery from Wells Fargo to more than half a billion dollars.

## V.    The district court denies Wells Fargo's motion to intervene.

The Receiver separately sought – and was separately granted – permission to initiate the Wells Fargo Litigation from both the *Apex* and *Triangle* district courts. Accordingly, Wells Fargo was required to intervene into both district court cases to challenge the orders issued by the respective district courts that led to the Wells Fargo Litigation. Because the *Apex* district court has a meet and confer requirement, Wells Fargo met and conferred with the Receiver and the FTC on August 23, 2021. 2-ER-41. Given the similarity of the challenge to the orders in both *Apex* and *Triangle*, the meet and confer efforts in *Apex* naturally impacted the substance of Wells Fargo's challenge to the *Triangle* orders.  As a result of the ongoing meet and confer efforts following the initial August 2021 discussion, Wells Fargo narrowed the scope of its challenges to the orders related to the appointment of the Receiver and the orders permitting the Receiver to pursue Wells Fargo – instead of challenging the Stipulated Judgments in both cases. Accordingly, on November 11, 2021, Wells Fargo moved to intervene as of right, under Federal Rule of Civil Procedure 24(a), and permissively, under Rule 24(b). 2-ER-75–77.

Almost a full year later, the district court, on September 30, 2022, entered its Order ("Order") denying this motion. 1-ER-3–12. The district court ruled that Wells Fargo lacked Article III standing, is not entitled to intervention as a matter of right, and is not entitled to permissive intervention. 1-ER-3–12.

First, as to Article III standing, the district court found that Wells Fargo had not made an adequate, particularized showing of injury that could be redressed through a post-intervention ruling in its favor. 1-ER-7. On the issue of injury, the district court sidestepped Wells Fargo's principal challenge to the district court's overbroad orders, which was the court's empowerment of the Receiver to prospectively sue Wells Fargo for monetary relief to pay damage awards that were improperly secured under Section 13(b). Instead, the district court focused on (and rejected) litigation costs and potential damages as a basis for standing. 1-ER-7. The district court then found that Wells Fargo failed to establish that its injury could be redressed through intervention because the Wells Fargo Litigation was already underway. In making this finding, the district court looked beyond the question of intervention and ruled on the merits of the underlying motion (without the benefit of full briefing), holding that, "even if this court granted [Wells Fargo's] request to vacate the November 2019 Order authorizing the Receiver to sue Wells Fargo under Section 13(b) . . . , the Receiver still would have the authority to continue its ongoing litigation against Wells Fargo to obtain a monetary judgment" under Section 5 of

ROSCA and the state law claims despite the FTC's failure to reference Section 19 in its Complaints against Defendants or as the basis for the appointment of the Receiver. 1-ER-7–8.

Second, the district court ruled that Wells Fargo's motion to intervene as of right failed because it was untimely, Wells Fargo lacked a significantly protectable interest for the same reason it lacked Article III standing, and Wells Fargo could protect its interests by contesting the monetary judgments and the Receiver's authority in the Wells Fargo Litigation. 1-ER-8–11. In making its timeliness determination, the district court held that Wells Fargo's intervention two years after the Stipulated Judgments – despite lacking Article III standing at that time – "weigh[ed] heavily against intervention." 1-ER-9. The district court additionally reasoned that intervention was untimely because Wells Fargo "waited over six months after the *AMG* decision and nearly four months from the date the Wells Fargo Litigation commenced to file the present motion" which, even if considered, would prejudice the FTC because it "is still empowered to pursue monetary judgment against Wells Fargo regardless of Section 13(b)'s applicability" and would be "forced to relitigate issues that have already been adjudicated." 1-ER-10.

As to permissive intervention, the district court applied the same timeliness analysis as used in considering whether intervention as of right is warranted and declined to grant permissive intervention because it was "unnecessary and w[ould]

result in yet further delay and avoidable litigation." 1-ER-11–12.

Wells Fargo timely noticed its appeal.  3-ER-350–64.

### SUMMARY OF ARGUMENT

**I.**    The district court erred in holding that Wells Fargo lacks Article III standing

to intervene. First, Wells Fargo established a concrete injury that is fairly traceable

to the district court's orders defining the overbroad scope of the Receivership. Wells

Fargo's injury consists of being subjected to a monetary damages campaign by a

Receiver appointed based on the erroneous construction of Section 13(b) that the

Supreme Court rejected in *AMG Capital.*  That injury can be redressed by the district

court – and, under this Court's collateral attack rule, *only* the district court –  so it is

redressable by a favorable decision. Second, the district court erred in holding that

injury was *not* redressable by impermissibly jumping straight to the merits. It thus

denied intervention even before letting Wells Fargo present its full merits case,

which will establish that the Receiver lacks the authority it purports to exercise.

