## No. 22-56012

In the

# United States Court of Appeals
## For the Ninth Circuit

---

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TRIANGLE MEDIA CORPORATION, *et al.,*

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., proposed Intervenors,

*Movants-Appellants,*

---

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of California
The Honorable Larry Alan Burns
Case No. 3:18-cv-01388-LAB-WVG

---

**VOLUME II OF III – EXCERPTS OF RECORD OF APPELLANTS
WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.**

---

*(Counsel listed on following page)*

---

March 8, 2023

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
Jenny Yi
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com
jyi@mcguirewoods.com

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*

1  Logan D. Smith (SBN 212041)
   lsmith@mcnamarallp.com
2  Cornelia J. B. Gordon (SBN 320207)
   cgordon@mcnamarallp.com
3  McNamara Smith LLP
   655 West Broadway, Suite 900
4  San Diego, California 92101
   Telephone: 619-269-0400
5  Facsimile:  619-269-0401

6  *Attorneys for Court-Appointed Receiver*
   *Thomas W. McNamara*
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 | FEDERAL TRADE COMMISSION, | Case No. 3:18-cv-01388-LAB-LL |

12 |          Plaintiff, | **RECEIVER'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S MOTION TO INTERVENE** |

13 |          v. |

14 | TRIANGLE MEDIA CORPORATION, a Delaware corporation, also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; JASPER RAIN MARKETING LLC, a California limited liability company, also doing business as Cranium Power and Phenom Health; HARDWIRE INTERACTIVE INC., a British Virgin Islands corporation, also doing business as Phenom Health, Beauty and Truth, and E-Cigs; and BRIAN PHILLIPS, individually and as an officer of Triangle Media Corporation, | **JUDGE:**  Hon. Larry A. Burns<br>**CTRM:**    14A |

15 |

16 |

17 |

18 |

19 |

20 |

21 |          Defendants. |

22

23

24

25

26

27

28

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF

2  RECORD:

3    PLEASE TAKE NOTICE that in support of Receiver Thomas W.

4  McNamara's Opposition (ECF No. 168) to Proposed Intervenors Wells Fargo &

5  Company and Wells Fargo Bank N.A.'s Motion to Intervene, the Receiver submits

6  for the Court's consideration the "Order Denying Proposed Intervenors' Motion to

7  Intervene," issued by the Central District of California on March 10, 2022.  *See*

8  *Federal Trade Commission v. Apex Capital Group, LLC, et al.*, No. 2:18-cv-09573

9  JFW (JPRx), ECF No. 238 (C.D. Cal. Mar. 10, 2022) (attached hereto as

10 Exhibit 1).

11

12 Dated:  March 10, 2022                    MCNAMARA SMITH LLP

13

14                                   By:    /s/ Logan D. Smith
                                    Logan D. Smith
15                                  Email: lsmith@mcnamarallp.com
                                    *Attorneys for Court-Appointed Receiver,*
16                                  *Thomas W. McNamara*

17

18

19

20

21

22

23

24

25

26

27

28

1  **MCGUIREWOODS LLP**
   DAVID C. POWELL (SBN 129781)
2  dpowell@mcguirewoods.com
   ALICIA A. BAIARDO (SBN 254228)
3  abaiardo@mcguirewoods.com
   Two Embarcadero Center, Suite 1300
4  San Francisco, CA 94111-3821
   Telephone: 415.844.9944
5  Facsimile: 415.844.9922

6  **MCGUIREWOODS LLP**
   KEVIN M. LALLY (SBN 226402)
7  klally@mcguirewoods.com
   355 S. Grand Avenue, Suite 4200
8  Los Angeles, CA 90071
   Telephone: 213.627.2268
9  Facsimile: 213.627.2579

10 Attorneys for Proposed Intervenors
   Wells Fargo & Company and
11 Wells Fargo Bank N.A.

12              **UNITED STATES DISTRICT COURT**

13           **SOUTHERN DISTRICT OF CALIFORNIA**

14

15 FEDERAL TRADE                    CASE NO. 18-cv-1388-LAB-LL
   COMMISSION,
                                    Judge: Hon. Larry Alan Burns
16          Plaintiff,

17     v.                           **PROPOSED INTERVENORS WELLS
                                    FARGO & COMPANY AND WELLS
18 TRIANGLE MEDIA                   FARGO BANK N.A.'S OMNIBUS
   CORPORATION;                     REPLY IN SUPPORT OF ITS
19 JASPER RAIN MARKETING LLC;       MOTION TO INTERVENE
   HARDWIRE INTERACTIVE INC;
20 GLOBAL NORTHERN TRADING          Date: January 24, 2022
   LIMITED; BRIAN PHILLIPS; and     Time: 11:15 a.m.
21 DEVIN KEER,                      Ctrm: 14A

22          Defendants.

23

24

25

26

27

28

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER18**

## **<u>TABLE OF CONTENTS</u>**

Page

I.    INTRODUCTION ................................................................................... 1

II.   ARGUMENT ......................................................................................... 2

      A.    The Court Appointed the Receiver Pursuant to Section 13(b) ............. 3

      B.    Wells Fargo Has Met Its Burden Establishing the Factors to
            Intervene as a Matter of Right .................................................... 4

            (1)    Wells Fargo's Motion to Intervene is Timely ........................... 4

                   i.    The Court Expressly Retained Jurisdiction Over
                         Matters Related to the Receivership .................................. 4

                   ii.   The FTC and Receiver's Misframed Timeliness
                         Arguments Should Be Rejected ........................................ 5

                         a.    An Administrative Subpoena is Not Adequate
                               Notice that its Interests Could be Affected ............ 5

                         b.    Wells Fargo Was Not On Notice in October
                               of 2019 or in April of 2020 .................................. 6

                         c.    Intervening Within Four-Months Does Not
                               Warrant a Finding of Untimeliness ....................... 8

                   iii.  Wells Fargo Could Not Have Challenged the
                         Receiver's Authority to Pursue Monetary Damages
                         in the Receiver's Action .................................................. 11

            (2)    The FTC and the Receiver Will Not Suffer Prejudice as a
                   Result of Wells Fargo's Motion ............................................ 11

            (3)    Wells Fargo Has Established a Protectable Interest and
                   That Its Interests Cannot and Will Not Be Adequately
                   Protected .......................................................................... 14

            (4)    Wells Fargo Has Adequately Established That Its Interests
                   Will Be Impaired by Disposition of This Case ......................... 17

      C.    Wells Fargo Has Met Its Burden for Permissive Intervention ............ 18

III.  CONCLUSION .................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................ 21

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER19**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ............................................................... 6

*Banco Popular de Puerto Rico v. Greenblatt,*
  964 F.2d 1227 (1st Cir. 1992) ............................................................. 10

*Celotex Corp. v. Edwards,*
  514 U.S. 300 (1995) ............................................................................ 17

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) ............................................................................ 14

*Day v. Apoliona,*
  505 F.3d 963 (9th Cir. 2007) ................................................................. 8

*E. Bay Sanctuary Covenant v. Biden,*
  993 F.3d 640 (9th Cir. 2021) ......................................................... 14, 15

*Friends of the Earth v. Sanderson Farms, Inc.,*
  992 F.3d 854 (S.D. Cal. 2018) ............................................................ 15

*FTC v. AMG Cap. Mgmt., LLC,*
  910 F.3d 417 (9th Cir. 2018) ................................................................. 5

*FTC v. Apex Capital Group, LLC, et al.,*
  Case No. 3:18-cv-01388-lAB-LL (S.D. Cal.) ...................... 2, 5, 8, 11

*FTC v. Cardiff,*
  No. ED CV 18-2104-DMG, 2021 U.S. Dist. LEXIS 155342 (C.D.
  Cal. June 29, 2021) ............................................................................... 3

*FTC v. Noland,*
  No. CV-20-00047-PHX-DWL, 2021 WL 3290461 (D. Ariz. Aug. 2,
  2021) ...................................................................................................... 7

*FTC v. Zurixx, LLC,*
  No. 2:19-CV-00713-DK-DAO, 2021 WL 3510804 (D. Utah Aug.
  10, 2021) ................................................................................................ 7

ii

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

ER20

*Havens Realty Corp v. Coleman*,
    455 U.S. 363 (1982) ......................................................................... 15

*Jordan v. Nationstar Mortg., LLC*,
    No. 2:14-CV-0175-TOR, 2016 WL 7494297 (E.D. Wash. Oct. 14,
    2016) ...................................................................................................... 9

*Lewis v. First Am. Title Ins. Co.*,
    No. 1:06-CV-478-EJF-LMB, 2010 WL 3735485 (D. Idaho Aug. 5,
    2010) .................................................................................................... 10

*Nat'l Ass'n for Advancement of Colored People v. New York*,
    413 U.S. 345, 367-68 (1973) ............................................................ 10

*Nnebe v. Daus*,
    644 F.3d 147 (2d Cir. 2011) ............................................................. 15

*Perry v. Proposition 8 Off. Proponents*,
    587 F.3d 947 (9th Cir. 2009) .............................................................. 6

*Project Sentinel v. Evergreen Ridge Apartments*,
    40 F. Supp. 2d 1136 (N.D. Cal. 1999) ............................................. 15

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp*,
    584 F.3d 1, 8-10 (1st Cir. 2009) ....................................................... 10

*Rein v. Providian Fin. Corp.*,
    270 F.3d 895 (9th Cir. 2001) ...................................................... 11, 17

*Sage Electrochromics, Inc. v. View, Inc.*,
    No. 12-CV-06441-JST, 2013 WL 6139713 (N.D. Cal. Nov. 21,
    2013) ...................................................................................................... 9

*San Diego Unified Port Dist. v. Monsanto Co.*,
    309 F. Supp. 3d 854 (S.D. Cal. 2018) .............................................. 15

*Scholl v. Mnuchin*,
    No. 20-CV-05309-PJH, 2021 WL 84487 (N.D. Cal. Jan. 11, 2021) ................. 11

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ............................................................ 11

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .............................................................. 2

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ........................................................................ 16

*U.S. v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) .............................................................. 8

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) .............................................................. 2

*Walker v. Birmingham*,
    388 U.S. 307 (1967) ........................................................................ 17

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................ 15

**Statutes**

All Writs Act, 28 U.S.C. § 1651 ............................................................ 3

FTC Act § 13(b), 15 U.S.C. §§ 53(b) ........................... 1, 3, 5, 6, 13, 14, 17

**Other Authorities**

Fed. R. Civ. P. 24(b) ......................................................................... 18

Fed. R. Civ. P. 65 ............................................................................... 3

# I.      <u>INTRODUCTION</u>

Wells Fargo's Motion to Intervene ("Motion") establishes that it should be granted intervention, as of right or by permission of this Court. It is indisputable that this Court referenced only one section of the FTC Act when addressing its authority to appoint a Receiver: Section 13(b). It is equally indisputable that this Court's order appointing the Receiver cites to only one section of the FTC Act: 13(b). The Supreme Court in *AMG Capital* found that Circuit Courts, including the Ninth Circuit in that very case, erroneously had interpreted the scope of equitable authority under Section 13(b), which is statute specific, and held that Section 13(b) could not serve as the basis of monetary relief. The Receiver, appointed pursuant to Section 13(b), has sued Wells Fargo to backfill monetary judgments that were imposed pursuant to Section 13(b). Wells Fargo has satisfied the requirements of intervention and has a due process right to challenge the orders issued in this case—which are now known to be unlawful—that authorize the Receiver to pursue monetary damages against it to be used for what the FTC has acknowledged to be "an integral part of their [*i.e.*, the Defendants] respective judgments." FTC's Opposition to Wells Fargo's Motion to Intervene ("FTC Opp.") at 5.

Wells Fargo's Motion is clear that it is only seeking intervention to challenge ***the continuing viability*** of the orders issued in this case allowing the Receiver to pursue litigation against Wells Fargo. In a misguided effort to short-circuit full consideration of the merits of its proposed underlying motion, the FTC and the Receiver interject misframed merits arguments, distort the timeline in challenging the timeliness of Wells Fargo's motion, and argue that Wells Fargo does not have a protectable interest in challenging orders that are targeted directly at it (the FTC even argues that Wells Fargo lacks standing to seek intervention). The FTC and Receiver's arguments do not change the fact that intervention is warranted for the following five reasons:

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER23**

First, the FTC and Receiver's focus on the underlying record are transparent attempts to argue, at length, merits issues not before the Court at this stage. By doing so, the FTC and Receiver highlight significant merits issues that require full briefing and resolution by this Court, underscoring the importance that intervention be granted.

Second, contrary to the FTC and Receiver's assertions, Wells Fargo's Motion is timely as it was brought within four months of when it acquired standing.

Third, Wells Fargo's protectable interest is not simply the "right not to be sued" but its right not to have an unlawful order applied against it. Moreover, neither the FTC nor the Receiver will adequately protect Wells Fargo's interests.

Fourth, Wells Fargo must seek redress from this Court because the collateral attack doctrine bars it from challenging this Court's order in another court or another matter, including the separate Wells Fargo Litigation the Receiver filed.

Finally, Wells Fargo has met its burden for permissive intervention because its Motion is timely, clearly shares common questions of law and fact with the underlying litigation, and will not unnecessarily expand this Court's jurisdiction.

## II.  **ARGUMENT**[1]

When evaluating the factors for intervention, the "courts are guided primarily by practical and equitable considerations, and the requirements for intervention are broadly interpreted in favor of intervention." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d

---

[1] *FTC v. Apex Capital Group, LLC, et al.,* Case No. 3:18-cv-01388-lAB-LL (S.D. Cal.) ("*Apex*"), has no bearing on this case and is not properly before this Court. The *Apex* action involved entirely different parties, different schemes, and different charges by the FTC.

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

810, 820 (9th Cir. 2001).

## A.  The Court Appointed the Receiver Pursuant to Section 13(b)

The record in this case is clear that the only section of the FTC Act that the Court relied on in appointing the Receiver is Section 13(b). Dkt. 11 ("This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), Fed. R. Civ. P. 65; and the All Writs Act, 28 U.S.C. § 1651."). The FTC and Receiver cannot legitimately dispute that the FTC sought damages under Section 13(b) and that the decision in *AMG Capital* that monetary damages are not recoverable stemmed from the Supreme Court's recognition of the limited grant of equitable authority under Section 13(b). Dkt. 168 ("Rec. Opp.") at 3-7; FTC Opp. at 2-8. Moreover, neither the FTC nor the Receiver can contest that the FTC never expressly pled Section 19, that it entered into "no fault" settlements, and that this Court did not make any specific finding of a ROSCA-based rule violation either at settlement or when closing the case as to the underlying parties. Stated differently, the FTC and the Receiver's claim that the record plainly establishes that the government proceeded under Section 19 is not supported by the record.

On the contrary, this claim highlights why full briefing on the merits is required. For instance, the FTC and Receiver both cite to the district court decision in *Cardiff* to support their claims that a ROSCA claim brought under Section 19 can be the basis of monetary recovery post-*AMG Capital*. FTC Opp. at 7; Rec. Opp. at 5-6. They omit the most critical facts, however, as Section 19 was both pled and proved in summary judgment in *Cardiff* – and more importantly, that the court still precluded monetary recovery because the FTC initially had sought damages under Section 13(b) and had not timely provided the requisite expert disclosures to support an independent damage award under Section 19. *FTC v. Cardiff,* No. ED CV 18-2104-DMG (PLAx), 2021 U.S. Dist. LEXIS 155342, at *19 (C.D. Cal. June 29, 2021). *Cardiff*, therefore, more accurately demonstrates how efforts by the FTC to

1  recast their cases as salvageable under Section 19 rely on facts, nuance, procedural
2  posture and judicial discretion. Upon full briefing, Wells Fargo will explain how all
3  of these considerations dictate against making such a finding in this case.

4  **B.**  **Wells Fargo Has Met Its Burden Establishing the Factors to Intervene as a Matter of Right**
5

6  *(1)*  *Wells Fargo's Motion to Intervene is Timely*

7  The instant motion is timely for several reasons. Contrary to the FTC and
8  Receiver's arguments, this case is not yet closed for purposes of determining the
9  scope of the Receiver's authority. Further, it was not until July 8, 2021, that Wells
10 Fargo's protectable interest arose. Once Wells Fargo's protectable interest arose, it
11 moved promptly to intervene by filing this Motion just four months after the
12 Receiver brought his action against Wells Fargo.

13 **i.**  **The Court Expressly Retained Jurisdiction Over Matters Related to the Receivership**
14

15 Both the FTC and the Receiver argue Wells Fargo's motion is untimely
16 because the case was administratively closed on November 19, 2019, after the Final
17 Stipulated Judgments were entered on May 30, 2019. FTC Opp. at 11; Rec. Opp. at
18 19. However, the case is not closed as to the issues presently before the Court. The
19 Court administratively closed the proceedings between the FTC and the Defendants,
20 but expressly retained jurisdiction over "matters related to the Receivership or
21 enforcement of the Court's judgments, filings and other proceedings in this matter."
22 Dkt. 142 at 3; Mot. at 7. Thus, the case is still open for the purpose of determining
23 the Receiver's authority to prospectively seek recovery of a monetary judgment
24 against Wells Fargo following the decision in *AMG Capital*. Given that the case is
25 open for this express purpose and the triggering events providing the basis for Wells
26 Fargo's claim only recently occurred, it is entirely appropriate that Wells Fargo
27 bring this motion at this stage of the proceedings.

28

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER26**

The FTC further argues that intervention would "cause the Court to relitigate the stipulated judgments and the order authorizing the Receiver to hire counsel . . . merely to thwart a remedy rather than participate in the future administration of the remedy." FTC Opp. at 11. This simply is not true. As Wells Fargo made clear, it is not attempting to disrupt the underlying final judgments. Rather, it seeks to intervene only to challenge the orders giving the Receiver the authority to pursue litigation against Wells Fargo.

### ii. The FTC and Receiver's Misframed Timeliness Arguments Should Be Rejected

Both the FTC and the Receiver argue that Wells Fargo's Motion is untimely, claiming Wells Fargo was somehow "on notice" before *either* the issuance of the Supreme Court's *AMG Capital* decision in April 2021 or being sued by the Receiver in July 2021. This simply ignores the fact that, until *AMG Capital,* 25 years of controlling Ninth Circuit precedent interpreted the scope of equitable relief under Section 13(b) as permitting recovery of monetary damages. *See e.g. FTC v. AMG Cap. Mgmt., LLC*, 910 F.3d 417 (9th Cir. 2018) (overturned Ninth Circuit decision affirming the district court had the power to order equitable monetary relief under Section 13(b)). The idea that Wells Fargo had any basis to intervene before *AMG Capital* (or before being sued) fails to pass the straight-face test. The question of timeliness begins as of July 8, 2021, when the Receiver sued Wells Fargo, seeking prospective recovery of monetary damages based on the equitable monetary judgments awarded to the FTC as part of the underlying Section 13(b) proceeding. It was only then that an actionable dispute warranting intervention arose.

### a. An Administrative Subpoena is Not Adequate Notice that its Interests Could be Affected

The FTC argues Wells Fargo should have been on notice its interests could be affected on either of two dates it responded to subpoenas: 2017 (FTC administrative subpoena identifying accounts that had been opened under multiple corporate

5

1  names) or 2019 (Receiver subpoena seeking information about accounts in *Apex*).

2  FTC Opp. at 12-13. This reasoning leads to an absurd result. A bank cannot be

3  expected every time it receives a subpoena to anticipate that its interests would be

4  affected and file a motion to intervene in the underlying action. Doing so would

5  impose a needless burden on banking institutions and the courts alike. There is no

6  dispute Wells Fargo would have had no basis to intervene pre-*AMG Capital*. *See*

7  FTC Opp. at 8 (arguing Wells Fargo currently has no standing even after *AMG*

8  *Capital*).

9          **b.    *Wells Fargo Was Not On Notice in October of***
10                  ***2019 or in April of 2020***

11         The FTC and Receiver proffer a number of different pre-*AMG Capital* dates

12  they argue should serve as the marker for evaluating timeliness: May 30, 2019,

13  when the stipulated judgments were entered; October 22, 2019, when the Receiver

14  filed his motion for "authorization to engage contingency counsel and made public

15  his intent to pursue claims against Wells Fargo on behalf of the Receivership

16  Entities;" April 1, 2020, when the Receiver sent Wells Fargo a draft complaint; or

17  April 2021, when the Supreme Court issued its decision in *AMG Capital*. FTC Opp.

18  at 14; Rec. Opp. at 14-15.

19         Wells Fargo did not have a basis to intervene until both: (1) the Supreme

20  Court's April 2021 decision finding the FTC lacked authority to obtain equitable

21  monetary relief under Section 13(b) of the FTC Act, *and* (2) the Receiver's lawsuit

22  against it in July 2021 seeking to prospectively recover monetary judgments that

23  were awarded as part of the underlying Section 13(b) proceedings notwithstanding

24  *AMG Capital*. It was only at this juncture that an actionable dispute warranting

25  intervention arose. Given this recent material change in circumstance, it is

26  appropriate for Wells Fargo to file its intervention motion at this time. *Perry v.*

27  *Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009) ("An applicant as

28

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER28**

1  of right must…have a significantly protectable interest") (citing *Arakaki v.*

2  *Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

3       Furthermore, the FTC's position that Wells Fargo should have intervened as

4  early as October 2019 is contradicted by its own argument that Wells Fargo lacks

5  standing to intervene as this juncture. FTC Opp. at 8. In support of its standing

6  argument, the FTC argues Wells Fargo's injury is far too speculative to confer

7  standing to intervene, as it is not certain that it will have to pay a monetary judgment

8  and litigation costs in the action against the Receiver. *Id.* If Wells Fargo purportedly

9  lacks standing to intervene at this stage, it defies logic as to how it would have been

10  able to intervene in October 2019, as the FTC and Receiver claim it ought to have.