**II.**    The district court also erred in denying Wells Fargo's motion to intervene

under Rule 24(a) because Wells Fargo satisfies all the requirements for intervention

as of right. First, the district court held that Wells Fargo lacked a protectable interest,

which was error for the same reasons that Wells Fargo has the requisite Article III

injury. Wells Fargo also has a basic due process right to litigate the issues arising

from an unlawful lawsuit lodged against it by a representative of the district court.

17

Second, the district court erred in holding that Wells Fargo could protect its interests by challenging the Receivership in the separate Wells Fargo Litigation. The collateral attack doctrine requires that an entity seeking to directly challenge an order do so in front of the court that issued the order in the case in which the original order was issued. This doctrine compelled Wells Fargo to challenge the district court's orders related to the Receivership in this case – not in the Wells Fargo Litigation.

Third, the district court abused its discretion by holding that Wells Fargo's motion to intervene was untimely because it applied the wrong legal standard. In holding that intervention was untimely because Wells Fargo did not intervene until six months after *AMG Capital* and four months after the Wells Fargo Litigation commenced, the district court was requiring Wells Fargo to intervene when it had reason to believe that its interests would have been affected rather than when Wells Fargo "should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Los Angeles Unified Sch. Dist.,* 830 F.3d 843, 858 (9th Cir. 2016).

Fourth, it is undisputed that the existing parties do not now adequately protect Wells Fargo's interests – and indeed now actively oppose Wells Fargo's interests.

**III.** The district court abused its discretion in denying permissive intervention under Rule 24(b) because it relied on the same legal errors that made it deny Wells Fargo's motion under Rule 24(a).

## STANDARDS OF REVIEW

This Court reviews a district court's determination that a proposed intervenor lacks constitutional standing *de novo*. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

This Court reviews a district court's denial of a motion for intervention as of right *de novo*, except that it reviews questions of timeliness for abuse of discretion. *Citizens for Balanced Use*, 647 F.3d at 896; *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). A denial of a motion for permissive intervention is reviewed for abuse of discretion. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989).

A district court abuses its discretion if it applies clearly erroneous facts or fails to apply the correct legal rule or standard, or if the court's application of the correct rule or standard "was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (citations omitted) (internal quotations omitted); *see also Engelson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992). "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996).

<u>**ARGUMENT**</u>

**I.     Wells Fargo has Article III standing to intervene.**

Wells Fargo satisfied each Article III standing requirement by showing: "(i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Yet the district court determined that Wells Fargo lacked standing by ignoring its principal injury – being subject to lawsuit brought by a Receiver unlawfully appointed to pursue Wells Fargo – and by jumping the gun on the merits before Wells Fargo was even allowed to intervene to present its case.

**A.     The district court erred in disregarding Wells Fargo's injury of being subjected to a Receiver unlawfully appointed specifically to sue Wells Fargo based upon the Stipulated Judgments.**

The district court's Article III analysis ignores Wells Fargo's principal injury: the continuing harm directly imposed on Wells Fargo as a result of the district court's deputization of the Receiver to hire outside counsel and sue Wells Fargo for monetary damages that the Receiver is no longer properly entitled to pursue. With orders founded on a now-invalid construction of Section 13(b), the district court empowered the Receiver to pursue Well Fargo. 2-ER-82–84. The Receiver took full advantage of the impermissible grant of power, such that once the Receiver sued Wells Fargo, Wells Fargo suffered a concrete and actual injury. *See, e.g.,*

*Ciesniewski v. Aries Cap. Partners, Inc.*, No. 1:16-CV-817-WTL-TAB, 2018 WL 4491211, at *2 (S.D. Ind. Sept. 19, 2018) (finding standing where plaintiff had to defend himself in a prior garnishment action later found to be brought by parties who were not entitled to collect). In other words, it is *not* the potential damages and liability stemming from the Receiver's unlawful pursuit that is Wells Fargo's concrete injury, but rather the unlawful pursuit itself.

In the context of challenging an order, this Court requires an intervening party to show standing "by alleging a threat of particularized injury from the order they seek to reverse that would be avoided or redressed if their appeal succeeds." *Yniguez v. Arizona*, 939 F.2d 727, 731–32 (9th Cir. 1991). The record plainly establishes that the orders in question were issued under the overbroad application of equitable authority under Section 13(b) that the Supreme Court invalidated in *AMG Capital*.