11       The FTC and Receiver cite *Zurixx* and *Noland* for the proposition that a

12  motion to intervene based on *AMG Capital* is insufficient. Rec. Opp. at 10, 16, 17;

13  FTC Opp. at 6, 18. *Zurixx* and *Noland* are factually and legally inapposite. The

14  proposed intervenors in *Zurixx* and *Noland* sought to intervene on the grounds that

15  the *AMG Capital* decision created their respective interests. However, both of those

16  courts noted that the proposed intervenors' protected interests were present months

17  before the *AMG Capital* decision was issued. In *Zurixx*, the proposed intervenors

18  argued the underlying litigation disrupted their access to defendant's resources and

19  services. *FTC v. Zurixx, LLC*, No. 2:19-CV-00713-DK-DAO, 2021 WL 3510804, at

20  *2 (D. Utah Aug. 10, 2021). The Court found the proposed intervenors' interests

21  arose when the receiver suspended the defendant's operations, and so a motion

22  seeking to intervene 18 months thereafter was untimely. *Id.* at *14. Since the

23  proposed intervenors' protected interest arose well before *AMG Capital* was

24  decided, the intervenors could not rely on that decision as basis for their intervention

25  motion. *Id.* In *Noland*, the proposed intervenors filed a renewed motion to intervene

26  based on *AMG Capital* after their initial intervention motion was found untimely.

27  *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 3290461, at *3 (D. Ariz.

28  Aug. 2, 2021). The *Noland* court held the decision in *AMG Capital* did not cure the

7

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER29**

untimeliness plaguing the proposed intervenors' first motion to intervene. *Id.* at *3. In both *Zurixx* and *Noland, AMG Capital* was unrelated to the proposed intervenors' protected interest or discovery thereof. By contrast, Wells Fargo's protected interest in the underlying litigation did not arise until after the Receiver sued Wells Fargo and the Supreme Court decided *AMG Capital,* affecting the viability of the orders allowing the Receiver to pursue litigation against Wells Fargo. Wells Fargo sought to intervene shortly after those events.

### c. Intervening Within Four-Months Does Not Warrant a Finding of Untimeliness

The FTC and the Receiver argue Wells Fargo could also have intervened after July 8, 2021, the date the Receiver filed his complaint, or after July 23, 2021, the date the Receiver filed a motion to extend the receivership deadline in *Apex*, and that Wells Fargo's filing to intervene four months later is untimely. These arguments are unavailing because there was good reason Wells Fargo needed the time before filing its Motion.

Wells Fargo took the necessary time to investigate and assess the strengths of its arguments in connection with this intervention. As part of this process, Wells Fargo discussed the scope of the issues with the FTC, further investigated the issues raised by the agency, and modified the scope of this intervention request. The Court should not fault Wells Fargo for conferring with the FTC and Receiver in an effort to resolve issues, considering the issues raised by the FTC, and being judicious in seeking intervention.

In arguing Wells Fargo's motion is untimely because a mere four months passed after the Receiver's complaint was filed, the Receiver relies on non-binding and out-of-circuit authority. Rec. Opp. at 11, 13. In doing so, the Receiver ignores Ninth Circuit cases finding intervention timely even though the moving party knew of its protectable interest for more than the four months at issue here. *See e.g. Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) (granting intervention even though the

8

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER30**

action commenced two years prior); *U.S. v. Oregon*, 745 F.2d 550, 551-52 (9th Cir. 1984) (finding district court abused its discretion in denying intervention given a change of circumstance even though the case began 15 years earlier); *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-CV-06441-JST, 2013 WL 6139713, at *3 (N.D. Cal. Nov. 21, 2013) (finding the seven-month delay after discovering interests affected "not extraordinary" and granting motion to intervene); *Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR, 2016 WL 7494297, at *2 (E.D. Wash. Oct. 14, 2016) (granting intervention even though the action commenced four years prior because a Washington State Supreme Court decision was a change of circumstance that for the first time concretely threatened to interfere with the intervenors' interests). A "delay" of four months in no way prejudiced other parties as nothing had transpired in the case following July 2021. Therefore, it makes no difference to the other parties if Wells Fargo intervened in July 2021 or November 2021—particularly considering the FTC and Receiver claim the case is closed.

Further, there was no "strategic" advantage related to the timing when Wells Fargo filed its Motion. Rec. Opp. at 18-19. The Receiver complains that Wells Fargo filed this Motion to Intervene after the motion to dismiss briefing was completed in the separate civil action it filed against Wells Fargo, and that the motion to dismiss was somehow part of Wells Fargo's tactical motivation. However, had Wells Fargo filed its Motion to Intervene the same day as its motion to dismiss the civil action, Wells Fargo suspects the Receiver would have complained about that too. Additionally, the Receiver's argument that Wells Fargo is "forc[ing] the Receiver to expend Estate resources litigating two motions, across two separate actions, in addition to pursuing his case against Wells Fargo" [Rec. Opp. at 20] is unavailing. This Court granted the Receiver's request to engage contingency counsel so that the receivership estate's funds would not be used. Dkts. 136-1 (Receiver requesting permission to engage contingency counsel to "shift the risk away from the Receivership Estate"); 142 (order authorizing Receiver to engage

1 contingency counsel). As explained throughout this brief, the collateral attack
2 doctrine requires Wells Fargo to challenge this Court's orders here, where the order
3 was issued.

4     The Receiver cites *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, for
5 the proposition that a two-and-a-half-month delay was unreasonable. 584 F.3d 1, 8-
6 10 (1st Cir. 2009). However, in *R & G Mortg. Corp*, the Court found the proposed
7 intervenors were aware, before the consummation of the settlement, but did nothing,
8 instead they sought to disrupt the settlements after they were finalized causing
9 disruption and harm to the original parties. Similarly, in *Banco Popular de Puerto*
10 *Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992), the proposed intervention
11 would have prejudiced the parties who had spent significant amounts of time,
12 money and effort to negotiate settlement terms embodied in the final judgment
13 where the proposed intervenors were fully aware of the potential hazards and likely
14 consequences of inaction three months prior but failed to act. *Id.* In contrast, Wells
15 Fargo does not seek to disturb the underlying judgments against Defendants and
16 solely seeks to address the issue of the Receiver's authority to pursue monetary
17 damages against the bank.[2]

18
19
20
21
22

_____

[2]The Receiver also cites *Nat'l Ass'n for Advancement of Colored People v. New York*,
for the proposition that an applicant who procrastinated for 18 days was untimely. 413
U.S. 345, 367-68 (1973). But that case is factually inapposite since the motion to
intervene was denied because intervention "possessed the potential for seriously
disrupting the State's electoral process" and would jeopardize the impending primary
elections for Assembly, Senate, and Congressional elections as well Democratic
National Convention delegates. *Id.* at 363, 369. *Lewis v. First Am. Title Ins. Co*., fares
not better since there the court denied a motion to intervene because the proposed
intervenors conceded they had tactically decided not to proceed in that court earlier
No. 1:06-CV-478-EJF-LMB, 2010 WL 3735485 (D. Idaho Aug. 5, 2010) (proposed
intervenors sought to proceed in Michigan first as a tactical choice and only sought
intervention after the Michigan plaintiff claims were dismissed).

**ER32**

### iii.  Wells Fargo Could Not Have Challenged the Receiver's Authority to Pursue Monetary Damages in the Receiver's Action

The Receiver argues Wells Fargo should have challenged the Receiver's authority to seek monetary damages when it filed its motion to dismiss in the Receiver's case and speculates that Wells Fargo's decision to wait to pursue intervention was motivated by "some tactical advantage in refraining from diligently pursuing intervention" and to seek intervention in the instant matter before the *Apex* matter. Rec. Opp. at 13. But if Wells Fargo had asked the Court to dismiss the Receiver's action based on the *AMG Capital* decision, that effort would have amounted to an impermissible collateral attack. *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 902 (9th Cir. 2001) (the "collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts."). Wells Fargo had no option but to intervene in this action.

### (2)  *The FTC and the Receiver Will Not Suffer Prejudice as a Result of Wells Fargo's Motion*

Contrary to the FTC and Receiver's arguments, no party will suffer prejudice as a result of Wells Fargo's intervention into this case. "[T]he only 'prejudice' that is relevant under this factor is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented—and not from the fact that including another party in the case might make resolution more 'difficult.'" *Scholl v. Mnuchin*, No. 20-CV-05309-PJH, 2021 WL 84487, at *4 (N.D. Cal. Jan. 11, 2021) (citing *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 857 (9th Cir. 2016)).

As explained throughout this Reply, Wells Fargo promptly brought its motion to intervene following the issuance of *AMG Capital* and the Receiver's filing of the Wells Fargo Litigation.  Neither the FTC nor Receiver identify any prejudice flowing from a failure to intervene before *AMG Capital* was decided. Instead they

focus on arguments unrelated to the timing of Wells Fargo's motion to intervene following its discovery.

The Receiver argues Wells Fargo's intervention would significantly prejudice him because: (1) Wells Fargo could have raised its challenges in the Wells Fargo Litigation, (2) the Motion burdens two separate District Courts with motions to intervene, and (3) forces the Receivership to extend estate resources litigating two motions in two separate actions in addition to his civil litigation against Wells Fargo. Rec. Opp. at 20. The Receiver's arguments ignore the collateral attack doctrine. Had Wells Fargo attempted to challenge the viability of the order authorizing the Receiver to sue it based upon *AMG Capital*, the Receiver would have argued—rightly—that it was an impermissible collateral attack on a judgment. Wells Fargo chose to bring this Motion because it is the proper vehicle for raising its arguments concerning the scope of the Receiver's authority.

Further, the Receiver would have had to respond to Wells Fargo's arguments regarding the limits of his authority *regardless* of whether those arguments were raised in a motion to dismiss or in this Motion. Put differently, it would have made no difference to the Receiver in terms of time and expense in addressing Wells Fargo's arguments because the Receiver would have had to address Wells Fargo's arguments regarding the limits of the Receiver's authority in any event—either at this juncture or in the Wells Fargo Litigation (notwithstanding the collateral attack doctrine) and so the professed prejudice does not exist.

Separately, the FTC argues it would be prejudiced because: (1) the case has been concluded and the FTC has obtained final judgments; (2) it would force the FTC to litigate claims that Wells Fargo could have raised earlier; and (3) the FTC would be forced to engage in duplicative litigation to amend the judgments which would also have delay and threaten redress for defrauded customers. FTC Opp. at 16. The FTC's first argument falls flat because Wells Fargo is not challenging the Final Stipulated Judgments except as applied to Wells Fargo or seeking to unravel

12

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

ER34

the agreements made between the FTC and the Defendants. As Wells Fargo made clear in its Motion, it only seeks to challenge the order affecting the Receiver's ability to pursue a monetary judgment against Wells Fargo. Indeed, if Wells Fargo were successful in challenging the Receiver's authority to pursue recovery of the monetary judgment against it, there would be no impact to the FTC's ability to enforce the Final Stipulated Judgments against the Defendants who settled. Second, Wells Fargo could not have moved to intervene earlier. *Cf.* FTC Opp. at 8-9 (FTC argues Wells Fargo lacks standing at this juncture because its injury is too speculative.). If Wells Fargo had moved to intervene before *AMG Capital* was decided or before the Receiver filed the action against Wells Fargo, the FTC's standing argument may have had merit. Any resources expended addressing this motion are the result of the FTC having obtained unlawful orders and therefore any resulting hardships cannot be deemed unfair prejudice to the FTC or the Receiver. Wells Fargo's intervention at this juncture, for a limited purpose, has no bearing on what the FTC should have done, but did not do, earlier in this case. Any effort needed to correct the record is a result of the FTC's failure to properly prosecute this case. Any cause for re-opening closed issues will be the result of the FTC's new "alternate" path argument for recovery under ROSCA, despite no existing record in the case establishing ROSCA violations or damages.

To the extent the FTC predicates its prejudice argument on the fact that it would be precluded from pursuing monetary damages against Wells Fargo, such an argument cannot stand. As stated at length above, the Supreme Court has since clarified that Section 13(b) is an impermissible avenue for the FTC to recover monetary damages against the bank. Thus, any attempt by the FTC, through the Receiver and this Court, to make an end-run around the FTC Act by pursuing a monetary judgment against Wells Fargo cannot amount to prejudice.

### (3)    Wells Fargo Has Established a Protectable Interest and That Its Interests Cannot and Will Not Be Adequately Protected

While the Receiver correctly quotes Wells Fargo's protectable interest as "not having to defend itself against litigation that this Court authorized based on an invalidated legal principle," he mischaracterizes this by narrowing the interest to simply a "right not to be sued," which sidesteps the crux of the issue here. Rec. Opp. at 21. Wells Fargo's protectable interest is not simply the "right not to be sued," but its right not to have an unlawful order applied and enforced against it. As explained in Wells Fargo's Motion, Wells Fargo seeks to challenge the order permitting the Receiver to pursue litigation against Wells Fargo for more than $160 million in monetary damages that this Court ordered pursuant to Section 13(b) and the Supreme Court has since clarified is an impermissible avenue for the FTC to recover monetary damages. Accordingly, there is no question Wells Fargo has a protectable interest in *not* having unlawful conduct pursued against it by the government and sanctioned by this Court.[3]

The FTC argues Wells Fargo does not have a significantly protectable interest here because its injury is too speculative to confer standing and a favorable decision would not redress its injury in fact. FTC Opp. at 19 (incorporating FTC Opp. Section II). Yet in the same brief, the FTC contends Wells Fargo should have intervened in 2019 because it somehow had standing and a protectable interest then (but not now). *Id*. at 12-15. The FTC incorporates its same merit-based arguments to argue that Wells Fargo does not have a protectable interest because it can salvage

---

[3]With the Receiver and FTC's new "alternate" theory of recovery under ROSCA, Wells Fargo has a protectable interest in *not* having an unlawful order pursued or enforced against it: (i) for rule violations under ROSCA, which violations have not been established in this case, and (ii) for recovery of damages for unestablished rule violations that grossly exceed the monetary damages permitted for ROSCA violations. Furthermore, because Wells Fargo's protectable interest arises from the order issued by this Court, it is appropriate for Wells Fargo to intervene in this case as a matter of right. Due to the collateral attack doctrine, as described in Section III.D.2, *infra,* this is Wells Fargo's *only* forum to challenge the order.

14

**ER36**

the judgments through Section 19 or ROSCA, and that *AMG Capital* does not alter

anything because it only changed one remedy available to the FTC under the FTC

Act and thus can have no impact on the ability of a receiver to pursue claims against

a bank outside of the FTC Act.[4] *Id*. at 19-20.

Wells Fargo's harm is not the speculative economic harm that may result

from the litigation. The FTC cites to a district-level opinion to support its claim that

Wells Fargo does not have standing based upon litigation costs. FTC Opp. at 9, 17

(citing *San Diego Unified Port Dist. v. Monsanto*).[5] But in *Monsanto*, the court

found that the defendant could not manufacture standing predicated on litigation

costs by bringing counterclaims and speculative potential liability. *San Diego*

*Unified Port Dist. v. Monsanto Co*., 309 F. Supp. 3d 854, 865-868 (S.D. Cal. 2018)

("An organization suing on its own behalf . . . cannot manufacture the injury by

incurring litigation costs or simply choosing to spend money fixing a problem that

otherwise would not affect the organization at all."). Indeed, litigation expenses can

confer Article III standing where the litigation is not manufactured to create

---

[4] Wells Fargo has established Article III standing to intervene. To have standing, a party must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 665 (9th Cir. 2021) (standing requires injury to an interest that the law protects). A litigant must have a colorable claim to satisfy Article III. *Id*. at 664-665 ("Whether a party has sufficient statutory or otherwise legal basis for their claims is irrelevant at this threshold [stage analyzing standing]"); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal...."). Here, the FTC only challenges the injury and redressability factors, but Wells Fargo has satisfied both. FTC Opp. at 8-10. As expanded upon in detail throughout the opening brief and in this Reply, Wells Fargo has established that it (1) has suffered an injury resulting from the unlawful order permitting the Receiver to pursue litigation against it, as well as the resulting reputational harm and litigation costs incurred from this lawsuit; and (2) this Court has the authority to provide full or partial redress to Wells Fargo by correcting the unlawful order, which would cure the due process deficiencies and extinguish entirely, or in part, the basis for the Receiver's litigation against it, while also lessening litigation costs and repairing reputational harm. See Section I.B.3 and 4.

[5] The FTC also cites to *Friends of the Earth v. Sanderson Farms, Inc.,* 992 F.3d 854, 866-867 (S.D. Cal. 2018), but it is inapposite because it deals with organizational standing.

---

standing. *Nnebe v. Daus,* 644 F.3d 147, 157 (2d Cir. 2011) (holding that organization's standing was not "manufactured" where organization suffered injury as a result of litigation brought against one of its members); *see also Project Sentinel v. Evergreen Ridge Apartments*, 40 F. Supp. 2d 1136, 1140 (N.D. Cal. 1999) (litigation expenses that are a secondary manifestation of the primary injury inflicted by the defendant's practices confers Article III standing); *Havens Realty Corp v. Coleman*, 455 U.S. 363, 379 (1982) (drain on an organization's resources to counteract the effect of defendant's allegedly illegal practices on the organization's services confers Article III standing).  Here, Wells Fargo is not attempting to manufacture standing out of the litigation costs it will incur as the result of the Wells Fargo Litigation. Rather, Wells Fargo's injury here is the unlawful order permitting the Receiver to pursue litigation against Wells Fargo and the resulting reputational harm and litigation costs foisted upon it as it is being forced to defend itself against these actions – all of which Wells Fargo has already suffered as the result of the Receiver's filing of the Wells Fargo Litigation. *See* Mot. at 11, 16; *see also TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2200 (2021) ("Central to assessing concreteness [for Article III standing] is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including [] reputational harm.").

Moreover, despite the FTC's claim to the contrary, Wells Fargo's injury *can* be redressed by this Court by vacating the order permitting the Receiver to engage counsel and pursue litigation against Wells Fargo. The FTC's argument assumes it can recover ROSCA damages *without* charging Section 19, *without* establishing ROSCA rule violations, and *in gross excess* of the permissible recovery. *See* Section II.D. These are issues that appropriately should be resolved by this Court. Indeed, Wells Fargo is barred by the collateral attack doctrine from challenging this Court's order and the FTC's arguments in another case and denial to intervene here thereby

16

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER38**

impermissibly extinguishes Wells Fargo's due process rights. *See* Section II.B.ii, *supra.* Wells Fargo's injury— the Receiver's authority to pursue litigation against it under an invalidated legal principle—can be redressed only by an order from this Court vacating the order empowering the Receiver to seek monetary damages against Wells Fargo. Accordingly, Wells Fargo has adequately established Article III standing to intervene in this case.

### (4) *Wells Fargo Has Adequately Established That Its Interests Will Be Impaired by Disposition of This Case*

Looking at the third factor, Wells Fargo can only protect its interest through intervention. The FTC and Receiver claim Wells Fargo can make these arguments in the Wells Fargo Litigation. Rec. Opp. at 28; FTC Opp. at 21. Doing so, however, would run afoul of the collateral attack doctrine which "precludes litigants from collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)). The United States Supreme Court made clear: "[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its discretion are to be respected." *Celotex*, 514 U.S. at 313 (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967) (quotations omitted).

The FTC also claims Wells Fargo cannot meet this factor because this case is closed and there is no "future disposition" that could affect Wells Fargo and the Corporate Defendants could still sue Wells Fargo. FTC Opp. at 20-21. But the Receiver is relying *upon this Court's order* to bring the Wells Fargo Litigation—the future disposition is when the Court revokes that authority. The Corporate Defendants' ability to bring the same or similar claims against Wells Fargo is of no moment—the FTC's position that some entity could later attempt to sue Wells Fargo (on what grounds is unclear) is not a reason why *this* Court should continue to enforce an unlawful order. Absent intervention, the status quo will remain and the

17

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER39**

Receiver, despite being empowered based on an invalidated avenue for recovery of monetary damages under Section 13(b), will remain unchecked in his now unlawful efforts to secure redress under Section 13(b).

### C. Wells Fargo Has Met Its Burden for Permissive Intervention

Wells Fargo satisfies the three elements of permissive intervention as well since: (1) this motion is timely; (2) common questions of law or fact shared with the main action exists; and (3) an independent basis for the court to exercise jurisdiction over its claims is present. Fed. R. Civ. P. 24(b).

As to the first requirement, the motion is timely for the same reasons set forth above. *Infra* Section III.C. Specifically, Wells Fargo acted quickly to intervene once the Receiver brought its action against Wells Fargo in July 2021.

The FTC and the Receiver correctly point out that the timeliness element for permissive intervention is analyzed "more strictly than…with intervention as of right." Receiver Opp. at 24; FTC Opp. at 23-24. This includes, in addition to the three permissive intervention factors, "judicial economy concerns regarding the multiplication of proceedings." Receiver Opp. at 24. The Receiver reasons that "Wells Fargo already has a forum to raise these issues: the Receiver's case against it" and that intervention would result in a "multiplication of proceedings" thereby burdening this Court. *Id.* This is simply not so. As set forth above, Wells Fargo could not raise these issues in the Receiver's action against it as doing so would amount to a collateral attack. Further still, permitting Wells Fargo to intervene in this case would not burden this Court because this case is still administratively open for the purpose of determining the Receiver's authority to prospectively seek recovery of a monetary judgment against Wells Fargo following the decision in *AMG Capital*.

The FTC argues Wells Fargo offers "no reason for waiting 4-7 months to intervene under its theory of timeliness, and no adequate one for the 24 months

since the Receiver moved to sue Wells Fargo." FTC Opp. at 24. As discussed above, Wells Fargo did not unreasonably delay moving to intervene. Specifically, it required time to meet and confer and assess the strengths of its intervention arguments. In August 2021, Wells Fargo conferred with the FTC and the Receiver about its plans to intervene in this action to challenge the order authorizing the Receiver to sue Wells Fargo. Dkt 168-1 at ¶ 8. Following the meet and confer process, Wells Fargo thoughtfully assessed the arguments advanced during the meet and confer and narrowed its request to seek redress of the order permitting the Receiver to engage contingency counsel and pursue litigation against Wells Fargo.

Wells Fargo also easily satisfies the second requirement given the multitude of common issue and facts. *See* Mot. at 21, n.11. Indeed, the Receiver conceded this in filing his notice of related case with the Complaint in the Wells Fargo Litigation. Notice of Related Case in Wells Fargo Litigation, RJN, Ex. D at 2 (Receiver "brings this action against the Defendants for conduct arising out of the same underlying facts at issue in the foregoing lawsuits, including, inter alia, Defendants alleged aiding and abetting of the fraudulent schemes at issue therein."). Further, a finding on this same issue was made in assigning the Wells Fargo Litigation to this Court on the basis of common fact and legal questions. *Id.,* RJN, Ex. D at 2. Indeed, neither the FTC nor the Receiver contest this point. *See generally* FTC Opp.; Rec. Opp.