Furthermore, this injury is not only "fairly traceable" to the *Triangle* case, it is *directly* traceable because the district court appointed the Receiver to serve as its "agent" to resolve matters arising from the district court's "exclusive jurisdiction" over the Receivership assets. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1399 (9th Cir. 1995) ("[A]n intervenor seeking to establish standing under Article III must show a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the challenged action."). Exercising the authority that the district court provided, the Receiver secured access

to the documents, witnesses, and other evidence on which the Wells Fargo Litigation is based. It is to this district court, in this case, that the Receiver repeatedly has returned – as it must – to provide status reports, secure approvals for major case developments, and extend its authorization to operate. 2-ER-96–99; 2-ER-88–90. Accordingly, Wells Fargo's resulting injury is "fairly traceable" to the challenged action because the Wells Fargo Litigation stems from the district court's orders deputizing the Receiver as an "agent" to pursue monetary damages from Wells Fargo.

### B. Wells Fargo's injury is redressable.

The district court looked past Wells Fargo's considerable evidence establishing the likelihood that a successful challenge would provide redressability and instead, prematurely and impermissibly resolved the merits of the dispute. To establish redressability, however, a party need only show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a *favorable* decision." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added) (internal quotations omitted). And it is well established this is simply a preliminary determination, with a determination of the merits to be decided after intervention. *Warth v. Seldin*, 422 U.S. 490, 497 (1975) (standing "in no way depends on the merits of the [] contention that particular conduct is illegal"); *Maya*, 658 F.3d at 1068 ("Rather, [t]he jurisdictional question of standing precedes, and does not require,

analysis of the merits.'") (internal quotations omitted) (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008)). In other words, the question is whether the district court has the power to issue the relief requested. *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) ("Redressability requires an analysis of whether the court has the power to right or to prevent the claimed injury.") (citation omitted). Additionally, when "determin[ing] the extent of the district court's remedial power" for purposes of redressability, [the federal appellate court] "'assume[s] that [the] plaintiff's claims has legal merit.'" *Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023).

There is also no question that the district court has the *power* to redress Wells Fargo's injury by a merits ruling for Wells Fargo. *Id.* ("[E]valuating the issue of redressability 'requires an analysis of whether the court has the power to right or to prevent the claimed injury.'") (citation omitted). The district court has the power to modify its existing orders, as it specifically reserved jurisdiction over the orders for this purpose and repeatedly has engaged in such modifications at the Receiver's request. 2-ER-146; 2-ER-120; 2-ER-91–92; 2-ER-84.

Even if the Receiver retained *some* lawful authority after a merits ruling, that partial redress would suffice for standing. *Made in the USA v. United States*, 242 F.3d 1300, 1311 (11th Cir. 2001) (holding that partial redress was sufficient to establish redressability). Granting Wells Fargo's requests in whole, or in part, to

modify this Court's receivership orders so they reflect the proper scope of equitable authority under Sections 13(b)[6] as understood after *AMG Capital* would: (1) remove, or curtail, the financial basis at the foundation of the Wells Fargo Litigation; (2) limit the amount and kinds of damages the Receiver can actively pursue; (3) limit or reduce the costs of Wells Fargo defending itself in the Wells Fargo Litigation; and (4) extinguish Wells Fargo's due process concerns that are inherent to having to defend itself in a lawsuit brought by this Court's representative that is built on, and continues to be propped up by, orders of the district court that are now known to be erroneous. *C.f. Scholes v. Tomlinson*, No. 89 C 8407, 1991 WL 152062, at \*2, n.3 (N.D. Ill. July 29, 1991) (noting that the court's order appointing receiver granted authority that "exceeds that permitted by law" and required modification in the underlying suit to prohibit receiver from instituting actions it did not legally have authority to initiate). Beyond the bar that limits recovery to consumer redress and precludes pursuing exemplary and punitive damages, Section 19's three-year statute of limitations would further limit recovery of potential consumer redress. 15 U.S.C. § 57b(b); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 606 (9th Cir. 1993); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996).

---

[6] The district court's order denying intervention states that the FTC's failure to invoke Section 19 does not bar its ability to recover under ROSCA. 1-ER-7–8. That, however, is a merits-based inquiry that Wells Fargo has not had the opportunity to brief because that issue will *only* be properly before the district court after Wells Fargo is granted intervention and provided the opportunity to fully brief the issue.