As to the third requirement, allowing Wells Fargo to intervene will not unnecessarily expand this Court's jurisdiction as this Court expressly retained jurisdiction over the Receivership and motions relating to its prior orders and judgments.

## III.  CONCLUSION

For the foregoing reasons, and the reasons included in the Motion to Intervene and supporting papers, this Court should grant Wells Fargo's motion for intervention.

19

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

ER41

DATED: January 10, 2022                    Respectfully submitted,

                                            **MCGUIREWOODS LLP**


                                            */s/ Alicia A. Baiardo*
                                            David C. Powell, Esq.
                                            Kevin M. Lally, Esq.
                                            Alicia A. Baiardo, Esq.

                                            *Counsel for Proposed Intervenors*
                                            *Wells Fargo & Company and Wells Fargo*
                                            *Bank, N.A.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S OMNIBUS
REPLY IN SUPPORT OF ITS MOTION TO INTERVENE

**ER42**

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on January 10, 2022, I electronically filed the foregoing

3

document entitled with the Clerk of the Court for the United States District Court,

4

Southern District of California using the CM/ECF system and served a copy of same

5

upon all counsel of record via the Court's electronic filing system. Any counsel of

6

record who has not consented to or registered for electronic service through the

7

Court's CM/ECF system will be served by electronic mail, first class mail, facsimile,

8

and/or overnight delivery.

9

10

By: /s/ Alicia A. Baiardo

11

Alicia A. Baiardo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JONATHAN W. WARE
DC Bar No. 989414; VA Bar No. 77443
Federal Trade Commission
600 Pennsylvania Avenue NW CC-9528
Washington, DC 20580
Tel: (202) 326-2726; Fax: (202) 326-3197
jware1@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | Case No. 18-cv-1388-LAB-LL |
| Plaintiff, | Judge: Hon. Larry A. Burns |
| v. | **PLAINTIFF FTC'S** |
| **TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; GLOBAL NORTHERN TRADING LIMITED; BRIAN PHILLIPS; and DEVIN KEER,** | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO INTERVENE BY NON-PARTY WELLS FARGO** |
| | Date: January 24, 2022 |
| | Time: 11:30 A.M. |
| | Courtroom: 14A |
| Defendants. | |

**ER44**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS....................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

LEGAL ARGUMENT .........................................................................................2

I.   WELLS FARGO OMITS RELEVANT FACTS REGARDING THE
     HISTORY OF THIS LITIGATION.............................................................2

     A.   The FTC's Suit Here; ROSCA (the Statute for Monetary Relief
          that Wells Fargo Discounts); and the Parts of the Injunctions
          that Wells Fargo Omits and Describes Incorrectly. ...........................3

     B.   The Apex Action. ................................................................................5

     C.   Post-*AMG*, Receivers in FTC Cases *Like This One* (with
          ROSCA or Section 19 Claims) Carry On. ..........................................6

II.  WELLS FARGO LACKS STANDING TO INTERVENE............................8

III. WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE
     AS OF RIGHT............................................................................................10

     A.   The Motion Is Untimely.....................................................................10

          1.   The proceeding is closed and Wells Fargo knew, or
               should have known, its interests were at risk in 2019. ...........11

          2.   Wells Fargo's delay prejudices the parties. .............................15

          3.   Wells Fargo gives no reason for its four-month delay
               under its theory, and an inadequate one for its actual two-
               year delay. ..............................................................................17

     B.   Wells Fargo Lacks a Significantly Protectable Interest. ....................19

     C.   Disposition of this Case Will Not Impair Wells Fargo's Ability
          to Protect Its Interest.........................................................................20

     D.   Wells Fargo's Interests Are Adequately Protected ...........................21

IV.  WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE
     BY PERMISSION. ....................................................................................23

     A.   The Motion Is Untimely Under the "More Strict[]" Standard...........23

     B.   The Parties Would Be Prejudiced By Intervention............................24

     C.   Other Factors Weigh Against Intervention ........................................24

CONCLUSION...................................................................................................25

i

**ER45**

# TABLE OF AUTHORITIES

**Cases**

*Alaniz v. Tillie Lewis Foods,* 572 F.2d 657 (9th Cir. 1978) ...................... 10, 11, 24

*Am. Int'l Specialty Lines Ins. Co. v. United States*, 2012 WL 12897865
 (C.D. Cal. Jan. 30, 2012) ...................................................................18

*AMG Cap. Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021)................................ passim

*Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309
 F.3d 1113 (9th Cir. 2002) ...................................................................16

*Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL
 4769439 (C.D. Cal. 2017) ...................................................................15

*Calvert v. Huckins*, 109 F.3d 636 (9th Cir. 1997) ................................. 10, 15, 16, 24

*CAMOFI Master LDC v. Assoc. Third Party Admins.*, 2018 WL 839134
 (N.D. Cal. Feb. 13, 2018) ...................................................................20

*CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573 (9th Cir. 1982) .......................8

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).......................................8

*Cooper v. Newsom*, 13 F.4th 857 (9th Cir. 2021)........................................ 10, 21, 23

*Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816 (C.D. Cal. Feb. 22,
 2011)..................................................................................................13

*Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) ........................................16

*Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939 (9th Cir.
 2021)....................................................................................................9

*FTC v. AH Media Grp., LLC,* 2021 WL 5053092 (N.D. Cal. Nov. 1,
 2021).................................................................................................7, 8

*FTC v. Am. Future Sys., Inc.*, 2021 WL 3185777 (E.D. Pa. July 26, 2021)..............6

*FTC v. Cardiff*, 2020 WL 766336 (C.D. Cal. 2020), *aff'd*, 830 F. App'x
 844 (9th Cir. 2020) ...........................................................................18

*FTC v. Cardiff*, 2021 WL 3616071 (C.D. Cal. June 29, 2021) ..................... 6, 7, 22

*FTC v. Credit Bureau Ctr., LLC*, 2021 WL 4146884 (N.D. Ill. Sept. 13,
 2021) ........................................................................... 7, 8, 10, 22

*FTC v. First Cap. Consumer Membership Servs., Inc.*, 206 F.R.D. 358
 (W.D.N.Y. 2001) ...............................................................................21

**ER46**

*FTC v. Ivy Cap., Inc.*, 2011 WL 2470584 (D. Nev. June 20, 2011)........................22

*FTC v. John Beck Amazing Profits, LLC*, 2021 WL 4313101 (C.D. Cal. Aug. 19, 2021)........................................................................................8, 22

*FTC v. Johnson*, 800 F.3d 448 (8th Cir. 2015).........................................21

*FTC v. Nat'l Urological Grp., Inc.*, et al., 2021 WL 5774177 (N.D. Ga. Sept. 30, 2021)........................................................................8

*FTC v. Neora LLC*, 2021 WL 3398153 (N.D. Tex. Aug. 2, 2021) .........................6

F*TC v. Noland*, 2021 WL 1237206 (D. Ariz. Apr. 2, 2021)....................................21

*FTC v. Noland*, 2021 WL 3290461 (D. Ariz. Aug. 2, 2021)................................18

*FTC v. Noland,* 2021 WL 4318466 (D. Ariz. Sept. 23, 2021) .............................6, 8

*FTC v. On Point Glob. LLC*, 2020 WL 5819809 (S.D. Fla. Sept. 30, 2020) ..........22

*FTC v. QYK Brands LLC,* 2021 WL 5707477 (C.D. Cal. Nov. 30, 2021)...............6

*FTC v. Simple Health Plans LLC,* 2021 WL 4050819 (S.D. Fla. Sept. 5, 2021)...........................................................................................6, 7

*FTC v. SuperTherm Inc.*, 2021 WL 3419035 (D. Ariz. Aug. 5, 2021) ...............6, 22

*FTC v. Vyera Pharms., LLC*, 2021 WL 4392481 (S.D.N.Y. Sept. 24, 2021)...........................................................................................22

*FTC v. Zurixx, LLC*, 2021 WL 3510804 (D. Utah Aug. 10, 2021) .........................18

*FTC v. Zurixx, LLC,* 2021 WL 5179139 (D. Utah Nov. 8, 2021) ...........................6

*Hawaii v. U.S. Dep't of Educ.*, 2010 WL 346445 (D. Haw. Jan. 29, 2010)...........16

*Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343 (9th Cir. 1977)...........................................................................................21

*Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632 (D. Nev. Nov. 29, 2012)................................................................................ 11, 15

*Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955 (5th Cir. 2012) ...........................13

*League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997).... 10, 17, 24

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 264 F.2d 199 (9th Cir. 1959)...........................................................................................4

*Mineworkers' Pension Scheme v. First Solar Inc.*, 722 F. App'x 644 (9th Cir. 2018)........................................................................................24

*Montgomery v. United States*, 2012 WL 124854 (S.D. Cal. Jan. 17, 2012)...........11

iii

*Oregon Prescr. Drug Monitoring Program v. DEA*, 860 F.3d 1228 (9th Cir. 2017) ...................................................................................8

*Perlman v. Bank of Am., N.A.*, 561 F. App'x 810 (11th Cir. 2014)......................13

*Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988 (11th Cir. 2014) .............13

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011)................................ 23, 24

*San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854 (S.D. Cal. 2018) ..............................................................................................9, 19

*SEC v. First Choice Mgmt. Servs., Inc.*, 767 F.3d 709 (7th Cir. 2014) ..................17

*SEC v. Heritage Trust Co.*, 402 F. Supp. 744 (D. Ariz. 1975) ...............................8

*SEC v. Homestead Properties, L.P.*, 2009 WL5173685 (C.D. Cal. Dec. 18, 2009) .................................................................................................8

*Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843 (9th Cir. 2016) ......... passim

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001)................20

*Thompson v. Wolverine Servs., LLC*, 2021 WL 827605 (N.D. Cal. Mar. 4, 2021)................................................................................................23

*Town of Chester v. Laroe Estates*, 137 S.Ct. 1645 (2017) ......................................8

*Trunk v. City of San Diego*, 2012 WL 6213712 (S.D. Cal. Dec. 12, 2012) ..... 15, 21

*U.S. v. Alisal Water,* 370 F.3d 915 (9th Cir. 2004) .................................... 11, 12, 16

*United States v. Lande*, 2008 WL 11490112 (D. Mont. Jan. 17, 2008) ........... 11, 16

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990).........................................11

*United States v. Petters*, 2009 WL 1174668 (D. Minn. Apr. 29, 2009), *aff'd sub nom. United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824 (8th Cir. 2010) ......................................................................18

*Wells Fargo Fraudulent Acct. Opening Litig.,* 282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017)...........................................................................12

*Wiand v. Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316 (M.D. Fla. 2015), *aff'd* 677 F. App'x 573 (11th Cir. 2017).................................................13

**Statutes**

15 U.S.C. § 1693(o) ....................................................................................3

15 U.S.C. § 1693e(a).................................................................................3, 5

15 U.S.C. § 45(a) ...........................................................................................3, 19

15 U.S.C. § 53(b) ............................................................................... passim

15 U.S.C. § 57b ......................................................................... 3, 6, 9

15 U.S.C. § 8403 ...........................................................................................3

15 U.S.C. § 8404 ....................................................................... 3, 5, 6

**Rules**

Fed. R. Civ. P. 24 ...........................................................................................2, 3

Fed. R. Civ. P. 24(a) ........................................................................ 10, 20

Fed. R. Civ. P. 24(b) ........................................................................ 23, 24

Fed. R. Civ. P. 59(e) ...........................................................................................10

Fed. R. Civ. P. 60 ......................................................................... 2, 3, 6

Fed. R. Civ. P. 65(d)(1) ...........................................................................................4

**Treatises**

Clark on Receivers § 329 (3d ed. 1959) ...........................................................20

Clark on Receivers § 378 (3d ed. 1959) ...........................................................20

Clark on Receivers § 696 (3d ed. 1959) ...........................................................20

**Regulations**

12 C.F.R. § 1005.10(b) ...........................................................................................3

v

**ER49**

## MEMORANDUM OF POINTS AND AUTHORITIES

Wells Fargo seeks to intervene (Dkt. 153) in this closed case to attack two 30-month-old judgments and re-litigate a motion the Court granted two years ago authorizing the Court's receiver, Thomas McNamara (the "Receiver"), to hire counsel to sue Wells Fargo & Company and Wells Fargo Bank N.A. (together, "Wells Fargo"). This motion comes more than four months after the Receiver sued the bank following months of negotiations, and after the bank fully briefed its motion to dismiss that suit. Wells Fargo failed to raise there (or here, two years ago) the arguments it belatedly seeks to make if allowed to intervene now. Its untimely, convoluted, but professed *raison d'être* concerns an April 2021 Supreme Court decision that limited a *Federal Trade Commission* ("FTC") statutory remedy based on the specific language of Section 13(b) of the FTC Act, which *cannot apply to banks* because they are not covered by the FTC Act. The bank argues *AMG* somehow applies to banks when sued at common law on behalf of private corporations by a court's receiver appointed in an FTC matter. How the language of Section 13(b) affects a cause of action outside the FTC Act is a mystery.

The FTC brought this case in June 2018, alleging Defendants violated three statutes and a regulation, causing millions of dollars of consumer injury. The Court entered a TRO (and preliminary injunction) and appointed a receiver, based on Section 13(b) *and a separate statute*, one left untouched by the Supreme Court that still permits monetary relief (facts Wells Fargo tellingly omits). In May 2019, the Court entered stipulated permanent injunctions and judgments. These now 30-month-old judgments required Corporate Defendants to surrender *all assets* to the Receiver for liquidation, with the proceeds going to victims. Those assets included the Corporate Defendants' causes of action against third parties (like Wells Fargo).

The Receiver, who is independent of the FTC and a fiduciary of the Court, uncovered what he believed to be offenses by Wells Fargo. Specifically, he found Wells Fargo opened more than 150 bank accounts for the Defendants and a related

scheme subject to a different FTC action in the Central District of California (the "Apex Action") where he is also receiver. He alleges Wells Fargo "was providing substantial, knowing assistance" to the defendants and violated state and common laws. He publicly sought the Court's permission in **October 2019** (following Wells Fargo's long involvement with the case) to hire contingency counsel, which this Court approved in November 2019.

After extensive litigation with the Receiver, Wells Fargo now wants the Court to undo this long history. It correctly argues that *one* of the statutes *the FTC* sued under, Section 13(b) of the FTC Act, no longer permits *the FTC* to seek monetary relief following the April 22, 2021 decision in *AMG Cap. Mgmt., LLC v. FTC,* 141 S. Ct. 1341 (2021). It, however, sidesteps the claims and *other statutory basis that still permit monetary relief*. Those facts—which Wells Fargo omits, describes wrongly, or relegates to a footnote—expose why it lacks grounds to intervene and why its proposed motion must fail. The Apex Action court, like others, have already held *AMG* is *not* a basis under Rule 60 to undo judgments in cases like this one, counter to what Wells Fargo belatedly advances. However, even if Wells Fargo obtains what it seeks, that just means the Court vacates an order to hire one particular counsel. The Receiver could, and presumably would, still sue Wells Fargo on the same claims, just as the Corporate Defendants could.

Finally, even if it did advance viable legal arguments, which it does not, Wells Fargo neither has standing to intervene, nor do they meet the requirements of Rule 24 for either mandatory or permissive intervention. Intervention would greatly prejudice the FTC, forcing it either to settle the matter again, or to litigate the case in some manner to restore the current *status quo*.

## LEGAL ARGUMENT

## I. WELLS FARGO OMITS RELEVANT FACTS REGARDING THE HISTORY OF THIS LITIGATION.

Wells Fargo's motion is riddled with misstatements and omissions of both

the history of this case and the relevant law.  Before addressing its failure to meet its burden under Rule 24, it is important to correct the record to place the request in proper context.  Critically, the FTC Act, the FTC's Complaint, and the Court's Preliminary Injunction contain language fatal to Wells Fargo's effort to intervene (as well as its proposed Rule 60 motion, as other courts have held on similar facts).

A.  **The FTC's Suit Here; ROSCA (the Statute for Monetary Relief that Wells Fargo Discounts); and the Parts of the Injunctions that Wells Fargo Omits and Describes Incorrectly.**

Three and a half years ago, the FTC filed its Complaint (Dkt. 1), Motion, and Memorandum for a Temporary Restraining Order ("TRO"), including appointment of a receiver, setting forth extensive evidence that the Defendants violated the law (Dkt. 5).  Defendants duped consumers into "free" or low-cost trial products online, then charged them monthly, or considerably more, without consent.  Dkt. 1 at ¶¶ 12-34.  The Complaint detailed how they violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), **Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403,** Section 907(a) of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and 12 C.F.R. § 1005.10(b).  *See* Dkt. 1 at ¶¶ 1, 35-64.  The Complaint did not name Wells Fargo, and, **by statute, the FTC cannot sue banks**.  *See* 15 U.S.C. § 45(a)(2).

The FTC sought a permanent injunction and monetary relief under three statutes—Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), **Section 5 of ROSCA, 15 U.S.C. § 8404,** and Section 918(c) of EFTA, 15 U.S.C. § 1693(o).  Dkt. 1 at ¶¶ 1, 4, 5, 40, 43, 46, 49, 53-54, 56, 66-67 and pp. 24-26.[1]

The TRO and Preliminary Injunction.  The Court granted both a TRO and

_____

[1] Under ROSCA, certain marketing practices, like those in this case, are prohibited. *See* 15 U.S.C. § 8403.  Those acts "shall be treated as a violation of a rule" under the FTC Act, and anyone who violates ROSCA "shall be subject to the penalties" (and limits) in the FTC Act. *Id.* § 8404.  Section 19 of the FTC Act provides for "the refund of money" for violating an FTC rule.  15 U.S.C. § 57b(b).

3

Preliminary Injunction.  As required by Rule 65,[2] in each instance the Court based its "Findings" on violations of the FTC Act, **ROSCA**, and EFTA.  Specifically, the Court found good cause to believe the violations occurred and the FTC was likely to succeed under all three statutes.  Dkts. 11 at 1, 3-5 and 75 at 1-2.  The Court's separate memorandum decision recited the FTC Act, **ROSCA**, and EFTA violations, and explained that the FTC sought monetary relief to redress consumer injury for violations of the FTC Act, **ROSCA**, and the EFTA.  *See* Dkt. 74 at 6-10. The Court, however, did not analyze the merits of those claims because Defendants "[did] not challenge the [FTC's] likelihood of success on the merits."  *Id.* at 10. Instead, the Court addressed the scope of any injunction under Section 13(b), 15 U.S.C. §53(b)(2), which the Defendants had challenged.  Dkt. 74 at 9-10.

The TRO and Preliminary Injunction appointed a receiver over the Corporate Defendants and their affiliates (the "Receivership Entities") "with full powers of an equity receiver."  Dkt. 11 at 18 (to be "solely the agent of this Court in acting as Receiver under this Order"); Dkt. 75 at 16-17 (to "be accountable directly to this Court").  The Court authorized the Receiver to "[a]ssume full control of Receivership Entities," "[t]ake exclusive custody, control, and possession of all Assets . . . of . . . any Receivership Entity," "manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets," "protect the interests of consumers and creditors who have transacted business with the Receivership Entities," "employ attorneys . . . as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order," "[i]nstitute, compromise, adjust, appear in, intervene in, or become party to such actions or

---

[2] *See* Fed. R. Civ. P. 65(d)(1) ("Every order granting an injunction and every restraining order must . . .  state the reasons why it issued."); Dkt. 11 at 5 (citing Rule 65); Dkt. 75 at 2 (same); *see also Los Angeles Tr. Deed & Mortg. Exch. v. SEC*, 264 F.2d 199, 205, 213 (9th Cir. 1959) (vacating injunction and order appointing receiver for non-compliance with Rule 65).

proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities, or . . . to carry out the Receiver's mandate under this Order." Dkt. 75 at 17-19.

Tellingly, Wells Fargo's 51 pages of briefing *omits* the Court's express reliance on ROSCA in its TRO and Preliminary Injunction. Wells Fargo instead mentions "Section 13(b)" *eighty-five* times, and "ROSCA" *once*. In that one instance, it falsely claims: "the Court did not rely on either alleged violation [of ROSCA and EFTA] as a basis for appointing the Receiver." Dkt. 153-1 at 8 n.3. In fact, the Court's TRO and Preliminary Injunction each appointed the Receiver **based on violations of ROSCA** and EFTA. Dkt. 11 at 1, 3-5; Dkt. 75 at 1-2.

The Permanent Injunctions. Wells Fargo also ignores the fact that the stipulated orders imposing permanent injunction and judgment again rely on Section 13(b), **Section 5 of ROSCA**, and Section 918(c) of EFTA. Dkts. 126 at 1-2 and 127 at 1-2. Further, the judgments require the Receiver to "[c]omplete the process for taking custody, control, and possession of all assets of [the Corporate Defendants]," "[c]omplete the liquidation of all [their] assets," and "[d]istribute to Plaintiff any remaining liquid assets." Dkt. 126 at 16-17; Dkt. 127 at 15-16. Defendants agreed to "relinquish dominion and all legal and equitable right, title, and interest in all assets . . . held by the Receiver." Dkt. 126 at 13; Dkt. 127 at 12. The Court ordered all liquidated assets to be provided to the FTC to redress consumers and for related expenses. Dkt. 126 at 14-15; Dkt. 127 at 13.

Monetizing the Corporate Defendants' claims against Wells Fargo are thus an integral part of their respective judgments. On October 22, 2019, the Receiver sought approval to hire a specific firm to carry that out, Dkt. 136, which the Court granted and closed the case, Dkt. 142.

### B. The Apex Action.

In November 2018, the FTC began the Apex Action, a similar suit against other defendants. *See* Decl. of Logan D. Smith ¶ 35. Both cases proceeded to

judgments against all defendants in 2019 (save for two defendants who settled in January 2020).  *Id.* ¶ 36.  As in this action, the FTC sought monetary relief against the Apex defendants under both Section 13(b) of the FTC Act and ROSCA, and obtained a receiver.  Decl.  *Id.* ¶¶ 4, 35.  The complaint, TRO, and injunctions there cited Section 19, 15 U.S.C. § 57b, in addition to ROSCA.  *Id.* ¶¶ 35-36.  Wells Fargo omits that on September 3, 2021, the Apex Action court denied a motion by certain defendants under Rule 60 seeking to undo the Apex judgments based on *AMG* in a similar manner to what Wells Fargo looks to do here.  *Id.* ¶ 39, Ex. C.