The district court erred on redressability by skipping to merits-based conclusions of whether Wells Fargo's post-intervention challenges would ultimately succeed in their entirety rather than whether the injury *likely* would be resolved by a favorable ruling. 1-ER-7–8. For example, the district court concluded that Wells Fargo did not show that the relief it seeks would affect its injury because the Receiver could still, and was not barred from, pursuing damages under ROSCA despite the FTC's failure to invoke Section 19. 1-ER-7–8. The district court also concluded that even if it "vacated the November 2019 Order to preclude the Receiver from seeking to recover monetary damages under Section 13(b), the Receiver could still pursue damages under ROSCA and the state law claims." 1-ER-8. That conclusion is doubly mistaken: the district court not only skipped ahead to the merits, but ignored all the ways in which limiting the Receiver's authority under Section 19 would at least *partially* redress Wells Fargo's injury. 1-ER-7–8.

The district court's merits-based analysis would impose a new requirement that prospective intervenors prove a likelihood of success on the merits. But this is not a preliminary injunction proceeding. And that standard is *not* required to establish a prospective intervenor's Article III standing. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("When determining the extent of the district court's remedial power for purposes of redressability, we 'assume that [the] plaintiff's claim has legal merit.'") (citation omitted). Instead, precedent requires only a likelihood

that the injury will be redressed, and reserves merit determinations until those issues are briefed. Wells Fargo satisfied that requirement.

### C. Wells Fargo's injury can only be redressed by the district court that issued the challenged orders.

The collateral attack doctrine compels Wells Fargo to seek redress before the district court in *this* case – not in the Wells Fargo Litigation – because its injury stems from the district court's orders appointing the Receiver and authorizing the Receiver to sue Wells Fargo. *Mullis*, 828 F.2d at 1393 ("[C]ollateral attacks on the judgments, orders, decrees or decisions of federal courts are improper," so such challenges should be made in the case in which the order issued); 1-ER-8 (providing that it "explicitly authorized the Receiver to institute an action in federal court to recover Defendants' assets" in reliance on ROSCA).

The district court erroneously engaged in a merits-based analysis by determining that the Receiver could pursue monetary damages under ROSCA and state law claims to determine redressability – even though those issues were not before the district court. 1-ER-7–8. It is well established that redressability is a preliminary determination, with the merits to be decided after full briefing of the substantive issues post-intervention. *Maya*, 658 F.3d at 1068. Wells Fargo has been denied the ability to fully brief the substantive issues.

If Wells Fargo succeeds in challenging the appointment orders, its injury will be redressed. If the district court were to modify its order appointing the Receiver to

reflect the proper scope of his equitable authority, the Receiver would either no longer be able to, or at least curtailed from, pursuing Wells Fargo for monetary damages rooted in the Stipulated Judgments.

Further, the district court ignores that Wells Fargo would not be able to raise its challenge to the district court's orders in the Wells Fargo Litigation. 1-ER-8. The collateral attack doctrine requires Wells Fargo's challenge to be brought in the action that entered the subject orders. Any challenges to the Receiver's authority must be made to the district court that issued the order in the case in which the order was issued, namely – the *Triangle* court. Challenges in any other district court or proceeding – like the Wells Fargo Litigation – would be stricken as a collateral attack on the orders. *See Mullis*, 828 F.2d at 1393; *Grant v. A.B. Leach & Co.*, 280 U.S. 351, 359 (1930) (holding that an erroneous appointment of a receiver "plainly…[can] not [be] questioned by a collateral attack in another court."). Wells Fargo's challenge of the district court's orders in any other proceeding before that court ultimately would put Wells Fargo and the parties right back where we are now – knocking on the doorstep of the district court that issued the challenged orders.

For these reasons, the district court erred in holding that Wells Fargo lacks a concrete injury that can be redressed in this case. To the contrary, Wells Fargo satisfied all the requirements of Article III standing.

## II.     Wells Fargo is entitled to intervene as of right.

The district court erred in denying Wells Fargo's motion to intervene. Rule 24(a) entitles a party to intervene as a matter of right when: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (internal quotation marks and citation omitted). Those "requirements for intervention are [to be] broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). A district court must "take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Under those standards, Wells Fargo satisfied each requirement for intervention by right.

### A.     Wells Fargo has a significant protectable interest.

First, just as the district court erred in holding that Wells Fargo lacked standing, it erred in holding that Wells Fargo lacked a protectable interest warranting

intervention. This Court reviews that error *de novo*. *Citizens for Balanced Use*, 647 F.3d at 896.

"An applicant for intervention has a significantly protectable interest if the interest is protected by law and there is a relationship between the legally protected interest and the [] claims." *Alisal Water Corp.*, 370 F.3d at 919 (citing *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803, *modified on other grounds*, 353 F.3d 648 (9th Cir. 2003)). Moreover, "because the Article III standing requirements are more stringent than those for intervention under rule 24(a)," a significant protectable interest for intervention as of right follows from Article III standing. *See Yniguez*, 939 F.2d at 735.