### C. Post-*AMG*, Receivers in FTC Cases *Like This One* (with ROSCA or Section 19 Claims) Carry On.

While *AMG* ended the FTC's ability to obtain monetary relief under Section 13(b) of the FTC Act, it can still obtain monetary relief under ROSCA or Section 19.  Wells Fargo misrepresents *AMG* and post-*AMG* law in three ways.

First, Section 19 and ROSCA do *not*, as Wells Fargo misattributes to *AMG,* "require the FTC to first proceed administratively," which it did not do here, to obtain monetary relief.  *See* Dkt. 153-1 at 13 (citing *AMG,* 141 S. Ct. at 1348-49).  Section 19 provides two paths to money relief in federal court: directly, 15 U.S.C. § 57b(a)(1), or, after an administrative process, *id.* § 57b(a)(2).  *AMG*'s discussion of Section 19 is limited to the latter.  *See AMG,* 141 S. Ct. at 1346 and 1348-49 (both citing *only § 57b(a)(2)* "as relevant here").  No district court to handle that question has misread the statute or *AMG* to hold like Wells Fargo seeks here.[3]

---

[3] *See, e.g., FTC v. QYK Brands LLC,* 2021 WL 5707477, at *5-6 (C.D. Cal. Nov. 30, 2021); *FTC v. Zurixx, LLC,* 2021 WL 5179139, at *2-4 (D. Utah Nov. 8, 2021); *FTC v. Noland,* 2021 WL 4318466, at *5 (D. Ariz. Sept. 23, 2021); *FTC v. Simple Health Plans LLC,* 2021 WL 4050819, at *3-4 (S.D. Fla. Sept. 5, 2021); *FTC v. SuperTherm Inc*., 2021 WL 3419035, at *6-7 (D. Ariz. Aug. 5, 2021); *FTC v. Neora LLC*, 2021 WL 3398153, at *5 (N.D. Tex. Aug. 2, 2021); *FTC v. Am. Future Sys., Inc*., 2021 WL 3185777, at *1 n.1 (E.D. Pa. July 26, 2021); *FTC v. Cardiff*, 2021 WL 3616071, at *2 (C.D. Cal. June 29, 2021). Without addressing

Second, Wells Fargo grossly mischaracterizes post-*AMG* case law and the fact the FTC can still obtain money under ROSCA.  It cites the *Cardiff* case twice for the notion such relief is unavailable.  *See* Dkt. 153-1 at 14, 153-2 at 12.  In fact, the *Cardiff* court expressly held, in language Wells Fargo again omits: "Section 19 . . . plainly authorizes the FTC to seek equitable monetary relief to redress consumer injury resulting from ROSCA violations," and **the change in law [*i.e., AMG*] had *no effect* on the availability of ROSCA Section 19 remedies**." *Cardiff*, 2021 WL 3616071, at *2, *5 (emphasis added).  The decision further explained the FTC can seek monetary damages for ROSCA violations even where, like here, its complaint did not cite Section 19, only ROSCA.  *Id*. at *2-3 (though ultimately denying ROSCA relief on other grounds); *see also Simple Health,* 2021 WL 4050819 at *4 and n.8 (denying *AMG*-based motion to dissolve preliminary injunction that "did not reference § 19" because court instead had based it on a violation of an FTC rule, akin to ROSCA); *see also FTC v. Credit Bureau Ctr., LLC,* 2021 WL 4146884, at *2-3, *6 (N.D. Ill. Sept. 13, 2021) (granting FTC's Rule 59(e) motion for judgment under ROSCA instead of Section 13(b), where, like here, the original complaint pled ROSCA but not Section 19).[4]

Notably, Wells Fargo fails to inform the court that several other courts have denied *AMG*-based Rule 60 motions, like the one Wells Fargo seeks to bring here. "[G]iven the similarity between Section 19(a)(1) and Section 13(b)," courts have rejected such motions even where the court "did not make an ***express*** finding under Section 19" in the original judgment.  *See FTC v. John Beck Amazing Profits, LLC*,

---

the clear text of 15 U.S.C. § 57b(a)(1), the closest one court has come to Wells Fargo's view is to merely repeat, in dicta, *AMG*'s statement that § 57b(a)(2) is an alternative route for the FTC to obtain monetary relief.  *See FTC v. AH Media Grp., LLC,* 2021 WL 5053092, at *1 (N.D. Cal. Nov. 1, 2021).

[4] Wells Fargo makes misleading comparisons to other cases that, unlike here, *remained open*, had not reached judgment when *AMG* was decided, or did not involve ROSCA or Section 19 claims.  *See* Dkt. 153-1 at 13-15 and 14 n.8.

2021 WL 4313101, at *5 (C.D. Cal. Aug. 19, 2021) (emphasis in original); *cf. Credit Bureau*, 2021 WL 4146884, at *8 (relief under Section 19 is for "the same remedy" as sought under Section 13(b)). Similarly, the court in the related Apex Action found *AMG* is no basis to overturn a stipulated judgment under Rules 60(b)(4), -(5), or -(6). *See* Smith Decl., Ex. C; *see also AH Media*, 2021 WL 5053092, at *1 (same); *FTC v. Nat'l Urological Grp., Inc*., et al., 2021 WL 5774177 (N.D. Ga. Sept. 30, 2021) (same for Rule 60(b)(5) and -(6)).

Third, receivers, too, remain permissible in FTC cases independent of *any* monetary relief to prevent consumer harm by businesses permeated by fraud.[5]

## II. WELLS FARGO LACKS STANDING TO INTERVENE.

Proposed intervenors must have independent Article III standing "in order to pursue different relief from that sought by . . . the plaintiff." *Oregon Prescr. Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1231, 1233 (9th Cir. 2017); *Town of Chester v. Laroe Estates*, 137 S.Ct. 1645, 1651 (2017). Their injury must not be speculative, but "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Oregon Prescr.*, 860 F.3d at 1234-35 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Wells Fargo lacks standing for two key reasons.

First, the injury Wells Fargo alleges is far too speculative to confer standing. Specifically, Wells Fargo argues it *may* have to pay a monetary judgment and litigation costs contingent on the Receiver's (or Corporate Defendants') success in a separate action based on completely distinct legal grounds. *See* Dkt. 153-1 at 21.

---

[5] *See Noland*, 2021 WL 4318466, at *3 and n.2; *see also CFTC v. Co Petro Mktg. Group, Inc.*, 680 F.2d 573, 583 (9th Cir. 1982) (receiver could be "justified as a means of assuring that Co Petro would not go back into the futures business in violation of the injunction."); *SEC v. Heritage Trust Co.*, 402 F. Supp. 744, 753 (D. Ariz. 1975) ("receiver is necessary to protect the public interest"); *SEC v. Homestead Properties, L.P.*, 2009 WL5173685, at *6 (C.D. Cal. Dec. 18, 2009) (receiver "necessary to protect [investors] from future violations.").

8

1   Those are precisely the supposed injuries found in this district to be insufficient to

2   confer Article III standing.  *See San Diego Unified Port Dist. v. Monsanto Co*., 309

3   F. Supp. 3d 854, 866-867 (S.D. Cal. 2018) ("The threat that Monsanto may be

4   found liable in this action . . . or future actions remains speculative" for standing to

5   raise counterclaims.  "Litigation costs are insufficient to establish standing for

6   purposes of Article III."); *see also Friends of the Earth v. Sanderson Farms, Inc.,*

7   992 F.3d 939, 942 (9th Cir. 2021) (litigation costs not a basis for standing).

8        Second, Wells Fargo fails to establish "a likelihood that an injury-in-fact

9   will be redressed by a favorable decision."  *Monsanto,* 309 F. Supp. 3d at 867.  It

10  requests the court vacate a November 2019 order that is limited to hiring a specific

11  law firm on a contingency basis and closing the case.  *See* Dkts. 153-2 at 3, 23 and

12  142 at 3.  Wells Fargo claims not to want to disturb the separate judgments or

13  injunctions, which appointed the Receiver and empowered him to liquidate all

14  corporate assets.  That alone evinces why its supposed injury (being sued) cannot

15  be redressed by a favorable decision here.  Even if the specific order it seeks to

16  rescind were vacated, the Receiver would still have the authority to sue Wells

17  Fargo under the permanent injunction powers.[6]

18       Moreover, even if Wells Fargo were challenging the Permanent Injunctions'

19  monetary awards based on *AMG*, and the Court permits such a *post-hoc* challenge,

20  the motion to intervene still must fail because Wells Fargo has no redressable

21  injury, and therefore, no standing.  Specifically, as every other court that has

22  addressed this issue has held, ROSCA violations support the judgments as entered.

23  A failure to cite Section 19 does not change this outcome.  *See* Section I.C.

24       Even if the Court vacates the existing monetary judgment, the bank would

---

[6] *See* Section I.A.  The permanent injunctions "continued" the Receiver's duties until "completion of" "the liquidation of all assets of Stipulating Corporate Defendants," and authorized the FTC or Receiver to extend that term for good cause.  Dkts. 126 at 16-17; 127 at 15-16.

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

**ER58**

still lack a redressable injury because the parties could simply engage in one of many senselessly duplicative processes to reach the same monetary judgment. Specifically, the parties could resettle the case to include explicit reference to "Section 19," seek Rule 59(e) relief as in *Credit Bureau Ctr., LLC,* 2021 WL 4146884, at *2-3, *6, or waste immense amounts of the Court's time in litigating the matter, only to reach the same result. While extremely prejudicial to the FTC and Defendants, such a process would leave Wells Fargo right back where it is now – with contingent liability for its wrongs against the Corporate Defendants.

## III. <u>WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE AS OF RIGHT.</u>

Even if it had standing, Wells Fargo cannot meet its burden to intervene as of right. To do so, it must establish: (1) timeliness, (2) a "significantly protectable" interest relating to the property or transaction that is the subject of the action, (3) that disposition of the action may impair or impede the movant's ability to protect the interest, and (4) that its interest is not adequately represented by the parties. *Cooper v. Newsom*, 13 F.4th 857, 864-65 (9th Cir. 2021). Failure to satisfy any of these elements is fatal. *Id.* at 865. The factors are broadly interpreted in favor of intervenors. *Id.* However, "post judgment intervention," like that here, "is generally disfavored because it creates delay and prejudice to existing parties." *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (internal citations and quotations omitted); *see also Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978) (post-consent decree intervention "is reserved for exceptional cases."). Wells Fargo cannot meet its burden on any element.

### A. The Motion Is Untimely.

"Timeliness is the threshold requirement for an intervention as of right." *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) (cleaned up); *see* Fed. R. Civ. P. 24(a). Courts focus on three primary factors in assessing timeliness: (1) the stage of the proceeding at which a movant seeks to

10

1    intervene; (2) the prejudice to other parties; and (3) the reason for and length of the

2    delay.  *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016).

3    ### 1.   The proceeding is closed and Wells Fargo knew, or should

4    ### have known, its interests were at risk in 2019.

5    Courts evaluate the stage of the proceeding both in general and in relation to

6    how long an applicant has known or should have known their interests were at risk.

7    *See, e.g., Smith,* 830 F.3d at 854-56.

8    ### a)   The proceeding is closed.

9    Two and a half years ago, the Court entered stipulated permanent injunctions

10   in this matter that include the relief Wells Fargo now seeks to undo.  Dkts. 126,

11   127.  In general, courts in closed cases hold intervention untimely when brought

12   far sooner than here.  *See United States v. Lande*, 2008 WL 11490112, at *1 (D.

13   Mont. Jan. 17, 2008) (moving just *four days* after a judgment, "indicates the

14   motion's untimeliness"); *Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632, at

15   *4 (D. Nev. Nov. 29, 2012) (denying intervention in closed case as untimely 16

16   months after movant knew of the order at issue); *cf. Montgomery v. United States*,

17   2012 WL 124854, at *1, 8 (S.D. Cal. Jan. 17, 2012) (moving 22 days after the

18   parties noticed their settlement "weighs heavily against" timeliness).

19   Importantly, Wells Fargo's intervention would cause the Court to relitigate

20   the stipulated judgments and the order authorizing the Receiver to hire counsel.

21   Intervention is "disfavored" where – as here – a party seeks intervention "merely to

22   thwart a remedy rather than participate in the future administration of the remedy."

23   *U.S. v. Alisal Water,* 370 F.3d 915, 922 (9th Cir. 2004).  In addition, where

24   movants "desire to relitigate issues already determined," it is "especially true" that

25   the timeliness factor "weighs heavily against" them.  *Alaniz*, 572 F.2d at 659 and

26   n.2; *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990) ("[W]aiting until

27   after entry of a consent decree weighs heavily against intervention.").  These

28   considerations are potent here, where, as discussed above, if Wells Fargo

11

intervenes, it would disrupt the parties' stipulated judgments and cause the parties to expend resources, but end in the same result that exists now.

### b) Wells Fargo has long known its interests were at risk.

Court have long held the date when an intervenor had notice that his or her rights were in jeopardy is an essential inquiry in assessing the stage of the proceeding. "A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *Alisal Water*, 370 F.3d at 923. This is the "crucial date for assessing the timeliness of a motion to intervene." *Smith*, 830 F.3d at 854. Here, Wells Fargo knew, or had reason to know, its interests might be adversely affected at least when the Receiver filed his motion to hire counsel *to sue Wells Fargo* **on October 22, 2019** (Dkt. 136-1 at 2)—759 days or over 24 months before Wells Fargo moved to intervene. Wells Fargo's Motion omits the long series of facts detailed below that establish it knew or had reason to know as of October 2019 that its right might be affected.

Moreover, Wells Fargo's involvement with the case began before the FTC even filed its Complaint and continued afterwards. Wells Fargo allegedly knew of the Defendants' unlawful acts as they occurred. *See* Dkt. 154 at 24-27. In 2017, Wells Fargo responded to an FTC administrative subpoena and identified numerous accounts it opened under multiple corporate names for those same persons. *See* Dkt. 5-3 at 58-65 (¶¶ 139, 141-143, 147-153). Wells Fargo received the Court's TRO (Dkt. 11) on July 2, 2018. Dkt. 28-1 at 4 (¶3). The bank then froze dozens of accounts and produced related documents. *See* Dkts. 30 at 25-27, 153-1 at 10. At that time, Wells Fargo was also subject to regulatory and criminal investigations as well as civil litigation related to its widespread improper account opening practices. *See generally* Dkt. 154 at 26, 28, 35-36 (noting $185 million in fines in 2016, and *one billion dollars* in 2018 fines); *In re Wells Fargo Fraudulent Acct. Opening Litig.,* 282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017) (noting 10 open cases against Wells Fargo).

Additionally, Wells Fargo knew as it was freezing Defendants' accounts that receivers in cases initiated by the FTC have sued banks, *including Wells Fargo*, pursuant to their duties under the court order appointing them. *See, e.g., Perlman v. Wells Fargo Bank*, N.A., 559 F. App'x 988, 989 (11th Cir. 2014). This is true even though the FTC Act prohibits *the FTC* from suing banks, which Wells Fargo knew or should have known. [7] In such cases, the receivers do not allege FTC Act violations – which can only be prosecuted by the FTC and which exclude banks – but instead sound under a range of tort and other claims arising from the banks' conduct in concert with or on behalf of various defendants in the FTC actions. *See id.* (remanding suit by receiver, appointed in FTC case, against Wells Fargo). Receivers appointed in other civil enforcement actions bring similar cases.[8]

In 2019 and throughout 2020, the Receiver engaged Wells Fargo and sought publicly to sue it arising from Wells Fargo's role with the Defendants and the documents it produced. Specifically, on May 2, 2019, the Receiver subpoenaed Wells Fargo seeking information about accounts in the Apex Action. Smith Decl.

---

[7] This is true despite Wells Fargo's repeated incantation that the FTC had not sued it. *See* Dkt. 153-2 at 6 ("Wells Fargo was not named as a party"), 16 ("the FTC never alleged any wrongdoing by Wells Fargo"); Dkt. 153-1 at 18 ("FTC never charged Wells Fargo . . . and never named Wells Fargo"), 19 (FTC acted "without involving Wells Fargo" apart from as "a third-party . . . witness"), 2 ("Wells Fargo's Role as Third-Party Witness"), 6 ("not a party"), 10 (just a "third-party corporate witness"), 10 ("not a party"), 18 ("nothing more than a third-party witness"), 23 ("actual wrongdoers, the Defendants," not Wells Fargo).

[8] *See Wiand v. Wells Fargo Bank, N.A.,* 86 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) (resolving at summary judgment SEC receiver's claims against Wells Fargo), *aff'd* 677 F. App'x 573 (11th Cir. 2017); *Perlman v. Bank of Am., N.A.*, 561 F. App'x 810, 811 (11th Cir. 2014); *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 958-59 (5th Cir. 2012) (affirming disposition on merits of SEC receiver's claim for conversion against Wells Fargo); *Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816, at *1 (C.D. Cal. Feb. 22, 2011) (SEC receiver's claims against Wells Fargo for aiding and abetting breach of fiduciary duty, conversion, fraudulent transfer, and constructive fraudulent transfer).

¶ 6.  Wells Fargo did not move to quash the subpoena.  The Receiver ultimately identified more than 150 relevant accounts that Wells Fargo opened through approximately 100 shell companies.  *See* Dkt. 154 at 24.

On October 22, 2019, the Receiver publicly sought Court approval to hire contingency counsel to pursue claims against Wells Fargo, Dkt. 136, which this Court granted on November 11, 2019, the same day it closed this case, Dkt. 142.  On February 4, 2020, the Receiver sought similar approval in the Apex Action (Apex Dkt. 144), which that court granted on March 9, 2020 (Apex Dkt. 153).  Smith Decl. ¶ 9.

In April 2020, Wells Fargo unquestionably knew that its interests might affected, yet delayed moving to intervene for another 19 months.  On April 1, 2020, the Receiver sent Wells Fargo draft complaints against it and a mediation proposal.  Smith Decl. ¶ 10.  Wells Fargo responded and executed a tolling agreement.  *Id.* ¶ 11.  Throughout April, May, June, July, and September 2020, Wells Fargo engaged the Receiver on the draft complaints against it.  *Id.* ¶¶ 12-21.  They held a mediation in November 2020.  *Id.* ¶ 22.  Further discussions between them occurred from November 2020 to June 2021, including a second mediation in April 2021.  *Id.* ¶¶ 23-27.  In August 2021, Wells Fargo said it plans to intervene in the Apex Action due to *AMG*, but has yet to do so.  *Id.* ¶ 30-34.

Given this history, Wells Fargo knew or had reason to know in October 2019 that its rights may be affected.  It could have attempted to intervene then (or even tried to be heard as a non-party) to raise largely the same arguments it seeks now to intervene to make.  Specifically, it could have made the "compelling equities" argument it now seeks to raise, as well as its due process concerns and its contention that the FTC's May 2019 settlements are supposedly too lenient.  *See* Dkt. 153-2 at 15-16.  It also could have made its incorrect argument two years ago that corporate defendants in receivership are limited to pursuing only those claims that the party that sought the receiver's appointment could.  Instead, it sat on the

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene
**ER63**

sidelines and lost whatever ability to intervene it may have held.  *See Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439, *1 (C.D. Cal. 2017) ("A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'"); *Herb Reed*, 2012 WL 5989632, at *4 (denying intervention where applicant "made a strategic decision" to pursue other path for months before attempting to intervene).

Wells Fargo's prolonged inaction stands in stark contrast to the conduct of potential intervenors where this Court granted intervention.  *See Trunk v. City of San Diego*, 2012 WL 6213712, at *1-2 (S.D. Cal. Dec. 12, 2012) (Burns, J.).  In *Trunk*, the putative intervenors raised the issue the day they became aware their rights were affected.  *See id.* at *1-4; *Trunk*, No. 06-CV-1597 (*Trunk* Dkts. 308, 310) (noting status conference same day as Ninth Circuit mandate and setting briefing to intervene).  This Court observed, it "bears mentioning that neither the proposed intervenors nor the Court can adopt a wait-and-see attitude.  A later motion . . . seeking leave to intervene would very likely be untimely." *Trunk*, 2012 WL 6213712, at *2.  "Wait-and-see" aptly sums up Wells Fargo's strategy here.

The Motion is long delayed even under Wells Fargo's view.  Specifically, it argues (again incorrectly) that "an actionable dispute" only arose after *AMG* on April 22, 2021 (203 days before the Motion) or after the Receiver filed suit on July 8, 2021 (126 days before the Motion), Dkt. 153-1 at 19.  First, it offers no reason why *AMG* suddenly created any of the arguments detailed in this sub-section. Second, and critically, it offers no argument at all for its 4-to-7-month delay after the events Wells Fargo itself claims provided its "actionable dispute."

### 2. Wells Fargo's delay prejudices the parties.

Wells Fargo's intervention would also prejudice the parties.  *See Smith*, 830 F.3d at 854.  Delay and prejudice caused by post-judgment intervention is the very reason such action is "generally disfavored." *Calvert*, 109 F.3d at 638.  At its core,

15

Wells Fargo seeks to upset two final judgments. If permitted to intervene the FTC (and consumers) would suffer prejudice in five ways.

First, as a general principle, it is "reasonable for the Court to conclude that the United States would suffer prejudice . . . because the case is concluded and the United States has attained a Judgment after the litigation had been pending" for many months. *See Lande,* 2008 WL 11490112, at *1.[9]

Second, the FTC would have to litigate the intervenors' claims. *See Calvert,* 109 F. 3d at 638. This prejudice would be compounded by the fact it would raise some issues "not raised earlier," but which Wells Fargo could have raised. For example, its arguments about the fairness of the stipulated judgments. *See* Section III.A.1, *supra; Hawaii v. U.S. Dep't of Educ.*, 2010 WL 346445, at *3 (D. Haw. Jan. 29, 2010) (finding prejudice in having to "relitigate old issues" and new ones where "case was already closed and judgment entered" a year earlier); *see also Alisal Water*, 370 F.3d at 922 (finding prejudice where a movant seeks to "inject new issues into the litigation at this late date").