The district court held that – relying on the *Apex* district court's erroneous finding – "Wells Fargo fails to demonstrate that it has a significant protectable interest in this case '[f]or the same reason that Wells Fargo's litigation exposure fails to establish an injury sufficient to confer standing.'" 1-ER-10 (citing *FTC v. Apex Cap. Grp., LLC*, No. CV189573JFWJPRX, 2022 WL 1060486, at *5 (C.D. Cal. Mar. 10, 2022)). This finding is erroneous for two separate reasons. First, it incorrectly equates the more stringent threshold for injury required for Article III standing with the similar, but lesser, threshold for establishing a significant protectable interest under Rule 24(a). Second, as fully set out in Section I, *supra*,

29

Wells Fargo met the higher Article III threshold and therefore has necessarily established a significant protectable interest for intervention as of right.

At a bare minimum, Wells Fargo has the basic due process right to litigate these issues so that, if it is to be sued by a representative of the district court, it be done based on orders consistent with current law. Put simply, Wells Fargo has a significant protectable interest to not have unlawful orders applied and enforced against it. *See Ciesniewski*, 2018 WL 4491211, at *2. Intervention is necessary so that Wells Fargo can raise these claims with the district court and address measures that should be taken to correct these errors. *See, e.g.*, *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4318466, at *1–4 (D. Ariz. Sept. 23, 2021) (recognizing that post-*AMG Capital*, the scope of a receiver's duties is to prevent receivership entities from engaging in ongoing and future harm, not to pursue monetary relief).

### B.    Wells Fargo cannot protect its interests without intervening.

Second, the district court erred in finding that "nothing precludes Wells Fargo from raising the same arguments and defenses in the Wells Fargo Litigation as the ones it seeks to assert here through intervention." 1-ER-10.  To the contrary, controlling precedent requires that direct challenges to a district court's order be made before the issuing court. The collateral attack doctrine generally prohibits parties from attacking judgments or orders issued in a separate proceeding. *United*

*States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021) ("When a challenge to an order takes place in a separate 'proceeding that has an independent purpose,' . . . it is a 'collateral attack.'"); *Mullis*, 828 F.2d at 1392-93 (collateral attack on an order from a different court is generally impermissible). The doctrine protects the integrity of judicial decisions and avoids the circumstance in which entities affected by a district court's order seek competing rulings from another district court that alter, undo, or render unenforceable the prior order. *See Ord v. United States*, 8 F. App'x 852, 854 (9th Cir. 2001).

The merits motion that Wells Fargo intended to file after intervening in the *Triangle* case would have directly targeted the enforceability of the order that endowed the Receiver with the "full powers of an equity receiver" and authorized the Receiver to sue Wells Fargo for those financial judgments. These orders were based on Section 13(b) and, post-*AMG Capital*, are now known to be overbroad. Under the collateral attack doctrine, the correct forum for this motion was the district court because it issued the orders in the *Triangle* case. The district court's finding to the contrary ignored both this doctrine and the fact that it continues to exercise direct authority over the Receivership. By doing so, the district court has created the circumstance[7] that the collateral attack doctrine exists to avoid: having the continued

---

[7] The district court expressly ordered continued jurisdiction over "matters related to the Receivership or enforcement of the Court's judgments, filing and other

enforceability of the district court's ongoing orders in the *Triangle* action resolved in a separate legal proceeding (*e.g.,* the basis for the Receiver's appointment; the proper scope of the Receivership post-*AMG Capital*; whether the Receiver properly can prospectively pursue monetary relief against Wells Fargo to backfill financial judgments in the *Triangle* case that were incorrectly secured, at least in principal part, under Section 13(b); and if so, what portion of the *Triangle* judgments the Receiver can properly pursue against Wells Fargo). It was both necessary and appropriate for Wells Fargo to seek protection of its interests by seeking to intervene in the *Triangle* case. The district court erred by finding otherwise.

### C. Wells Fargo timely moved to intervene.

Third, the district court abused its discretion in deeming Wells Fargo's motion untimely. In determining the timeliness of a motion to intervene, the district court must consider the totality of the circumstances, including three primary factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith*, 830 F.3d at 854. This Court has held that "the timeliness requirement for intervention as of right should be treated *more leniently* than for permissive intervention because of the likelihood of more serious harm." *United States v. Oregon*, 745 F.2d 550, 552

---

proceedings in this matter may therefore continue until further order of this Court." 2-ER-84.