Third, if the intervenors' proposed action were to succeed, it would cause the FTC to engage in senseless duplicative litigation to amend the judgments or otherwise obtain the same result it already has either through further settlement negotiations or re-litigating the underlying case against the Defendants. Wells Fargo wrongly asserts it "is not [trying] to contest the judgments imposed against the defendants," Dkt. 153-1 at 6, but that is *exactly* what it is doing. The Corporate

---

[9] Wells Fargo is just wrong when it claims, Dkt. 153-1 at 20, that "it cannot cause either undue delay or prejudice to [the] original parties" because it moves "in an otherwise closed matter," citing *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc*., 309 F.3d 1113, 1120 (9th Cir. 2002). The Ninth Circuit there *upheld* a denial of intervention precisely *because of the prejudice* in "threaten[ing] the parties' settlement" and that it would "upset the delicate balance achieved by the [parties'] Consent Decree." *Id.* at 1119. The other case Wells Fargo cites for prejudice in closed cases, involved an *ongoing* case. *See* Dkt. 153-1 at 20; *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007).

Defendants' claims against the bank exist independent of the receivership. If the monetary judgments remain, as they legally must, the corporations have a claim against the bank. Wells Fargo's argument is therefore simply a tautology – get rid of the Receiver because the monetary award against the defendants was impermissible but leave the award in place so that the parties suffer no prejudice. They simply cannot have it both ways.

Fourth, forcing the parties to re-litigate the case would delay and threaten the redress for defrauded consumers, whom the FTC has a vested interest in helping.

Fifth, Wells Fargo's delay has already meant added costs for the Receiver and his counsel to negotiate and litigate the claims against the bank and for the Court in having to adjudicate the motion to dismiss in the Receiver's suit. *Cf. SEC v. First Choice Mgmt. Servs., Inc.*, 767 F.3d 709, 711 (7th Cir. 2014) (finding prejudice where movant's *"*dawdling, in contrast, imposed costs on the receiver and . . . made added work for the district court).

### 3. Wells Fargo gives no reason for its four-month delay under its theory, and an inadequate one for its actual two-year delay.

Wells Fargo seeks to intervene well beyond any reasonable time to have done so, and it cannot meet its burden to show an adequate reason for its delay. *See Smith*, 830 F.3d at 854. When Wells Fargo filed its Motion, this case had been administratively closed for a week short of two years. The Court entered Stipulated Permanent Injunctions that Wells Fargo seeks to unravel 2 and ½ years ago (913 days). The Receiver filed the motion that Wells Fargo seeks to relitigate (Dkt. 136) more than two years ago (759 days), and the Court decided it 723 days prior. Wells Fargo's 24-month delay is critical because "any substantial lapse of time weighs heavily against intervention." *Wilson*, 131 F.3d at 1302 (internal quotation marks omitted). Even Wells Fargo's own admitted 4-7 month lapse is wholly unjustified (and likewise unexplained). Further, its professed reasons for

waiting until after *AMG* and after the Receiver filed suit fail to account for the reality that it could have done so sooner. *See* Sections III.A.1, III.A.2

Courts have denied recent similar recent requests to intervene based on *AMG* as untimely when brought far earlier than here. *See FTC v. Noland*, 2021 WL 3290461, at *1, *4 (D. Ariz. Aug. 2, 2021) (denying as untimely *AMG*-based intervention filed just 41 days after *AMG* and "nearly five months after their interests arose"); *FTC v. Zurixx, LLC*, 2021 WL 3510804, at *4 (D. Utah Aug. 10, 2021) (same, noting *AMG*, "[a]t best affects the strength" of proposed intervenors' position, which arose 18 months earlier). At most, *AMG* is another argument for Wells Fargo to make (albeit a losing one), but does not change the October 2019 date at which it knew or should have known its interests may be affected.

Wells Fargo's motion also comes well after the period other courts found untimely in cases challenging receivership actions. *See FTC v. Cardiff*, 2020 WL 766336, at *4 (C.D. Cal. 2020), *aff'd*, 830 F. App'x 844 (9th Cir. 2020) (delay of just *two months* after protected interest arose from order related to receivership was untimely and "[a]ny purported 'steps' taken during that time period are insufficient to justify" the delay); *United States v. Petters*, 2009 WL 1174668, at *5 (D. Minn. Apr. 29, 2009), *aff'd sub nom. United States v. Ritchie Special Credit Invs., Ltd*., 620 F.3d 824 (8th Cir. 2010) (delay of "over five months" deemed untimely to challenge appointment of receiver). The delay is more profound given Wells Fargo's repeated assertion it has actively assisted in the case as a witness going back years. *See* n.7, *supra*; *Am. Int'l Specialty Lines Ins. Co. v. United States*, 2012 WL 12897865, at *2 (C.D. Cal. Jan. 30, 2012) (intervention untimely where movant "actively assisted" in case for three years yet waited until three months before the damages phase to intervene).

Finally, Wells Fargo misrepresents the lone case it cites on timeliness, suggesting its Motion is timely because a court once granted intervention "though 20 years passed" since the case began. Dkt. 153 at 18 citing *Smith*, 830 F.3d at

854.  In *Smith*, however, the intervenors moved within ***79 days*** of becoming aware their interests were not represented.  *Id.* at 853.  The Ninth Circuit emphasized that even that delay, "might, under different circumstances, weigh against timeliness."  *Id.* at 862.  Wells Fargo's 759-day delay is well beyond the realm of *Smith* (and so is the 126-day delay under the bank's own theory).

### B.  Wells Fargo Lacks a Significantly Protectable Interest.

Wells Fargo's self-declared interest is only in not being sued, Dkt. 153-1 at 21, and its lack of standing evinces its lack of a *significantly*, *protectable* interest.  *See* Section II, *supra; Monsanto*, 309 F. Supp. 3d at 866-867 (liability that may arise from litigation not cognizable).

Well Fargo otherwise fails to meet its burden to establish the requisite interest.  It fatally concedes it lacked an interest to intervene prior to July 8, 2021, and its post-July theory (*i.e.,* that its protectable interest arose only once the Receiver filed suit in July 2021 post-*AMG*) falls apart because it is based on its misstatements and omissions about the law.[10]  As explained above, *AMG* left untouched the FTC's ability to obtain monetary relief in cases where it alleges ROSCA violations.  This is true, even where, like here, the FTC in pleading and the Court in adjudicating, mention ROSCA but not Section 19.  *See* Sections I.A, I.C, *supra.*  Moreover, the FTC Act has long barred the FTC from suing banks.  *See* 15 U.S.C. §§ 45(a)(1), 45(a)(2) (empowering the FTC "to prevent persons, partnerships, or corporations, ***except banks*** . . . from using . . . unfair or deceptive acts or practices in or affecting commerce") (emphasis added).  Therefore, nothing relevant to Wells Fargo occurred in 2021 to create an actionable interest.  Because

---

[10] Wells Fargo concedes "it lacked a proper basis to object to the Order Authorizing Litigation when it was entered [i.e., November 11, 2019 (Dkt. 136)]."  Doc. 153-2 at 19.  It twice professes that this state continued until at least July 8, 2021.  *See* Doc. 153-2 at 19 (admitting Wells Fargo "lacked grounds to challenge the Receiver's ability to pursue monetary damages" prior to July 8, 2021); *id*. at 20 ("Wells Fargo could not have filed this motion [before April 22, 2021]").

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

*AMG* changed only *one* remedy (of the multiple ones on which the judgment Wells Fargo seeks to challenge is expressly premised) *the FTC* could seek against *non-banks*, it can have no effect on the ability of a private corporation or receiver to pursue claims *not under the FTC Act* against *a bank*.

## C. Disposition of this Case Will Not Impair Wells Fargo's Ability to Protect Its Interest.

Rule 24 requires a movant must be "so situated that disposing of the action may *as a practical matter* impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). In the only case Wells Fargo cites on this point, the Ninth Circuit stated it follows the Rule 24 advisory committee's guidance, which state this factor is present if "an absentee would be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Disposition of the case cannot, by definition, substantially impair Wells Fargo's ability to protect its interest—assuming for argument's sake it has one—in a practical sense for three reasons. First, the Rule envisions intervention in an ongoing case in which the future disposition could affect the non-party's rights. This case is closed. There is no future disposition that can affect Wells Fargo because there is nothing left for the Court to decide in the dispute between the FTC and the Defendants. Second, even if the Court were to find *the Receiver* could not sue Wells Fargo, *the Corporate Defendants* would still have the same claims against the bank. *See* Clark on Receivers § 329 (3d ed. 1959) (receiver takes only what the "corporation had previous to the appointment of the receiver and no more"); *id.* § 378 (receiver acts as custodian of assets akin to trustee); *id.* § 696 (remaining assets to original owner on receiver's discharge); *cf. CAMOFI Master LDC v. Assoc. Third Party Admins.,* 2018 WL 839134, at *6 (N.D. Cal. Feb. 13, 2018) (claims revert to original owner when trusteeship ends). In other words, Wells Fargo's supposed interest (having to pay money for its offenses against the

Corporate Defendants), cannot be impaired by the Receiver because those claims survive, even if not brought by the Receiver. Third, the underlying case did not (and does not) impair any defense Wells Fargo could raise in its current litigation with the corporations. In fact, that seems to be the point – because Wells Fargo feels it cannot succeed on the merits in that case it is trying to effectively fire the receiver *post hoc*. A movant does not establish impairment of their rights as a practical matter where they can still make the same arguments notwithstanding the outcome of the case in which they seek to intervene. *See Hawaii-Pac. Venture Cap. Corp. v. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977).

### D. Wells Fargo's Interests Are Adequately Protected

Wells Fargo also cannot meet its burden to show its interests have not been adequately protected by the parties. *See Cooper,* 13 F.4th at 864-65. It fails to refute the "legal presumption that the government's representation in a matter of shared interest will be adequate." *Trunk*, 2012 WL 5269307, at *2 (Burns, J.) (quoting *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002)); *see also FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015) ("We presume that the government entity adequately represents the public, and we require the party seeking to intervene to make a strong showing of inadequate representation."); *FTC v. First Cap. Consumer Membership Servs., Inc*., 206 F.R.D. 358, 364 (W.D.N.Y. 2001) ("governmental entity deserves special consideration and deference as an adequate representative of the interests of would-be intervenors."). As a result, "[c]ourts have tended to deny requests by nonparties to intervene in FTC enforcement actions." *FTC v. Noland*, 2021 WL 1237206, at *7 (D. Ariz. Apr. 2, 2021) (citing *Johnson*, 800 F.3d at 450-51). Wells Fargo does not meet its burden to establish a "very compelling showing to the contrary." *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (quoting 7C Wright, Miller & Kane, § 1909, at 332).

Here, the FTC and Wells Fargo share the "same ultimate objective," which

is "[t]he most important factor in determining the adequacy of representation"—
that receivers appointed in FTC cases follow the law, including *AMG*. *See id.* 324
F.3d at 1086. Contrary to the bank's baseless allegations, Dkt. 153-1 at 23, the
FTC is not blindly trying to preserve monetary judgments on "an invalid theory."
In those cases where *AMG* eliminated the possibility for monetary relief, the FTC
has not stood still. *See SuperTherm*, 2021 WL 3419035, at *3 ("[T]he FTC
withdrew its request for equitable monetary relief in light of [*AMG*]."); *Cardiff,*
2021 WL 3616071, at *1 (same); *FTC v. Vyera Pharms., LLC*, 2021 WL 4392481,
at *2 (S.D.N.Y. Sept. 24, 2021) (same). Where necessary, the FTC has argued
Section 19 is an appropriate substitute basis to retain monetary relief, and courts
should not waste their "significant time and resources" (and those of the parties), to
relitigate issues merely to "arriv[e] at the same or a substantially similar end
result." *See John Beck,* 2021 WL 4313101, at *5-6; *see also Credit Bureau*, 2021
WL 4146884, at *11-12 (granting FTC motion to amend judgment in light of *AMG*
to impose "the same consumer redress" under Section 19 instead of Section 13).
Further, where the FTC is at odds with a receiver, including on Section 13(b), the
FTC pushes back. *E.g., FTC v. On Point Glob. LLC,* 2020 WL 5819809, at *5
(S.D. Fla. Sept. 30, 2020) (denying FTC's request for a "special receiver or
independent counsel" where FTC disagreed with receiver's interpretation of
Section 13(b) and the order appointing the receiver); *FTC v. Ivy Cap., Inc*., 2011
WL 2470584, at *4 (D. Nev. June 20, 2011) (agreeing with FTC opposition to
receiver proposal).

When the Receiver sought to sue Wells Fargo in this case, the FTC reviewed
the motion, assessed its legitimacy, and filed its non-opposition. Dkt. 137. The
suit is consistent with what other receivers appointed in FTC cases have done to
pursue claims of their receivership estates against third parties where warranted.

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

**ER71**

*See* p. 13, *supra.* Were there some *ultra vires* act, the FTC would say so.[11]

## IV. WELLS FARGO HAS NOT MET ITS BURDEN TO INTERVENE BY PERMISSION.

The Motion fares no better under the standard for permissive intervention. Such a motion must again be "timely." Fed. R. Civ. P. 24(b). The proposed intervenor must "[have] a claim or defense that shares with the main action a common question of law or fact," and "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), 24(b)(3). Movants bear the burden to establish these threshold elements, and the court may deny intervention even if they do. *Cooper,* 13 F.4th at 868. Where litigants move timely to intervene, courts consider several other factors, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case[,] whether the intervenors' interests are adequately represented by other parties[,]and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Thompson v. Wolverine Servs., LLC*, 2021 WL 827605, at *1 (N.D. Cal. Mar. 4, 2021) (quoting *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011)). These *Perry* factors here weigh strongly against intervention, as detailed below, even though common issues of law or fact may be present.

### A. The Motion Is Untimely Under the "More Strict[]" Standard.

For permissive intervention, courts "analyze the timeliness element more

---

[11] Wells Fargo cites only an inapplicable case on Rule *23* class actions as to why Defendants do not adequately represent it. *See* Dkt. 153-1 at 23. It bears noting, as Wells Fargo concedes, that the Defendants opposed the Receiver's motion to hire contingency counsel, the very order the bank seeks to undo. Dkt. 153-1 at 12.

strictly than . . . intervention as of right." *Wilson*, 131 F.3d at 1302. The Motion is untimely for the reasons explained above, which is dispositive for permissive intervention as well. *See id.;* Section III.A, *supra.* Oddly, the lone case Wells Fargo cites on this factor, Dkt. 153-1 at 25, makes clear that, "[i]ntervention after entry of a consent decree is reserved for exceptional cases." *See Alaniz*, 572 F.2d at 659; *see also Calvert*, 109 F.3d at 638 (post-judgment intervention "generally disfavored"). In *Alaniz*, the Ninth Circuit upheld a denial of intervention where, like here, it came two and one-half years after suit was filed and the proposed intervenors "knew or should have known" of "risks" to their interests earlier on. *Id.* The Circuit also held that movants "must convincingly explain their delay." *Id*. Here, Wells Fargo offers no reason for waiting 4-7 months to intervene under its theory of timeliness, and no adequate one for the 24 months since the Receiver moved to sue Wells Fargo. *See* Section III.A.3, *supra.* Nor does it establish what makes its cause "exceptional." *See Alaniz*, 572 F.2d at 659.

### B. The Parties Would Be Prejudiced By Intervention

Tellingly, Wells Fargo does not address prejudice under permissive intervention. *See* Dkt. 153-1 at 25-27; Fed. R. Civ. P. 24(b)(3). As explained above, permitting Wells Fargo to re-litigate these matters prejudices the FTC, Receiver, and Defendants. *See* Section III.A.2, *supra*; *see also Mineworkers' Pension Scheme v. First Solar Inc.,* 722 F. App'x 644, 646 (9th Cir. 2018) (upholding denial of permissive intervention to relitigate issue already decided).

### C. Other Factors Weigh Against Intervention

Many other *Perry* factors that courts consider weigh against intervention. *See Perry*, 630 F.3d at 905. First, Wells Fargo lacks standing. *See* Section II, *supra*. Second, Wells Fargo's interests have been adequately represented. *See* Section III.D, *supra*. Third, the legal position Wells Fargo seeks to make is weak, internally inconsistent, contrary to the plain text of the FTC Act, and has been rejected by district courts that considered similar arguments. *See* Section I.C,

*supra.* Fourth, the nature and extent of Wells Fargo's interest is in parading myriad claims that are not extant in this case to try and immunize itself from a multi-million dollar suit. Therefore, it is not appropriate to re-open 30-month-old judgments and a two-year old order to compel the FTC and Defendants to re-stipulate to judgments or litigate a case they settled. Fifth, Wells Fargo's participation will not significantly contribute to the full development of the factual issues in this case precisely because it is closed. Finally, Wells Fargo will not significantly contribute to the just and equitable adjudication of the legal issues *in this case*. Its belated and fatally flawed arguments merely seek to shield itself unjustly from liability for the offenses the Receiver alleges it committed against the Corporate Defendants, which endure beyond whatever the Court decides here.

## <u>CONCLUSION</u>

For the reasons discussed above, the FTC respectfully requests the Court deny Wells Fargo's motion to intervene.

Dated: December 20, 2021

s/ Jonathan W. Ware
JONATHAN W. WARE
Federal Trade Commission
600 Pennsylvania Avenue, NW CC-9528
Washington, DC 20580
Tel: (202) 326-2726
Fax: (202) 326-3197
jware1@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

Case No. 18-cv-1388-LAB-LL
FTC's Mem. Opposing Non-Party Wells Fargo's Motion to Intervene

**ER74**

**MCGUIREWOODS LLP**
DAVID C. POWELL (SBN 129781)
dpowell@mcguirewoods.com
ALICIA A. BAIARDO (SBN 254228)
abaiardo@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MCGUIREWOODS LLP**
KEVIN M. LALLY (SBN 226402)
klally@mcguirewoods.com
355 S. Grand Avenue, Suite 4200
Los Angeles, CA 90071
Telephone: 213.627.2268
Facsimile: 213.627.2579

Attorneys for Proposed Intervenors
Wells Fargo & Company and
Wells Fargo Bank N.A.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC; GLOBAL NORTHERN TRADING LIMITED; BRIAN PHILLIPS; and DEVIN KEER, <br><br> Defendants. | CASE NO. 18-cv-1388-LAB-LL <br><br> Judge: Hon. Larry Alan Burns <br><br> **PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK N.A.'S NOTICE OF MOTION AND MOTION TO INTERVENE** <br><br> Date: January 10, 2022 <br> Time: 11:15 a.m. <br> Ctrm: 14A |

1

**TO THE HONORABLE COURT, PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on January 10, 2022, at 11:15 a.m. in Courtroom 14A of the United States District Court for the Southern District of California, 333 West Broadway, San Diego, California 92101, Proposed Intervenors Wells Fargo & Company and Wells Fargo Bank, N.A., will and hereby seek an order granting them intervention in the above captioned matter as a matter of right, or alternatively, with permission of the Court, pursuant to Federal Rule of Civil Procedure 24(a)(2) or 24(b)(1) ("Motion"). Wells Fargo respectfully requests that the Court hear oral arguments on this Motion.

This Motion is based upon this Notice of Motion and Motion to Intervene, the Memorandum of Points and Authorities, Request for Judicial Notice, the pleadings and documents on file in this matter, any oral argument of counsel, and upon such other information as the Court may allow.

DATED: November 10, 2021          Respectfully submitted,

**MCGUIREWOODS LLP**


/s/ *Alicia A. Baiardo*
David C. Powell, Esq.
Kevin M. Lally, Esq.
Alicia A. Baiardo, Esq.

*Counsel for Proposed Intervenors*
*Wells Fargo & Company and Wells Fargo*
*Bank, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2021, I electronically filed the foregoing document entitled with the Clerk of the Court for the United States District Court, Southern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system. Any counsel of record who has not consented to or registered for electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile, and/or overnight delivery.


By: */s/ Alicia A. Baiardo*
Alicia A. Baiardo

1  Andrew W. Robertson (SBN 62541)
   arobertson@mcnamarallp.com
2  Edward Chang (SBN 268204)
   echang@mcnamarallp.com
3  McNamara Smith LLP
   655 West Broadway, Suite 1680
4  San Diego, California 92101
   Telephone: 619-269-0400
5  Facsimile:  619-269-0401

6  *Attorneys for Receiver,*
   *Thomas W. McNamara*
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 FEDERAL TRADE COMMISSION,            | Case No. 3:18-cv-01388-LAB-LL

12              Plaintiff,              | **NOTICE OF THIRD INTERIM**
                                        | **APPLICATION AND THIRD**
13      v.                             | **INTERIM APPLICATION FOR**
                                        | **ORDER APPROVING FEES AND**
14 TRIANGLE MEDIA CORPORATION,          | **EXPENSES OF THE RECEIVER**
   a Delaware corporation, also doing  | **AND HIS PROFESSIONALS**
15 business as Triangle CRM, Phenom
   Health, Beauty and Truth, and E-Cigs; | JUDGE:  Hon. Larry A. Burns
16 JASPER RAIN MARKETING LLC, a         | CTRM:   14A
   California limited liability company, also | DATE:  November 16, 2020
17 doing business as Cranium Power and  | TIME:   11:30 a.m.
   Phenom Health; HARDWIRE
18 INTERACTIVE INC., a British Virgin
   Islands corporation, also doing business
19 as Phenom Health, Beauty and Truth,
   and E-Cigs; and BRIAN PHILLIPS,
20 individually and as an officer of Triangle
   Media Corporation,
21
                Defendants.
22

23

24

25

26

27

28

TO THE HONORABLE LARRY A. BURNS, UNITED STATES
DISTRICT COURT JUDGE, AND TO ALL PARTIES AND THEIR
ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 16, 2020 at 11:30 a.m. in
Courtroom 14A of the United States District Court for the Southern District of
California, located at 333 West Broadway, San Diego, California, Thomas W.
McNamara, as Court-appointed receiver ("Receiver"), will present the Receiver's
Third Interim Application for Order Approving Fees and Expenses of the Receiver
and Professionals for the period of November 1, 2018 through August 31, 2020.