(9th Cir. 1984) (emphasis added). The "[m]ere lapse of time alone is not determinative" in deciding the timeliness of a motion to intervene. *Id.*

This Court has made clear that "[t]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests *would not be adequately protected by the existing parties*." *Smith*, 830 F.3d at 854 (emphasis added). Failing to follow that "basic principle" of timeliness is an abuse of discretion. *Id.*

Yet the district court did not apply that standard of timeliness. Instead, it concluded that Wells Fargo had to intervene essentially as soon as it knew or should have known that its interests might be adversely affected by the outcome of the litigation. Applying that incorrect standard – which focuses on the hypothesized outcome of the litigation[8] and rather than the incentives of the existing parties – was itself an abuse of discretion. *Smith*, 830 F.3d at 854.

The district court also abused its discretion in applying that incorrect standard. The district court held Wells Fargo's intervention two years after the district court entered the Stipulated Judgments on May 20, 2019, and administratively closed the case on November 19, 2019, "weigh[ed] heavily against intervention." 1-ER-9.

---

[8] Notably, the district court separately found that Wells Fargo lacked standing to intervene because potential damages were insufficient to establish an adequate, particularized, redressable injury. 1-ER-7. This finding cannot be reconciled with its timeliness finding.

However, there was no reason at those times for Wells Fargo to be aware that its interests *likely* would not be protected by the existing parties. To the contrary, the FTC did not stipulate to the Receiver's request for additional time to pursue recovery from Wells Fargo but rather filed a "statement of non-opposition." 2-ER-85–87. In fact, as recently as its opposition to Wells Fargo's intervention motion, the FTC argued, albeit incredibly given its broader arguments, that the FTC and Wells Fargo "share the 'same ultimate objective . . . [of ensuring] that receivers appointed in FTC cases follow the law, including *AMG*'" such that the FTC adequately would protect Wells Fargo's interests in this matter. 2-ER-70–71.

### 1. Wells Fargo could not intervene before commencement of the Wells Fargo Litigation.

Contrary to the district court's determination, Wells Fargo did not have grounds to intervene in the case as early as May 2019, when the district court entered the Stipulated Judgments or when the Receiver requested extension of the receivership to pursue a lawsuit against a "domestic financial institution" – first identified as Wells Fargo in October 2019, which motion was granted in November 2019. 2-ER-125–48; 2-ER-100–24; 2-ER-88–90; 2-ER-82–84. As a non-party, Wells Fargo was never served with these filings and did not know that it would become the target of the Receiver's efforts to pursue litigation against Wells Fargo based on an invalid theory of authority. To that end, the district court's finding that

34

Wells Fargo's intervention two years after these events "alone weighs heavily against intervention" is erroneous. 1-ER-9.

The district court also erroneously held that Wells Fargo's intervention six months after the *AMG Capital* decision and nearly four months after the instigation of the Wells Fargo Litigation was untimely. 1-ER-10. However, it was not *until April 2021* that the Supreme Court clarified that the FTC lacked authority to obtain equitable monetary relief under Section 13(b) of the FTC Act. *AMG Capital* set aside 25 years of Ninth Circuit precedent holding that Section 13(b) empowered courts with the full breadth of equitable authority – including the ability to impose monetary relief and appoint receivers. *See AMG Capital*, 141 S. Ct. at 1352. First, Wells Fargo was not able to intervene before *AMG Capital* because any challenge to either the scope of the Receiver's equitable authority or his ability to prospectively seek enforcement of the monetary judgments issued under Section 13(b) would have been futile, bordering on frivolous. *See, e.g.*, *FTC v. AMG Cap.*, 910 F.3d 417, 426 (9th Cir. 2018) ("We have repeatedly held that § 13(b) 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice"). Second, Wells Fargo could not intervene even when the Supreme Court issued its opinion, because the Receiver had yet to institute its action against Wells Fargo, and it was far from clear how the FTC would treat receiverships founded under a misapplication of Section 13(b) equitable authority or pursuing Section 13(b)-based judgments. *See* Wells

Fargo's Motion to Intervene, *FTC v. Apex Cap. Grp., LLC*, No. 2:18-cv-9573-JFW-JPR (C.D. Cal. Jan. 18, 2022), Dkt. 219 at 23–24. For example, following remand in the *AMG Capital* case, the FTC contended that the Monitorship should be terminated.[9] Lastly, while the district court held that a four- to six-month delay in intervening was untimely, this Court has held that motions filed at or beyond this length of time to be timely.[10] *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (four-month delay not untimely); *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397 (same); *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981) (upholding district court's implied finding of timeliness of a motion to intervene filed eighteen months after a complaint was filed).