The Federal Trade Commission filed its complaint on June 25, 2018.
Thomas W. McNamara was initially appointed temporary receiver by the
Temporary Restraining Order ("TRO") entered June 29, 2018 (ECF No. 11). The
Receiver's appointment was confirmed, and the temporary designation removed,
by the Preliminary Injunction entered August 24, 2018 (ECF No. 75).

The Preliminary Injunction authorizes the Receiver to "[c]hoose, engage,
and employ attorneys, accountants, appraisers, and other independent contractors
and technical specialists, as the Receiver deems advisable or necessary in the
performance of duties and responsibilities under the authority granted by this
Order." (Section XVII(H), page 18.)

The Preliminary Injunction also provides that the "Receiver and all
personnel hired by the Receiver as herein authorized, including counsel to the
Receiver and accountants, are entitled to reasonable compensation for the
performance of duties pursuant to this Order and for the cost of actual out-of-
pocket expenses incurred by them, from the Assets now held by, in the possession
or control of, or which may be received by, the Receivership Entities."
(Section XXII, page 24.)

The Receiver now submits this Third Interim Fee Application for approval
to pay the following fees and expenses for services during the twenty-two month

period November 1, 2018 through August 31, 2020:  $34,618.50 fees and $30.00 expenses of the Receiver and staff to be paid to Thomas W. McNamara dba Regulatory Resolutions; $55,870.00 fees and $19,081.42 expenses of the Receiver's counsel, McNamara Smith LLP; £1,210.00 fees of the Receiver's U.K. counsel, NME Law Limited; and $3,150.00 fees of IT consultant, The Computer Admin.

These requested fees and expenses, and the invoices regarding them, are detailed and reviewed in the Declaration of Thomas W. McNamara filed with this Application.

This Application is made pursuant to Sections XVII(H) and XXII of the Preliminary Injunction and is based upon this Notice of Application, the Declaration of Thomas W. McNamara, and upon such other pleadings and oral and documentary evidence as may be presented at or before the time of the hearing on the Application.

The Receiver respectfully requests the Court's approval to pay the submitted invoices.

Dated:  October 9, 2020          MCNAMARA SMITH LLP

By:    /s/ Edward Chang
Edward Chang
Attorneys for Receiver,
Thomas W. McNamara
Email: echang@mcnamarallp.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of October, 2020, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

**VIA CM/ECF**
Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
Tel.: 312-960-5623 (Gordon)
Tel.: 312-960-5596 (Wernz)
sgordon@ftc.gov
mwernz@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

**VIA CM/ECF**
Karl S. Kronenberger
Kronenberger Rosenfeld
150 Post Street, Suite 520
San Francisco, CA 94108
Tel.: 415-955-1155
Fax: 415-955-1158
karl@krinternetlaw.com
*Attorneys for Defendant Global Northern Trading Limited*

**VIA CM/ECF**
Frederick K. Taylor
Matthew B. Shields
Nicholas S. Kawuka
Procopio Cory Hargreaves and Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101-4469
Tel.: 619-238-1900
Fax: 619-235-0398
fkt@procopio.com
matthew.shields@procopio.com
nka@procopio.com
*Attorneys for Defendants Triangle Media Corporation; Jasper Rain Marketing, LLC; and Brian Phillips*

**VIA CM/ECF**
Ari N. Rothman
Witt W. Chang
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel.: 310-229-9900
Fax: 310-229-9901
anrothman@venable.com
wchang@venable.com
*Attorneys for Defendants Hardwire Interactive Inc. and Devin Keer*

**VIA CM/ECF**
Gerald S. Sachs
Stephen R. Freeland
Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20001
Tel.: 202-344-4000
Fax: 202-344-8300
gssachs@venable.com
srfreeland@venable.com
*Attorneys for Defendant Hardwire Interactive Inc. and Devin Keer*

/s/ Edward Chang
Edward Chang
Attorneys for Receiver,
Thomas W. McNamara

Case No. 3:18-cv-01388-LAB-LL
CERTIFICATE OF SERVICE

**ER81**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CASE NO. 18cv1388-LAB (LL) |
| Plaintiff, | |
| | **ORDER GRANTING RECEIVER'S MOTION FOR AUTHORIZATION TO ENGAGE CONTINGENCY FEE COUNSEL AND EXTEND RECEIVERSHIP [Dkt. 136]** |
| vs. | |
| TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; and BRIAN PHILLIPS | |
| Defendants. | |

On September 9, 2019, the Court granted in part Receiver Thomas McNamara's motion to extend the receivership for 90 days so that he could complete an investigation into "a potential receivership estate lawsuit against a domestic financial institution."[1] *See* Dkt. 134. With that investigation now complete, the Receiver has concluded that pursuing this litigation is in the best interest of the estate. As such, he requests that the Court (1) grant him permission to retain contingency counsel, (2) extend the receivership for the sole purpose of pursuing that litigation, and (3) administratively close the case while the litigation is conducted.

Defendants Hardwire Interactive, Inc., Devin Keer, and Global Northern Trading Limited (collectively, the "Hardwire Defendants") oppose the motion, arguing that a continuation of the receivership would also mean a continuation of the asset freeze

---

[1] This previously unnamed financial institution is now revealed to be Wells Fargo.

1    against them. To the extent this was a valid concern when the Receiver's motion was

2    filed, it isn't any longer. As set out in the stipulated final judgment, "[a] financial institution

3    shall be entitled to rely upon a letter from a representative of the [FTC] stating that the

4    freeze on a Stipulating Defendant's assets has been lifted." Dkt. 127 § X. On November

5    12, 2019, the FTC provided letters to the Hardwire Defendants informing them that the

6    asset freeze against them was dissolved. *See* Dkt. 141, Exs. 1, 2. The Court therefore

7    finds no prejudice to the Hardwire Defendants that would outweigh the receivership

8    estate's interest in pursuing the contemplated litigation.

9        The remaining defendants—Brian Phillips, Triangle Media Corporation, and

10   Jasper Rain (collectively, the "Triangle Defendants")—do not oppose the Receiver's

11   motion in principle, but they request that the Court enter various orders before

12   administratively closing the case. For example, they seek a Court order that the Receiver

13   cede and return control over all entities seized by the Receiver when this litigation began.

14   They likewise request that the Receiver return various software and software code the

15   Receiver has in his possession. To the extent the Triangle Defendants seek a

16   modification of the stipulated final judgment, they may seek such a modification through

17   a noticed motion (even while the case is administratively closed), but the Court agrees

18   with the Receiver that an opposition is not the place to seek such relief.[2]

19       In short, the Court finds good cause exists to grant the Receiver's motion to (1)

20   extend the receivership for the sole purpose of pursuing litigation against Wells Fargo, (2)

21   permit the Receiver to retain contingency counsel, and (3) administratively close the case

22   while that litigation is pursued.

23   / / /

24   / / /

25   / / /

26

27   ────────────────

28   [2] Before seeking such relief, the Defendants, the Receiver, and the FTC must work
     together to see if such a modification can be reached on mutually agreeable terms.

**IT IS HEREBY ORDERED** that:

1.    The Receiver's Motion for Authorization to Engage Contingency Fee Counsel is **GRANTED**. Dkt. 136. The Receiver is authorized to enter a contingency fee arrangement in the Receiver's litigation against Wells Fargo and Company.

2.    Section IX of the Modified Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips (Dkt. 126) and Section IX of the Modified Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Hardwire Interactive Inc., Global Northern Trading Limited, and Devin Keer (Dkt. 127) shall be modified to provide that the deadline for the Receiver to complete his duties shall be 30 days after final judgment or settlement in the Receiver's litigation against Wells Fargo and Company.

3.    The Clerk shall administratively close the file in *Federal Trade Commission v. Triangle Media Corporation, et al.*, Case No. 3:18-cv-01388-LAB-LL. Notwithstanding such closure, the Court shall continue to retain jurisdiction over the Receivership. As to matters related to the Receivership or enforcement of the Court's judgments, filings and other proceedings in this matter may therefore continue until further order of this Court. Except as expressly stated in this order, all other orders and judgments of the Court remain in full force and effect.

4.    The hearing currently scheduled for November 25, 2019 at 11:30 a.m. is **VACATED**.

**IT IS SO ORDERED**.

Dated: November 18, 2019

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge

- 3 -

**ER84**

SAMANTHA GORDON (IL Bar No. 6272135)
sgordon@ftc.gov
MATTHEW H. WERNZ (IL Bar No. 6294061)
mwernz@ftc.gov
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
312.960.5623 (Gordon)
312.960.5596 (Wernz)
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                                    Plaintiff,<br><br>v.<br><br>TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC., GLOBAL NORTHERN TRADING, LTD., BRIAN PHILLPS, AND DEVIN KEER,<br>                                    Defendants. | Case No.:      18-cv-1388-LAB (LL)<br><br>**PLAINTIFF FEDERAL TRADE COMMISSION'S STATEMENT OF NON-OPPOSITION TO THE RECEIVER'S MOTION FOR AUTHORIZATION TO ENGAGE CONTINGENCY FEE COUNSEL AND EXTEND RECEIVERSHIP**<br><br>JUDGE:  Hon. Larry A. Burns<br>CTRM:  14A<br>DATE:  November 25, 2019<br>TIME:  11:30 a.m. |

Plaintiff Federal Trade Commission ("FTC") submits this statement of non-opposition to the Receiver's Motion for Authorization to Engage Contingency Fee Counsel and Extend Receivership (Dkt. #136). Plaintiff Federal Trade Commission does not oppose the Receiver's motion for authorization to engage contingency fee

1

**ER85**

1  counsel, extend the completion deadline of the receivership for the purpose of

2  allowing the Receiver to complete his duties, including pursuing litigation against

3  Wells Fargo, and administratively close this matter.

4

5  Dated: November 8, 2019

Respectfully submitted,

6  /s/ Samantha Gordon

7  Samantha Gordon
   Matthew H. Wernz

8  Federal Trade Commission

9  Midwest Region
   230 South Dearborn Street, Suite 3030

10 Chicago, Illinois 60604

11 sgordon@ftc.gov
   mwernz@ftc.gov

12 312-960-5623 (Gordon)

13 312-960-5596 (Wernz)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

PLAINTIFF'S STATEMENT
OF NON-OPPOSITION
Case No. 18cv1388-LAB (LL)

**ER86**

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on November 8, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.2.

/s/ Samantha Gordon
Samantha Gordon

1

1  Andrew W. Robertson (SBN 62541)
   arobertson@mcnamarallp.com
2  Edward Chang (SBN 268204)
   echang@mcnamarallp.com
3  McNamara Smith LLP
   655 West Broadway, Suite 1600
4  San Diego, California 92101
   Telephone: 619-269-0400
5  Facsimile:  619-269-0401

6  *Attorneys for Court-Appointed Receiver*
   *Thomas W. McNamara*
7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 FEDERAL TRADE COMMISSION,          Case No. 3:18-cv-01388-LAB-LL

12              Plaintiff,            **RECEIVER'S NOTICE OF**
                                      **MOTION AND MOTION FOR**
13      v.                           **AUTHORIZATION TO ENGAGE**
                                      **CONTINGENCY FEE COUNSEL**
14 TRIANGLE MEDIA CORPORATION, a     **AND EXTEND RECEIVERSHIP**
   Delaware corporation, also doing business
15 as Triangle CRM, Phenom Health, Beauty
   and Truth, and E-Cigs; JASPER RAIN   JUDGE:   Hon. Larry A. Burns
16 MARKETING LLC, a California limited   CTRM:    14A
   liability company, also doing business as  DATE:    November 25, 2019
17 Cranium Power and Phenom Health;     TIME:    11:30 a.m.
   HARDWIRE INTERACTIVE INC., a
18 British Virgin Islands corporation, also
   doing business as Phenom Health, Beauty
19 and Truth, and E-Cigs; and BRIAN
   PHILLIPS, individually and as an officer
20 of Triangle Media Corporation,

21              Defendants.

22

23

24

25

26

27

28

1   TO THE HONORABLE LARRY A. BURNS, UNITED STATES

2   DISTRICT COURT JUDGE, AND TO ALL PARTIES AND THEIR

3   ATTORNEYS OF RECORD:

4   The Court-appointed Receiver Thomas W. McNamara (the "Receiver")

5   hereby gives notice that on November 25, 2019 at 11:30 a.m., before this Court,

6   the Receiver will, and hereby does, move for an order authorizing the Receiver to

7   engage contingency fee counsel, to extend the receivership to allow the Receiver to

8   complete his duties, and to administratively close the case.

9   This motion is supported by this Notice of Motion and Motion, and the

10  concurrently filed Memorandum of Points and Authorities, and proposed order, all

11  of the Court's files and records in this action, and such other and further argument

12  as may be presented to the Court.

13  Dated: October 22, 2019                    MCNAMARA SMITH LLP

14

15                                             By:    /s/ Edward Chang
                                                      Edward Chang
16                                             *Attorneys for Court-Appointed Receiver,*
                                               *Thomas W. McNamara*
17                                             Email: echang@mcnamarallp.com

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October 2019, the foregoing document was electronically transmitted to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.

**VIA CM/ECF**
Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
Tel.:   312-960-5623 (Gordon)
Tel.:   312-960-5596 (Wernz)
sgordon@ftc.gov
mwernz@ftc.gov
*Attorneys for Plaintiff Federal Trade Commission*

**VIA CM/ECF**
Adam L. Braverman
United States Attorney
Rebecca G. Church
Assistant U.S. Attorney
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel.:   619-546-7701/7721
Fax:   619-546-7751
rebecca.church@usdoj.gov
*Attorneys for Plaintiff Federal Trade Commission*

**VIA CM/ECF**
Frederick K. Taylor
Matthew B. Shields
Nicholas S. Kawuka
Procopio Cory Hargreaves and Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101-4469
Tel.:   619-238-1900
Fax:   619-235-0398
fkt@procopio.com
matthew.shields@procopio.com
nka@procopio.com
*Attorneys for Defendants Triangle Media Corporation; Jasper Rain Marketing, LLC; and Brian Phillips*

**VIA CM/ECF**
Ari N. Rothman
Witt W. Chang
Venable LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Tel.:   310-229-9900
Fax:   310-229-9901
anrothman@venable.com
wchang@venable.com
*Attorneys for Defendant Hardwire Interactive Inc.*

**VIA CM/ECF**
Gerald S. Sachs
Stephen R. Freeland
Venable LLP
600 Massachusetts Ave., NW
Washington, DC 20004
Tel.:   202-344-4000
Fax:   202-344-8300
gssachs@venable.com
srfreeland@venable.com
*Attorneys for Defendant Hardwire Interactive Inc.*

**VIA CM/ECF**
Karl S. Kronenberger
Kronenberger Rosenfeld
150 Post Street, Suite 520
San Francisco, CA 94108
Tel.:   415-955-1155
Fax:   415-955-1158
karl@krinternetlaw.com
*Attorneys for Defendant Global Northern Trading Limited*

 /s/ Edward Chang
Edward Chang
Attorneys for Receiver, Thomas W. McNamara

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; and BRIAN PHILLIPS <br><br> Defendants. | CASE NO. 18cv1388-LAB (LL) <br><br> **ORDER GRANTING IN PART RECEIVER'S MOTION TO EXTEND COMPLETION DEADLINE [Dkt. 129]** |

As part of its May 30, 2019 orders, the Court directed Receiver Thomas McNamara to complete certain tasks—e.g., take control of assets, liquidate assets, prepare a report and final fee application, and distribute remaining assets to the FTC—within 90 days. McNamara now seeks a 90-day extension of that deadline in order to complete his investigation into "a potential receivership estate lawsuit against a domestic financial institution." Dkt. 129 at 1. The Triangle Defendants and Hardwire Defendants both oppose that request. Dkts. 130, 132. The FTC has filed a notice of non-opposition. Dkt. 133.

Having considered the parties' briefing, the Court **GRANTS** a limited receivership extension of 45 days. Should the Receiver determine before that time that he does not wish to pursue the contemplated receivership-estate lawsuit, he should inform the Court immediately.

/ / /

1   **IT IS ORDERED THAT:**

2       1.      Section IX of the Modified Stipulated Order for Permanent Injunction and

3   Monetary Judgment as to Defendants Triangle Media Corporation, Jasper Rain Marketing

4   LLC, and Brian Phillips (Dkt. 126) shall be modified to provide that the deadline for the

5   Receiver to complete his duties shall be **October 24, 2019**.

6       2.      Section IX of the Modified Stipulated Order for Permanent Injunction and

7   Monetary Judgment as to Defendants Hardwire Interactive Inc., Global Northern Trading

8   Limited, and Devin Keer (Dkt. 127) shall be modified to provide that the deadline for the

9   Receiver to complete his duties shall be **October 24, 2019**.

10

11      **IT IS SO ORDERED**.

12  Dated: September 9, 2019

13                                              **HONORABLE LARRY ALAN BURNS**
                                                Chief United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -
**ER92**

1  Frederick K. Taylor (Bar No. 159838)
   fred.taylor@procopio.com
2  Nicholas S. Kawuka (Bar No. 297579)
   nicholas.kawuka@procopio.com
3  Matthew B. Shields (Bar No. 308553)
   matthew.shields@procopio.com
4  PROCOPIO, CORY, HARGREAVES &
       SAVITCH LLP
5  525 B Street, Suite 2200
   San Diego, CA 92101
6  Telephone: 619.238.1900
   Facsimile: 619.235.0398
7
8  Attorneys for Defendants Triangle Media
   Corporation, Jasper Rain Marketing LLC and Brian
9  Phillips.

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

12

13  FEDERAL TRADE COMMISSION,          Case No. 3:18-cv-01388-MMA-NLS

14              Plaintiff,             DEFENDANTS TRIANGLE
                                       MEDIA CORPORATION,
15  v.                                 JASPER RAIN MARKETING LLC,
                                       AND BRIAN PHILLIPS'
16  TRIANGLE MEDIA CORPORATION;        OPPOSITION TO THE
17  JASPER RAIN MARKETING LLC;         RECEIVER'S MOTION TO
    HARDWIRE INTERACTIVE INC;          EXTEND COMPLETION
18  GLOBAL NORTHERN TRADING, LTD.,     DEADLINE
    BRIAN PHILLIPS, AND DEVIN KEER,
19                                     Judge: Hon. Larry A. Burns
                Defendants.            Ctrm: 14A
20                                     Date: October 7, 2019
                                       Time: 11:30 a.m.
21

22

23      Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and

24  Brian Phillips (collectively, the "Triangle Defendants") oppose the Receiver's

25  Motion to Extend Completion Deadline (Dkt. 129).

26      There is a time when every case must end, and that time has come. Since the

27  Receiver was first appointed on June 29, 2018, he has had the obligation to take

28  exclusive custody, control, and possession of all assets of the Receivership Entities

                                  1
                                                        18-cv-01388

**ER93**

and "[i]nstitute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities . . . ." *See* ECF No. 11, pp. 19, 21; ECF No. 75, pp. 17, 19.  For over a year, the Receiver has had sufficient time and opportunity to investigate and evaluate all claims, and institute suits, or hire counsel to do so. Indeed, the Receiver admits as much when he argues that "[a]fter reviewing Receivership Entities' documents (including emails), the Receiver believed there may be a viable lawsuit against the financial institution." Dkt. 129-1, p. 3.  The Receiver obtained the Receivership Entities' documents in July 2018. Dkt. 30, p. 7. If he believed there was a viable lawsuit against a financial institution, the Receiver could have pursued it earlier.

All in all, the Receiver fails to show good cause to extend the completion date to November 28, 2019 because he does not explain why this issue comes up more than 13 months after the Receiver had obtained the vast majority of the entities' books and records.  The Receiver's motion should therefore be denied.  If, however, the Court is inclined to accept the Receiver's "good cause" arguments, the Court should grant a much more limited extension than what the Receiver proposes.

DATED: August 28, 2019

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: /s/ Frederick K. Taylor

Frederick K. Taylor
Nicholas S. Kawuka
Matthew B. Shields

Attorneys for Defendants Triangle Media Corporation, Jasper Rain Marketing, and Brian Phillips.

2

**ER94**

18-cv-01388

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 28, 2019 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.2.

/s/ Frederick K. Taylor
Frederick K. Taylor

Andrew W. Robertson (SBN 62541)
arobertson@mcnamarallp.com
Edward Chang (SBN 268204)
echang@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1600
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Court-Appointed Receiver*
*Thomas W. McNamara*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 3:18-cv-01388-LAB-LL |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION TO EXTEND COMPLETION DEADLINE** |
| v. | |
| TRIANGLE MEDIA CORPORATION, a Delaware corporation, also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; JASPER RAIN MARKETING LLC, a California limited liability company, also doing business as Cranium Power and Phenom Health; HARDWIRE INTERACTIVE INC., a British Virgin Islands corporation, also doing business as Phenom Health, Beauty and Truth, and E-Cigs; and BRIAN PHILLIPS, individually and as an officer of Triangle Media Corporation, | JUDGE:  Hon. Larry A. Burns<br>CTRM:  14A<br>DATE:  October 7, 2019<br>TIME:  11:30 a.m.<br><br>NO ORAL ARGUMENT REQUESTED |
| Defendants. | |

## I.    INTRODUCTION

On May 30, 2019, the Court entered, pursuant to the parties' agreement, Modified Stipulated Orders for Permanent Injunction and Monetary Judgments (ECF No. 126 (Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips)) and ECF No. 127 (Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Hardwire Interactive Inc., Global Northern Trading Limited, and Devin Keer) (collectively, the "Orders").  The Orders are explicit that the Receiver's duties set forth in the Preliminary Injunction remain in force as modified by the Orders.  *See* ECF Nos. 126 and 127 at § IX ("**IT IS FURTHER ORDERED** that the appointment of the Receiver over the Stipulating Corporate Defendants pursuant to Section XVI. of the Preliminary Injunction is continued as modified by this Section.") (emphasis in original).

The Orders direct the Receiver to complete certain tasks (i.e., take control of assets, liquidate assets, prepare a report and final fee application, and distribute remaining assets to the Federal Trade Commission ("FTC")) within 90 days of entry of the Orders, which is August 28, 2019.  *See* ECF No. 126 at § IX(B); ECF No. 127 at § IX(B).[1]  But the Orders also provide that "any party or the Receiver may request that the Court extend the Receiver's term for good cause."  ECF No. 126 at page 16, lines 21-22; ECF No. 127 at page 15, lines 13-14.  The Receiver hereby requests the receivership completion date be extended by three months, until November 28, 2019, in order to complete the investigation and evaluation of a potential receivership estate lawsuit against a domestic financial institution.