These factors weigh heavily in determining whether Wells Fargo's intervention was timely. This Court has held that "[i]n analyzing timeliness, [the Court is] also mindful of the balance of policies underlying intervention" such that the Court "'discourage[s] premature intervention' that unnecessarily 'squander[s]

---

[9] *See* Monitor's Final Report and Accounting, *FTC v. AMG Servs., Inc.*, No. 2:12-cv-00536-GMN-VCF (D. Nev. Nov. 23, 2021), Dkt. 1364 ("And while it became clear after the Supreme Court's decision in *AMG Capital Management, LLC, et al. v. Federal Trade Commission* ("*AMG Capital*"), No. 19-508, slip op. (Apr. 22, 2021) that the Monitorship itself would need to be terminated, the funds collected by the Monitor will, by and large, be transferred to the Department of Justice pursuant to a Preliminary Order of Forfeiture.").

[10] It is also particularly noteworthy that there was no activity in the Wells Fargo Litigation during the four- to six-month period prior to Wells Fargo's intervention in the *Triangle* case, therefore there could be no prejudice to any party in that case as well.

scarce judicial resources and increase[s] litigation costs.'" *Kalbers v. United States*, 22 F.4th 816, 823 (9th Cir. 2021) (citations omitted). So, intervention in April 2020, when *AMG Capital* was decided, would have been premature, and the district court's decision that Wells Fargo's motion was untimely because it did not intervene at that time or four months after the Wells Fargo Litigation was filed was an abuse of discretion.

### 2. The case is still open as to the Receiver's actions.

The district court's reasoning that the timeliness determination is critically impacted by the case being administratively closed is erroneous and an abuse of discretion. 1-ER-9. The district court expressly retained jurisdiction "over the Receivership" and further provided that "matters related to the Receivership or enforcement of the Court's judgments, filings and other proceedings" could continue until further order by the district court. 2-ER-84. Consistent with this order, the Receiver is required to seek modifications to this order not through the Wells Fargo Litigation but rather by returning to the *Triangle* action. The district court's order permits the challenges to its orders and the matters related to the Receivership, including the permissibility and scope of its powers.

Simply stated, the case remains open as to matters related to the Receivership, and the district court clearly erred in concluding that the case was closed. As the

district court's findings are factually unfounded, they cannot support an untimeliness finding.

### 3. The parties will not be prejudiced by Wells Fargo's intervention.

The district court also incorrectly held that permitting intervention would prejudice the FTC because it was still "empowered to pursue monetary judgment against Wells Fargo regardless of Section 13(b)'s applicability" and that if intervention was granted "the FTC would no doubt be forced to relitigate issues that have already been adjudicated in this case." 1-ER-10. Neither of these findings is a proper assessment of prejudice as a result of the timing of the motion. To properly assess timeliness, courts must analyze the prejudice to the other parties caused by the timing of the intervention. *See Smith*, 830 F.3d at 854. A "'[m]ere lapse of time alone is not determinative'…prejudice to other parties in connection with the proposed intervention is a[n]…important factor in the timeliness determination." *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (citing *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986)). There is no support for the district court's improper determination that: (1) the other parties in the *Triangle* litigation were prejudiced because the FTC "is still empowered to pursue monetary judgment against Wells Fargo regardless of Section 13(b)'s applicability"; and (2) that the FTC

would face prejudice because "the FTC would no doubt be forced to relitigate issues that have already been adjudicated in this case." 1-ER-10.

First, the district court's determination that permitting intervention would prejudice the FTC because it could still pursue Wells Fargo, regardless of Section 13(b)'s applicability, is categorically false. As a matter of law, regardless of Section 13(b)'s applicability, the FTC cannot pursue Wells Fargo because the FTC Act expressly exempts banks, like Wells Fargo, from the FTC's reach. 15 U.S.C. § 45(a)(2) ("The commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, savings and loan institutions…from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."); *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 336 (1963) ("The FTC, under § 5 of the Federal Trade Commission Act, has no jurisdiction over banks."); *FTC v. AT&T Mobility Ltd. Liab. Co.*, 883 F.3d 848, 853 (9th Cir. 2018) (holding that the statutory structure of the FTC Act provides a "significant interpretative benchmark" that "'Banks'" are wholly exempt from the section."). The district court's finding that intervention would prejudice the FTC is in error, and denial of the intervention on this basis is wrong as a matter of law.