---

[1]  The Receiver transferred $4,000,000 to the FTC for use in consumer redress within 7 days after entry of the Orders.  *See* ECF No. 126 page 16, line 17; ECF No. 127 page 15, line 8.

## II.    DISCUSSION

Pursuant to the Preliminary Injunction, the Receiver is required to, among other things, take exclusive custody, control, and possession of all Assets of Receivership Entities and "[i]nstitute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities . . . ." *See* ECF No. 75 at page 17, lines 12-14 and page 19, lines 9-12.  The Receiver identified troubling conduct on the part of a domestic financial institution used by the Triangle Media Corporation and Jasper Rain Marketing LLC defendants.  After reviewing Receivership Entities' documents (including emails), the Receiver believed there may be a viable lawsuit against the financial institution.  The Receiver then contacted sophisticated contingency counsel to investigate and evaluate the facts and law and determine if counsel was interested in pursuing the financial institution on a contingency basis.[2] At this point, the Receiver's team and contingency counsel have expended significant resources investigating the potential lawsuit.  Although they have moved with all dispatch, counsel needs some additional time to complete the investigation and evaluation and make a recommendation to the Receiver.

If at the conclusion of the investigation and evaluation of the claims counsel recommends proceeding forward, the Receiver will provide additional information to the Court and will seek authorization to engage contingency counsel.[3]  These potential claims are the only remaining assets of the Receivership Entities and the last issue to resolve prior to terminating the receivership.  The Receiver requests a

---

[2]  The Receiver is empowered to hire counsel to pursue claims on behalf of the Receivership Estate.  *See* ECF No. 75 at page 18, lines 23-26.  In this instance, however, given the potential size of the claim and the attendant litigation costs, the Receiver believes proceeding on a contingency basis, which would not put Receivership Estate assets at risk, would be the prudent course.

[3]  If contingency counsel declines to move forward, the Receiver will immediately file the final report, final fee application, and request to be discharged.

---

1    brief three month extension to allow counsel to complete their evaluation of the
2    potential claims.
3          Accordingly, the Receiver hereby moves for an order extending the deadline
4    by which the Receiver is to complete his duties from August 28, 2019 to
5    November 28, 2019 – a three month extension.[4]  This is the first extension the
6    Receiver has requested and the Receiver respectfully submits that good cause
7    exists.

## III.    CONCLUSION

9          For the foregoing reasons, the Receiver respectfully requests that the Court
10   extend the deadline to complete all receivership duties to November 28, 2019.

11   Dated:  August 27, 2019              MCNAMARA SMITH LLP

13                                        By:    /s/ Edward Chang
                                               Edward Chang
14                                             *Attorneys for Court-Appointed Receiver,*
                                               *Thomas W. McNamara*
                                               Email: echang@mcnamarallp.com

---

27   [4]  Before filing the motion, the Receiver asked the parties to enter a stipulation
     extending the completion deadline.  However, the parties were not able to reach an
28   agreement.

---

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

9

10 | FEDERAL TRADE COMMISSION, | Case No.:    18 cv 1388 LAB

11 | Plaintiff, | Hon. Larry Alan Burns

12 | v.

13 | TRIANGLE MEDIA CORPORATION, | **[MODIFIED] STIPULATED ORDER**
JASPER RAIN MARKETING LLC, | **FOR PERMANENT INJUNCTION**

14 | HARDWIRE INTERACTIVE, INC., | **AND MONETARY JUDGMENT AS**
| **TO DEFENDANTS HARDWIRE**

15 | GLOBAL NORTHERN TRADING | **INTERACTIVE INC., GLOBAL**
LIMITED, BRIAN PHILLIPS, and | **NORTHERN TRADING LIMITED,**

16 | DEVIN KEER | **AND DEVIN KEER**

17

18 | Defendants.

19

20      Plaintiff, Federal Trade Commission ("Commission"), filed its Complaint for

21 Permanent Injunction and Other Equitable Relief in this matter, pursuant to Section 13(b)

22 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 5 of the

23 Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section

24 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c).  The

25 Commission and Defendants Hardwire Interactive Inc., Global Northern Trading

26 Limited, and Devin Keer stipulate to the entry of this Stipulated Order for Permanent

/ / /

27

1

28

**ER100**

Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

A.      This Court has jurisdiction over this matter.

B.      The Complaint alleges that Stipulating Defendants participated in deceptive and unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of the ROSCA, 15 U.S.C. § 8403, and Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), in the marketing and sale online of skin care products, electronic cigarettes, and supplements.

C.      Stipulating Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, the Stipulating Defendants admit the facts necessary to establish jurisdiction.

D.      Stipulating Defendants waive any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

E.      Stipulating Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

A.      "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

B.      **"Charge," "Charged," or "Charging,"** means any attempt to collect money or other consideration from a consumer, including but not limited to causing Billing Information to be submitted for payment, including against a consumer's credit card, debit card, bank account, telephone bill, or other account.

2

C.    **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.    In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

2.    A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

3.    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

4.    In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

5.    The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

6.    The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

7.    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

/ / /

/ / /

3

8.     When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.     "**Corporate Defendants**" means Triangle Media Corporation, a California corporation, Jasper Rain Marketing LLC, a California limited liability company, Global Northern Trading Limited, a Canadian Corporation, and Hardwire Interactive Inc., a British Virgin Islands company, and by whatever other names they may be known, and their subsidiaries, affiliates, successors, and assigns, and any fictitious business entities or business names created or used by these entities, or any of them.

E.     "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

F.     "**Individual Defendants**" means Brian Phillips and Devin Keer.

G.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

H.     "**Preauthorized Electronic Fund Transfer,**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

I.     "**Preliminary Injunction**" means the Preliminary Injunction as to Defendants entered on June 25, 2018 (Dkt. #75.)

J.     "**Receiver**" means Thomas W. McNamara of McNamara Smith LLP, appointed as Receiver pursuant to Section XVI. of the Preliminary Injunction and any deputy receivers named by the Receiver.

K.     "**Stipulating Corporate Defendants**" means Hardwire Interactive Inc. and Global Northern Trading Limited by whatever other names they may be known, and their

/ / /

4

subsidiaries, affiliates, successors, and assigns, and any fictitious business entities or business names created or used by these entities, or any of them.

     L.    **"Stipulating Individual Defendant"** means Devin Keer.

     M.    **"Stipulating Defendants"** means the Stipulating Individual Defendant and all of the Stipulating Corporate Defendants, individually, collectively, or in any combination.

     N.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of any product, service, plan, or program by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

## I.    <u>PROHIBITION AGAINST MISREPRESENTATIONS</u>

    **IT IS ORDERED** that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any fact material to consumers concerning any good or service, such as:

     A.    Any cost to the consumer to purchase, receive, use, or return the initial good or service;

     B.    That the consumer will not be Charged for any good or service;

     C.    That a good or service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed

/ / /

5

**ER104**

pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

D.     That the consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

E.     The purpose(s) for which the consumer's Billing Information will be used;

F.     The date by which the consumer will incur any obligation or be Charged unless the consumer takes an affirmative action on the Negative Option Feature;

G.     That a transaction has been authorized by the consumer;

H.     Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service;

I.     Any material restrictions, limitations, or conditions to purchase, receive, or use any good or service;

J.     Any material aspect of the performance, efficacy, nature, or central characteristics of a good or service; or

K.     Any other material fact.

Compliance with this Section is separate from, and in addition to, the disclosures required by Sections II and III, *infra*.

## II.     REQUIRED DISCLOSURES RELATING TO NEGATIVE OPTION FEATURES

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

A.     Representing directly or indirectly, expressly or by implication, that any good or service that includes a Negative Option Feature is being offered on a free, trial,

6

no obligation, reduced, or discounted basis, without disclosing Clearly and Conspicuously, and immediately adjacent to, any such representation:

      1.      The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

      2.      The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop such Charges; and

      3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

    B.      Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously, and immediately adjacent to where a consumer provides Billing Information:

      1.      The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

      2.      The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

      3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

      4.      The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

      5.      A description of the good or service;

7

**ER106**

6.      Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good;

7.      The simple cancellation mechanism to stop any recurring Charges, as required by Section IV.

C.      Failing to send the consumer:

1.      Immediately after the consumer's submission of an online order, written confirmation of the transaction by email.  The email must Clearly and Conspicuously disclose all the information required by Subsection II.B, and contain a subject line reading "Order Confirmation" along with the name of the product or service, and no additional information; or

2.      Within two (2) days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail. The email or letter must Clearly and Conspicuously disclose all the information required by Subsection II.B.  The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and nothing else. The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, the Stipulating Defendant's return address, and postage.

## III.   OBTAINING EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless Stipulating Defendants first obtain the express informed consent

/ / /

8

**ER107**

of the consumer to do so.  To obtain express informed consent, Stipulating Defendants must:

A.      For all written offers (including over the Internet or other web-based applications or services), obtain consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer.  Stipulating Defendants shall disclose Clearly and Conspicuously, and immediately adjacent to such check box, signature, or substantially similar method of affirmative consent, only the following, with no additional information:

1.      The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.      The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges; and

3.      The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.      For all oral offers, prior to obtaining any Billing Information from the consumer:

1.      Clearly and Conspicuously disclose the information contained in Subsection II.B; and

2.      Obtain affirmative unambiguous express oral confirmation that the consumer:  a) consents to being Charged for any good or service, including providing, at a minimum, the last four (4) digits of the consumer's account number to be Charged, b) understands that the transaction includes a Negative Option Feature, and c) understands the specific affirmative steps the consumer must take to prevent or stop further Charges.

9

For transactions conducted through Telemarketing, Stipulating Defendants shall maintain for three (3) years from the date of each transaction an unedited voice recording of the entire transaction, including the prescribed statements set out in Subsection III.B. Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## IV.   SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for the good or service and (2) immediately stop any recurring Charges. Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s). In addition:

A.   For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Stipulating Defendant must provide a mechanism, accessible over the Internet or through such other web-based application or service that consumers can easily use to cancel the product or service and to immediately stop all further Charges.

B.   For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Stipulating Defendants must maintain a telephone number and a postal address that consumers can easily use to cancel the product or service and to immediately stop all further Charges.

10

ER109

Stipulating Defendants must assure that all calls to this telephone number shall be answered during normal business hours and that mail to the postal address is retrieved regularly.

## V.    PREAUTHORIZED ELECTRONIC FUND TRANSFERS

**IT IS FURTHER ORDERED** that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:

A.    Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; or

B.    Failing to timely provide the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer.

## VI.    MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.    Judgment in the amount of $123,095,438.18 is entered in favor of the Commission against Stipulating Defendants, jointly and severally, as equitable monetary relief.

B.    Stipulating Defendants are ordered to pay to the Commission $3,027,388.36, which, as Stipulating Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.  Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

/ / /

11

C.     The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Stipulating Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

1.     Devin Keer's September 3, 2018, sworn Financial Statement of Individual Defendant, including attachments;

2.     Hardwire Interactive Inc.'s July 23, 2018, sworn Corporate Financial Disclosure Form, including attachments; and

3.     Global Northern Trading Limited's March 19, 2019, sworn Corporate Financial Disclosure Form, including attachments.

D.     The suspension of the judgment will be lifted as to any Stipulating Defendant if, upon motion by the Commission, the Court finds that the Stipulating Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

E.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Stipulating Defendant in the amount specified in Subsection A above, which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint, less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

F.     Stipulating Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order, and all assets held by the Receiver, and may not seek the return of any assets.

G.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

12

STIPULATED ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT
18 cv 1388 LAB

H.    The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

I.    Stipulating Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Stipulating Defendants must submit to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

J.    All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Stipulating Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VII.   **CUSTOMER INFORMATION**

**IT IS FURTHER ORDERED** that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  Stipulating Defendants represent that they

13

have provided this redress information to the Commission. If a representative of the Commission requests in writing any information related to redress, Stipulating Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection online transactions promoting or offering for sale any good or service with a Negative Option Feature; and

C. Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## VIII. <u>COOPERATION</u>

**IT IS FURTHER ORDERED** that Stipulating Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Stipulating Defendants must provide truthful and complete information, evidence, and testimony. Stipulating Individual Defendant must appear and Stipulating Corporate Defendants must cause their officers, employees, representatives, or agents to appear (including telephonically or by video) for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such times as a Commission representative may designate, without the service of a subpoena. Stipulating Defendants agree that

/ / /

14

depositions will be conducted in accordance with the Federal Rules of Civil Procedure and that a U.S. court reporter will administer any oath.

## IX.    RECEIVERSHIP TERMINATION

**IT IS FURTHER ORDERED** that the appointment of the Receiver over the Stipulating Corporate Defendants pursuant to Section XVI. of the Preliminary Injunction is hereby continued as modified by this Section.

A.    Within 7 days after entry of this Order, the Receiver shall transfer $4,000,000 to the Commission from the funds previously transferred in this matter pursuant to the TRO and the Preliminary Injunction, by wire transfer pursuant to directions provided by counsel for the Commission, or as otherwise agreed to in writing by counsel for the Commission.

B.    The Receiver is directed and authorized to accomplish the following within (90) days after entry of this Order, but any party or the Receiver may request that the Court extend the Receiver's term for good cause:

1.    Complete the process of taking custody, control, and possession of all assets located in the United States of Hardwire Receivership Defendants, pursuant to Section XVII.B. of the Preliminary Injunction;

2.    Complete the liquidation of all assets located in the United States of Hardwire Receivership Defendants;

3.    Prepare and submit a report describing the Receiver's activities pursuant to this Order, and a final application for compensation and expenses; and

4.    Distribute to Plaintiff any remaining liquid assets at the conclusion of the Receiver's duties.

C.    Upon completion of above tasks, the duties of the receivership as to the Stipulating Corporate Defendants shall terminate.

*Provided, however*, this provision shall in no way effect the Receiver's duties with respect to any Defendant over which the Receiver has authority pursuant to the

15

Preliminary Injunction other than the Stipulating Corporate Defendants, and, specifically, shall in no way affect the duties of the Receiver with respect to Defendants Triangle Media Corporation and Jasper Rain Marketing LLC.

## X.  DISSOLUTION OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze on assets of Stipulating Defendants imposed pursuant to the Temporary Restraining Order entered on June 29, 2018 (Dkt. #11) and the Preliminary Injunction entered on August 25, 2018 (Dkt. #75) is modified to permit the payments and other transfers identified in Section VI above.  The freeze on the Stipulating Corporate Defendants' assets shall remain in effect until such time as the Receiver receives payment of all Court-approved fees and expenses of the Receiver and the Receiver is discharged pursuant to Section IX of this Order.  Upon completion of all payments and other obligations identified in Sections VI and IX, the asset freeze is dissolved as to Stipulating Defendants.  A financial institution shall be entitled to rely upon a letter from a representative of the Commission stating that the freeze on a Stipulating Defendant's assets has been lifted.

## XI.  ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Stipulating Defendants obtain acknowledgments of receipt of this Order:

A.      Each Stipulating Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 3 years after entry of this Order, Stipulating Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Stipulating Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who

16

participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Stipulating Defendant delivered a copy of this Order, that Stipulating Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XII.  **COMPLIANCE REPORTING**

**IT IS FURTHER ORDERED** that Stipulating Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Stipulating Defendant must submit a compliance report, sworn under penalty of perjury.

1.     Each Stipulating Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Stipulating Defendant; (b) identify all of that Stipulating Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Stipulating Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Stipulating Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.     Additionally, Stipulating Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which

17

Stipulating Individual Defendant performs services whether as an employee or otherwise and any entity in which Stipulating Individual Defendant has any ownership interest; and (c) describe in detail Stipulating Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

B.    For 10 years after entry of this Order, each Stipulating Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Each Stipulating Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Stipulating Corporate Defendant or any entity that Stipulating Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, Stipulating Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Stipulating Individual Defendant performs services whether as an employee or otherwise and any entity in which Stipulating Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Each Stipulating Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Stipulating Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of

/ / /

18

America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

      E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. Triangle Media Corporation, et al.*, FTC Matter No. X180035.

## XIII. <u>RECORDKEEPING</u>

      **IT IS FURTHER ORDERED** that Stipulating Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Stipulating Corporate Defendant and Stipulating Individual Defendant for any business that Stipulating Individual Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

      A.      Accounting records showing the revenues from all goods or services sold;

      B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

      C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

      D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

      E.      A copy of each unique advertisement or other marketing material.

## XIV. <u>COMPLIANCE MONITORING</u>

      **IT IS FURTHER ORDERED** that, for the purpose of monitoring Stipulating Defendants' compliance with this Order, including the financial representations upon

19

which part of the judgment was suspended and any failure to transfer assets as required by this Order:

A. Within 14 days of receipt of a written request from a representative of the Commission, each Stipulating Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic and video depositions), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission is authorized to communicate directly with each Stipulating Defendant. Stipulating Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Stipulating Defendants or any individual or entity affiliated with Stipulating Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Stipulating Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

/ / /

/ / /

/ / /

20

ER119

## XV.  RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that [Magistrate Judge Linda Lopez shall] retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.  [The Court will administratively close the case 30 days after the Receiver's duties are terminated, as described in Section IX.  Any party may request that the Court reopen the case upon a showing of good cause.]

**SO ORDERED** this 29th day of May, 2019.

_Larry A. Burns_

Honorable Larry Alan Burns
Chief United States District Judge

21

**SO STIPULATED AND AGREED:**

**FEDERAL TRADE COMMISSION**

20

1

2          Date: 5/26/19

3    Samantha Gordon
     Matthew H. Wernz
4    Federal Trade Commission, Midwest Region
     230 S. Dearborn Street, Suite 3030
5    Chicago, Illinois 60604
     312.960.5634
6    sgordon@ftc.gov
7    mwernz@ftc.gov
8    *Attorneys for Plaintiff*
     *Federal Trade Commission*
9

10   **FOR STIPULATING DEFENDANTS:**

11

12          Date: March 19, 2019

13   Ari N. Rothman
     Witt W. Chang
14   Venable LLP
15   2049 Century Park East, Suite 2300
     Los Angeles, CA 90067
16   anrothman@venable.com
17   wwchang@venable.com
     310.229.9900
18

19   and

20   Gerald S. Sachs
21   Stephen R. Freeland
     600 Massachusetts Ave., NW
22   Washington, D.C. 20001
23   gssachs@venable.com
     srfreeland@venable.com
24   202.344.4000
25   *Attorneys for Hardwire Interactive Inc. and Devin Keer*

26

27                              21

28                              STIPULATED ORDER FOR
              PERMANENT INJUNCTION AND MONETARY JUDGMENT
                                 18 cv 1388 LAB

**ER122**

1    _Karl S. Kronenberg_              Date: 3-19-19

2    Karl S. Kronenberger
      KRONENBERGER ROSENFELD, LLP

3    150 Post Street, Ste. 520

4    San Francisco, CA 94108
      karl@krinternetlaw.com

5    415.955.1155

6

7    *Attorneys for Global Northern Trading Limited*

8    **STIPULATING DEFENDANTS:**

9

10   _____    Date: _____

11   Hardwire Interactive Inc. by
     Devin Keer, Director

12

13   _____    Date: March 19, 2019

14   Global Northern Trading Limited by
     Charlie Argue, Director

15

16

17   _____    Date: _____
     Devin Keer, individually

18

19

20

21

22

23

24

25

26

27                      22

28                             STIPULATED ORDER FOR
                    PERMANENT INJUNCTION AND MONETARY JUDGMENT
                                18 cv 1388 LAB

```
1
```
_____          Date: _____
```
2
```
Karl S. Kronenberger
```
3
```
KRONENBERGER ROSENFELD, LLP
150 Post Street, Ste. 520
```
4
```
San Francisco, CA 94108
karl@krinternetlaw.com
```
5
```
415.955.1155
```
6
```
*Attorneys for Global Northern Trading Limited*
```
7
```

```
8
```
**STIPULATING DEFENDANTS:**

```
9
```

```
10
```
_____          Date: _19 March 2019_____
Hardwire Interactive Inc. by
```
11
```
Devin Keer, Director
```
12
```

```
13
```
_____          Date: _____
```
14
```
Global Northern Trading Limited by
Charlie Argue, Director
```
15
```

```
16
```
_____          Date: _19 March 2019_____
```
17
```
Devin Keer, individually
```
18
19
20
21
22
23
24
25
26
```
```
27
```
22
```
28
```
STIPULATED ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT
18 cv 1388 LAB

**ER124**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.:     18 cv 1388 LAB |
| Plaintiff, | Hon. Larry Alan Burns |
| v. | **[MODIFIED] STIPULATED ORDER FOR PERMANENT INJUNCTION AND MONETARY JUDGMENT AS TO DEFENDANTS TRIANGLE MEDIA CORPORATION, JASPER RAIN MARKETING LLC, AND BRIAN PHILLIPS** |
| TRIANGLE MEDIA CORPORATION, JASPER RAIN MARKETING LLC, HARDWIRE INTERACTIVE, INC., GLOBAL NORTHERN TRADING LTD., BRIAN PHILLIPS, and DEVIN KEER | |
| Defendants. | |

Plaintiff, Federal Trade Commission ("Commission"), filed its First Amended Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c) (the "Complaint"). The Commission and Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips ("Stipulating Defendants")

1

stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgment ("Order") to resolve all matters in dispute in this action between them.

**THEREFORE, IT IS ORDERED** as follows:

## FINDINGS

A.    This Court has jurisdiction over this matter.

B.    The Complaint alleges that Stipulating Defendants participated in deceptive and unfair acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of the ROSCA, 15 U.S.C. § 8403, and Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), in the marketing and sale online of skin care products, electronic cigarettes, and supplements.

C.    Stipulating Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, the Stipulating Defendants admit the facts necessary to establish jurisdiction.

D.    Stipulating Defendants waive any claim they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

E.    Stipulating Defendants waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For purposes of this Order, the following definitions apply:

A.    "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

B.    **"Charge," "Charged," or "Charging,"** means any attempt to collect money or other consideration from a consumer, including but not limited to causing Billing Information to be submitted for payment, including against a consumer's credit card, debit card, bank account, telephone bill, or other account.