The district court's second reason for finding prejudice is likewise in error. Without providing any explanation, the district court stated: "[i]f the Court granted

the intervention request, the FTC would no doubt be forced to relitigate issues that have already been adjudicated in this case." 1-ER-10. It is entirely unclear what issues the district court thinks that the FTC would have to relitigate. The FTC would not have to relitigate the *Triangle* judgment (which was entered through a stipulated agreement at the outset of the proceedings), because Wells Fargo does not seek to overturn the judgments but instead seeks to modify the orders giving the Receiver authority to pursue Wells Fargo. Wells Fargo *is not seeking to modify the Stipulated Judgments* and the legal issues that Wells Fargo seeks to raise have never been before the district court. *United States v. State of Or.*, 745 F.2d 550, 553 (9th Cir. 1984) (finding no prejudice, in part, because the parties would not have to relitigate matters). The district court has specifically kept the case open for the purpose of monitoring the Receiver's activity. 2-ER-84. A finding of prejudice on this basis is completely unsupported by the record and is an abuse of discretion.

### D. No existing party adequately protects Wells Fargo's interests.

Last, the existing parties do not adequately represent Wells Fargo's interest. *See Citizens for Balanced Use*, 647 F.3d at 897 (holding government agency would not adequately represent proposed intervenor's interests even if they "share[d] the objective of defending the legality of" a court's order because, among other things, the parties sought to assert different arguments in support of the order). The district court did not dispute this point, and none of the existing parties can credibly claim

to represent Wells Fargo's interest. Nor could they. Wells Fargo seeks to confine the FTC to its limited authority as recognized in *AMG Capital*, and seeks to prevent the Receiver from exercising unlawful authority. Wells Fargo thus satisfies this last requirement under Rule 24(a), and the district court's denial of Wells Fargo's motion for intervention as of right was error.

## III. The district court abused its discretion in denying permissive intervention.

The district court denied permissive intervention under Rule 24(b) for the same basis as it denied intervention under Rule 24(a), specifically related to the timeliness factor and Wells Fargo's purported ability to raise the same issues and arguments in the Wells Fargo Litigation. 1-ER-11–12. Because the district court's denial of Wells Fargo's motion as of right under Rule 24(a) was based on legal error, the denial of Wells Fargo's motion under Rule 24(b) rests on the same erroneous foundation. *Smith v. Pangilinan*, 651 F.2d 1320, 1325–26 (9th Cir. 1981) (noting the same analysis under Rule 24(a) applied with greater force to permissive intervention). Thus, the denial of permissive intervention was an abuse of discretion requiring remand at a minimum.

## CONCLUSION

For these reasons, this Court should reverse the district court's order denying Wells Fargo's intervention as of right and by permission.

Dated: March 8, 2023                    Respectfully submitted,

*/s/ Brian D. Schmalzbach*
Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
Jenny Yi
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

*Counsel for Movants-Appellants Wells*
*Fargo & Co. and Wells Fargo Bank, N.A.*

## STATEMENT OF RELATED CASES

*FTC v. Apex Capital Group, LLC*, No. 22-55342, is a related case that involves the FTC and the same Receiver, and raises the same or closely related issues of (1) whether Wells Fargo sustained an injury as a result of the Receiver's unlawful pursuit in the Wells Fargo Litigation sufficient to establish Article III standing to intervene; (2) whether the district court abused its discretion in finding that Wells Fargo's motion to intervene was untimely; (3) whether Wells Fargo has a protectable interest to intervene as of right; (4) whether Wells Fargo would not be able to protect its interests if unable to intervene; and (5) whether Wells Fargo should have been permitted to intervene pursuant to Rule 24(b).

Dated: March 8, 2023     */s/ Brian D. Schmalzbach*
            Brian D. Schmalzbach

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This brief complies with the length limitations in 9th Cir. R. 32-1(a) and Fed. R. App. P. 32(a)(7) because it contains 10,091 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size Times New Roman font.


Dated:  March 8, 2023                    */s/ Brian D. Schmalzbach*
                                         Brian D. Schmalzbach

44

# APPENDIX A

## STATUTORY AUTHORITIES

The relevant portions of the Federal Rules of Civil Procedure read in full:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

> (1) is given an unconditional right to intervene by federal statute; or

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

> (1) *In General*. On timely motion, the court may permit anyone to intervene who:

> > (A) is given a conditional right to intervene by a federal statute; or

> > (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(a)-(b).

The relevant portions of Section 13(b) of the FTC Act read in full:

45

**Temporary restraining orders; preliminary injunctions.** Whenever the Commission has reason to believe

> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public [-]

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however*, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.

15 U.S.C. § 53(b).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

Dated:  March 8, 2023                    */s/ Brian D. Schmalzbach*
                                                    Brian D. Schmalzbach