2

C.   **"Clear(ly) and Conspicuous(ly)"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.   In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

2.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

3.   An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

4.   In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

5.   The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

6.   The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

7.   The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

/ / /

/ / /

3

ER127

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      "**Corporate Defendants**" means Triangle Media Corporation, a California corporation, Jasper Rain Marketing LLC, a California limited liability company, Global Northern Trading Limited, a Canadian Corporation, and Hardwire Interactive Inc., a British Virgin Islands company, and by whatever other names they may be known, and their subsidiaries, affiliates, successors, and assigns, and any fictitious business entities or business names created or used by these entities, or any of them.

E.      "**Defendants**" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

F.      "**Individual Defendants**" means Brian Phillips and Devin Keer.

G.      "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

H.      "**Preauthorized Electronic Fund Transfer,**" as defined by the Electronic Fund Transfer Act, 15 U.S.C. § 1693a(10), means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

I.      "**Preliminary Injunction**" means the Preliminary Injunction as to Defendants entered on June 25, 2018 (Dkt. #75.)

J.      "**Receiver**" means Thomas W. McNamara of McNamara Smith LLP, appointed as Receiver pursuant to Section XVI. of the Preliminary Injunction and any deputy receivers named by the Receiver.

L.      "**Stipulating Corporate Defendants**" means Triangle Media Corporation and Jasper Rain Marketing LLC by whatever other names they may be known, and their subsidiaries, affiliates, successors, and assigns, and any fictitious business entities or

4

ER128

business names created or used by these entities, or any of them including but not limited to, BH Wellness LLC, a Nevada limited liability company, Bizway Services LLC, a Texas limited liability company, Blended Wellness Marketing LLC, a Nevada limited liability company, Brand Junction Wellness LLC, a Nevada limited liability company, Centered Energy Marketing LLC, a California limited liability company, Clear Option Wellness LLC, an Alaska limited liability company, Concur Marketing Solutions LLC, an Alaska limited liability company, Direct Access Products LLC, a Nevada limited liability company, Endeavour Steel Marketing LLC, a California limited liability company, Everjoy Nutrition LLC, a California limited liability company, Fast Order Marketing LLC, a Nevada limited liability company, Great Plains Nutrition LLC, a Nevada limited liability company, Green Valley Wellness LLC, an Arizona limited liability company, H1 Marketing LLC, a Wisconsin limited liability company, Jester Youth Marketing LLC, a Florida limited liability company, Jet Time Marketing LLC, an Alaska limited liability company, Joint Capital Marketing LLC, a California limited liability company, Jolt Line Marketing LLC, a California limited liability company, Kinetic Products Marketing LLC, a Nevada limited liability company, Little Kite Wellness LLC, a Nevada limited liability company, Mass Drift Marketing LLC, a Michigan limited liability company, Mind Wellness Marketing LLC, a California limited liability company, Rainbow Drop Wellness LLC, a California limited liability company, Real Vitality Marketing LLC, a California limited liability company, Rivers Edge Marketing LLC, a Pennsylvania limited liability company, Simple Gig Marketing LLC, a Nevada limited liability company, Squad6 Services LLC, a Wyoming limited liability company, Sunrise Pointe Wellness LLC, a Nevada limited liability company, Sunset Orders Marketing LLC, a Colorado limited liability company, Total Market Products LLC, a California limited liability company, Turbid Elite Marketing LLC, a Colorado

5

limited liability company, and Zoom Standard Marketing LLC, an Alaska limited liability company.

     L.    **"Stipulating Individual Defendant"** means Brian Phillips.

     M.    **"Stipulating Defendants"** means the Stipulating Individual Defendant and all of the Stipulating Corporate Defendants, individually, collectively, or in any combination.

     N.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of any product, service, plan, or program by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

## I.   <u>PROHIBITION AGAINST MISREPRESENTATIONS</u>

    **IT IS ORDERED** that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

     A.    Any cost to the consumer to purchase, receive, use, or return the initial good or service;

     B.    That the consumer will not be Charged for any good or service;

     C.    That a good or service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," "discounted" basis, or words of similar import, denoting or implying the absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

6

**ER130**

D.     That the consumer can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

E.     The purpose(s) for which the consumer's Billing Information will be used;

F.     The date by which the consumer will incur any obligation or be Charged unless the consumer takes an affirmative action on the Negative Option Feature;

G.     That a transaction has been authorized by the consumer;

H.     Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service;

I.     Any material restrictions, limitations, or conditions to purchase, receive, or use any good or service;

J.     Any material aspect of the performance, efficacy, nature, or central characteristics of a good or service; or

K.     Any other material fact.

Compliance with this Section is separate from, and in addition to, the disclosures required by Sections II and III, *infra*.

## II.     REQUIRED DISCLOSURES RELATING TO NEGATIVE OPTION FEATURES

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from, or assisting others in:

A.     Representing directly or indirectly, expressly or by implication, that any good or service that includes a Negative Option Feature is being offered on a free, trial, no obligation, reduced, or discounted basis, without disclosing Clearly and Conspicuously, and immediately adjacent to, any such representation:

7

1.    The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.    The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop such Charges; and

3.    The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.    Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously, and immediately adjacent to where a consumer provides Billing Information:

1.    The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.    The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

3.    The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

4.    The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

5.    A description of the good or service;

6.    Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good;

8

7.      The simple cancellation mechanism to stop any recurring Charges, as required by Section IV.

C.      Failing to send the consumer:

1.      Immediately after the consumer's submission of an online order, written confirmation of the transaction by email.  The email must Clearly and Conspicuously disclose all the information required by Subsection II.B, and contain a subject line reading "Order Confirmation" along with the name of the product or service, and no additional information; or

2.      Within two (2) days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail. The email or letter must Clearly and Conspicuously disclose all the information required by Subsection II.B.  The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and nothing else. The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, the Stipulating Defendant's return address, and postage.

## III.   OBTAINING EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless Stipulating Defendants first obtain the express informed consent of the consumer to do so.  To obtain express informed consent, Stipulating Defendants must:

/ / /

9

A.     For all written offers (including over the Internet or other web-based applications or services), obtain consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer.  Stipulating Defendants shall disclose Clearly and Conspicuously, and immediately adjacent to such check box, signature, or substantially similar method of affirmative consent, only the following, with no additional information:

1.     The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.     The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges; and

3.     The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.     For all oral offers, prior to obtaining any Billing Information from the consumer:

1.     Clearly and Conspicuously disclose the information contained in Subsection II.B; and

2.     Obtain affirmative unambiguous express oral confirmation that the consumer:  a) consents to being Charged for any good or service, including providing, at a minimum, the last four (4) digits of the consumer's account number to be Charged, b) understands that the transaction includes a Negative Option Feature, and c) understands the specific affirmative steps the consumer must take to prevent or stop further Charges.

For transactions conducted through Telemarketing, Stipulating Defendants shall maintain for three (3) years from the date of each transaction an unedited voice recording

10

of the entire transaction, including the prescribed statements set out in Subsection III.B. Each recording must be retrievable by date and by the consumer's name, telephone number, or Billing Information, and must be provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## IV. **SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE**

**IT IS FURTHER ORDERED** that Stipulating Defendants, Stipulating Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from failing, or assisting others in failing, to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for the good or service and (2) immediately stop any recurring Charges. Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s). In addition:

A.     For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Stipulating Defendant must provide a mechanism, accessible over the Internet or through such other web-based application or service that consumers can easily use to cancel the product or service and to immediately stop all further Charges.

B.     For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Stipulating Defendants must maintain a telephone number and a postal address that consumers can easily use to cancel the product or service and to immediately stop all further Charges. Stipulating Defendants must assure that all calls to this telephone number shall be

11

**ER135**

answered during normal business hours and that mail to the postal address is retrieved regularly.

### V.  PREAUTHORIZED ELECTRONIC FUND TRANSFERS

**IT IS FURTHER ORDERED** that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from, or assisting others in:

A.      Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; or

B.      Failing to timely provide the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer.

### VI.  MONETARY JUDGMENT AND PARTIAL SUSPENSION

**IT IS FURTHER ORDERED** that:

A.      Judgment in the amount of $48,110,267.14 is entered in favor of the Commission against Stipulating Defendants, jointly and severally, as equitable monetary relief.

B.      Stipulating Defendants are ordered to pay to the Commission $399, 795.00, which, as Stipulating Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission.  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.  Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

C.      The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Stipulating

12

Defendants' sworn financial statements and related documents (collectively, "financial representations") submitted to the Commission, namely:

      1.    Brian Phillips' July 24, 2018, sworn Financial Statement of Individual Defendant, including attachments;

      2.    Triangle Media Corporation's July 24, 2018, sworn Corporate Financial Disclosure Form, including attachments; and

      3.    Jasper Rain Marketing LLC's July 24, 2018, sworn Corporate Financial Disclosure Form, including attachments.

    D.    The suspension of the judgment will be lifted as to any Stipulating Defendant if, upon motion by the Commission, the Court finds that the Stipulating Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

    E.    If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Stipulating Defendant in the amount specified in Subsection A above, which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint, less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

    F.    Stipulating Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order, and all assets held by the Receiver, and may not seek the return of any assets.

    Stipulating Defendants further relinquish dominion and all legal and equitable right, title, and interest in the proceeds of the sale of the property located at 1350 Columbia Street, Unit 302, San Diego, California from Receivership Entity Flat6 Development, LLC to Jacko Properties, LLC, which was approved and confirmed by court order on March 14, 2019.

/ / /

13

Stipulating Defendants further relinquish dominion and all legal and equitable right, title, and interest in the proceeds of the sale of the property located at 6700 Via Cordoba, Rancho Santa Fe, California.

*Provided, however*, that Individual Defendant, Brian Phillips, does not waive his right to assert in the matter *Phillips v. Phillips*, 17 FL 011576N (Sup. Ct. Cal.) that he is entitled to an offset in any court-ordered division of the marital assets equal to the amount Nicole Phillips retains of the monies currently held in trust by Solomon Ward Seidenwurm & Smith LLP.

G.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

H.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

I.     Stipulating Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Stipulating Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

J.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed the Commission may apply any remaining money for such other equitable

14

relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Stipulating Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VII. CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Stipulating Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.     Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Stipulating Defendants represent that they have provided this redress information to the Commission. If a representative of the Commission requests in writing any information related to redress, Stipulating Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.     Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection online transactions promoting or offering for sale any good or service with a Negative Option Feature; and

C.     Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

15

# VIII. <u>COOPERATION</u>

**IT IS FURTHER ORDERED** that Stipulating Defendants must fully cooperate with representatives of the Commission in this case and in any investigation related to or associated with the transactions or the occurrences that are the subject of the Complaint. Stipulating Defendants must provide truthful and complete information, evidence, and testimony. Stipulating Individual Defendant must appear and Stipulating Corporate Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that a Commission representative may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as a Commission representative may designate, without the service of a subpoena.

# IX. <u>RECEIVERSHIP TERMINATION</u>

**IT IS FURTHER ORDERED** that the appointment of the Receiver over the Stipulating Corporate Defendants pursuant to Section XVI. of the Preliminary Injunction is hereby continued as modified by this Section.

A.     Within 7 days after entry of this Order, the Receiver shall transfer $4,000,000 to the Commission from the funds previously transferred in this matter pursuant to the TRO and the Preliminary Injunction, by wire transfer pursuant to directions provided by counsel for the Commission, or as otherwise agreed to in writing by counsel for the Commission.

B.     The Receiver is directed and authorized to accomplish the following within (90) days after entry of this Order, but any party or the Receiver may request that the Court extend the Receiver's term for good cause:

1.     Complete the process of taking custody, control, and possession of all assets of Stipulating Corporate Defendants, pursuant to Section XVII.B. of the Preliminary Injunction;

/ / /

16

**ER140**

2.      Complete the liquidation of all assets of Stipulating Corporate Defendants;

3.      Prepare and submit a report describing the Receiver's activities pursuant to this Order, and a final application for compensation and expenses; and

4.      Distribute to Plaintiff any remaining liquid assets at the conclusion of the Receiver's duties.

C.      Upon completion of above tasks, the duties of the receivership as to the Stipulating Corporate Defendants shall terminate.

This provision shall in no way affect the Receiver's duties with respect to any Defendant over which the Receiver has authority pursuant to the Preliminary Injunction other than the Stipulating Corporate Defendants, and, specifically, shall in no way affect the duties of the Receiver with respect to Hardwire Interactive, Inc. and Global Northern Trading Limited.

## X.      **DISSOLUTION OF ASSET FREEZE**

**IT IS FURTHER ORDERED** that the freeze on assets of Stipulating Defendants imposed pursuant to the Temporary Restraining Order entered on June 29, 2018 (Dkt. #11) and the Preliminary Injunction entered on August 25, 2018 (Dkt. #75) is modified to permit the payments and other transfers identified in Section VI above.  The freeze on the Stipulating Corporate Defendants' assets shall remain in effect until such time as the Receiver receives payment of all Court-approved fees and expenses of the Receiver and the Receiver is discharged pursuant to Section IX of this Order.  Upon completion of all payments and other obligations identified in Sections VI and IX, the asset freeze is dissolved as to Stipulating Defendants.  A financial institution shall be entitled to rely upon a letter from a representative of the Commission stating that the freeze on a Stipulating Defendant's assets has been lifted.

/ / /

/ / /

17

ER141

# XI.  ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Stipulating Defendants obtain acknowledgments of receipt of this Order:

A.     Each Stipulating Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 3 years after entry of this Order, Stipulating Individual Defendant for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and Stipulating Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Stipulating Defendant delivered a copy of this Order, that Stipulating Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

# XII.  COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Stipulating Defendants make timely submissions to the Commission:

A.     One year after entry of this Order, each Stipulating Defendant must submit a compliance report, sworn under penalty of perjury.

1.     Each Stipulating Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Stipulating Defendant;

18

STIPULATED ORDER FOR
PERMANENT INJUNCTION AND MONETARY JUDGMENT
18 cv 1388 LAB

**ER142**

(b) identify all of that Stipulating Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Stipulating Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Stipulating Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Stipulating Individual Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which Stipulating Individual Defendant performs services whether as an employee or otherwise and any entity in which Stipulating Individual Defendant has any ownership interest; and (c) describe in detail Stipulating Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

B.      For 10 years after entry of this Order, each Stipulating Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Each Stipulating Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Stipulating Corporate Defendant or any entity that Stipulating Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

/ / /

19

**ER143**

2.      Additionally, Stipulating Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Stipulating Individual Defendant performs services whether as an employee or otherwise and any entity in which Stipulating Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.      Each Stipulating Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Stipulating Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: *FTC v. Triangle Media Corporation, et al.*, FTC Matter No. X180035.

## XIII.      RECORDKEEPING

**IT IS FURTHER ORDERED** that Stipulating Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Stipulating Corporate Defendant and Stipulating Individual Defendant for any business that Stipulating Individual Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

20

**ER144**

A.    Accounting records showing the revenues from all goods or services sold;

B.    Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

E.    A copy of each unique advertisement or other marketing material.

## XIV.    COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Stipulating Defendants' compliance with this Order, including the financial representations upon which part of the judgment was suspended and any failure to transfer assets as required by this Order:

A.    Within 14 days of receipt of a written request from a representative of the Commission, each Stipulating Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic and video depositions), 31, 33, 34, 36, 45, and 69.

B.    For matters concerning this Order, the Commission is authorized to communicate directly with each Stipulating Defendant.  Stipulating Defendants must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

/ / /

21

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Stipulating Defendants or any individual or entity affiliated with Stipulating Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D.     Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Stipulating Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XV.     **RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that [Magistrate Judge Linda Lopez shall] retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.  [The Court will administratively close the case 30 days after the Receiver's duties are terminated, as described in Section IX.  Any party may request that the Court reopen the case upon a showing of good cause.]

**SO ORDERED** this 29th day of May, 2019.

_Larry A. Burns_

Honorable Larry Alan Burns
Chief United States District Judge

22

1

2

3

4

5     **SO STIPULATED AND AGREED:**

6

7     **FEDERAL TRADE COMMISSION**

8

9                                              Date: 5/20/19

10    Samantha Gordon
      Matthew H. Wernz
11    Federal Trade Commission, Midwest Region
      230 S. Dearborn Street, Suite 3030
12    Chicago, Illinois 60604
13    312.960.5634
      sgordon@ftc.gov
14    mwernz@ftc.gov
15    *Attorneys for Plaintiff*
      *Federal Trade Commission*
16

17

18    **FOR STIPULATING DEFENDANTS:**

19                                              Date: 4/3/2019

20

21
      Frederick K. Taylor
22    Nicholas S. Kawuka
23    Matthew B. Shields
      Procopio, Cory, Hargreaves & Savitch LLP
24    525 B. Street, Suite 2200
25    San Diego, CA 92101
      fred.taylor@procopio.com
26    nicholas.kawuka@procopio.com

27                              22

28                                   STIPULATED ORDER FOR
                        PERMANENT INJUNCTION AND MONETARY JUDGMENT
                                        18 cv 1388 LAB

matthew.shields@procopio.com
619.238.1900
*Attorneys for Triangle Media Corporation,*
*Jasper Rain Marketing LLC, and Brian Phillips*

**STIPULATING DEFENDANTS:**

Date: APR 3/19

Triangle Media Corporation by
Brian Phillips, CEO

Date: april 3, 2019

Jasper Rain Marketing LLC by
Sierra Owen, Managing Member

Date: APR 3/19

Brian Phillips, individually

23

1  SAMANTHA GORDON (IL Bar No. 6272135)
2  sgordon@ftc.gov
   MATTHEW H. WERNZ (IL Bar No. 6294061)
3  mwernz@ftc.gov
   Federal Trade Commission
4  230 South Dearborn, Suite 3030
5  Chicago, Illinois 60604
   312.960.5623 (Gordon)
6  312.960.5596 (Wernz)
7  ATTORNEYS FOR PLAINTIFF

8                 UNITED STATES DISTRICT COURT
9                SOUTHERN DISTRICT OF CALIFORNIA

10
   FEDERAL TRADE COMMISSION,          Case No.:    18-cv-1388-LAB (LL)
11
                                       **JOINT MOTION MOTION FOR**
12                          Plaintiff,  **ENTRY OF STIPULATED**
                                       **ORDERS FOR PERMANENT**
13 v.                                  **INJUNCTION AND FINAL**
                                       **JUDGMENT**
14 TRIANGLE MEDIA
   CORPORATION; JASPER RAIN
15 MARKETING LLC; HARDWIRE            Date:  May 20, 2019
   INTERACTIVE INC., GLOBAL           Time:  Under submission
16 NORTHERN TRADING, LTD.,
   BRIAN PHILLPS, AND DEVIN           Action Filed:  June 25, 2018
17 KEER,                              Trial Date:  None set
18                          Defendants.
19
20
21
22

23      Plaintiff Federal Trade Commission ("FTC") and Defendants Triangle

24 Media Corporation, Jasper Rain Marketing LLC, Hardwire Interactive Inc., Global

25 Northern Trading Ltd., Brian Phillips, and Devin Keer (collectively, "Stipulating

26 Defendants"), move this Court to enter their [Proposed] Stipulated Orders for

27

28
                                      1
                                            JOINT MOTION FOR ENTRY
                                       OF [PROPOSED] STIPULATED ORDERS
                                          Case No. 18cv1388-LAB (LL)

**ER149**

Permanent Injunction and Final Judgment.  In support of this motion, the FTC and Stipulating Defendants state:

1.   Plaintiff has agreed to two settlements that, if approved by the Court, would fully resolve this matter as to all parties.

2.   Plaintiff and Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips have agreed to the terms of a [Proposed] Stipulated Order for Permanent Injunction and Final Judgment as to Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips, a copy of which has been emailed to the court.

3.   Separately, Plaintiff and Defendants Hardwire Interactive Inc., Global Northern Trading Ltd., and Devin Keer have agreed to the terms of a [Proposed] Stipulated Order for Permanent Injunction and Final Judgment as to Defendants Hardwire Interactive Inc., Global Northern Trading Ltd., and Devin Keer a copy of which has been emailed to the court.

**WHEREFORE,** Plaintiff and Defendants respectfully request that this Court enter the [Proposed] Stipulated Orders for Permanent Injunction and Final Judgment.

Dated: May 20, 2019

Respectfully submitted,

/s/ Samantha Gordon
Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
sgordon@ftc.gov
mwernz@ftc.gov
312-960-5623 (Gordon)
312-960-5596 (Wernz)

2

JOINT MOTION FOR ENTRY
OF [PROPOSED] STIPULATED ORDERS
Case No. 18cv1388-LAB (LL)

Attorneys for Plaintiff
Federal Trade Commission


/s/ Frederick K. Taylor
Frederick K. Taylor
Nicholas S. Kawuka
Matthew B. Shields
Procopio, Cory, Hargreaves & Savitch LLP
525 B. Street, Suite 2200
Suite 2300
San Diego, CA 92101
fred.taylor@procopio.com
nicholas.kawuka@procopio.com
matthew.shields@procopio.com
619-238-1900

Attorneys for Triangle Media Corporation,
Jasper Rain Marketing LLC, and Brian
Phillips

/s/ Ari N. Rothman
Ari N. Rothman
Venable LLP
2049 Century Park East
Suite 2300
Los Angeles, CA 90067
anrothman@Venable.com
310-229-9909

and

Gerald S. Sachs
Venable LLP
600 Massachusetts Avenue, NW
Washington DC 20001
gsachs@Vennable.com
202-344-4269

3

JOINT MOTION FOR ENTRY
OF [PROPOSED] STIPULATED ORDERS
Case No. 18cv1388-LAB (LL)

Attorneys for Defendant Hardwire
Interactive Inc. and Defendant Devin Keer

/s/ Karl S. Kronenberger
KRONENBERGER ROSENFELD, LLP
150 Post Street, Ste. 520
San Francisco, CA 94108
karl@krinternetlaw.com
415.955.1155
Attorney for Global Northern Trading
Limited

4

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above and foregoing document has been served on May 20, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.2.

/s/ Samantha Gordon
Samantha Gordon

JOINT MOTION FOR ENTRY
OF [PROPOSED] STIPULATED ORDERS
Case No. 18cv1388-LAB (LL)

**ER153**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

Dated:  March 8, 2023          <u>*/s/ Brian D. Schmalzbach*</u>
Brian D. Schmalzbach