**No. 22-56012**

In the

# United States Court of Appeals
## For the Ninth Circuit

———————————

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TRIANGLE MEDIA CORPORATION, *et al.,*

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., proposed Intervenors,

*Movants-Appellants,*

———————————

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

———————————

On Appeal from the United States District Court
for the Southern District of California
The Honorable Larry Alan Burns
Case No. 3:18-cv-01388-LAB-WVG

———————————

**VOLUME III OF III – EXCERPTS OF RECORD OF APPELLANTS
WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.**

———————————

*(Counsel listed on following page)*

———————————

March 8, 2023

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
Jenny Yi
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com
jyi@mcguirewoods.com

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*

1   ALDEN F. ABBOTT
2   General Counsel

3   SAMANTHA GORDON (IL Bar No. 6272135)
    sgordon@ftc.gov
4   MATTHEW H. WERNZ (IL Bar No. 6294061)
5   mwernz@ftc.gov
    Federal Trade Commission
6   230 South Dearborn, Suite 3030
7   Chicago, Illinois 60604
    312.960.5623 (Gordon)
8   312.960.5596 (Wernz)
9   ATTORNEYS FOR PLAINTIFF

10

11          **UNITED STATES DISTRICT COURT**

12          **SOUTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  FEDERAL TRADE COMMISSION,<br><br>15                                    Plaintiff,<br><br>16  v.<br><br>17  TRIANGLE MEDIA CORPORATION, a<br>18  Delaware corporation, also doing business<br>     as Triangle CRM, Phenom Health, Beauty<br>19  and Truth, and E-Cigs;<br><br>20  JASPER RAIN MARKETING LLC, a<br>21  California limited liability company, also<br>     doing business as Cranium Power and<br>22  Phenom Health;<br><br>23  HARDWIRE INTERACTIVE INC., a<br>24  British Virgin Islands corporation, also<br>     doing business as Phenom Health, Beauty<br>25  and Truth, and E-Cigs;<br><br>26  GLOBAL NORTHERN TRADING<br>27  LIMITED, a Canadian corporation; | Case No.:  18-cv-1388-LAB (LL)<br>FIRST AMENDED COMPLAINT<br><br>**FIRST AMENDED COMPLAINT<br>FOR PERMANENT INJUNCTION<br>AND OTHER EQUITABLE RELIEF**<br><br>Judge:  Hon. Larry Alan Burns<br><br>Courtroom: 14A – Carter/Keep |

28

1

BRIAN PHILLIPS, individually and as an officer of Triangle Media Corporation;

and

DEVIN KEER, individually and as an officer of Triangle Media Corporation and Hardwire Interactive,

                              Defendants.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

2

Case: 22-56012, 03/08/2023, ID: 12670208, DktEntry: 16-4, Page 5 of 231

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b); and Section 5(a) of ROSCA, 15 U.S.C. § 8404(a).

3.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

**PLAINTIFF**

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which prohibits certain methods of negative option marketing on the Internet, as well as the EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, and the EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 8404, and 1693o(c).

## DEFENDANTS

6. Defendant **Triangle Media Corporation** ("Triangle Media"), also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs, is a Delaware corporation registered at 108 West 13th Street, Wilmington, Delaware 19801. Its principal place of business was 1350 Columbia Street, San Diego, California 92101 until May 17, 2018, when it filed paperwork with the California Secretary of State changing its principal place of business to 4519 George Road, Tampa, Florida 33634. At all times material to this complaint, acting alone or in concert with others, Triangle Media Corporation has advertised, marketed, distributed, or sold skincare products, electronic cigarettes, and dietary supplements to consumers throughout the United States. Triangle Media transacts or has transacted business in this district and throughout the United States.

7. Defendant **Jasper Rain Marketing LLC** ("Jasper Rain"), also doing business as Cranium Power and Phenom Health, is a California limited liability company registered and with its principal place of business at 4370 La Jolla Village Drive, Suite 400, San Diego, California 92122. At all times material to this complaint, acting alone or in concert with others, Jasper Rain has advertised, marketed, distributed or sold dietary supplements to consumers throughout the United States. Jasper Rain transacts or has transacted business in this district and throughout the United States.

8. Defendant **Hardwire Interactive Inc.** ("Hardwire Interactive"), also doing business as Phenom Health, Beauty and Truth, and E-Cigs, is a British Virgin Islands

4

**ER160**

corporation with its principal place of business at R.G. Hodge Plaza 3/Floor, Upper Main Street, Wickham's Cay 1, Road Town, Tortola, British Virgin Islands. At all times material to this complaint, acting alone or in concert with others, Hardwire Interactive has advertised, marketed, distributed or sold skincare products, electronic cigarettes, and dietary supplements to consumers throughout the United States. Hardwire Interactive transacts or has transacted business in this district and throughout the United States.

9. Defendant **Global Northern Trading Limited** ("Global Northern"), is a Canadian corporation with its principal place of business at 205-2964 Trethewey St., Abbotsford, British Columbia, V2T 6PA, Canada. At all times material to this complaint, acting alone or in concert with others, Global Northern has advertised, marketed, distributed or sold skin care products, electronic cigarettes, and dietary supplements to consumers throughout the United States. Global Northern transacts or has transacted business in this district and throughout the United States.

10. Defendant **Brian Phillips** is an owner and officer of Triangle Media. At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of **Triangle Media**, **Jasper Rain**, **Hardwire Interactive**, and **Global Northern**, including the acts and practices set forth in this Complaint. Defendant Phillips resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. Among other things, Defendant Phillips has had the authority to control the advertising and marketing of Defendants'

5

products, including by registering websites used to track Defendants' online advertising and marketing activities; the processing of payments from consumers victimized by Defendants' practices, including by having signatory authority over bank accounts used to receive and process consumer payments; and Defendants' customer service operations, including Defendants' restrictive cancellation and refund policies.

11. Defendant **Devin Keer** has been an owner and officer of Triangle Media Corporation and Hardwire Interactive. At all times relevant to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of **Triangle Media**, **Jasper Rain**, **Hardwire Interactive**, and **Global Northern,** including the acts and practices set forth in this Complaint. Defendant Keer, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. Among other things, Defendant Keer has had the authority to control the advertising and marketing of Defendants' products, including overseeing the Corporate Defendants' overall business strategy and operations, paying for registration of the deceptive websites, entering into contracts with advertisers, and managing distribution and fulfillment of Defendants' products.

12. Defendants **Triangle Media**, **Jasper Rain, Hardwire Interactive**, and **Global Northern** (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of the law alleged below. Defendants have conducted the business practices

6

described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations and that use common business names and commingle funds. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Phillips and Keer have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

13.     At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

14.     Defendants advertise, market, promote, distribute, and sell skincare products, electronic cigarettes, and dietary supplements online. Defendants claim to offer trials of these products for just the cost of shipping and handling, typically $4.95 or less. Instead, Defendants charge consumers who accept the trial offers as much as $98.71 for a single shipment and enroll them in a continuity program costing the same amount on a monthly basis. Additionally, Defendants frequently also charge consumers for additional products and enroll consumers in continuity programs related to these additional products, all without the consumers' knowledge or consent. Consumers who discover Defendants' charges and seek a refund often find that they are unable to get their money

7

back because of Defendants' undisclosed refund restrictions. Defendants have brought in tens of millions of dollars through their deceptive trial offers.

### *Defendants' Deceptive Trial Offers*

15.     Defendants advertise through third-party websites, blog posts, banner advertisements, and surveys, offering consumers a "trial" of products such as "Wrinkle Rewind," "ProVapor," "Cerebral X," "Test X Core," and "Garcinia Clean XT." These advertisements often say that consumers can receive a "trial" for just the cost of shipping and handling. When consumers click on these advertisements, they are directed to Defendants' websites, which include findbeautyandtruth.com, trycerebralx.com, tryphenomcore.com, tryprovapor.com, and trygarciniaclean.com.

16.     Defendants' websites offer consumers a "RISK FREE" trial of one of Defendants' products. The websites create a sense of urgency by telling consumers there is a limited supply of the trial product and that they need to act quickly. Representative statements include:

- Warning: Due to extremely high media demand, there is limited supply of [PRODUCT] in stock as of [today's date]. HURRY!

- ONLY [X] NUMBER OF TRIALS AVAILABLE NOW!

- ATTENTION: Due to high demand from recent media coverage we can no longer guarantee supply. As of [TODAY'S DATE] we currently have product in-stock and will ship within 24 hours of purchase.

8

The websites also prominently display the logos of news organizations such as CBS News, NBC, Fox News, and CNN, suggesting that these products have been featured on those outlets.

17.    Consumers who are interested in the trial offer are asked to provide their contact information.  Upon doing so, consumers are directed to a payment page on which Defendants request their credit or debit card information and represent that consumers need to pay only a shipping and handling charge, typically $4.95 or less, to receive a trial of Defendants' product.  Defendants' websites prominently state that the "Total" cost of the product is equal to the cost of shipping and handling.  As shown in the screenshot below of Defendants' website for Cerebral X, for example, Defendants list the shipping cost of $4.95 and highlight the "Total," also $4.95, in yellow:

**Figure 1**

18.     Similarly, in the following screenshots of Defendants' website for Garcinia Clean XT as depicted on a mobile device, Defendants list the "Price" of the product as $0.00, highlighted in green, the $4.95 shipping and handling charge, and a "Total" of $4.95 in bold, followed by a request for billing information when consumers scroll down on their mobile device:

18-cv-1388-LAB (LL)
FIRST AMENDED COMPLAINT

 

**Figure 2**

19.     Once consumers enter their billing information, they are asked to place their order by clicking a brightly colored button labeled either "GET MY RISK FREE TRIAL" or "CONTINUE."

20.     Unbeknownst to consumers, 15 days after they click "GET MY RISK FREE TRIAL" or "CONTINUE," Defendants will charge consumers the full price of the product—as much as $98.71.

21.     Defendants also enroll consumers who accept the trial offer into a continuity program. Under the continuity program, Defendants send consumers additional shipments of the product each month and charge consumers' credit or debit cards the full price of each product shipped.

11

22.     Consumers typically only learn that the trial was not free and that they have been enrolled in a continuity program when they see Defendants' monthly charges on their credit card or bank statements.

23.     As Figs. 1 and 2 illustrate, Defendants either hide the terms of their offer in barely discernable print far below the colorful graphics and text where consumers input their personal and payment information and continue with their purchase, or bury them in a separate "Terms & Conditions" hyperlink.  Those terms typically reveal that the consumer has a limited time to cancel the trial, usually 15 days, or the consumer will be charged the full price of the product.  The terms also state that the consumer will receive and be charged for additional shipments of the product every 30 days until they cancel.

24.     On the desktop page depicted in Fig. 1, consumers would not encounter these terms unless they were to look closely at the small, faint type far below where they enter their payment information and click "GET MY RISK FREE TRIAL."  On the mobile pages depicted in Fig. 2, to see the terms, consumers would need to click on the separate "terms and conditions" hyperlink or scroll past the large, brightly colored "CONTINUE" button.  But there is nothing on the billing screen in Fig. 2 to indicate that consumers should look beyond the "CONTINUE" button to find additional content below.

25.     As a result of these inadequate disclosures, Defendants' websites misrepresent the total cost of Defendants' trial products, and fail to adequately apprise consumers that they are being enrolled in a continuity program.

12

*Defendants' Deceptive Order Completion Page*

26.     After clicking "GET MY RISK FREE TRIAL" or "CONTINUE" to order a trial of one of Defendants' products, consumers are then directed to a webpage that indicates that their order is not complete.  For example, consumers who think they already have ordered a trial of Defendants' brain supplement Cerebral X are taken to a page on the same website that has a "Cerebral X" banner at the top but that indicates in large, red type directly beneath the banner, "Wait!  Your Order is Not Complete!" That page then offers a "FREE" trial of the product VitaMood+, which, the ad indicates, should be "paired together" with Cerebral X.

13





        



**Figure 3**

14

27.    As noted in Fig. 3, Defendants represent that consumers have not completed their order of the initial trial product until they click the "COMPLETE CHECKOUT" button located under the advertisement for the second product.

28.    But when consumers click the "COMPLETE CHECKOUT" button, they are deemed by Defendants to have ordered a trial of both the original product and the second product.  If consumers do not click the "COMPLETE CHECKOUT" button, however, they will still receive a trial of the first product.

29.    Defendants represent that the second product is free, but in reality, the consumer will be charged the full price of the product 18 days later.  Defendants also will enroll consumers who click the "COMPLETE CHECKOUT" button in a second continuity program, meaning that consumers also will receive and be charged for monthly shipments of the second product.

30.    As with Defendants' initial offers, the "order completion" pages also fail to disclose important terms and conditions of the offer.  For example, the order page for the VitaMood+ offer (Fig. 3) does not disclose adequately that Defendants will charge consumers the full price of the product after 18 days, and will also enroll them in a continuity program.  These terms only appear in small, faint print well below the prominent "COMPLETE CHECKOUT" button.

31.    Below the "COMPLETE CHECKOUT" button, and below a line-break, in tiny, faint print, Defendants include a hyperlink that consumers can click to decline the second offer.  For example, the order page for the VitaMood+ offer, depicted in Fig. 3

15

above, includes a faint hyperlink that says "No, I don't want to improve my mood." Consumers who click on this hyperlink are then redirected to a series of web pages that make similar deceptive offers.

32.    Once consumers place an order for one or more of Defendants' products, they receive a confirmation email that either does not list any charges associated with the products or lists only the shipping and handling charge.  The confirmation email thus reinforces the false impression from the websites that, other than the obligation to pay shipping and handling, the trial product is free.

### *Defendants' Restrictive Cancellation and Refund Practices*

33.    In numerous instances, consumers who ordered Defendants' trial products report that Defendants subsequently charge them without their knowledge or consent for the full price of these products and sign them up for one or more continuity programs. Many consumers subsequently attempt to cancel their enrollment in the continuity program and to obtain a refund of Defendants' unauthorized charges, but they often have difficulty cancelling and obtaining a refund.

34.    Consumers who call Defendants to cancel the trial and continuity program often have difficulty reaching Defendants' customer service representatives, despite calling numerous times.  Even if they are able to reach a customer service representative to request cancellation, consumers report that they often continue to receive and be charged for shipments of Defendants products even after cancelling.  The same is sometimes true when consumers use Defendants' "easy" online cancellation.

16

35.     Consumers who request a refund are often told that they cannot get one because, according to Defendants, their "terms and conditions" require that refund requests be made within 30 days.  Where the refund period has not lapsed, consumers are told they can only get a refund if the trial product is returned unopened and at the consumer's expense.  Often, consumers who send back the trial product unopened and within the refund period are nevertheless refused a refund, with Defendants' customer service representative telling them that Defendants never received the return shipment.

36.     In many instances, consumers attempt to get their money back by initiating chargebacks with their credit card companies.  In other instances, consumers receive refunds directly from Defendants only after they complain to the Better Business Bureau or a state regulatory agency.  Even in those instances, however, Defendants have not always issued full refunds, but have refunded only the monthly continuity program charges.

## VIOLATIONS OF THE FTC ACT

37.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

38.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

39.     Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and

18-cv-1388-LAB (LL)
FIRST AMENDED COMPLAINT

**ER173**

that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

### *Misrepresentations of the Price of the Trial Offers*

40.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants will charge consumers at most only a shipping and handling fee for a one-time shipment of Defendants' product.

41.     In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 40 of this Complaint, Defendants have charged consumers more than a shipping and handling fee for one or more shipments of Defendants' product.

42.     Therefore, Defendants' representation described in paragraph 40 of this Complaint, is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### *Misrepresentation that Order is Not Complete*

43.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements to consumers who have already ordered a trial of one of Defendants'

18

products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers' initial orders are not complete and that clicking the "COMPLETE CHECKOUT" button will merely complete their initial orders.

44.     In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 43 of this Complaint, consumers' initial orders were complete, and clicking the "COMPLETE CHECKOUT" button ordered an additional product and enrolled consumers in a continuity plan for that product.

45.     Therefore, Defendants' representation described in paragraph 43 of this Complaint is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### *Failure to Disclose Adequately Material Terms of Trial Offer*

46.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that consumers can obtain a trial of Defendants' product for the cost of shipping and handling, or for free.

47.     In numerous instances in which Defendants have made the representation set forth in Paragraph 46 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

(a)     The total cost of the product;

19

(b)    That Defendants will charge consumers the total cost of the trial product upon the expiration of the trial period, typically 15 days;

(c)    That Defendants will automatically enroll consumers in a continuity plan with additional charges; and

(d)    The cost of the continuity plan, and the frequency and duration of the recurring charges.

48.    Defendants' failure to disclose, or disclose adequately, the material information described in Paragraph 47, above, in light of the representation described in Paragraph 46, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

### *Unfairly Charging Consumers Without Authorization*

49.    In numerous instances, Defendants have charged consumers without their express informed consent.

50.    Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

51.    Therefore, Defendants' practices as described in Paragraph 49, above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

20

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

52.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, which became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

53.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges.  *See* 15 U.S.C. § 8403.

54.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

21

55.     As described above, Defendants advertise and sell Defendants' skincare, electronic cigarette, and dietary supplement products to consumers through a negative option feature as defined by the TSR.  *See* 16 C.F.R. § 310.2(w).

56.     Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, and therefore constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT V

### *Violation of ROSCA – Auto-Renewal Continuity Plan*

57.     In numerous instances, in connection with the selling of their products on the Internet through a negative option feature, Defendants have failed to:

(a)     clearly and conspicuously disclose all material terms of the negative option feature of the product transaction before obtaining the consumer's billing information;

(b)     obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction; and/or

(c)     provide simple mechanisms for a consumer to stop recurring charges for products to the consumer's credit card, debit card, bank account, or other financial account.

22

58.     Defendants' practices as set forth in Paragraph 57 are a violation of Section

4 of ROSCA, 15 U.S.C. § 8403, and are therefore a violation of a rule promulgated under

Section 18 of the FTC Act, 15 U.S.C. § 57a, 15 U.S.C. § 8404(a), and therefore constitute

an unfair or deceptive act or practice in or affecting commerce in violation of Section

5(a) of the FTC Act, 15 U.S.C. § 45(a).

### VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E

59.     Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a

"preauthorized" electronic fund transfer from a consumer's account may be "authorized

by the consumer only in writing, and a copy of such authorization shall be provided to the

consumer when made."

60.     Section 903(10) of the EFTA, 15 U.S.C. § 1693a(10), provides that the term

"preauthorized electronic fund transfer" means "an electronic fund transfer authorized in

advance to recur at substantially regular intervals."

61.     Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that

"[p]reauthorized electronic fund transfers from a consumer's account may be authorized

only by a writing signed or similarly authenticated by the consumer.  The person that

obtains the authorization shall provide a copy to the consumer."

62.     Section 1005.10 of the Consumer Financial Protection Bureau's Official

Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b), cmt. 5, Supp. I, provides that

"[t]he authorization process should evidence the consumer's identity and assent to the

authorization."  The Official Staff Commentary to Regulation E further provides that

23

ER179

"[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable."  12 C.F.R. § 1005.10(b), cmt. 6, Supp. I.

<div align="center">

**COUNT VI**

***Unauthorized Debiting from Consumers' Accounts***

</div>

63.     In numerous instances, Defendants debit consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

64.     Further, in numerous instances, Defendants debit consumers' bank accounts on a recurring basis without providing a copy of written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

65.     Under Section 918(c) of the EFTA, 15 U.S.C. § 1693o(c), a violation of the EFTA and Regulation E constitutes a violation of the FTC Act.

66.     Accordingly, by engaging in violations of the EFTA and Regulation E as alleged in Paragraphs 63 and 64 of this Complaint, Defendants have engaged in violations of the FTC Act.  15 U.S.C. § 1693o(c).

<div align="center">24</div>

## CONSUMER INJURY

67.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and the EFTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

68.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

69.     Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and the EFTA, including the rescission or reformation of contracts and the refund of money.

18-cv-1388-LAB (LL)
FIRST AMENDED COMPLAINT

**ER181**

**PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C.

§ 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 917(c) of the EFTA, 15 U.S.C.

§ 1693o(c), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such temporary and preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B. Enter a permanent injunction to prevent future violations of the FTC Act, ROSCA, and the EFTA by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and the EFTA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D. Award Plaintiff the cost of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

18-cv-1388-LAB (LL)
FIRST AMENDED COMPLAINT

**ER182**

Dated: December 11, 2018          Respectfully submitted,

                                  ALDEN F. ABBOTT
                                  General Counsel


                                  /s/Samantha Gordon
                                  Samantha Gordon
                                  Matthew H. Wernz
                                  Federal Trade Commission
                                  Midwest Region
                                  230 South Dearborn Street, Suite 3030
                                  Chicago, Illinois 60604
                                  sgordon@ftc.gov
                                  mwernz@ftc.gov
                                  312-960-5623 (Gordon)
                                  312-960-5596 (Wernz)

                                  Attorneys for Plaintiff
                                  Federal Trade Commission

18-cv-1388-LAB (LL)
FIRST AMENDED COMPLAINT

**ER183**

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: 18cv1388-MMA (NLS) |
| Plaintiff, | **PRELIMINARY INJUNCTION** |
| v. | |
| TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; and BRIAN PHILLIPS, | |
| Defendants. | [Doc. No. 5] |

19       Plaintiff, Federal Trade Commission ("FTC" or "Commission"), filed its
20 Complaint for Permanent Injunction and Other Equitable Relief in this matter, pursuant
21 to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b),
22 Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C.
23 § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C.
24 § 1693o(c), and moved for an *Ex Parte* Temporary Restraining Order With Asset Freeze,
25 Appointment of a Receiver, Other Equitable Relief, and Order to Show Cause Why a
26 Preliminary Injunction Should Not Issue ("TRO") against Defendants.  For the reasons
27 stated in the Court's Order filed contemporaneously herewith, the Court finds a
28 preliminary injunction against Defendants is appropriate.

1

**ER184**

## **FINDINGS OF FACT**

The TRO having been granted (Doc. No. 11) and served with the Complaint and Summons on Defendants, and the Court having considered all the pleadings, memoranda, declarations, and other exhibits filed herein, and being fully advised in the premises, finds that:

A.     This Court has jurisdiction over the subject matter of this case and the parties.

B.     Venue in this district is proper.

C.     There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b) and Plaintiff is therefore likely to prevail on the merits of this action.

D.     There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers Confidence Act ("ROSCA"), 15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), unless Defendants are restrained and enjoined by order of this Court.

E.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers, including monetary restitution, rescission, disgorgement, or refunds, will occur from the sale, transfer, or other disposition or concealment by Defendants of their assets or records unless Defendants are restrained and enjoined by Order of this Court.  Therefore, there is good cause for an asset freeze and receivership.

F.     There is good cause for issuing this Order pursuant to Federal Rule of Civil Procedure 65.

**ER185**

G. Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, this Order is in the public interest.

H. Plaintiff is an independent agency of the United States. No security is required of any agency of the United States for issuance of a preliminary injunction. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

A. "**Asset**" includes any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held, and all proceeds, product, offspring, rents, or profit of or from that property.

B. "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, or debit card.

C. "**Charge**," "**Charged**," or "**Charging**" means any attempt to collect money or other consideration from a consumer, including causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, or other account.

D. "**Clearly and Conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

3

**ER186**

18cv1388-MMA (NLS)

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E.      "**Corporate Defendants**" means Triangle Media Corporation, Jasper Rain Marketing LLC, Hardwire Interactive Inc., and by whatever other names they may be known, each of their subsidiaries, affiliates, successors, and assigns, and any fictitious business entities or business names created or used by these entities, or any of them.

F.      "**Defendants**" means Corporate Defendants and Individual Defendant, individually, collectively, or in any combination.

G.      "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs,

**ER187**

1   sound and video recordings, images, Internet sites, web pages, websites, electronic

2   correspondence, including e-mail and instant messages, contracts, accounting data,

3   advertisements, FTP Logs, Server Access Logs, books, written or printed records,

4   handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and

5   business canceled checks and check registers, bank statements, appointment books,

6   computer records, customer or sales databases and any other electronically stored

7   information, including Documents located on remote servers or cloud computing

8   systems, and other data or data compilations from which information can be obtained

9   directly or, if necessary, after translation into a reasonably usable form.  A draft or non-

10  identical copy is a separate document within the meaning of the term.

11      H.      "**Electronic Data Host**" means any person or entity in the business of

12  storing, hosting, or otherwise maintaining electronically stored information.  This

13  includes any entity hosting a website or server, and any entity providing "cloud based"

14  electronic storage.

15      I.      "**Financial Institution**" means any bank, savings and loan institution, credit

16  union, or any financial depository of any kind, including, but not limited to, any

17  brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading

18  company, or precious metal dealer.

19      J.      **"Individual Defendant"** means Defendant Brian Phillips.

20      K.      "**Negative Option Feature**" means, in an offer or agreement to sell or

21  provide any good or service, a provision under which the consumer's silence or failure to

22  take affirmative action to reject a good or service or to cancel the agreement is interpreted

23  by the seller or provider as acceptance or continuing acceptance of the offer.

24      L.      **"Preauthorized Electronic Fund Transfer"** means an electronic fund

25  transfer authorized in advance to recur at substantially regular intervals.

26      M.      **"Receiver"** means the permanent receiver appointed in Section XVI of this

27  Order and any deputy receivers that shall be named by the permanent receiver.

28

**ER188**

N.   "**Receivership Entities**" means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' marketing of negative option offers, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

**I.   *Prohibited Misrepresentations***

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.   That Defendants will Charge consumers at most only a shipping and handling fee for a one-time shipment of Defendants' product;

B.   That consumers' orders are not complete; or

C.   Any other material fact.

**II.   *Required Disclosures Relating to Negative Option Features***

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are restrained and enjoined from:

A.   Representing directly or indirectly, expressly or by implication, that any good or service that includes a Negative Option Feature is being offered on a free, trial, no obligation, reduced, or discounted basis, without disclosing Clearly and Conspicuously, and immediately adjacent to, any such representation:

6

**ER189**

1.    The extent to which the consumer must take affirmative action(s) to avoid any Charges: a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.    The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop such Charges; and

3.    The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.    Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously, and immediately adjacent to where a consumer provides Billing Information:

1.    The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.    The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

3.    The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

4.    The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

5.    A description of the good or service;

6.    Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good;

**ER190**

18cv1388-MMA (NLS)

7.     The simple cancellation mechanism to stop any recurring Charges, as required by Section IV.

C.     Failing to send the consumer:

1.     Immediately after the consumer's submission of an online order, written confirmation of the transaction by email.  The email must Clearly and Conspicuously disclose all the information required by Subsection II, and contain a subject line reading "Order Confirmation" along with the name of the product or service, and no additional information; or

2.     Within two (2) days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail. The email or letter must Clearly and Conspicuously disclose all the information required by Subsection II.  The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and nothing else. The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, the Defendants' return address, and postage.

### III.    *Obtaining Express Informed Consent*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless Defendant first obtains the express informed consent of the consumer to do so.

### IV.    *Simple Mechanism to Cancel Negative Option Feature*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and  all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in

**ER191**

18cv1388-MMA (NLS)

connection with promoting or offering for sale any good or service with a Negative Option Feature, are restrained and enjoined from failing to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for the good or service and (2) immediately stop any recurring Charges. Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s).

**V.** **_Prohibition Against Debiting Consumers' Bank Accounts Without Authorization_**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are restrained and enjoined from:

A. Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

B. Failing to provide the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer.

**VI.** **_Prohibition on Release of Customer Information_**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, e-mail address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; or

9

18cv1388-MMA (NLS)

B.     Benefiting from or using the name, address, birth date, telephone number, e-mail address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order.

*Provided, however,* that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VII.   *Asset Freeze*

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1.     Owned or controlled, directly or indirectly, by any Defendant;

2.     Held, in part or in whole, for the benefit of any Defendant;

3.     In the actual or constructive possession of any Defendant; or

4.     Owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

B.     Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order, and after providing Plaintiff prior notice and an

**ER193**

18cv1388-MMA (NLS)

1    opportunity to inspect the contents to determine that they contain no Assets covered by

2    this Section;

3           C.      Incurring charges or cash advances on any credit, debit, or ATM card issued

4    in the name, individually or jointly, of any Corporate Defendant or any corporation,

5    partnership, or other entity directly or indirectly owned, managed, or controlled by any

6    Defendant or of which any Defendant is an officer, director, member, or manager.  This

7    includes any corporate bankcard or corporate credit card account for which any

8    Defendant is, or was on the date that this Order was signed, an authorized signor; or

9           D.      Depositing or cashing any checks or depositing any money orders or cash

10   received from consumers, clients, or customers of any Defendant.  The Assets affected by

11   this Section shall include:  (1) all Assets of Defendants as of the time this Order is

12   entered; and (2) Assets obtained by Defendants after this Order is entered if those Assets

13   are derived from any activity that is the subject of the Complaint in this matter or that is

14   prohibited by this Order.  This Section does not prohibit any transfer of Assets to the

15   Receiver or agreed to in writing by Plaintiff, or repatriation of foreign Assets specifically

16   required by this Order.

17          *Provided, however,* that Defendants Phillips, Triangle Media, and Jasper Rain, may

18   request from Commission counsel, in writing and with supporting documentation,

19   reasonable and necessary expenses.  Commission counsel shall review the requests and

20   communicate any objections to their counsel.  Once any objections have been resolved,

21   Commission counsel shall authorize Defendant Phillips to use personal funds to pay the

22   expenses, or shall submit a written request to the Receiver to disburse Receivership assets

23   to Defendants Phillips, Triangle Media, and Jasper Rain to pay the expenses.

24   **VIII.** ***Duties of Asset Holders and Other Third Parties***

25          **IT IS FURTHER ORDERED** that any financial or brokerage institution,

26   Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring

27   bank, independent sales organization, third party processor, payment gateway, insurance

28   company, business entity, or person who receives actual notice of this Order (by service

18cv1388-MMA (NLS)

or otherwise) and that (a) holds, controls, or maintains custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that is: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; (b) holds, controls, or maintains custody of any Document or Asset associated with credits, debits or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or (c) has held, controlled, or maintained custody of any such Document, Asset, or account at any time since the date of entry of this Order shall:

A. Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;

B. Deny any Person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

C. Unless previously submitted in full compliance with the TRO, provide Plaintiff's counsel and the Receiver, within three (3) business days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

    1. The identification number of each such account or Asset;

    2. The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is

**ER195**

served, and, if the account or other Asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

        3.    The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

    D.    Provide Plaintiff's counsel and the Receiver, within five (5) business days of a request from Plaintiff's counsel or the Receiver, with copies of all records or other Documents pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

*Provided, however*, that this Section does not prohibit any transfers of Assets to the Receiver or agreed to in writing by Plaintiff, or repatriation of foreign Assets specifically required by this Order.

## IX. *Financial Disclosures*

**IT IS FURTHER ORDERED** that, unless previously submitted in full compliance with the TRO, each Defendant, within five (5) days of entry of this Order, shall prepare and deliver to Plaintiff's counsel and the Receiver:

    A.    Completed financial statements on the forms attached to the TRO as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

    B.    Completed **Attachment C** to the TRO (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

//

**ER196**

**X.** *Foreign Asset Repatriation*

**IT IS FURTHER ORDERED** that, unless previously completed in full compliance with the TRO, within five (5) days following entry of this Order, each Defendant shall:

A.  Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States which are:  (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.  Take all steps necessary to provide Plaintiff's counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States, including signing the Consent to Release of Financial Records appended to the TRO as **Attachment D**;

C.  Transfer to the territory of the United States all Documents and Assets located in foreign countries which are:  (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.  The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the Financial Institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such Financial Institution or other entity.

**XI.** *Non-Interference with Repatriation*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any

14

**ER197**

18cv1388-MMA (NLS)

of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including:

A.     Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or

B.     Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

**XII.    _Suspension of Collection On Accounts_**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, and any other person served with a copy of this Order, are hereby restrained and enjoined from attempting to collect, collecting, or assigning any right to collect payment for Defendants' products or services.

**XIII.  _Consumer Credit Reports_**

**IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

**XIV. _Preservation of Records_**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any

of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from:

       A.      Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to:  (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; or

       B.      Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

## XV.  *Report of New Business Activity*

       **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing:  (1) the name of the business entity; (2) any fictitious business names associated with the entity; (3) the address and telephone number of the business entity; (4) the state of incorporation or organization of the business entity; (5) the Employee Identification Number or Federal Employer Identification Number of the business entity; (6) the names of the business entity's officers, directors, principals, managers, and employees; and (7) a detailed description of the business entity's intended activities.

## XVI.  *Permanent Receiver*

       **IT IS FURTHER ORDERED** that Thomas W. McNamara of McNamara Smith LLP, San Diego, California, is appointed Permanent Receiver of the Receivership

**ER199**

Entities and any of their affiliates, subsidiaries, divisions, or sales or customer service operations, wherever located, with full power of an equity receiver. The Receiver shall be accountable directly to this Court. The Receiver shall comply with all Local Rules of this Court governing receivers.

**XVII.** *Receivership Duties*

     **IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

     A.     Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

     B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated. The Receiver shall have full power to divert and open mail, and to sue for, collect, receive, take in possession, hold and manage all assets and documents of the Receivership Entities and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Entities. Provided, however, that the Receiver shall not collect any amount from a consumer or allow the Receivership Entities to continue to debit or otherwise charge a consumer's account, if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

     C.     Use any means necessary to take possession of and to secure all areas of the business premises of the Receivership Entities. Such steps may include the following as the Receiver deems necessary or advisable: (a) serving this Order; (b) completing a written inventory of all receivership assets; (c) obtaining pertinent information from all employees and other agents of the Receivership Entities, including the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (d)

**ER200**

videotaping all portions of the locations; (e) securing the locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations; (f) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Entities; and/or (g) employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order;

D.     Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Entities, including obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets, and including the authority to liquidate or close out any open securities or commodity futures positions of the Receivership Entities;

E.     Enter into contracts and purchase insurance as advisable or necessary;

F.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Entities;

G.     Manage and administer the business of the Receivership Entities until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

H.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

I.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority

**ER201**

granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver. The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

      J.     Determine and implement the manner in which the Receivership Entities will comply with, and prevent violations of, this Order and all other applicable laws;

      K.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

      L.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his or her role as Receiver, or against the Receivership Entities that the Receiver deems necessary and advisable to preserve the assets of the Receivership Entities or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

      M.     Continue and conduct the business of the Receivership Entities in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the receivership estate;

      N.     Issue and serve discovery and subpoenas on persons or entities for the production of documents or for oral examination relating to the acts, conduct, property, assets, liabilities and financial condition of the Defendants and other entities that are now or may later be placed in receivership, or to any matter that affects the administration of

the receivership estate, such that the Receiver's investigatory powers are coextensive with the authority that Federal Rule of Bankruptcy Procedure 2004(b) grants to a bankruptcy trustee. The Receiver is authorized to serve the discovery and subpoenas authorized under this Paragraph by certified mail, overnight delivery, personally, by any private process server, or by any similar means;

O. Open one or more bank accounts as designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

P. Maintain accurate records of all receipts and expenditures incurred as Receiver;

Q. Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency; and

R. File reports with the Court on a timely and reasonable basis.

**XVIII.** ***Cooperation With the Receiver***

**IT IS FURTHER ORDERED** that:

A. Defendants, Receivership Entities, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order shall fully cooperate with and assist the Receiver. This cooperation and assistance shall include, but not be limited to:

1. Providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order;

2. Providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; and

20

**ER203**

3. Advising all persons who owe money to any Receivership Entity that all debts should be paid directly to the Receiver.

B. Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby restrained and enjoined from:

1. Transacting any of the business of the Receivership Entities;

2. Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Entities, including books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other records of any kind or nature;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, or the Receiver;

4. Excusing debts owed to the Receivership Entities;

5. Failing to notify the Receiver of any asset, including accounts, of the Receivership Entities held in any name other than the name of the Receivership Entities, or by any person or entity other than the Receivership Entities, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets;

6. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Entities; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; or

**ER204**

18cv1388-MMA (NLS)

7.      Filing, or causing to be filed, any petition on behalf of the Receivership Entities for relief under the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, without prior permission from this Court.

**XIX.**  ***Delivery of Receivership Property***

    **IT IS FURTHER ORDERED** that:

    A.      Immediately upon entry of this Order, or within such period as may be permitted by the Receiver, Defendants or any other person or entity shall transfer or deliver possession, custody, and control of the following to the Receiver:

        1.      All assets of the Receivership Entities, including assets subject to repatriation pursuant to Section X, *infra*;

        2.      All documents of the Receivership Entities, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

        3.      All assets belonging to members of the public now held by the Receivership Entities; and

        4.      All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), mailboxes, virtual offices, electronic data hosts, or other property.  This includes providing the necessary means to gain access to P.O. Boxes, CMRA accounts and/or mail receiving boxes.

    B.      In the event any person or entity fails to deliver or transfer any receivership asset or document or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy

**ER205**

18cv1388-MMA (NLS)

sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

**XX.** *Transfer of Funds to the Receiver*

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all financial institutions, finance companies, commercial lending companies, credit card processing agents or agents providing electronic funds transfer services or automated clearing house processing, brokerage houses, escrow agents, money market or mutual funds, title companies, commodity futures merchants, commodity trading companies, precious metal dealers, trustees, or other financial institutions or depositories of any kind, shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his or her direction and producing records related to the assets of the Receivership Entities.

**XXI.** *Stay of Actions*

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including:

A.      Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B.      Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or

**ER206**

employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C.       Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise.

*Provided, however*, that this Order does not stay:  (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

**XXII. *Compensation of Receiver***

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of entry of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

**XXIII.       *Receiver's Bond***

**IT IS FURTHER ORDERED** that, unless he has already done so in compliance with the TRO, the Receiver shall file with the Clerk of this Court a bond in the sum of $30,000.00 with sureties to be approved by the Court, conditioned that the Receiver will

**ER207**

well and truly perform the duties of the office and abide by and perform all acts the Court directs.

**XXIV.** _**Access to Business Premises**_

      **IT IS FURTHER ORDERED** that Defendants, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, and the Receiver, shall allow the FTC's representatives, agents, and assistants, as well as the Receivership Entities' representatives, and the Individual Defendants themselves, access to all of the Receivership Entities' business premises, or any other premises where the Receivership Entities conduct business

      The purpose of this access shall be to inspect and copy all books, records, documents, accounts, and other property owned by, or in the possession of, the Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and conditions of such access. The FTC may remove materials from the Receivership Entities' business premises to inspect, inventory, and copy such materials. The FTC shall return materials so removed within five (5) business days of completing said inventory and copying. The FTC's access to Defendants' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by any Plaintiff.

      The FTC and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state, and local law enforcement officers, including the United States Marshals Service and United States Postal Service, as they deem necessary to effect service and to implement peacefully the provisions of this Order.

**XXV.** _**Expedited Discovery**_

      **IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiff and the Receiver are granted leave, at any time after service of this Order, to

conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; (2) the nature, location, and extent of Defendants' business transactions and operations; (3) Documents reflecting Defendants' business transactions and operations; or (4) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five (5) days of service, *provided, however,* that three (3) days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

B. Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, e-mail, or by overnight delivery.

C. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) and (f) of the Federal Rules of Civil Procedure.

D. The parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

**XXVI.** ***Distribution of Order by Defendants***

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten (10) days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone numbers, and e-mail addresses of each such person or entity who received a copy of the Order. Furthermore, Defendants shall not

**ER209**

take any action that would encourage officers, agents, members, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXVII.    *Service of This Order*

**IT IS FURTHER ORDERED** that copies of this Order may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any Financial Institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXVIII.    *Correspondence and Service on Plaintiff*

**IT IS FURTHER ORDERED** that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

<div align="center">

Samantha Gordon
Matthew Wernz
Federal Trade Commission, Midwest Region
230 South Dearborn Street, Room 3030
Chicago, Illinois 60604
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
sgordon@ftc.gov
mwernz@ftc.gov

</div>

//
//
//
//

18cv1388-MMA (NLS)

XXIX.    _**Retention of Jurisdiction**_

        **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

matter for all purposes.

        **IT IS SO ORDERED.**

Dated:  August 24, 2018

Hon. Michael M. Anello
United States District Judge

**ER211**

18cv1388-MMA (NLS)

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; and BRIAN PHILLIPS,

Defendants.

Case No.:  18cv1388-MMA (NLS)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A RECEIVER, OTHER EQUITABLE RELIEF, AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**[FILED UNDER SEAL]**

[Doc. No. 5]

Plaintiff, the Federal Trade Commission, has filed its Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), and has moved, pursuant to Fed. R. Civ. P. 65(b), for a temporary restraining order, asset freeze, other equitable

1

**ER212**

relief, and an order to show cause why a preliminary injunction should not issue against Defendants.  Upon review of the Complaint, the instant motion,[1] and documents filed in support thereof, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's *ex parte* motion.  Specifically, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's e*x parte* request to conduct limited expedited discovery via depositions of parties and non-parties, interrogatories, and subpoenas upon non-parties that direct production or inspection within five days of service.  The parties are advised that all further discovery proceedings will be determined by the Magistrate Judge assigned to the case.  The Court **GRANTS** Plaintiff's remaining requests.

 **IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 65(b), Defendants must appear before this Court on <u>**July 13, 2018 at 2:30 p.m.**</u> in Courtroom 3D at the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101, to show cause why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint, continuing the freeze of their Assets, continuing the receivership, and imposing such additional relief as may be appropriate.  The Court issues a briefing schedule regarding this hearing in section XXX of this Order.

<u>LEGAL STANDARD</u>

 A temporary restraining order ("TRO") may be granted upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The purpose of such an order, as a form of preliminary injunctive relief, is to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).  A request for a TRO is evaluated by the same factors that generally apply to a preliminary

---

[1] The Court **GRANTS** Plaintiff's *ex parte* motion to for leave to file a memorandum in excess of 25 pages in support of Plaintiff's *ex parte* motion for a TRO.  Doc. No. 7.

**ER213**

injection. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). However, a TRO is an "extraordinary remedy" and is "never granted as of right." *Winter v. Natural Res. Def. Council. Inc.*, 555 U.S. 7, 24 (2008). Instead, the moving party bears the burden of demonstrating that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Although a plaintiff must satisfy all four of the requirements set forth in *Winter*, this Circuit employs a sliding scale whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 652 F.3d 1127, 1131 (9th Cir. 2011). Accordingly, if the moving party can demonstrate the requisite likelihood of irreparable harm and show that an injunction is in the public interest, a preliminary injunction may issue so long as there are serious questions going to the merits and the balance of hardships tips sharply in the moving party's favor. *Id.*

## FINDINGS OF FACT

The Court, having considered the Complaint, the *ex parte* Motion for a Temporary Restraining Order, declarations, exhibits, and the memorandum of points and authorities filed in support thereof, and being otherwise advised, finds that:

A. This Court has jurisdiction over the subject matter of this case, and there is good cause to believe that it will have jurisdiction over all parties hereto and that venue in this district is proper.

B. There is good cause to believe that, in numerous instances, Defendants misrepresented the price of trial offers, misrepresented that consumers' orders were not complete, failed to adequately disclose material terms of their continuity plans before collecting consumers' billing information, charged consumers for their continuity plans without their consent, and charged consumers' credit and debit cards without their consent.

C.      There is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b) and that Plaintiff is therefore likely to prevail on the merits of this action.  As demonstrated by consumer complaints and declarations; records of undercover purchases; corporate, banking, and payment processing records; and the additional documentation filed by the FTC, the FTC has established a likelihood of success in showing that Defendants deceived consumers by misrepresenting the price of the trial offer, charging consumers the full price of the product after a short, inadequately disclosed trial period, enrolling consumers in continuity programs without the consumer's consent, and charging consumers' credit and debit cards without the consumers' authorization.

D.      There is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of the FTC Act, ROSCA, EFTA, and Regulation E unless Defendants are restrained and enjoined by order of this Court.

E.      There is good cause to believe that, unless Defendants are immediately restrained and enjoined by order of this Court, immediate and irreparable damage to the Court's ability to grant effective final relief for consumers—including monetary restitution, rescission, disgorgement or refunds—will occur from the sale, transfer, destruction or other disposition or concealment by Defendants of their assets or records; and that, in accordance with Fed. R. Civ. P. 65(b), the interests of justice require that this Order be granted without prior notice to Defendants.  Thus, there is good cause for relieving Plaintiff of the duty to provide Defendants with prior notice of its Motion for a Temporary Restraining Order.

F.      Good cause exists for issuing this Order, appointing a temporary receiver over the Receivership Entities, freezing Defendants' assets, permitting the Plaintiff and

4

**ER215**

the Receiver immediate access to the Defendants' business premises, and permitting the Plaintiff and the Receiver to take expedited discovery.

G.      Weighing the equities and considering Plaintiff's likelihood of ultimate success on the merits, a temporary restraining order with an asset freeze, the appointment of a temporary receiver, immediate access to business premises, expedited discovery, and other equitable relief is in the public interest.

H.      This Court has authority to issue this Order pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b); Fed. R. Civ. P. 65; and the All Writs Act, 28 U.S.C. § 1651.

I.      Plaintiff is an independent agency of the United States.  No security is required of any agency of the United States for issuance of a temporary restraining order. Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purpose of this Order, the following definitions shall apply:

A.      "**Asset**" includes any legal or equitable interest in, right to, or claim to, any property, wherever located and by whomever held, and all proceeds, product, offspring, rents, or profit of or from that property.

B.      "**Billing Information**" means any data that enables any person to access a customer's account, such as a credit card, checking, savings, share or similar account, or debit card.

C.      "**Charge**," "**Charged**," or "**Charging**" means any attempt to collect money or other consideration from a consumer, including causing Billing Information to be submitted for payment, including against the consumer's credit card, debit card, bank account, or other account.

D.      "**Clearly and conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is

5

**ER216**

presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

> 2.   A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood;

> 3.   An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

> 4.   In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

> 5.   The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

> 6.   The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

> 7.   The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

> 8.   When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

E.   "**Corporate Defendants**" means Triangle Media Corporation also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; Jasper Rain Marketing LLC also doing business as Cranium Power and Phenom Health; Hardwire Interactive Inc. also doing business as Phenom Health, Beauty and Truth, and E-Cigs, and each of their subsidiaries, affiliates, successors, and assigns.

6

**ER217**

F.     "**Defendants**" means the Corporate Defendants and the Individual Defendant, individually, collectively, or in any combination.

G.     "**Document**" is synonymous in meaning and equal in scope to the usage of "document" and "electronically stored information" in Federal Rule of Civil Procedure 34(a), Fed. R. Civ. P. 34(a), and includes writings, drawings, graphs, charts, photographs, sound and video recordings, images, Internet sites, web pages, websites, electronic correspondence, including e-mail and instant messages, contracts, accounting data, advertisements, FTP Logs, Server Access Logs, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, computer records, customer or sales databases and any other electronically stored information, including Documents located on remote servers or cloud computing systems, and other data or data compilations from which information can be obtained directly or, if necessary, after translation into a reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

H.     "**Electronic Data Host**" means any person or entity in the business of storing, hosting, or otherwise maintaining electronically stored information. This includes any entity hosting a website or server, and any entity providing "cloud based" electronic storage.

I.     "**Individual Defendant**" means Brian Phillips.

J.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

K.     "**Plaintiff," "Commission,**" or "**FTC**" means the Federal Trade Commission.

L.     "**Preauthorized Electronic Fund Transfer**" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

M.   "**Receiver**" means the temporary receiver appointed in Section XV of this Order and any deputy receivers that shall be named by the temporary receiver.

N.   "**Receivership Entities**" means Corporate Defendants as well as any other entity that has conducted any business related to Defendants' marketing of negative option offers, including receipt of Assets derived from any activity that is the subject of the Complaint in this matter, and that the Receiver determines is controlled or owned by any Defendant.

## ORDER

### I. *Prohibited Misrepresentations*

**IT IS THEREFORE ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are temporarily restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.   That Defendants will Charge consumers at most only a shipping and handling fee for a one-time shipment of Defendants' product;

B.   That consumers' orders are not complete; or

C.   Any other material fact.

### II. *Required Disclosures Relating to Negative Option Features*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are temporarily restrained and enjoined from:

A.   Representing directly or indirectly, expressly or by implication, that any good or service that includes a Negative Option Feature is being offered on a free, trial,

8

**ER219**

no obligation, reduced, or discounted basis, without disclosing Clearly and Conspicuously, and immediately adjacent to, any such representation:

  1. The extent to which the consumer must take affirmative action(s) to avoid any Charges: a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

  2. The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop such Charges; and

  3. The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

 B. Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously, and immediately adjacent to where a consumer provides Billing Information:

  1. The extent to which the consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

  2. The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

  3. The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

  4. The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

  5. A description of the good or service;

**ER220**

6.     Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good;

7.     The simple cancellation mechanism to stop any recurring Charges, as required by Section IV.

C.     Failing to send the consumer:

1.     Immediately after the consumer's submission of an online order, written confirmation of the transaction by email.  The email must Clearly and Conspicuously disclose all the information required by Subsection II.B, and contain a subject line reading "Order Confirmation" along with the name of the product or service, and no additional information; or

2.     Within two days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail.  The email or letter must Clearly and Conspicuously disclose all the information required by Subsection II.B.  The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and nothing else.  The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, the Defendants' return address, and postage.

## III.  *Obtaining Express Informed Consent*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are temporarily restrained and enjoined from using, or assisting others in using, Billing Information to obtain payment from a consumer, unless Defendant first obtains the express informed consent of the consumer to do so.

//

//

**ER221**

## IV. *Simple Mechanism to Cancel Negative Option Feature*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are temporarily restrained and enjoined from failing to provide a simple mechanism for the consumer to: (1) avoid being Charged, or Charged an increased amount, for the good or service and (2) immediately stop any recurring Charges. Such mechanism must not be difficult, costly, confusing, or time consuming, and must be at least as simple as the mechanism the consumer used to initiate the Charge(s).

## V. *Prohibition Against Debiting Consumers' Bank Accounts Without Authorization*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service, are temporarily restrained and enjoined from:

    A.    Failing to timely obtain written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer from a consumer's account before initiating any Preauthorized Electronic Fund Transfer; and

    B.    Failing to provide the consumer a copy of a valid written authorization signed or similarly authenticated by the consumer for any Preauthorized Electronic Fund Transfer.

## VI. *Prohibition on Release of Customer Information*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from:

A.    Selling, renting, leasing, transferring, or otherwise disclosing, the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order; or

B.    Benefiting from or using the name, address, birth date, telephone number, email address, credit card number, bank account number, Social Security number, or other financial or identifying information of any person that any Defendant obtained in connection with any activity that pertains to the subject matter of this Order. Provided, however, that Defendants may disclose such identifying information to a law enforcement agency, to their attorneys as required for their defense, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## VII.  *Asset Freeze*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any Assets that are:

1.    owned or controlled, directly or indirectly, by any Defendant;

2.    held, in part or in whole, for the benefit of any Defendant;

3.    in the actual or constructive possession of any Defendant; or

**ER223**

18cv1388-MMA (NLS)

4.     owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant;

B.     Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant or subject to access by any Defendant, except as necessary to comply with written requests from the Receiver acting pursuant to its authority under this Order, and after providing Plaintiff prior notice and an opportunity to inspect the contents to determine that they contain no Assets covered by this Section;

C.     Incurring charges or cash advances on any credit, debit, or ATM card issued in the name, individually or jointly, of any Corporate Defendant or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant or of which any Defendant is an officer, director, member, or manager.  This includes any corporate bankcard or corporate credit card account for which any Defendant is, or was on the date that this Order was signed, an authorized signor; or

D.     Depositing or cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant.  The Assets affected by this Section shall include:  (1) all Assets of Defendants as of the time this Order is entered; and (2) Assets obtained by Defendants after this Order is entered if those Assets are derived from any activity that is the subject of the Complaint in this matter or that is prohibited by this Order.  This Section does not prohibit any transfers of Assets to the Receiver or agreed to in writing by Plaintiff, or repatriation of foreign Assets specifically required by this Order.

## VIII.     _Duties of Asset Holders and Other third parties_

**IT IS FURTHER ORDERED** that any financial or brokerage institution, Electronic Data Host, credit card processor, payment processor, merchant bank, acquiring bank, independent sales organization, third party processor, payment gateway, insurance company, business entity, or person who receives actual notice of this Order (by service

13

**ER224**

18cv1388-MMA (NLS)

or otherwise) and that (a) holds, controls, or maintains custody, through an account or otherwise, of any Document on behalf of any Defendant or any Asset that is: owned or controlled, directly or indirectly, by any Defendant; held, in part or in whole, for the benefit of any Defendant; in the actual or constructive possession of any Defendant; or owned or controlled by, in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; (b) holds, controls, or maintains custody of any Document or Asset associated with credits, debits or charges made on behalf of any Defendant, including reserve funds held by payment processors, credit card processors, merchant banks, acquiring banks, independent sales organizations, third party processors, payment gateways, insurance companies, or other entities; or (c) has held, controlled, or maintained custody of any such Document, Asset, or account at any time since the date of entry of this Order shall:

    A.    Hold, preserve, and retain within its control and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such Document or Asset, as well as all Documents or other property related to such Assets, except by further order of this Court;

    B.    Deny any Person, except the Receiver, access to any safe deposit box, commercial mail box, or storage facility that is titled in the name of any Defendant, either individually or jointly, or otherwise subject to access by any Defendant;

    C.    Provide Plaintiff's counsel and the Receiver, within three business days of receiving a copy of this Order, a sworn statement setting forth, for each Asset or account covered by this Section:

        1.    The identification number of each such account or Asset;

        2.    The balance of each such account, or a description of the nature and value of each such Asset as of the close of business on the day on which this Order is served, and, if the account or other Asset has been closed or removed, the date closed or

**ER225**

removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other Asset was remitted; and

        3.     The identification of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access by any Defendant; and

    D.    Provide Plaintiff's counsel and the Receiver, within five business days of a request from Plaintiff's counsel or the Receiver, with copies of all records or other Documents pertaining to such account or Asset, including originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, including wire transfers and wire transfer instructions, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and all logs and records pertaining to safe deposit boxes, commercial mail boxes, and storage facilities.

    Provided, however, that this Section does not prohibit any transfers of Assets to the Receiver or agreed to in writing by Plaintiff, or repatriation of foreign Assets specifically required by this Order.

## IX. *Financial Disclosures*

    **IT IS FURTHER ORDERED** that each Defendant, within five days of service of this Order upon them, shall prepare and deliver to Plaintiff's counsel and the Receiver:

    A.    completed financial statements on the forms attached to this Order as **Attachment A** (Financial Statement of Individual Defendant) for each Individual Defendant, and **Attachment B** (Financial Statement of Corporate Defendant) for each Corporate Defendant; and

    B.    completed **Attachment C** (IRS Form 4506, Request for Copy of a Tax Return) for each Individual and Corporate Defendant.

## X. *Foreign Asset Repatriation*

    **IT IS FURTHER ORDERED** that within five days following the service of this Order, each Defendant shall:

15

**ER226**

A.     Provide Plaintiff's counsel and the Receiver with a full accounting, verified under oath and accurate as of the date of this Order, of all Assets, Documents, and accounts outside of the United States which are:  (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of, any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant;

B.     Take all steps necessary to provide Plaintiff's counsel and Receiver access to all Documents and records that may be held by third parties located outside of the territorial United States of America, including signing the Consent to Release of Financial Records appended to this Order as **Attachment D**;

C.     Transfer to the territory of the United States any and all Documents and Assets located in foreign countries which are: (1) titled in the name, individually or jointly, of any Defendant; (2) held by any person or entity for the benefit of any Defendant or for the benefit of any corporation, partnership, asset protection trust, or other entity that is directly or indirectly owned, managed or controlled by any Defendant; or (3) under the direct or indirect control, whether jointly or singly, of any Defendant; and

D.     The same business day as any repatriation, (1) notify the Receiver and counsel for Plaintiff of the name and location of the financial institution or other entity that is the recipient of such Documents or Assets; and (2) serve this Order on any such financial institution or other entity.

## XI.  *Non-Interference with Repatriation*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from taking any action, directly or indirectly, which

16

**ER227**

may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including:

      A.    Sending any communication or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time that all Defendants' Assets have been fully repatriated pursuant to this Order; or

      B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a court order, until such time that all Defendants' Assets have been fully repatriated pursuant to this Order.

## XII. *Consumer Credit Reports*

    **IT IS FURTHER ORDERED** that Plaintiff may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to Plaintiff.

## XIII. *Preservation of Records*

    **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from:

      A.    Destroying, erasing, falsifying, writing over, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, Documents that relate to: (1) the business, business practices, Assets, or business or personal finances of any Defendant; (2) the business practices or finances of entities directly or indirectly under the control of any Defendant; or (3) the business practices or finances of entities directly or indirectly under common control with any other Defendant; or

**ER228**

18cv1388-MMA (NLS)

B.    Failing to create and maintain Documents that, in reasonable detail, accurately, fairly, and completely reflect Defendants' incomes, disbursements, transactions, and use of Defendants' Assets.

### XIV.  *Report of New Business Activity*

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are temporarily restrained and enjoined from creating, operating, or exercising any control over any business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff's counsel and the Receiver with a written statement disclosing: (1) the name of the business entity; (2) any fictitious business names associated with the entity; (3) the address and telephone number of the business entity; (4) the state of incorporation or organization of the business entity; (5) the Employee Identification Number or Federal Employer Identification Number of the business entity; (6) the names of the business entity's officers, directors, principals, managers, and employees; and (7) a detailed description of the business entity's intended activities.

### XV.  *Temporary Receiver*

**IT IS FURTHER ORDERED** that Thomas W. McNamara of McNamara Smith LLP, San Diego, California, is appointed as temporary receiver ("Receiver") of the Receivership Entities with full powers of an equity receiver.  The Receiver shall be solely the agent of this Court in acting as Receiver under this Order.

### XVI.  *Duties and Authority of Receiver*

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.    Assume full control of Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee,

attorney, or agent of any Receivership Entity from control of, management of, or participation in, the affairs of the Receivership Entity;

B.     Take exclusive custody, control, and possession of all Assets and Documents of, or in the possession, custody, or under the control of, any Receivership Entity, wherever situated;

C.     Conserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets.  The Receiver shall assume control over the income and profits therefrom and all sums of money now or hereafter due or owing to the Receivership Entities.  The Receiver shall have full power to sue for, collect, and receive, all Assets of the Receivership Entities and of other persons or entities whose interests are now under the direction, possession, custody, or control of, the Receivership Entities.  Provided, however, that the Receiver shall not attempt to collect any amount from a consumer if the Receiver believes the consumer's debt to the Receivership Entities has resulted from the deceptive acts or practices or other violations of law alleged in the Complaint in this matter, without prior Court approval;

D.     Obtain, conserve, hold, manage, and prevent the loss of all Documents of the Receivership Entities, and perform all acts necessary or advisable to preserve such Documents.  The Receiver shall:  divert mail; preserve all Documents of the Receivership Entities that are accessible via electronic means (such as online access to financial accounts and access to electronic documents held onsite or by Electronic Data Hosts, by changing usernames, passwords or other log-in credentials); take possession of all electronic Documents of the Receivership Entities stored onsite or remotely; take whatever steps necessary to preserve all such Documents; and obtain the assistance of the FTC's Digital Forensic Unit for the purpose of obtaining electronic documents stored onsite or remotely;

E.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or

necessary in the performance of duties and responsibilities under the authority granted by this Order;

F.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order, and to incur, or authorize the making of, such agreements as may be necessary and advisable in discharging his or her duties as Receiver.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure Assets of the Receivership Entities, such as rental payments;

G.     Take all steps necessary to secure and take exclusive custody of each location from which the Receivership Entities operate their businesses.  Such steps may include, as the Receiver deems necessary or advisable:  (1) securing the location by changing the locks and alarm codes and disconnecting any internet access or other means of access to the computers, servers, internal networks, or other records maintained at that location; and (2) requiring any persons present at the location to leave the premises, to provide the Receiver with proof of identification, and/or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises Documents or Assets of the Receivership Entities.  Law enforcement personnel, including police or sheriffs, may assist the Receiver in implementing these provisions in order to keep the peace and maintain security.  If requested by the Receiver, the United States Marshal will provide appropriate and necessary assistance to the Receiver to implement this Order and is authorized to use any necessary and reasonable force to do so;

H.     Take all steps necessary to prevent the modification, destruction, or erasure of any web page or website registered to and operated, in whole or in part, by any Defendants, and to provide access to all such web page or websites to Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives;

**ER231**

I. Enter into and cancel contracts and purchase insurance as advisable or necessary;

J. Prevent the inequitable distribution of Assets and determine, adjust, and protect the interests of consumers who have transacted business with the Receivership Entities;

K. Make an accounting, as soon as practicable, of the Assets and financial condition of the receivership and file the accounting with the Court and deliver copies thereof to all parties;

L. Institute, compromise, adjust, appear in, intervene in, defend, dispose of, or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers;

M. Issue subpoenas to obtain Documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate, in addition to obtaining other discovery as set forth in this Order;

N. Open one or more bank accounts at designated depositories for funds of the Receivership Entities. The Receiver shall deposit all funds of the Receivership Entities in such designated accounts and shall make all payments and disbursements from the receivership estate from such accounts. The Receiver shall serve copies of monthly account statements on all parties;

O. Maintain accurate records of all receipts and expenditures incurred as Receiver;

P. Allow the Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives, reasonable access to the premises of the Receivership Entities, or any other premises where the Receivership Entities conduct business. The purpose of this access shall be to inspect and copy any and all books, records, Documents, accounts, and other property owned by, or in the possession of, the

21

**ER232**

Receivership Entities or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access;

Q. Allow the Plaintiff's representatives, agents, and assistants, as well as Defendants and their representatives reasonable access to all Documents in the possession, custody, or control of the Receivership Entities;

R. Cooperate with reasonable requests for information or assistance from any state or federal civil or criminal law enforcement agency;

S. Suspend business operations of the Receivership Entities if in the judgment of the Receiver such operations cannot be continued legally and profitably;

T. If the Receiver identifies a nonparty entity as a Receivership Entity, promptly notify the entity as well as the parties, and inform the entity that it can challenge the Receiver's determination by filing a motion with the Court. Provided, however, that the Receiver may delay providing such notice until the Receiver has established control of the nonparty entity and its assets and records, if the Receiver determines that notice to the entity or the parties before the Receiver establishes control over the entity may result in the destruction of records, dissipation of assets, or any other obstruction of the Receiver's control of the entity;

U. If in the Receiver's judgment the business operations cannot be continued legally and profitably, take all steps necessary to ensure that any of the Receivership Entities' web pages or websites relating to the activities alleged in the Complaint cannot be accessed by the public, or are modified for consumer education and/or informational purposes, and take all steps necessary to ensure that any telephone numbers associated with the Receivership Entities cannot be accessed by the public, or are answered solely to provide consumer education or information regarding the status of operations; and

V. File with the Court, on or before the date set in Section XXIX of this Order for the hearing to show cause, a report outlining (1) the steps taken by the Receiver to implement the terms of the Order; (2) the value of all assets and sum of all liabilities of the Receivership Entities; (3) the steps the Receiver intends to take in the future to protect

**ER233**

receivership assets, recover receivership assets from third parties, and adjust receivership liabilities; (4) the Receiver's opinion on whether any portion of the business of any of the Receivership Entities can continue to operate legally and profitably; and (5) any other matters that the Receiver believes should be brought to the Court's attention.

## XVII.  *Transfer of Receivership Property to Receiver*

**IT IS FURTHER ORDERED** that Defendants and any other person, with possession, custody or control of property of, or records relating to, the Receivership Entities shall, upon notice of this Order by personal service or otherwise, fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities and immediately transfer or deliver to the Receiver possession, custody, and control of, the following:

A.      All Assets held by or for the benefit of the Receivership Entities;

B.      All Documents of or pertaining to the Receivership Entities;

C.      All computers, electronic devices, mobile devices and machines used to conduct the business of the Receivership Entities;

D.      All Assets and Documents belonging to other persons or entities whose interests are under the direction, possession, custody, or control of the Receivership Entities; and

E.      All keys, codes, user names and passwords necessary to gain or to secure access to any Assets or Documents of or pertaining to the Receivership Entities, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), Electronic Data Hosts, or other property.

In the event that any person or entity fails to deliver or transfer any Asset or Document, or otherwise fails to comply with any provision of this Section, the Receiver may file an Affidavit of Non-Compliance regarding the failure and a motion seeking compliance or a contempt citation.  Upon the filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States

23

**ER234**

Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

## XVIII. *Provision of Information to Receiver*

**IT IS FURTHER ORDERED** that Defendants shall immediately provide to the Receiver:

A.    A list of all Assets and accounts of the Receivership Entities that are held in any name other than the name of a Receivership Entity, or by any person or entity other than a Receivership Entity;

B.    A list of all agents, employees, officers, attorneys, servants and those persons in active concert and participation with the Receivership Entities, or who have been associated or done business with the Receivership Entities; and

C.    A description of any documents covered by attorney-client privilege or attorney work product, including files where such documents are likely to be located, authors or recipients of such documents, and search terms likely to identify such electronic documents.

## XIX. *Cooperation with the Receiver*

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, and attorneys, all other persons in active concert or participation with any of them, and any other person with possession, custody, or control of property of or records relating to the Receivership entities who receive actual notice of this Order shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include providing information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this Order; providing any keys, codes, user names and passwords required to access any computers, electronic devices, mobile devices, and machines (onsite or remotely) and any cloud account (including specific method to access account) or electronic file in any medium; advising all persons who owe money to any

**ER235**

18cv1388-MMA (NLS)

Receivership Entity that all debts should be paid directly to the Receiver; and transferring funds at the Receiver's direction and producing records related to the Assets and sales of the Receivership Entities.

## XX.  *Non-Interference with the Receiver*

**IT IS FURTHER ORDERED** that Defendants; Receivership Entities; Defendants' or Receivership Entities' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and any other person served with a copy of this Order, are restrained and enjoined from directly or indirectly:

A.    Interfering with the Receiver's efforts to manage, or take custody, control, or possession of, the Assets or Documents subject to the receivership;

B.    Transacting any of the business of the Receivership Entities;

C.    Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any Assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities; or

D.    Refusing to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court.

## XXI.  *Stay of Actions*

**IT IS FURTHER ORDERED** that, except by leave of this Court, during the pendency of the receivership ordered herein, Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, and their corporations, subsidiaries, divisions, or affiliates, and all investors, creditors, stockholders, lessors, customers and other persons seeking to establish or enforce any claim, right, or interest against or on behalf of Defendants, and all others acting for or on behalf of such persons, are enjoined from taking action that would interfere with the exclusive jurisdiction of this Court over the Assets or Documents of the Receivership Entities, including:

**ER236**

18cv1388-MMA (NLS)

A. Filing or assisting in the filing of a petition for relief under the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, or of any similar insolvency proceeding on behalf of the Receivership Entities;

B. Commencing, prosecuting, or continuing a judicial, administrative, or other action or proceeding against the Receivership Entities, including the issuance or employment of process against the Receivership Entities, except that such actions may be commenced if necessary to toll any applicable statute of limitations; or

C. Filing or enforcing any lien on any asset of the Receivership Entities, taking or attempting to take possession, custody, or control of any Asset of the Receivership Entities; or attempting to foreclose, forfeit, alter, or terminate any interest in any Asset of the Receivership Entities, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise; or

Provided, however, that this Order does not stay: (1) the commencement or continuation of a criminal action or proceeding; (2) the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or (3) the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

## XXII. *Compensation of Receiver*

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the Assets now held by, in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty days after the date of entry of this Order. The Receiver shall not increase

**ER237**

18cv1388-MMA (NLS)

the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XXIII. _Receiver's Bond_

**IT IS FURTHER ORDERED** that the Receiver shall file with the Clerk of this Court a bond in the sum of $30,000.00 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. 28 U.S.C. § 754.

## XXIV. _Immediate Access to Business Premises and Records_

**IT IS FURTHER ORDERED** that:

A. To allow Plaintiff and the Receiver to preserve Assets and evidence relevant to this action and to expedite discovery, Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, shall have immediate access to any business premises and storage facilities, owned, controlled, or used by the Receivership Entities. Such locations include 1350 Columbia Street, Suites 303 and 302, San Diego, California 92101, and 4519 George Road, Suite 170, Tampa, Florida 33634; and any offsite location or commercial mailbox used by the Receivership Entities. The Receiver may exclude Defendants, Receivership Entities, and their employees from the business premises during the immediate access;

B. Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to obtain the assistance of federal, state and local law enforcement officers as they deem necessary to effect service and to implement peacefully the provisions of this Section;

C. Plaintiff and the Receiver, and their representatives, agents, contractors, and assistants, are authorized to remove Documents from the Receivership Entities' premises in order that they may be inspected, inventoried, and copied. Plaintiff shall return any removed materials to the Receiver within five business days of completing inventorying and copying, or such time as is agreed upon by Plaintiff and the Receiver;

**ER238**

18cv1388-MMA (NLS)

D.     Plaintiff's access to the Receivership Entities' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff;

E.     If any Documents, computers, or electronic storage devices containing information related to the business practices or finances of the Receivership Entities are at a location other than those listed herein, including personal residence(s) of any Defendant, then, immediately upon receiving notice of this order, Defendants and Receivership Entities shall produce to the Receiver all such Documents, computers, and electronic storage devices, along with any codes or passwords needed for access.  In order to prevent the destruction of computer data, upon service of this Order, any such computers or electronic storage devices shall be powered down in the normal course of the operating system used on such devices and shall not be powered up or used until produced for copying and inspection; and

F.     If any communications or records of any Receivership Entity are stored with an Electronic Data Host, such Entity shall, immediately upon receiving notice of this order, provide the Receiver with the username, passwords, and any other login credential needed to access the communications and records, and shall not attempt to access, or cause a third-party to attempt to access, the communications or records.

## XXV.  *Distribution of Order by Defendants*

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each affiliate, telemarketer, marketer, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, attorney, spouse, subsidiary, division, and representative of any Defendant, and shall, within ten days from the date of entry of this Order, provide Plaintiff and the Receiver with a sworn statement that this provision of the Order has been satisfied, which statement shall include the names, physical addresses, phone number, and email addresses of each such person or entity who received a copy of the Order.  Furthermore, Defendants shall not take any action that would encourage officers, agents, members, directors, employees,

**ER239**

18cv1388-MMA (NLS)

salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns or other persons or entities in active concert or participation with them to disregard this Order or believe that they are not bound by its provisions.

## XXVI. *Expedited Discovery*

**IT IS FURTHER ORDERED** that, notwithstanding the provisions of the Fed. R. Civ. P. 26(d) and (f) and 30(a)(2)(A)(iii), and pursuant to Fed. R. Civ. P. 30(a), 34, and 45, Plaintiff and the Receiver are granted leave, at any time after service of this Order, to conduct limited expedited discovery for the purpose of discovering: (1) the nature, location, status, and extent of Defendants' Assets; (2) the nature, location, and extent of Defendants' business transactions and operations; (3) Documents reflecting Defendants' business transactions and operations; or (4) compliance with this Order. The limited expedited discovery set forth in this Section shall proceed as follows:

A. Plaintiff and the Receiver may serve upon parties requests for production of Documents or inspection that require production or inspection within five days of service, provided, however, that three days of notice shall be deemed sufficient for the production of any such Documents that are maintained or stored only in an electronic format.

B. Service of discovery upon a party to this action, taken pursuant to this Section, shall be sufficient if made by facsimile, email, or by overnight delivery.

C. Any expedited discovery taken pursuant to this Section is in addition to, and is not subject to, the limits on discovery set forth in the Federal Rules of Civil Procedure and the Local Rules of this Court. The expedited discovery permitted by this Section does not require a meeting or conference of the parties, pursuant to Rules 26(d) & (f) of the Federal Rules of Civil Procedure.

D. The parties are exempted from making initial disclosures under Fed. R. Civ. P. 26(a)(1) until further order of this Court.

## XXVII. *Service of this Order*

**IT IS FURTHER ORDERED** that copies of this Order as well as the Motion for Temporary Restraining Order and all other pleadings, Documents, and exhibits filed

contemporaneously with that Motion (other than the complaint and summons), may be served by any means, including facsimile transmission, electronic mail or other electronic messaging, personal or overnight delivery, U.S. Mail or FedEx, by agents and employees of Plaintiff, by any law enforcement agency, or by private process server, upon any Defendant or any person (including any financial institution) that may have possession, custody or control of any Asset or Document of any Defendant, or that may be subject to any provision of this Order pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure.  For purposes of this Section, service upon any branch, subsidiary, affiliate or office of any entity shall effect service upon the entire entity.

## XXVIII.  *Correspondence and Service on Plaintiff*

IT IS FURTHER ORDERED that, for the purpose of this Order, all correspondence and service of pleadings on Plaintiff shall be addressed to:

> Samantha Gordon
> Matthew Wernz
> 230 South Dearborn, Suite 3030
> Chicago, Illinois  60604
> 312-960-5634
> sgordon@ftc.gov
> mwernz@ftc.gov

## XXIX.  *Preliminary Injunction Hearing*

IT IS FURTHER ORDERED that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on **July 13, 2018 at 2:30 p.m. in Courtroom 3D** to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint, continuing the freeze of their Assets, continuing the receivership, and imposing such additional relief as may be appropriate.

## XXX.  *Briefs and Affidavits Concerning Preliminary Injunction*

IT IS FURTHER ORDERED that:

A.    Defendants shall file with the Court and serve on Plaintiff's counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal

memoranda no later than **July 6, 2018**.  Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than **July 11, 2018**.  Provided that such affidavits, pleadings, motions, expert reports, declarations, legal memoranda or oppositions must be served by personal or overnight delivery, facsimile or email, and be received by the other party or parties no later than 5:00 p.m. (Pacific Time) on the appropriate dates set forth in this Section.

      B.    An evidentiary hearing on Plaintiff's request for a preliminary injunction is not necessary unless Defendants demonstrate that they have, and intend to introduce, evidence that raises a genuine and material factual issue.  The question of whether this Court should enter a preliminary injunction shall be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and oral argument of, the parties.  Live testimony shall be heard only on further order of this Court.  Any motion to permit such testimony shall be filed with the Court and served on counsel for the other parties at least five days prior to the preliminary injunction hearing in this matter.  Such motion shall set forth the name, address, and telephone number of each proposed witness, a detailed summary or affidavit revealing the substance of each proposed witness's expected testimony, and an explanation of why the taking of live testimony would be helpful to this Court.  Any papers opposing a timely motion to present live testimony or to present live testimony in response to another party's timely motion to present live testimony shall be filed with this Court and served on the other parties at least three days prior to the order to show cause hearing.

      Provided, however, that service shall be performed by personal or overnight delivery, facsimile or email, and Documents shall be delivered so that they shall be received by the other parties no later than 5:00 p.m. (Pacific Time) on the appropriate dates provided in this Section.

//

//

1  *XXXI.*  *Duration of the Order*

2  **IT IS FURTHER ORDERED** that this Order shall expire fourteen days from the

3  date of entry noted below, unless within such time, the Order is extended for an

4  additional period pursuant to Fed. R. Civ. P. 65(b)(2).

5  *XXXII.*  *Retention of Jurisdiction*

6  **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this

7  matter for all purposes.

8  The Court **DIRECTS** the Clerk of Court to file this Order **under seal**.

9  **IT IS SO ORDERED**.

10  DATE: June 29, 2018

HON. MICHAEL M. ANELLO
United States District Judge

32

**ER243**

1  ALDON F. ABBOTT
   General Counsel
2
3  SAMANTHA GORDON (IL Bar No. 6272135)
   sgordon@ftc.gov
4  MATTHEW H. WERNZ (IL Bar No. 6294061)
5  mwernz@ftc.gov
   Federal Trade Commission
6  230 South Dearborn, Suite 3030
7  Chicago, Illinois 60604
   312.960.5623 (Gordon)
8  312.960.5596 (Wernz)
9  ATTORNEYS FOR PLAINTIFF

10
                    UNITED STATES DISTRICT COURT
11                 SOUTHERN DISTRICT OF CALIFORNIA

12
   FEDERAL TRADE COMMISSION,          Case No.:     -cv-   '18 CV 1388 BEN NLS
13
14                          Plaintiff,  Plaintiff's Recommendation for
                                        Temporary Receiver
15 v.
16
17 TRIANGLE MEDIA
   CORPORATION, a Delaware
18 corporation, also doing business as
19 Triangle CRM, Phenom Health, Beauty
   and Truth, and E-Cigs, *et al.*,
20
21                          Defendants.

22
         Plaintiff Federal Trade Commission ("FTC") proposes that the Court appoint
23
24 Thomas W. McNamara of McNamara Smith LLP, San Diego, California as
25 temporary receiver in the above-captioned matter. Mr. McNamara has indicated to
26 FTC counsel that it is ready and able to serve as receiver in this matter. As detailed
27
28
                                    1

**ER244**

in the Regulatory Resolutions Appointments attached as Exhibit A, Mr. McNamara has substantial experience serving as receiver in governmental law enforcement actions in districts throughout the nation, including this district. *FTC v. Consumer Defense, LLC*, 2:18-cv-00030-JCM-PAL (D. Nev.); *FTC v. Alliance Document Preparation, LLC*, 2:17-cv-07048-SJO (KSx) (C.D. Cal.); *FTC v. AMG Services, Inc.*, 2:12-cv-00536-GMN-VCF (D. Nev.); *FTC v. Kutzner*, 8:16-cv-00999-DOC (AFMx) (C.D. Cal.); *FTC v. Good EBusiness, LLC*, 2:16-cv-01048-ODW (JPRx) (C.D. Cal.); *FTC v. Telestar Consulting, Inc.*, 2:16-cv-00555-SJO (SSx) (C.D. Cal.); *FTC v. BAM Financial, LLC*, 8:15-cv-01672-JVS (DFMx) (C.D. Cal.); *FTC v. Lake*, 8:15-cv-00585-CJC (JPRx) (C.D. Cal.); *SEC v. Khanna*, 3:09-cv-01784-BEN-WVG (S.D. Cal.); *SEC v. Global Money Management L.P.*, 3:04-cv-00521-BTM-WMC (S.D. Cal.). Thus, Mr. McNamara is well-qualified to serve as temporary receiver in this matter. In addition, Mr. McNamara has an office location in San Diego, near where many of the corporate records and equipment of the proposed receivership defendants are located.

2

1

2

3

4

5    Dated: June 22, 2018

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,


ALDON F. ABBOTT
General Counsel

Samantha Gordon (IL Bar No. 6272135)
Matthew H. Wernz (IL Bar No.6294061)
Attorneys for Plaintiff
Federal Trade Commission

3

**ER246**

REGULATORYRESOLUTIONS

<div align="right">
THOMAS W. McNAMARA
OFFICE    619-269-0400
FAX      619-269-0401
DIRECT   619-269-0499
info@regulatoryresolutions.com
regulatoryresolutions.com
</div>

## REGULATORY RESOLUTIONS APPOINTMENTS

*Federal Trade Commission v. Consumer Defense, LLC, et al.,*
2:18-cv-00030-JCM-PAL, U.S. District Court, District of Nevada

This FTC action, filed January 8, 2018, alleges that Defendants operated an unlawful advance fee loan modification business. We implemented the immediate access provision of the TRO on January 11, 2018 at Defendants' office in Sandy, Utah. Our investigation led us to conclude Defendants' operations were unlawfully charging advance fees and making a number of misrepresentations in the course of the sales process. We reported our findings to the Court. After a hearing on February 15, 2018, the Court granted the Preliminary Injunction. We continue our review of financial information to identify potential clawback targets.

*Federal Trade Commission v. Alliance Document Preparation, LLC, et al.,*
2:17-cv-07048-SJO (KSx), U.S. District Court, Central District of California

This FTC action, filed September 27, 2017, alleges that Defendants operated a fraudulent student loan relief business based on misrepresentations and unlawful advance fees, all in violation of the FTC Act and Telemarketing Sales Rule. On October 2, 2017, we took possession of the primary site in Los Angeles with a capacity for more than 125 telemarketers, and thereafter also secured two smaller sites. After confirming the unlawfulness of these operations, we suspended all operations and provided notice of all consumers in the database, which exceeded 30,000. Some defendants stipulated to the entry of preliminary injunctions and, on November 2, 2017, the court granted preliminary injunction as to those who opposed. We thereafter terminated operations and returned all leased business locations to the respective landlords. We have also taken additional steps to provide notice and direction to consumers.

*Federal Trade Commission v. AMG Services, Inc., et al.,* 2:12-cv-00536-GMN-VCF, U.S. District Court, District of Nevada

The Defendants operated one of the largest payday lending businesses in the United States. After more than four years of litigation, the United States District Court for the District of Nevada entered a judgment in favor of the Federal Trade Commission ("FTC") for $1.3 billion. The District Court subsequently appointed Mr. McNamara monitor over the assets of 24 entities and the individual Defendants (the "Monitorship Estate"). The monitor's duties include monitoring compliance with an asset freeze, selling assets, monitoring receipt of income, conducting an investigation of assets and transfers, operating businesses, if appropriate, collecting funds due the Monitorship Estate and liquidating assets, as necessary, if they are wasting in value.

<div align="right">

**Exhibit A**
</div>

## REGULATORY RESOLUTIONS

*Federal Trade Commission v. Kutzner, et al.*, 8:16-cv-00999- DOC (AFMx), U.S. District Court, Central District of California

    The FTC action alleges that Defendants defrauded consumers and violated the FTC Act through the operation of a law firm that sold consumers the opportunity to participate in so-called mass joinder suits against mortgage lenders. Unlike an earlier mass joinder case where we were the Receiver only for the non-attorney telemarketers (*see People v. The Law Offices of Kramer and Kaslow*, at page 8), the appointment in this case included the law firms involved in the filing of ten cases on behalf of more than 1,500 clients. After appointment, we evaluated the operations and then terminated sales and telemarketing and began the process of accumulating any available assets.

    As to the law firms, we implemented procedures set out by the Court to protect the interests of the clients by providing notice of the receivership to the Courts where the mass joinder cases were pending and advising clients they must secure new counsel. Preliminary Injunctions were entered in July, 2016. The underlying case remains pending.

*Securities and Exchange Commission v. PLCMGMT LLC, et al.*, 2:16-cv-02594-TJH (FFMx), U.S. District Court, Central District of California

    In this securities fraud case, the SEC alleges that Defendants fraudulently solicited investors for a litigation marketing program with promised returns of 100% and more. A stipulated preliminary injunction, which included our appointment as Receiver, was entered April 26, 2016. We immediately suspended operations. The two individual Defendants have both stipulated to liability and final judgments as to each have been entered. We have accumulated available assets and filed clawback actions against sales agents who were paid commissions and third parties who received fund transfers from Defendants. The most significant remaining asset is a portfolio of cases against drug manufacturers as to which the receivership will receive a portion of fees paid to lead counsel. On December 12, 2017, we filed a motion for approval to make a first interim distribution of $1,046,000 to investors.

*Federal Trade Commission v. Good EBusiness, LLC, et al.*, 2:16-cv-01048-ODW (JPRx), U.S. District Court, Central District of California

    Defendants in this FTC case operated a fraudulent student loan repayment and modification business which violated multiple provisions of the FTC Act and the Telemarketing Act. Upon appointment, we took control of the office in Los Angeles, terminated operations, as they were unlawful, and assembled the limited assets.

    Our service in this matter was brief after we determined that a receivership was not economically viable due to the lack of assets and the Defendants' recent withdrawal from the active business. As such, we exercised the provision in the TRO to withdraw as Receiver and returned net receivership funds of $19,000 to the FTC.

**Exhibit A**

**ER248**

REGULATORY RESOLUTIONS

*Federal Trade Commission v. Telestar Consulting, Inc., et al.*, 2:16-cv-00555-SJO (SSx), U.S. District Court, Central District of California

    This matter began as a receivership, but was converted to a monitorship by a Stipulated Preliminary Injunction. Defendants operated a telemarketing sales business – selling arts and crafts supplies and anti-microbial products to non-profits, small preschools, and school athletic departments. But, the primary sales driver was the shipment, and subsequent billing for, unordered merchandise. The FTC alleged violations of the FTC Act, the Telemarketing Act, and the Unordered Merchandise Statute. After appointment, we suspended all operations from the Southern California headquarters and coordinated with the FTC and Defendants as they worked toward a Stipulated Preliminary Injunction, which was entered in March, 2016. By the terms of the Preliminary Injunction, Defendants were able to resume operations, subject to stringent conditions, and we were appointed Monitor tasked to oversee these new operations, based on a new sales model that did not include telemarketing. The FTC and Defendants ultimately reached a settlement and the Receiver/Monitor was discharged on October 27, 2017.

*Federal Trade Commission v. BAM Financial, LLC, et al.*, 8:15-cv-01672-JVS (DFMx), U.S. District Court, Central District of California

    Defendants in this FTC action, filed in October, 2015, are alleged to have operated unlawful debt collection businesses that violated the Fair Debt Collection Practices Act. Defendants embraced an old model – buying written-off bank debt cheap (less than $.05 per dollar) and then pursuing collection with harassment and predatory tactics administered by a call room of collectors incentivized with compensation based on results. We assembled the limited available assets and ultimately shut down the two sites in Orange County, California after concluding they could not operate lawfully and profitably going forward, particularly given that the entire debt portfolio had been tainted by improper collection tactics. The Temporary Restraining Order was extended by several months before the case was ultimately settled and the Receiver discharged.

*Federal Trade Commission v. Lake, et al.*, 8:15-cv-00585-CJC (JPRx), U.S. District Court, Central District of California

    Defendants in this FTC action are alleged to have operated loan modification businesses which unlawfully sought and accepted advance fees and deployed fraud and deception to lure in consumers. These operators used direct mail pieces designed to appear as official government mailings which promised consumers mortgage relief and directed them to an 800 number which was answered by telemarketers in Defendants' call room. These Defendants, however, added a component of pure fraud to thinly disguise the advance fee – consumers were essentially guaranteed a loan modification if they sent their next four mortgage payments to a phony trust account controlled by Defendants who simply pocketed the money. We took over the call room and the processing location and thereafter terminated operations and shut down the sites. Preliminary Injunctions were entered in May, 2015 and Stipulated Final Judgments were ultimately entered as to all, but one, of the Defendants. Final Judgment was entered as to the last remaining Defendant after the Court granted the FTC's motion for summary judgment.

**Exhibit A**

3

**ER249**

# REGULATORY RESOLUTIONS

*Consumer Financial Protection Bureau v. Moseley, et al.*, 4:14-cv-00789-DW, U.S. District Court, Western District of Missouri

Defendants, twenty entities and their three individual owners, are alleged to have engaged in an unlawful payday loan scheme with gross loan volume in excess of $100 million. The scheme included the tactic of loan "cramming" by which Defendants obtained unauthorized access to consumers' bank accounts and made unauthorized deposits into those accounts and thereafter sought collection on them as payday loans with high fees and interest. Defendants are also alleged to have deceived consumers as to the true terms of payday loans and to have used consumer financial information purchased from third parties to originate online payday loans without consumers' consent. A Stipulated Preliminary Injunction was entered on October 3, 2014, but the case still remains pending as to all Defendants. We have assembled substantial assets, exceeding $10 million, and have filed a malpractice claim against the Defendants' prior business counsel claiming that their negligent advice was a cause of the illegal business.

*Federal Trade Commission v. MDK Media, Inc., et al.*, 2:14-cv-05099-JFW (SHx), U.S. District Court, Central District of California

Defendants, six entities and their individual owners, are alleged to have operated premium SMS businesses where consumers were enrolled in phone text subscription programs without their consent through various forms of cramming. While the Defendant entities are separate companies with different owners, they were part of a loose network actually controlled by past and current executives of a large cellular aggregator, Mobile Messenger. Defendants had limited active operations, but had generated aggregate revenues in less than three years of nearly $65 million. The Temporary Restraining Order was entered on July 7, 2014, but this receivership appointment was brief as the Court denied the FTC's subsequent motion for Preliminary Injunction and the case was later settled.

*Federal Trade Commission v. Tatto, Inc., et al.*, 2:13-cv-08912-DSF (FFMx), U.S. District Court, Central District of California

Defendants in this case operated a "premium SMS" business providing various text subscription programs to consumers. The FTC alleged that the core business was "cramming" charges for these programs to consumers who did not knowingly authorize the charges or order the service. The business was not actively operating at the time of our appointment, but we were able to accumulate substantial assets traceable to the businesses which were disbursed to the FTC for consumer redress purposes. The underlying case was resolved through settlements with consent judgments entered in June and August, 2014. One of those judgments expanded our duties to be the "Liquidator Receiver" to liquidate substantial real estate and personal property assets of the individual Defendants. We liquidated $5.1 million in real property assets and $770,000 in personal property. As Receiver, we recovered $600,000 in business and personal property dispositions and $2.3 million in liquid assets repatriated from an account in Hong Kong. In May, 2016, the Court authorized an interim disbursal of $8 million from the receivership to the FTC to be applied to an FTC redress program. We filed a Final Report in December, 2016

**Exhibit A**

4

REGULATORY RESOLUTIONS

and were discharged in January, 2017. Distributions from the receivership to the FTC totaled in excess of $10.1 million.

*Federal Trade Commission v. Asset & Capital Management Group, et al.*, 8:13-cv-01107-DSF (JCx), U.S. District Court, Central District of California

Defendants in this case operated debt collection businesses in which they acquired legitimate bank debt at deep discounts and then deployed aggressive and deceptive telephone collection techniques which violated the Fair Debt Collection Practices Act. We took possession of the two active sites and suspended operations after concluding they could not be operated lawfully and profitably going forward. One of the Receivership Defendants was also an IT and telecommunications provider to some 20 other non-party debt collection operators – we were able to secure an order from the Court directing the Receiver to collect all of this Receivership Defendants' equipment from those sites. Consent Judgments were entered as to all Defendants in May, 2014.

*Federal Trade Commission v. A to Z Marketing, et al.*, 8:13-cv-00919-DOC (RNBx), U.S. District Court, Central District of California

These Defendants operated loan modification schemes in California and Nevada. One group maintained offices in Orange County, California and Las Vegas, Nevada. The other was based in Orange County. Both deployed the same basic stratagem – drive consumers to a loan modification telemarketing room through sophisticated mailers designed to create the appearance of an official government mailer; attach a law firm name to the telemarketing room and give consumers the impression they are retaining a legal services firm; enter into a nominal relationship with an attorney who supposedly owns and operates the front law firm and create a pseudo network of affiliate attorneys in other states; and charge illegal advance fees. One group added a significant variation – the loan processors providing personalized service were all based in Calcutta, India. In the process of taking possession of the sites identified in the initial TRO, we were able to identify and ultimately take possession of several additional sites operated by affiliates of the named Defendants.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act and the MARS rule prohibiting advance fees. We concluded that this business could not operate lawfully and profitably in the context of this receivership and suspended operations indefinitely. Stipulated Preliminary Injunctions were entered as to Defendants named in the initial Complaint, except one Defendant who left the country. The FTC later filed an Amended Complaint adding the additional affiliates discovered in our investigations. The FTC secured Judgments against all Defendants either by default or settlement with the last judgment entered in December, 2014.

**Exhibit A**

5

**ER251**

REGULATORY RESOLUTIONS

*Federal Trade Commission v. Ideal Financial Solutions, et al.,* 2:13-cv-00143-JAD-GWF, U.S. District Court, District of Nevada

These Defendants ran a particularly brazen fraud – they ran unauthorized charges (usually $29.95) against the bank accounts and credit card accounts of consumers who had purchased no products or services from them. Consumer account information was obtained through payday loan brokers and middlemen who were in possession of high volumes of consumer payday loan applications. The apparent premise of the business was that most consumers would not notice the unauthorized charge or not pursue a chargeback. Consumers who did call to complain were told that they had purchased financial counseling services, payday loan matching services, or assistance in completing payday loan applications.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act. The TRO was entered January 30, 2013, after which we concluded that this business could not operate lawfully and profitably in the context of this receivership and terminated operations. A Preliminary Injunction was entered February 15, 2013. In February, 2016, the Court granted summary judgment as to the Receivership Defendants and the Individual Defendants, who had not previously settled, and entered a Final Judgment for $43 million. At the request of the FTC. In October, 2017, we completed a $450,000 settlement of the receivership's claim against a third-party merchant account processor.

*Federal Trade Commission v. Ambrosia Web Design, et al.,* 2:12-cv-02248-PHX-FJM, U.S. District Court, District of Arizona

Defendants operated a credit card interest rate reduction call room in Tempe, Arizona. Consumers were driven to the call room by robocalls orchestrated by third-party vendors. Unwary consumers who pressed "1" in response to the automated message were directed to the Tempe call room which generally identified itself as some variant of "card services." The telemarketers then tried to sell a menu of interest rate savings vehicles from transfers to new zero balance accounts to direct negotiations with the current credit card company.

Upon appointment, we took over the call room which had approximately 40 employees ranging from "Qualifiers" who took the initial calls, "Closers" who took those calls from consumers who expressed interest, and "Financial Advisors" who communicated with card companies, customer service, and accounting.

The FTC's Complaint and TRO application alleged multiple specific violations of the FTC Act and the TSR. We found that the core business was unprofitable and predicated, at the threshold, on two illegal practices – robocalls and unauthorized merchant account factoring. As such, we concluded that this business could not operate lawfully and profitably in the context of this receivership, terminated operations, and returned the business premises to the landlord. Consent Judgments as to all Defendants were entered in September, 2013.

**Exhibit A**

6

**ER252**

REGULATORY RESOLUTIONS

*Federal Trade Commission v. Sameer Lakhany, Precision Law Center, et al.*, 8:12-cv-00337-CJC, U.S. District Court, Central District of California

Defendants operated a loan modification call room in Santa Ana, California using a thinly disguised illegal advance fee collection process. Defendants claimed their businesses were "non-profits" which offered a "forensic audit" (for a fee) followed by a "free" loan modification. For a period of about eight months, the offerings to consumers evolved into "mass joinder" lawsuits. A number of mass joinder lawsuits against banks were actually filed, but aside from a very brief period of time, there was no licensed attorney involved. All the mass joinder cases were dismissed by the courts for failure to serve the complaint on the defendant banks or for failing to respond to motions filed by the banks. At the time of the FTC's action, Defendants were telling consumers that they were actively looking to "merge" the mass joinder business with an actual law firm and were back to actively pursuing loan modification clients using the non-profit forensic audit as a teaser.

After appointment, we took over the call room with approximately 20 active telemarketers, suspended operations, and communicated with the consumer customers. After Court approval, we closed the facilities and liquidated the onsite furniture and equipment. We were able to employ the onsite data base and identify approximately 1,100 paying loan modification customers, some 10% of whom actually secured some form of modification, and approximately 700 consumers who made payments to become included in a mass joinder litigation. Orders for Permanent Injunction were entered February 28, 2013.

*Federal Trade Commission v. Forensic Case Management Services, Inc., et al.*, 2:11-cv-07484-RGK, U.S. District Court, Central District of California

Defendants operated a telephone-driven collection business from Van Nuys, California with approximately 50 telemarketer/collectors soliciting small businesses with unpaid receivables and then pursuing debtors on behalf of those small businesses. The FTC action alleged multiple unfair business practices, fraud, and violations of the Fair Debt Collection Practices Act. In addition to telephone collection, these Defendants also operated a "forwarding" business whereby they collected an up-front fee from their small businesses' creditor clients and forwarded collection cases to attorneys around the country, often based on fraudulent representations that specific assets of the debtor had been identified and were ready for seizure.

As Court-appointed Receiver, we took over the operation which had a client base of nearly 25,000 small business customers. After determining that fraud was so ingrained that it could not be operated lawfully, we suspended operations and communicated with the client base, pending a resolution of the underlying case. Consent Judgments were entered in January, 2013.

**Exhibit A**

7

**ER253**

REGULATORY RESOLUTIONS

*People of the State of California v. The Law Offices of Kramer and Kaslow, et al.*, LC094571, Los Angeles County Superior Court, Central Civil West Division

The California Attorney General and the State Bar of California brought actions in August, 2011 against multiple lawyers and law firms and their telemarketing affiliates alleging that they were preying on desperate consumer homeowners facing foreclosure by selling them participation in so-called "mass joinder" lawsuits against mortgage lenders. The Attorney General complaint included claims for unfair business practices, false advertising, and the illegal use of non-attorneys to solicit business for a lawyer or law firm. Simultaneously, the State Bar of California sought and received Possession Orders as to the Attorney Defendants in separate actions filed by the State Bar.

In the Attorney General action, we were appointed Receiver of the Non-Attorney Defendants (the telemarketers who ran call centers at seven different locations) and certain assets of the Attorney Defendants. As Receiver, we took possession of seven separate call room operations in Orange and Los Angeles County and thereafter shut them down. These telemarketers also sold illegal loan modifications services, sometimes disguised as "alternative dispute resolution," but those services were generally a prelude to the "mass joinder" lawsuit offerings. We worked closely with the Attorney General and the State Bar as they proceeded with their highly complex cases involving more than 6,000 consumer victims who purchased seats in the mass joinder litigation. Both the Attorney General and the State Bar cases have been settled, except as to one Defendant in the Attorney General's case who is incarcerated.

Under Court supervision and the concurrence of the Attorney General and the State Bar, we administered a $700,000 restitution program with notice to the full universe of 9,000 consumers, as prospective claimants, followed by the processing and review of claims and pro rata payments to approved claimants. After completion of this restitution program, the receivership was terminated in March, 2016.

*Federal Trade Commission v. National Sales Group, et al.*, 1:11-cv-01230, U.S. District Court, Northern District of Illinois, Eastern Division

Defendants operated an internet "jobs site" from a telemarketing boiler room in Santa Barbara, California. National Sales Group described itself as a "recruiting firm," but its real business model was to harvest job-seeker leads from multiple online sources and then drive those leads to the boiler room where 20+ telephone sales personnel offered and sold them various job-seeking services and materials, all under the guise that it somehow represented actual employers. We took over the Santa Barbara call room and, after confirming the deception at the core of the business, shut it down. We coordinated with FTC staff as they completed settlements and Consent Judgments with the Defendants, which were entered on January 19, 2012.

**Exhibit A**

8

**ER254**

# REGULATORY RESOLUTIONS

*Federal Trade Commission v. Health Care One, LLC, et al.*, 8:10-cv-01161-JVS (RNBx), U.S. District Court, Central District of California

Defendants operated telemarketing call rooms selling "health care discount programs" to consumers nationwide. We took over call rooms in Tempe, Arizona and Laguna Hills, California. After we confirmed the deceptive nature of the Defendants' selling practices, we immediately shut down these facilities. We worked with the FTC in tracing financial transactions, collecting identified assets for inclusion in a future FTC redress program, and unwinding the relationships between the Defendants and sub-marketers selling the same products under their own brand names. Consent Judgments were entered on February 5, 2011 and April 18, 2011.

*Federal Trade Commission/California Department of Justice v. U.S. Foreclosure Relief, et al.*, 8:09-cv-00768-JVS-MLG, U.S. District Court, Central District of California

Defendants ran a large loan modification business. We took over the business, located and reviewed financial records, traced financial transactions, and interviewed principals and key employees in a very short period of time. We were able to provide timely and detailed reports to the district court which, based largely upon our findings, continued the imposition of injunctive relief. We also cooperated with various investigations being conducted by the State Bar of California and the local District Attorney's office. Our suggested consumer redress plan was accepted by the FTC and the Court and was implemented by our office with $612,000 disbursed to 1,100 consumers. (The state of Missouri was also a plaintiff in the action.) Consent Judgments were entered in 2010.

*Securities and Exchange Commission v. Khanna, et al.*, 3:09-cv-01784-BEN-WVG and *CFTC and California Department of Corporations v. Khanna, et al.*, 3:09-cv-01783-BEN-WVG, both U.S. District Court, Southern District of California

The MAK 1 Defendants ran a $35-40 million foreign exchange Ponzi scheme operation. After appointment, we took over the remaining operations of the company, seized assets, and traced financial transactions worldwide. We sought and received contempt orders from the district court when the Defendants failed to produce the company's complete books and records. The Defendants had no remaining assets, but we identified and pursued "clawback claims" as to all investors who received profits and a small group of commissioned sales personnel, ultimately making five distributions to investors for a 27% recovery of their losses.

*Securities and Exchange Commission v. Global Money Management L.P., et al.*, 3:04-cv-00521-BTM-WMC, U.S. District Court, Southern District of California

Global Money Management was a San Diego-based hedge fund which raised nearly $100 million for an options-driven investment program, but ultimately evolved into a classic Ponzi scheme. Upon appointment as Receiver, we placed GMM in Chapter 11 Bankruptcy. The assets of its General Partner, LF Global Investments, were assembled through the receivership and transferred to the Bankruptcy Estate. The GMM Bankruptcy Estate ultimately returned $31.7 million to 200 approved investors representing 45% of their net losses. At the outset, my former

**Exhibit A**

9

REGULATORY RESOLUTIONS

partner Charles La Bella was the Receiver and I was a member of the legal team, but I substituted in as Receiver after Mr. La Bella's return to the government.

*Federal Trade Commission v. Seasilver, et al.*, 2:03-cv-00676-RLH-LRL, U.S. District Court, District of Nevada

We took over operational control of the on-going Seasilver dietary supplement business in Carlsbad, California. Seasilver employed more than 500 people and was doing nearly $1 million a day in gross credit card sales of an aloe-based supplement, mostly via its website, based on false and inflated advertising claims. We supervised operation of the company and withdrawal of its improper advertising programs for nearly a year. Control was ultimately returned to the principals after a Consent Decree was entered. The principals are now subject to a $100 million judgment in favor of the FTC.

*Securities and Exchange Commission v. Millennium, et al.*, 1:02-cv-03901-LAP, U.S. District Court, Southern District of New York

Millennium operated an international telemarketing scam selling shares in bogus pre-IPO companies. The operation was based in Spain with most of the victims residing in the United Kingdom. We investigated and ultimately recovered more than $2 million for return to investors. We cooperated with the SEC and the United States Attorney's Office for the Southern District of California in a related criminal case. We also worked with the United States Attorney's Office in the Southern District of New York to file the first non-terrorism Patriot Act seizure of a correspondent bank account.

**Exhibit A**

10

**ER256**

ALDON F. ABBOTT
General Counsel

SAMANTHA GORDON (IL Bar No. 6272135)
sgordon@ftc.gov
MATTHEW H. WERNZ (IL Bar No. 6294061)
mwernz@ftc.gov
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
312.960.5623 (Gordon)
312.960.5596 (Wernz)
ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: **'18CV1388 BEN NLS** |
| Plaintiff, | Certification and Declaration of Plaintiff's Counsel Pursuant to Federal Rule of Civil Procedure 65(b) and Civ. L.R. 83.3(g)(2) in Support of Plaintiff's Ex Parte Motion for Temporary Restraining Order and Ex Parte Motion to Temporarily Seal the Case File |
| v. | |
| TRIANGLE MEDIA CORPORATION, a Delaware corporation, also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs, *et al.*, | |
| Defendants. | |

I, Matthew H. Wernz, certify and declare as follows:

1.   I am an attorney employed by and representing the Federal Trade

Commission ("FTC") in this case. I am licensed to practice law in the State of

Illinois. My business address is 230 South Dearborn Street, Suite 3030, Chicago,

1

Illinois 60604. The following statements are within my personal knowledge, and if called as a witness I could competently testify thereto.

### Background

2.      Pursuant to Federal Rule of Civil Procedure 65(b) and Civ. L.R. 83.3(g)(2), the FTC has moved for an *ex parte* temporary restraining order with an asset freeze, appointment of a receiver, and other equitable relief, and an order to show cause why a preliminary injunction should not issue ("TRO Motion"), as well as an *ex parte* motion to temporarily seal the case file.

3.      The FTC has no information or belief as to the identity of counsel representing Defendants in connection with the allegations in the FTC's complaint. The FTC has not attempted to provide notice to Defendants – nor should notice be required – for the reasons set forth herein.

4.      This Court may issue a temporary restraining order ("TRO") without notice to the defendants if the facts show that the movant would suffer immediate and irreparable injury if notice were given and if the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

5.      An *ex parte* TRO is designed to preserve the status quo and prevent irreparable harm as long as it is necessary to hold a hearing. *Reno Air Racing*

2

**ER258**

*Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974)).

6.     A district court within this circuit may issue an *ex parte* TRO where the movant shows that, if given notice, the defendants would likely render further prosecution of the case fruitless by destroying or concealing evidence. *Id.* (citing *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)); *see also In re Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979).  To support this showing, a movant may cite to past incidents of the defendants or persons similar to the defendants disposing of evidence or violating court orders. *McCord*, 452 F.3d at 1131.

7.     Here, the evidence set forth in the FTC's memorandum in support of its TRO Motion, and in the accompanying declarations and exhibits, shows that Defendants have engaged in a deceptive marketing scheme wherein Defendants advertise "free trials" of products to consumers for a minimal price, but instead frequently charge consumers hundreds of dollars and enroll them in ongoing continuity programs, all without the knowledge or consent of the consumers. These practices violate Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8403, and Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a).

3

**ER259**

**Defendants' Scheme**

8.     Defendants advertise, market, promote, distribute, and sell skincare products, electronic cigarettes, and dietary supplements online.  Defendants represent to consumers that they can obtain "free trials" of their products for a minimal shipping and handling charge.  In reality, shortly after ordering a "free trial" from Defendants, consumers are charged the full price of the trial product, typically between $80 and $100, and also are enrolled in a continuity program that charges full price for additional shipments of the product.  Consumers also are charged for add-on products at the time of purchase, with each add-on product carrying its own own undisclosed charge and associated continuity plan. Consumers are charged full price for these products and enrolled in these continuity plans without their knowledge or consent. Consumers who seek refunds for unauthorized charges are often unable to receive a refund due to the Defendants' previously undisclosed refund restrictions.  Since 2010, Defendants have garnered tens of millions of dollars by charging thousands of consumers unlawfully.

9.     To the best of the FTC's knowledge, Defendants are not aware of the FTC's investigation into this illegal activity or that the FTC is seeking equitable monetary relief from them.  The pervasive nature of Defendants' unlawful behavior and the deceptive nature of their misrepresentations demonstrate a

4

likelihood that they will dissipate or conceal assets and destroy or conceal evidence of their unlawful conduct if they are notified of the FTC's intention to seek equitable monetary relief.

### Defendants' Conduct and the Need for *Ex Parte* Relief

10.     Based on the conduct of Defendants, there is good cause to believe that immediate and irreparable harm to the FTC's ability to achieve effective final relief (including monetary redress or restitution) may occur if the file in this matter is not sealed or if Defendants receive advance notice of the lawsuit and the TRO Motion.  In particular, during the course of their scheme, Defendants have obscured their identities and also have transferred assets outside the United States.

11.     As more fully set out in the TRO Motion and accompanying filings, Defendants have hidden themselves behind a series of shell companies that they use to process payments from consumers victimized by their scheme.  In November 2016, when one of these companies was contacted by a representative of the Better Business Bureau, Defendants promptly filed dissolution papers with the Nevada Secretary of State, where the dissolved company was organized. Defendants since have continued doing business under different corporate names. Given Defendants' extensive use of corporate shells, there is good cause to believe that they will destroy evidence if given notice of the TRO Motion.

5

**ER261**

12.     In addition to hiding behind corporate shells, Defendants have transferred assets outside the United States.  Specifically, Defendants have transferred more than $20 million to a bank account located in Canada, while Defendant Hardwire Interactive Inc. has a bank account located in the British Virgin Islands.  Thus, there is good cause to believe that Defendants will disippate assets if given notice of the TRO Motion.

### Similar FTC Cases and the Need for *Ex Parte* Relief

13.     The FTC's past experience with similar defendants also provides good cause to believe that immediate and irreparable harm to the FTC's ability to achieve effective final relief (including monetary redress or restitution) may occur if the file in this matter is not sealed or if Defendants receive advance notice of the lawsuit and the TRO Motion.  I am reliably informed of the following examples, provided upon information and belief:

a.     In a recent case alleging violations of ROSCA, after being served with a TRO including asset freeze, a defendant owner of an online credit reporting service attempted to withdraw frozen assets from individual and corporate accounts.  This same defendant had retained consumers' personal information during litigation and was held in contempt for charging these consumers thousands of dollars in violation of a preliminary injunction.  *See FTC*

6

**ER262**

*v. Credit Bureau Center, LLC*, CV-17-00194-MFK, Docket No. 106 (N.D. Ill. July 18, 2017).

        b.    In another case against an online marketer, a defendant, as part of a settlement with the FTC, misrepresented his financial condition by failing to disclose several hundred thousand dollars in assets. The FTC subsequently learned of these assets, and moved for and was granted an *ex parte* order requiring the defendant to pay $180,000 in undisclosed assets. *FTC v. CPATank, Inc.*, CV-14-1239 (N.D. Ill. Nov. 2, 2016).

        c.    In *FTC v. Data Medical Capital, Inc.*, No. CV-99-1266 (C.D. Cal. 2009), the FTC moved for contempt and an *ex parte* TRO and asset freeze against certain defendants. One defendant learned of the FTC's contempt investigation and transferred approximately $1 million to a personal bank account before the FTC filed its motion.

        d.    In *FTC v. Asset & Capital Management Group*, No. 8:13-cv-01107-DSF-JC (C.D. Cal. 2013), one week after the Court granted, and the FTC served upon all defendants, an *ex parte* TRO that froze the defendants' assets and appointed a Receiver, the Receiver identified an additional business site that the defendants had failed to disclose. The undisclosed site turned out to be the defendants' headquarters and contained extensive business records, including corporate and tax records, bank statements, and personnel files for dozens of the

7

defendants' entities. The Receiver arrived at the site unannounced, after receiving repeated assurances from the defendants that they had disclosed all of their business locations. He found a defendant and his colleague carrying folded bankers boxes from their car to the site, clearly intent on removing materials from the premises. When the Receiver gained entry to the site, he found evidence that desktop computers and records recently had been removed. The FTC subsequently learned that more than 60 servers and extensive records had been taken.

e.     In *FTC v. Lakhany*, No. 12-cv-337 (C.D. Cal. 2012), the day after the court granted the TRO, but before the FTC could effect service, the defendant's employee notified the defendant of the FTC's lawsuit and receivership. The individual defendant withdrew $204,000 from corporate bank accounts in violation of the asset freeze. The defendant later stipulated to the contempt, and the majority of the withdrawn funds were recovered.

f.     In *FTC v. Transcontinental Warranty, Inc.*, No. 09-cv-2927 (N.D. Ill. 2009), the FTC moved for a TRO with notice to the defendants. The court granted the FTC's motion for a TRO freezing the defendants' assets and appointing a receiver. But when the receiver and counsel for the FTC arrived at the corporate defendant's premises, hundreds of folders with labels indicating that they contained records of the defendants' most recent transactions were found empty. Moreover, the defendants claimed that five computers – including that of

8

**ER264**

the corporate defendant's chief financial officer – were stolen the night before the receiver and counsel for the FTC arrived.

g.    In *FTC v. Connelly*, SACV-06-701 DOC (RNBx) (C.D. Cal. 2006), upon learning of the FTC's action, three defendants withdrew at least $800,000 from their bank accounts, most of which was never recovered.

h.    In *FTC v. Universal Premium Servs., Inc.*, CV-06-849 SJO (OPx) (C.D. Cal. 2006), a defendant and his wife withdrew over $45,000 from their joint personal bank account hours after learning of the FTC's action.

i.    In *FTC v. World Traders Ass'n, Inc.*, No. CV-05-591-AHM (CTx) (C.D. Cal. 2005), upon learning of the TRO, the defendants appropriated $90,459 from their bank account, none of which was recovered.

j.    In *FTC v. Nat'l Consumer Council, Inc.*, No. CV-04-0474 CJC (JWJx) (C.D. Cal. 2004), the court granted the FTC's request for an *ex parte* TRO with asset freeze and a temporary receiver against all but one of the corporate defendants.  One of the individual defendants then deleted key electronic files on the defendants' shared network server by accessing his account through a computer controlled by the corporate defendant not under receivership.

k.    In *FTC v. 4049705 Canada Inc.*, No. 04-cv-4694 (N.D. Ill. 2004), the FTC filed a complaint and motion for a TRO and asset freeze, with notice to the defendants.  The defendants made several substantial money transfers

9

**ER265**

after receiving notice of the FTC's action but before the asset freeze was

implemented.

l.    In *FTC v. QT, Inc.*, No. 03-cv-3578 (N.D. Ill. 2003), the

defendants, who marketed sham medical products, after notice of a TRO, withdrew

and transferred more than two million dollars from banks that had not yet received

notice of the asset freeze.

m.    In *FTC v. Physicians Healthcare Dev., Inc.*, CV02-2936 RMT

(JWJx) (C.D. Cal. 2002), upon receiving notice of the action, the defendants

removed or shredded most of their records, including all customer files.

n.    In *FTC v. Bay Area Bus. Council, Inc.*, No. 02-cv-5762 (N.D.

Ill. 2002), as soon as the district court entered a final order for more than $12

million, the defendants took advantage of the termination of a nearly two-year old

asset freeze and immediately withdrew nearly all their assets from their bank

accounts before the FTC was able to obtain a turnover order.

o.    In *FTC v. Consumer Repair Servs., Inc.*, No. CV-00-11218 CM

(C.D. Cal. 2000), after the defendants were notified of a TRO and asset freeze

against them, they violated the order by withdrawing over $17,000 from accounts

that were not yet frozen.

p.    In *FTC v. World Class Network, Inc.*, No. SACV97-162 AHS

(Eex) (C.D. Cal. 1997), two of the defendants withdrew from the bank, spent,

10

**ER266**

and/or hid $202,000 in assets after learning of the action. Another defendant's spouse withdrew over $100,000 and left the state to open and to deposit funds into an out-of-state account.

q. In *FTC v. Osborne Precious Metals, Inc.*, No. CV-92-4194 AWT (C.D. Cal. 1992), the defendants destroyed a number of business records shortly after learning of the action.

r. In *FTC v. Am. Nat'l Cellular, Inc.*, No. CV-85-7375 WJR (C.D. Cal. 1985), a defendant learned of the action and immediately withdrew $1.2 million from his bank accounts. The defendant fled California and dissipated the money while living overseas.

14. Based on experiences such as those recounted above, and exercising its mandate to combat fraud, the FTC often seeks non-noticed *ex parte* TROs pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b). Federal district courts have granted many such orders to the FTC, including in this District. The following, provided upon information and belief, are examples of consumer fraud cases where the FTC was granted *ex parte* TROs with asset freezes in this District: *FTC v. Membership Servs., Inc.*, 01-cv-1868 (S.D. Cal. Oct. 17, 2001); *FTC v. National Art Pubs. & Distribs., Inc.*, CV-94-0518 (S.D. Cal. Apr. 5, 1994); *FTC v. Pac. Med. Clinics*, CV-90-1277 (S.D. Cal. Sept. 19, 1990); *FTC v. Properties Int'l*, 90-cv-00756-GT-BTM (S.D. Cal. June 6, 1990). Additionally, the following,

11

**ER267**

provided upon information and belief, are examples of consumer fraud cases where the FTC was granted *ex parte* TROs with asset freezes in other districts in this state: *FTC v. A1 DocPrep Inc.*, CV-17-07044 (C.D. Cal. Sept. 28, 2017); *FTC v. Alliance Document Prep.*, CV-17-7048 (C.D. Cal. Sept. 28, 2017); *FTC v. M&T Fin. Group*, CV-17-6855 (C.D. Cal. Sept. 19, 2017); *FTC v. Good Ebusiness, LLC*, CV-16-1048-ODW (C.D. Cal. Feb. 16, 2016); *FTC v. Telestar Consulting, Inc.*, CV-16-555-SJO (SSx) (C.D. Cal. Feb. 1, 2016); *FTC v. BAM Fin., LLC*, SACV15-01672 (C.D. Cal. Oct. 21, 2015); *FTC v. BunZai Media Group, Inc.*, CV15-04527-GW(PLAx) (C.D. Cal. June 16, 2015); *FTC v. Sale Slash, LLC*, SACV15-3107 (C.D. Cal. Apr. 27, 2015); *FTC v. Wealth Educators, LLC*, SACV15-2357 (C.D. Cal. Apr. 6, 2015); *FTC v. Tatto, Inc.*, CV-13-08912 DSF (FFMx) (C.D. Cal. Dec. 5, 2013); *FTC v. Asset and Capital Mgmt. Group, Inc.*, CV-13-01107 DSF (SSx) (C.D. Cal. July 24, 2013); *FTC v. Am. Mortgage Consulting Group, LLC*, SACV12-01561-DOC-JPR (C.D. Cal. Sept. 18, 2012); *FTC v. Rincon Mgmt. Servs., LLC*, CV-11-1623VAP (SPx) (C.D. Cal. Oct. 11, 2011); *FTC v. Forensic Case Mgmt. Servs., Inc.*, LACV11-7484 RGK (C.D. Cal. Sept. 13, 2011); *FTC v. Health Care One LLC*, SACV10-1161 JVS (RNBx) (C.D. Cal. Aug. 3, 2010).

13.     *Ex parte* TROs including asset freezes also have been granted to the FTC in other districts throughout the Ninth Circuit, including the following, in the last ten years (provided on information and belief): *FTC v. RevMountain LLC*,

12

**ER268**

2:17-cv-02000-APG-GWF (D. Nev. July 25, 2017); *FTC v. Health Formulas, LLC*, 2:14-cv-01649-JAD-GWF (D. Nev. Oct. 7, 2014); *FTC v. Am. Bus. Builders LLC*, CV-12-2368-PHX-GMS (D. Ariz. Nov. 6, 2012); *FTC v. Premier Nationwide Corp.*, CV-12-0009-PHX-GMS (D. Ariz Jan. 5, 2012); *FTC v. Immigration Ctr.*, 3:11-CV-00055-LRH (D. Nev. Jan. 26, 2011); *FTC v. Advanced Mgmt. Servs., NW, LLC*, CV-10-148-LRS (E.D. Wash. May 10, 2010); *FTC v. MCS Programs, LLC*, C09-5380 RBL (W.D. Wash. June 26, 2009); *FTC v. Helping Hands of Hope, Inc.*, CV-08-0909 PHX-JAT (D. Ariz. 2008). District courts in other Circuits have also granted numerous other *ex parte* TROs as requested by the FTC.

14. For the above reasons, there is good cause to believe that immediate and irreparable harm will result to consumers, including the destruction of Defendants' records and the dissipation or concealment of Defendants' assets, if Defendants receive advance notice of the FTC's TRO Motion.

15. For the same reasons, there is good cause to believe that immediate and irreparable harm will result to consumers if Defendants receive premature notice of the filing of this action. The interests of justice therefore would be served if the FTC's concurrent *ex parte* motion for an order temporarily sealing the entire docket, all pleadings and all court orders in this matter were granted.

13

**ER269**

1       I declare under penalty of perjury that the statements in this declaration are

2  true and correct.

3       Executed in Chicago, Illinois on June 22, 2018

4

5

6                Matthew H. Wernz (IL Bar No. 6294061)

7                Attorney for Plaintiff

8                Federal Trade Commission

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14

1  ALDEN F. ABBOTT
   General Counsel
2

3  SAMANTHA GORDON (IL Bar No. 6272135)
   sgordon@ftc.gov
4  MATTHEW H. WERNZ (IL Bar No. 6294061)
5  mwernz@ftc.gov
   Federal Trade Commission
6  230 South Dearborn, Suite 3030
7  Chicago, Illinois 60604
   312.960.5623 (Gordon)
8  312.960.5596 (Wernz)
9  ATTORNEYS FOR PLAINTIFF

```
                                       FILED
                                      Jun 25 2018
                              CLERK, U.S. DISTRICT COURT
                              SOUTHERN DISTRICT OF CALIFORNIA
                              BY        s/ joanag        DEPUTY
```

10
11          **UNITED STATES DISTRICT COURT**
            **SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: [Case No.] **18CV1388 BEN NLS** |
| 13 Plaintiff, | |
| 14 v. | Ex Parte Motion for Leave to File Memorandum in Excess of 25 Pages in Support of Plaintiff's Ex Parte Motion for a Temporary Restraining Order |
| 15 TRIANGLE MEDIA CORPORATION, a | |
| 16 Delaware corporation, also doing business | |
| 17 as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs, *et al.*, | (FILED UNDER SEAL) |
| 18 | |
| 19 Defendants. | |

20     Plaintiff, Federal Trade Commission, hereby moves for leave to file its

21  Memorandum ("TRO Memorandum") in Support of Plaintiffs' *Ex Parte* Motion for
22

23  Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other

24  Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not

25  Issue ("TRO Motion") in excess of the twenty-five pages allowed by Civ. L.R. 7.1(h).
26

27
28
                                    1

                                                              [Case No.]

**ER271**

Plaintiffs have made every effort to be concise yet thorough in presenting the facts and law necessary to decide the TRO Motion. Nevertheless, the TRO Memorandum exceeds the page limitation imposed by the Local Rules of the United States District Court for the Southern District of California. Additional space is needed to fully explain the identities of and relationships between Defendants, the many components of their scheme, the effect of Defendants' deception on consumers, and the grounds for the injunctive relief requested.

Since 2010, Defendants have garnered tens of millions of dollars through an unlawful scheme to charge consumers for products they did not intend to purchase. Defendants represent to consumers that they can obtain "free trials" of their products for a minimal shipping and handling fee. In actuality, shortly after order a "free trial" of one of Defendants' products for this minimal fee, consumers are charge full price for the products and are enrolled in a continuity program that charges a much larger monthly fee for additional, unordered shipments of the products. Additionally, Consumers are frequently charged for add-on products at the time of their "free trial" that have their own associated continuity plans. All of these continuity plans and added charges are administered without the knowledge or consent of the consumer. Consumers who seek refunds for these unexpected charges are often unable to obtain refunds due to the Defendants' previously undisclosed refund restrictions. Full explanation of this complex scheme, including the overwhelming evidence presented to the Court, has required a

2

1   TRO Memorandum of thirty-seven pages, twelve pages more than the twenty-five pages

2   permitted by Civ. L.R. 7.1(h), in addition to the table of contents and table of cases

3

4   required by that rule.

5       WHEREFORE, Plaintiffs respectfully request that the Court issue an Order granting

6   Plaintiffs leave to file their TRO Memorandum in excess of twenty-five pages by

7

8   approximately 12 pages.

9

10  Dated: June 22, 2018                    Respectfully submitted,

11

12
                                           Aldon F. Abbott
13                                         General Counsel

14

15                                         Samantha Gordon
                                           Matthew H. Wernz
16                                         Federal Trade Commission
17                                         Midwest Region
                                           230 South Dearborn Street, Suite 3030
18                                         Chicago, Illinois 60604
                                           sgordon@ftc.gov
19                                         mwernz@ftc.gov
                                           312-960-5623 (Gordon)
20                                         312-960-5596 (Wernz)
21
22                                         Attorneys for Plaintiff
23                                         Federal Trade Commission
24
25
26
27
28
                                           3

                                                            [Case No.]

**ER273**

1
2
3
4
5
6
7
8
9
10
11

ALDEN F. ABBOTT
General Counsel

SAMANTHA GORDON (IL Bar No. 6272135)
sgordon@ftc.gov
MATTHEW H. WERNZ (IL Bar No. 6294061)
mwernz@ftc.gov
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
312.960.5623 (Gordon)
312.960.5596 (Wernz)
ATTORNEYS FOR PLAINTIFF

**FILED**

Jun 25 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____s/ joanag_____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                                   Plaintiff,<br>v.<br><br>TRIANGLE MEDIA<br>CORPORATION, a Delaware<br>corporation, also doing business as<br>Triangle CRM, Phenom Health, Beauty<br>and Truth, and E-Cigs, *et al.*,<br><br>                                   Defendants. | Case No.: [Case No.] **'18 CV 1388 BEN NLS**<br><br>Memorandum of Points and<br>Authorities in Support of Plaintiff's *Ex Parte* Motion for Temporary<br>Restraining Order with Asset Freeze,<br>Appointment of a Receiver, Other<br>Equitable Relief, and Order to Show<br>Cause Why a Preliminary Injunction<br>Should Not Issue |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

**ER274**

# TABLE OF CONTENTS

I.   Introduction...................................................................................1

II.  Defendants' Illegal Business Practices.............................................4

     A.   Defendants' Deceptive Trial Offers .......................................4

     B.   Defendants' Deceptive Order Completion Pages ...............13

     C.   Defendants' Restrictive Cancellation and Refund Practices .............17

III. Defendants ..................................................................................19

IV.  Argument ...................................................................................21

     A.   This Court Has the Power to Grant the Requested Relief...................22

     B.   The FTC Meets the Standard for Issuance of a Temporary Restraining

          Order..................................................................................23

          1.   The FTC is Likely to Succeed on the Merits...........................23

               a.   Defendants Are Violating the FTC Act...........................24

                    i.    Defendants' Practices Are Deceptive Under the

                          FTC Act...............................................................24

                    ii.   Defendants Also Violate the FTC Act by Unfairly

                          Billing Consumers Without Authorization ..........26

               b.   Defendants' Undisclosed, Unauthorized Charges Violate

                    ROSCA ............................................................................28

ii

**ER275**

c.  Defendants' Unauthorized Debits also Violate the
Electronic Fund Transfer Act and Regulation E ............30

2.  The Balance of Equities Strongly Favors Injunctive Relief.....31

3.  Defendant Phillips is Individually Liable for Defendants'
Practices ...................................................................................32

C.  The Scope of the Proposed Temporary Restraining Order is Necessary
and Appropriate.....................................................................................33

D.  The Temporary Restraining Order Should be Issued *Ex Parte* to
Preserve the Court's Ability to Fashion Meaningful Relief ...............35

V.  Conclusion ..........................................................................................................37

**ER276**

# TABLE OF AUTHORITIES

**Cases**

*Barrer v. Chase Bank United States, N.A.*, 566 F.3d 883 (9th Cir. 2009)...............29

*Delaware Watch Co. v. FTC*, 332 F.2d 745 (2d Cir. 1964) ....................................20

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999).................23, 31, 32

*FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511 (9th Cir. 1987) .............................34

*FTC v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 U.S. Dist. LEXIS 55569

    (W.D. Wash. April 26, 2016) ................................................................27, 28

*FTC v. Amy Travel Serv. Inc.*, 875 F.2d 564 (7th Cir. 1989) ..................................32

*FTC v. Cyberspace.com LLC*, 453 F.3d 1196 (9th Cir. 2006) ..........................24, 25

*FTC v. DiscountMetalBrokers, Inc.*, No. 2:16-cv-2112-ODW(JC), 2017 U.S. Dist.

LEXIS 164878, (Oct. 4, 2017)................................................................................33

*FTC v. Five-Star Audio Club, Inc.*, 97 F. Supp. 2d 502 (S.D.N.Y. 2000) ..............25

*FTC v. Gem Merch. Corp.*, 87 F.3d 466 (11th Cir. 1996)......................................34

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001).............................................................24

*FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982)..................................22, 34

*FTC v. Health Formulas, LLC*, No. 2:14-cv-01649, 2015 U.S. Dist. LEXIS 59387

    (D. Nev. May 6, 2015)....................................................................29, 30

*FTC v. Ideal Fin. Sols.*, No: 2:13-cv-00143-JAD-GWF, 2015 U.S. Dist. LEXIS

    86348 (D. Nev. June 29, 2015)....................................................................27

iv

**ER277**

*FTC v. Inc21.com*, 745 F. Supp. 2d 975 (N.D. Cal. 2010)......................................28

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000)....................20, 21

*FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052

    (C.D. Cal. 2013)................................................................................................20

*FTC v. Mortg. Relief Advocates*, No. CV-14-5434-MWF (AGRx), 2015 U.S. Dist.

    LEXIS 18609 (C.D. Cal. July 1, 2015) ........................................................33

*FTC v. Neovi*, 604 F.3d 1150 (9th Cir. 2010).....................................................26, 27

*FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1115 (S.D. Cal. 2008) *aff'd*, 604 F.3d

    1150 (9th Cir. 2010) ..................................................................................27, 28

*FTC v. Pantron I Corp.*, 33 F. 3d 1088 (9th Cir. 1994) ....................................22, 24

*FTC v. Publ'g Clearing House*, 104 F.3d 1168 (9th Cir. 1997)..............................33

*FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009) .............................................32

*FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993 (N.D. Ind. 2000), *aff'd* 312

    F.3d 259 (7th Cir. 2002) ................................................................................20

*FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431 (11th Cir. 1984) ..............................35

*FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156 (9th Cir. 1984)..............................23

*FTC v. Windward Mktg.*, No. 1:96-CV-615F, 1997 U.S. Dist. LEXIS 17114 (N.D.

    Ga. Sep. 30, 1997) ..........................................................................................27

*FTC v. World Wide Factors, Ltd.*, 882 F.2d 344 (9th Cir. 1989)..........23, 31, 32, 34

*In re Cliffdale Assocs.*, 103 F.T.C. 110 (1984)........................................................24

v

*In the Matter of McGaughey*, 24 F.3d 904 (7th Cir. 1994) .......................................35

*Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992).......................................................25

*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126 (9th Cir. 2006) ...............36

*SEC v. First Fin. Group*, 645 F.2d 429 (5th Cir. 1981).........................................35

*SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082 (2d Cir. 1972)............................34

**Court Orders**

*FTC v. A1 DocPrep Inc.*, CV-17-07044 (C.D. Cal. Sept. 28, 2017).......................22

*FTC v. Alliance Document Prep.*, CV-17-7048 (C.D. Cal. Sept. 28, 2017) ...........22

*FTC v. BAM Fin., LLC*, SACV15-01672 (C.D. Cal. Oct. 21, 2015).......................23

*FTC v. Bunzai Media Group, Inc.*, No. CV15-C4527-GW (PLAx) (C.D. Cal. June

    15, 2015) ......................................................................................23

*FTC v. Good Ebusiness, LLC*, CV-16-1048-ODW (C.D. Cal. Feb. 16, 2016) .......22

*FTC v. Grant Connect, LLC*, No. 09-01349 (D. Nev. July 28, 2009)....................23

*FTC v. Health Formulas, LLC*, No. 2:14-cv-01649 (D. Nev. Oct. 9, 2014)...........23

*FTC v. M&T Fin. Group*, CV-17-6855 (C.D. Cal. Sept. 19, 2017) ......................22

*FTC v. Membership Servs., Inc.*, 01-cv1868 (S.D. Cal. Oct. 17, 2001).................22

*FTC v. National Art Pubs. & Distribs., Inc.*, CV-94-0518

    (S.D. Cal. Apr. 5, 1994)......................................................................22

*FTC v. Pac. Med. Clinics*, CV-90-1277 (S.D. Cal. Sept. 19, 1990).......................22

*FTC v. Properties Int'l*, CV-90-756 (S.D. Cal. June 6, 1990) ...............................22

**ER279**

*FTC v. RevMountain, LLC*, 17-cv-02000-APG-GWF (D. Nev. July 24, 2017) .....23

*FTC v. Sale Slash, LLC*, SACV15-3107 (C.D. Cal. Apr. 27, 2015) .......................23

*FTC v. Telestar Consulting, Inc.*, CV-16-555-SJO (SSx)

    (C.D. Cal. Feb. 1, 2016) ................................................................23

*FTC v. Wealth Educators, LLC*, SACV15-2357 (C.D. Cal. Apr. 6, 2015) ..............23

<u>**Statutes, Regulations, and Rules**</u>

12 C.F.R. § 205.10(b) .........................................................................30, 31

12 C.F.R. § 1005.10(b) ................................................................................21

15 U.S.C. § 45(a) ...............................................................................21, 24

15 U.S.C. § 53(b) ..............................................................................22, 34

15 U.S.C. § 1693e(a).............................................................................21, 31

15 U.S.C. § 1693l...........................................................................................31

15 U.S.C. § 8403 ..............................................................................21, 28

Fed. R. Civ. P. 65(b) .....................................................................................36

<u>**Other**</u>

*Consumer Financial Protection Board's Official Staff Commentary to Regulation E*, 12 C.F.R. Part 205, Supp. I, ¶ 10(b), comments (5) & (6)...................................31

**ER280**

*FTC Policy Statement on Deception*, 103 F.T.C. 175 (1983)..................................25

viii

1

## I. Introduction

2 The Federal Trade Commission asks this Court to halt an online marketing

3
4 scheme that deceptively promotes "risk-free" trial offers to dupe unsuspecting

5 consumers into enrolling in costly continuity plans for Defendants' skin care

6 products, electronic cigarettes, and dietary supplements. Although consumers

7
8 authorize the payment of only a nominal shipping and handling charge,

9 Defendants instead charge them up to $200 each month for regular shipments of

10
11 products they did not order or want. Defendants have reaped more than $30

12 million from these unlawful marketing practices, which violate the Federal Trade

13
14 Commission Act (the "FTC Act"), the Restore Online Shoppers' Confidence Act

15 ("ROSCA"), the Electronic Fund Transfer Act ("EFTA"), and Regulation E.

16 Defendants market their "risk free" trials on a series of nearly identical

17
18 websites, representing that consumers must pay only a minimal shipping and

19 handling fee (typically $4.95) to receive the one-month trial. In ordering the trial,

20 consumers are asked to provide their credit or debit card information, purportedly

21
22 to pay the shipping and handling fee. Defendants represent that the product itself

23 does not cost anything and, further, that the shipping and handling fee represents

24
25 the "Total" cost of the trial. Thus, consumers who order one of Defendants' trials

26 understand that they will receive a single shipment of one product and will be

27 charged just a single, nominal shipping and handling fee.

28

1

However, a short time later, Defendants charge consumers the full price of the "trial" product, up to $98.71. Defendants also enroll consumers in a continuity plan, under which consumers receive additional shipments of the product each month and are charged the full price of those products. Thus, consumers who authorized only a one-time charge of $4.95 end up paying an additional $98.71 the first month, and then a similar amount in subsequent months until the consumer is able to cancel.

To make matters worse, Defendants then deceive consumers into ordering a trial of a second product by misrepresenting on subsequent pages of their websites that the consumer's order of the first trial product is not yet complete. When consumers click the box that purportedly will complete their order, however, they are signed up for an additional "trial" (for which they will ultimately pay full price) and yet another monthly continuity plan.

In sum, the "risk free" trial for which the consumer authorized only a $4.95 charge often results in charges of more than $200 in the first month alone. Even consumers who discover these unauthorized charges and seek refunds often find that they are unable to get their money back because of Defendants' restrictive refund policies. Not surprisingly, consumers have filed hundreds of complaints about Defendants' practices with the Better Business Bureau.

2

**ER283**

Attempting to evade detection by law enforcement, Defendants use an ever-changing network of websites and shell entities to operate their scheme. Defendants establish payment processing accounts in the shell entities' names, which are used to collect the unauthorized charges. The unauthorized charges are then transferred from the shell entitites to Defendants, who in turn regularly send the bulk of the proceeds out of the country.

Plaintiff's evidence of Defendants' illegal practices is overwhelming. It includes screenshots of Defendants' deceptive advertisements, emails, and websites; third-party records showing the structure of Defendants' enterprise; sworn statements from 9 victimized consumers and complaints from hundreds of others; and a sworn declaration from an FTC investigator.

The FTC brings its motion for a temporary restraining order ("TRO") *ex parte* to bring a halt to Defendants' illegal practices, to freeze their assets, and to have a temporary receiver appointed over the business. Defendants' widespread pattern of deception, unauthorized charges to consumers' accounts, offshore transfers of assets, use of shell companies to disguise their identity, and other efforts to evade responsibility for their conduct all strongly suggest that they would hide or dissipate assets if they received notice of this action. The requested relief is necessary and appropriate to preserve the Court's ability to provide effective final relief, including eventual restitution to the victims.

3

## II.  Defendants' Illegal Business Practices[1]

Defendants entire business model is based upon deception.  Defendants lure consumers into providing their billing information with false promises of a "risk free" trial for which consumers purportedly will pay only a nominal shipping and handling fee.  But Defendants fail to disclose that the consumer's account will ultimately be charged the full price for the product not once, but monthly until the consumer cancels.  In this way, Defendants essentially have stolen more than $30 million from consumers.

### A.  Defendants' Deceptive Trial Offers

Defendants advertise through banner ads, emails, blog posts, Facebook advertising, and pop-up "customer satisfaction" surveys, [2] offering consumers a

---

[1]     The FTC has filed an Appendix of Declarations in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Appx.").

4

1   "risk free" trial of one of their products.[3]  These advertisements claim that

2   consumers can receive the trial for just the cost of shipping and handling, typically

3   $4.95.[4]

4

5       Consumers who click on these advertisements are taken to Defendants'

6   websites.[5]  There, Defendants prominently offer a "RISK FREE" trial of the

7

8

9   _____

    [2]     Declaration of Douglas M. McKenney ("McKenney Dec."), Plaintiff's
10  Exhibit ("PX") 10, Appx. at 165, ¶ 10 & Attachment ("Att.") H, at 260-64; Appx.
11  at 175, ¶ 37 & Att. I, at 304; Appx. at 183, ¶ 62 & Att. J, at 325-26; Appx. at 189,
    ¶ 79 & Att. K, at 353; Appx. at 197, ¶ 102 & Att. M, at 382-94; Appx. at 200, ¶¶
12  108 and 109 & Att. N, at 404-22; Appx. at 202, ¶¶ 114 - 116 & Att. O, at 439-62;
13  Appx. at 204, ¶¶ 122 and 123 & Att. P, at 487-496; Declaration of Jennifer Clark
    ("Clark Dec."), PX 1, Appx. at 4, ¶ 2; Declaration of Theresa Fabbricante
14  ("Fabbricante Dec."), PX 2, Appx. at 22, ¶ 2; Declaration of Susan Landreau
15  ("Landreau Dec."), PX 3, Appx. at 30, ¶ 2; Declaration of Nancy Lawhorn
    ("Lawhorn Dec."), PX 4, Appx. at 64, ¶ 2; Declaration of Larry Mack ("Mack
16  Dec."), PX 5, Appx. at 86, ¶ 2;  Declaration of Jerry McCallum ("McCallum
17  Dec."), PX 6, Appx. at 96, ¶ 2;Declaration of Janet Pollard ("Pollard Dec."), PX 7,
18  Appx. at 113-14, ¶¶ 2-7; Declaration of Shawn Ulmer ("Ulmer Dec."), PX 8,
    Appx. at 136, ¶ 2; Declaration of John McCraner ("McCraner Dec."), PX 9, Appx.
19  at 147, ¶ 2.
20  [3]     The products Defendants market in this way include skin care products (e.g.,
21  "Erase Repair H/A" and "Wrinkle Rewind"), electronic cigarettes (e.g., "Pro
    Vapor"), and dietary supplements (e.g., "Cerebral X," "TestXCore," and "Garcinia
22  Clean XT").
23  [4]     McKenney Dec., PX 10, Appx. at 183, ¶ 62 & Att. J, at 325-26; Appx. at
24  200, ¶¶ 108 and 109 & Att. N, at 404-22; Appx. at 202, ¶¶ 114 - 116 & Att. O, at
    439-62; Appx. at 204, ¶¶ 122 and 123 & Att. P, at 487-496; Clark Dec., PX 1,
25  Appx. at 4, ¶ 3; Fabbricante Dec., PX 2, Appx. at 22, ¶ 2; Landreau Dec., PX 3,
26  Appx. at 30, ¶ 2; Lawhorn Dec., PX 4, Appx. at 64, ¶ 2; Mack Dec., PX 5, Appx.
    at 86, ¶ 2; McCallum Dec., PX 6, Appx. at 96, ¶ 2; Pollard Dec., PX 7, Appx. at
27  114, ¶ 6; Ulmer Dec., PX 8, Appx. at 136, ¶ 2; McCraner Dec., PX 9, Appx. at
28  147, ¶ 3.

5

**ER286**

Cosmopolitan suggesting that these products have been featured on those outlets and in those magazines.[8]

For example, the screen shot below depicts Defendants' website for "Cerebral X," offering a "risk-free" trial but indicating that consumers should "HURRY!" because "there is a limited supply."



Consumers who are interested in receiving the trial are then asked to provide their name, address, telephone number, and email address, as shown in the screenshot below:[9]

---

[8]   McKenny Dec., PX 10, Appx. at 166-67, ¶ 15 & Att. H, at 265; Appx. at 200-01, ¶110 & Att. N, at 423-31; Appx. at 203, ¶ 117 & Att. O, at 463-64; Appx. at 205-06, ¶ 125 & Att. P, at 497.

7

ER287



Once consumers enter their personal information and click "Get My Risk Free Trial," they are directed to Defendants' payment page. This page requests consumers' debit or credit card information to cover the nominal shipping and

---

9    McKenney Dec., PX 10, Appx. at 166-67, ¶ 15 & Att. H, at 265-67; Appx. at 176, ¶ 39 & Att. I, at 305-311; Appx. at 184, ¶ 64 & Att. J, at 327-30; Appx. at 189-90, ¶ 81 & Att. K, 357-59; Appx. at 198-99, ¶ 104 & Att. M, at 395-98; Appx. at 200-01, ¶ 110 & Att. N, at 423-32; Appx. at 203, ¶ 117 & Att. O, at 463-480; Appx. at 205-06, ¶ 125 & Att. P, at 497-503.; Clark Dec., PX 1, Appx. 4, ¶ 4.

8

handling charge, in this example a charge of $4.95.[10] Significantly, the payment page prominently states that the "Total" cost is just $4.95.[11]



[10]     McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H 278-79; Appx. at 176-77, ¶ 40 & Att. I, at 312; Appx. at 184, ¶ 65 & Att. J, at 334, 190-91, ¶ 82 & Att. K, at 360; Appx. at 196, ¶ 100 & Att. L, at 380; Appx. at 199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 433-37; Appx. at 204, ¶ 119 & Att. O, at 483-485; Appx. at 206, ¶ 126 & Att. P, at 507-08; Clark Dec., PX 1, Appx. at 4, ¶ 5; Fabbricante Dec., PX 2, Appx. at 22, ¶ 2; Landreau Dec., PX 3, Appx. at 30, ¶ 3; Lawhorn Dec., PX 4, Appx. at 64, ¶ 3; Mack Dec., PX 5, Appx. at 86, ¶ 3; Pollard Dec., PX 7, Appx. at 114, ¶ 6; Ulmer Dec., PX 8, Appx. at 136, ¶ 2.
[11]     *Id.*; Clark Dec., PX 1, Appx. at 4, ¶ 5.

9

Unfortunately, consumers who enter their billing information and click "GET MY RISK FREE TRIAL" on this page do not merely receive a one-month supply for just the shipping cost of $4.95.[12] Instead, approximately 15 days later, Defendants charge consumers the full price of the trial product – which ranges from $84.71 to as much as $98.71.[13] Defendants also enroll consumers in a continuity program,[14] under which Defendants send consumers additional

---

[12]   Unless they uncheck a pre-checked box appearing under the bright yellow "Total" on the payments screen, consumers also will be charged an additional $2.95 for something called "Protect Package," which purports to provide shipping insurance.  McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H, at 278-279; Appx. at 176-77, ¶ 40 & Att. I, at 312; Appx. at 184-85, ¶ 65 & Att. J, at 334; Appx. at 190-91, ¶ 82 & Att. K, at 360; Appx. at 196-97, ¶ 100 & Att. L, at 379-80; Appx. at 199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 435-37; Appx. at 204, ¶ 119 & Att. O, at 483-85; Appx. at 206, ¶ 126 & Att. P at 507-08; Landreau Dec., PX 3, Appx. at 32-33, ¶¶ 13, 15; Ulmer Dec., PX 8, Appx. at 136, ¶ 2.

[13]   McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H, at 278-279; Appx. at 176-77, ¶ 40 & Att. I, at 312; Appx. at 180, ¶ 53; Appx. at 184-85, ¶ 65 & Att. J, at 334; Appx. at 190-91, ¶ 82 & Att. K, at 360; Appx. at 196-97, ¶ 100 & Att. L, at 379-80; Appx. at 199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 435-37; Appx. at 204, ¶ 119 & Att. O, at 483-85; Appx. at 206, ¶ 126 & Att. P at 507-08; Clark Dec., PX 1, Appx. at 5, ¶ 7; Fabbricante Dec., PX 2, Appx. at 22, ¶ 5; Landreau Dec., PX 3, Appx. at 31, ¶ 6; Lawhorn Dec., PX 4, Appx. at 64, ¶ 5; Mack Dec., PX 5, Appx. at 87, ¶ 8.

[14]   McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H, at 278-279; Appx. at 176-77, ¶ 40 & Att. I, at 312; Appx. at 184-85, ¶ 65 & Att. J, at 334; Appx. at 190-91, ¶ 82 & Att. K, at 360; Appx. at 196-97, ¶ 100 & Att. L, at 379-80; Appx. at 199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 435-37; Appx. at 204, ¶ 119 & Att. O, at 483-85; Appx. at 206, ¶ 126 & Att. P at 507-08; Clark Dec., PX 1, Appx. at 5, ¶ 8; Lawhorn Dec., PX 4, Appx. at 64, ¶ 5; Mack Dec., PX 5, Appx. at 87, ¶ 6; Ulmer Dec., PX 8, Appx. at 136, ¶ 3.

10

**ER290**

shipments of the product each month and charge their accounts the full price of each product shipped.[15]

In contrast to Defendants' bold claims that their trials are "RISK FREE," in high demand, of limited supply, or low-cost, Defendants disclose the charge for the trial product and the continuity program only in barely legible faint gray text at the bottom of the payment page, well below where consumers enter their billing information and click the "GET MY RISK FREE TRIAL" button.[16] For example, in the image above, that block of faint gray text reads in pertinent part:

> By placing an order you will be enrolled in our membership program. This program will charge $4.95 today and $84.71 for your trial full-size product on the 15th day if you do not call to cancel the membership. You will receive a full-size bottle of the product for $84.71 (S&H included) every 30 days thereafter until you cancel.

---

[15]     McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H, at 278-279; Appx. at 176-77, ¶ 40 & Att. I, at 312; Appx. at 184-85, ¶ 65 & Att. J, at 334; Appx. at 190-91, ¶ 82 & Att. K, at 360; Appx. at 196-97, ¶ 100 & Att. L, at 379-80; Appx. at 199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 435-37; Appx. at 204, ¶ 119 & Att. O, at 483-85; Appx. at 206, ¶ 126 & Att. P at 507-08; Lawhorn Dec., PX 4, Appx. at 64, ¶ 5; Mack Dec., PX 5, Appx. at 87, ¶ 6; Ulmer Dec., PX 8, Appx. at 136, ¶ 3.

[16]     McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H, at 278-279; Appx. at 176-77, ¶ 40 & Att. I, at 312; Appx. at 184-85, ¶ 65 & Att. J, at 334; Appx. at 190-91, ¶ 82 & Att. K, at 360; Appx. at 196-97, ¶ 100 & Att. L, at 379-80; Appx. at 199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 435-37; Appx. at 204, ¶ 119 & Att. O, at 483-85; Appx. at 206, ¶ 126 & Att. P at 507-08.

This text is the smallest, least prominent, and least distinct font on the payment page. As a result, consumers do not even see these disclosures, let alone read them.[17]

Significantly, moreover, the disclosures are not visible at all to consumers who order the trial product on a mobile device. As demonstrated in the figure below, the payments page often occupies the entire screen of a mobile device, meaning that consumers would have to scroll down below the "Continue" button before they would encounter Defendants' disclosures.[18]

---

[17]     Clark Dec., PX 1, Appx. at 6, ¶¶ 12 and 13 ("At no point during my purchase did I see a notice that said I would be charged the full purchase price of the product if I did not cancel within a certain number of days. At no point during my purchase did I see a noice that said I was enrolling in a subscription service for the product."); Landreau Dec., PX 3, Appx. at 30, ¶ 4 ("Before placing my order, I did not see any disclaimer stating that I would be charged any amount in addition to the $4.95 shipping."); Ulmer Dec., PX 8, Appx. at 137, ¶ 8-9 ("At no point during my initial order did I see a notice telling me that I would be charged the full purchase price of the product if I did not cancel within a certain number days. At no point during my purchase did I see a notice telling me that I was enrolling in a subscription service for the product.").

[18]     McKenney Dec., PX 10, Appx. at 201-02, ¶ 11 & Att. N, at 435-36.

12

**ER292**





### B. Defendants' Deceptive Order Completion Pages

Consumers who submit their payment information and click the "GET MY RISK FREE TRIAL" or "CONTINUE" button are not taken to an order confirmation page. Instead, consumers are taken to a page that says: "Wait! Your Order Is Not Complete!" As shown on the screenshot below, this page often includes an image of a coupon for a free trial of an additional product, which even

13

includes "free shipping." Below the coupon is a brightly colored button labeled "COMPLETE CHECKOUT."[19]



[19] McKenney Dec., PX 10, Appx. at 168-69, ¶ 19 & Att. H, at 280-283; Appx. at 177-78, ¶¶ 42 and 4 & Att. I, at 313-316; Appx. at 185-86, ¶ 67 and 68 & Att. J, at 335-40; Appx. at 191, ¶ 84 & Att. K, at 361-68.

14

Defendants' prominent claim on this page that consumers' orders are not complete is false. By entering their billing information and clicking the button on the payments page, consumers have in fact completed their order of the initial trial product, and they will receive that trial regardless of what they do on this page.[20] Rather than completing their checkout, clicking the "COMPLETE CHECKOUT" button results in consumers being shipped an additional product – in the example above, Vitamood+.[21] Defendants then charge consumers the full price of this product – nearly $80 – 18 days later.[22] Defendants also enroll consumers in a second continuity program that includes monthly shipments of, and charges for, the second product.[23]

As with their initial "risk free" trials, Defendants inadequately disclose these important terms. They do so only in tiny, faint font, far from the brightly colored "COMPLETE CHECKOUT" button.[24] For example, in the image above, the miniscule disclosure at the bottom of the image reads in pertinent part:

---

[20] As shown in the image above, this additional product also carries with it its own pre-selected "Protect Package" fee of $6.95. Consumers will be charged this additional fee unless they uncheck the pre-checked box. McKenney Dec., PX 10, Appx. at 168-69, ¶ 19 & Att. H, at 280-283; Appx. at 177-78, ¶43 & Att. I, at 313; Appx. at 186, ¶ 68 & Att. J, at 335.

[21] McKenney Dec., PX 10, Appx. at 168-69, ¶ 19 & Att. H, at 280-83.

[22] *Id.*

[23] *Id.*

[24] *Id.*

15

**ER295**

> By placing an order you will be enrolled in our membership program. This program will charge $0.00 today and $ 79.31 for your trial full-size product on the 18th day if you do not call to cancel the membership. You will receive a full-size bottle of the product for $ 79.31 (S&H included) every 30 days thereafter until you cancel.[25]

Consumers are unlikely to see these inadequately disclosed terms, and thus do not understand that, when they click "COMPLETE CHECKOUT," Defendants will send and bill them for an additional product.[26] The only way consumers can avoid the additional charges would be to find, understand, and click on another tiny, faint hyperlink that in the image above states, "No, I don't want to improve my mood."[27] But because consumers do not understand that they will receive and be charged for an additional product, they would have no reason to click this link. Regardless of whether consumers find and click this link or click to "COMPLETE CHECKOUT," Defendants redirect them to a series of web pages that make similar deceptive offers of additional products.[28]

---

[25] *Id.*

[26] *Id.*; Lawhorn Dec., PX 4, Appx. at 64, ¶ 5.

[27] McKenney Dec., PX 10, Appx. at 168-69, ¶ 19 & Att. H, at 280-283; Appx. at 177-78, ¶¶ 42 and 43 & Att. I, at 313-316; Appx. at 185-86, ¶ 67 and 68 & Att. J, at 335-40; Appx. at 191, ¶ 84 & Att. K, at 361-68.

[28] *Id.* Appx. at 169-70, ¶ 21-23 & Att. H, at 284-290; Appx. at 177-78, ¶¶ 43-46 & Att. I, at 313-316; Appx. at 185-86, ¶ 68-71 & Att. J, at 335-40; Appx. at 192, ¶ 86 & Att. K, at 361-68.

16

**ER296**

## C. Defendants' Restrictive Cancellation and Refund Practices

Consumers typically discover Defendants' deception only after they receive the unordered products and their accounts have been charged.[29] They then have difficulty canceling and avoiding further charges.[30] Those who call or email Defendants often have difficulty reaching Defendants' customer service representatives, despite attempting to contact Defendants numerous times.[31] Consumers who do reach a customer service representative to request cancellation report that they often continue to receive and be charged for shipments of Defendants' products even after cancelling.[32]

Defendants also make it extremely difficult for consumers to obtain refunds. If consumers seek a refund more than 30 days after ordering the "free trial," they are denied a refund because such requests must be made within 30 days.[33] Where the refund period has not lapsed, Defendants tell consumers they can only get a full

---

[29]   Clark Dec., PX 1, Appx. at 5, ¶¶ 6 and 7; Landreau Dec., PX 3, Appx. at 30-31, ¶¶ 5 and 6; Mack Dec., PX 5, Appx. at 87, ¶ 6 ; McCallum Dec., PX 6, Appx. at 97-98, ¶¶ 5 and 6.

[30]   Fabbricante Dec., PX 2, Appx. at 22, ¶¶ 4-5 ; Landreau Dec., PX 3, Appx. at 31, ¶ 6; Mack Dec., PX 5, Appx. at 87, ¶ 8.

[31]   Pollard Dec., PX 7, Appx. at 115, ¶ 11.

[32]   McKenney Dec., PX 10, Appx. at 179-80, ¶ 51-53.

[33]   Mack Dec., PX 5, Appx. at 9, ¶ 9 (consumer offered half refund only for more recent of two bottles).

refund if they return the trial product at their own expense.[34]  But even if

consumers return the trial product within the refund period, they often are denied a

refund because Defendants purport to have never received the product.[35]

Once Defendants have denied them a refund, many consumers attempt to get

their money back by initiating chargebacks, otherwise disputing charges with their

credit card companies or cancelling the credit card or other billing account

altogether to avoid further unauthorized charges.[36]  Other consumers complain to

the BBB or a government agency, which often prompts Defendants to issue a

refund, even if one had been denied previously.[37]  Even in those instances,

however, Defendants frequently refund only the monthly continuity program

charges and refuse to issue refunds for the initial trial.[38]

---

[34]     Fabbricante Dec., PX 2, Appx. at 23, ¶ 7; Landreau Dec., PX 3, Appx. at 31-32, ¶¶ 8, 12; Pollard Dec., PX 7, Appx. at 115, ¶ 12.

[35]     McCraner Dec., PX 9, Appx. 150-51, ¶¶ 9 and 10.  Defendants also refuse to refund consumers the shipping and handling charges or inadequately disclosed "package protection" fees associated with their trials, even when the consumer cancels before any product is actually shipped. Ulmer Dec., PX 8, Appx. at 136-37, ¶¶ 5-9; Landreau Dec., PX 3, Appx. at 32, ¶ 11.

[36]     Mack Dec., PX 5, Appx. at 88-89, ¶ 11; Pollard Dec., PX 7, Appx. at 117, ¶¶ 18-19.

[37]     Fabbricante Dec., PX 2, Appx. at 23, ¶¶ 9-10; Landreau Dec., PX 3, Appx. at 33, ¶¶ 14-15; Ulmer Dec., PX 8, Appx. at 137, ¶ 6-8.

[38]     Landreau Dec., PX 3, Appx. at 33, ¶ 16; Lawhorn Dec., PX 4, Appx. at 65-66, ¶ 8, 14; Mack Dec., PX 5, Appx. at 88-89, ¶ 11; Ulmer Dec., PX 8, Appx. at 137, ¶ 10.

Not surprisingly, hundreds of consumers have complained to the BBB about defendants' deceptive practices.[39]

### III. Defendants

Defendant **Brian Phillips** controls this enterprise, operating it through Defendants **Triangle Media Corporation**, **Hardwire Interactive Inc.**, and a series of shell companies, including Defendant **Jasper Rain Marketing LLC**. Triangle Media and Hardwire Interactive control the websites where Defendants deceptively market their trial offers.[40] Defendants charge consumers for the trials and continuity plan shipments through one of Phillips's many shell companies and then ultimately funnel the proceeds back to Triangle Media, which is the hub of this enterprise.[41]

For example, consumers who order the trials are charged using payment processing accounts set up in the names of one of the shell companies.[42] The payments are deposited into the shell's checking account, which is controlled by

---

[39] McKenney Dec., PX 10, Appx. at 227, ¶¶ 157-161; Fabbricante Dec., PX 2, Appx. at 23, ¶ 9; Landreau Dec., PX 3, Appx. at 32, ¶ 13; Mack Dec., PX 5, Appx. at 89, ¶ 12; Ulmer Dec., PX 8, Appx. at 114, ¶ 7.

[40] On behalf of Hardwire Interactive, Triangle Media has registered the various websites where Defendants market and sell their deceptive trial offers, often under their brand names Phenom Health, Beauty and Truth, and E-Cigs. McKenney Dec., PX 10, Appx. at 210-13, ¶¶ 132-134.

[41] McKenney Dec., PX 10, Appx. at 171, ¶ 27; Appx. at 214-16, ¶¶ 136-38; Appx. at 219-20, ¶¶144-47.

[42] McKenney Dec., PX 10, Appx. 171, ¶ 27; Appx. at 214-16, ¶¶ 136-38.

19

**ER299**

Phillips.[43]  He then transfers the proceeds from the shell companies to Defendant

Triangle Media.[44]  Triangle Media then pays the operation's expenses, including

customer service, phone numbers, and other expenses incurred by Phillips.[45]  In

addition to collecting consumer payments, Triangle Media also receives substantial

sums from Defendant Hardwire Interactive before transferring tens of millions of

dollars offshore.[46]

A classic common enterprise exists among Defendants Triangle Media,

Hardwire Interactive, and Jasper Rain, all of whom, as described above, engage in

a common scheme under Phillip's control.  "Where one or more corporate entities

operate as a common enterprise, each may be held liable for the deceptive acts and

practices of the others."  *FTC v. Think Achievement Corp.*, 144 F. Supp. 2d 993,

1011 (N.D. Ind. 2000), *aff'd* 312 F.3d 259 (7th Cir. 2002); *see also FTC v. John*

*Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2013) (quoting

*Delaware Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964) (when individuals

transact business through a "maze of interrelated companies," the whole enterprise

is liable as a joint enterprise)); *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176,

1202 (C.D. Cal. 2000).  A common enterprise can be demonstrated by the

---

[43]  *Id.*, Appx. 216-19, ¶¶ 139-143; Appx. at 219-20, ¶¶ 144-47.

[44]  *Id.*, Appx. 219-20, ¶¶ 144-47; Appx. 220-23, ¶¶ 148-152.

[45]  *Id.*, Appx. 220-23, ¶¶ 148-152.

[46]  *Id.*, Appx. 220-23, ¶¶ 150 and 151.

20

**ER300**

existence of a maze of interrelated companies, the commingling of corporate funds,

unified advertising, and sharing of resources and staff. *J.K. Publ'ns*, 99 F. Supp.

2d at 1202.

Here, the Defendant companies commingle funds,[47] share common

personnel and customer service operations,[48] are commonly controlled,[49] and

engage in a common scheme.[50] Although Defendants' shell companies, including

Jasper Rain, list mail drops as their business addresses,[51] they are actually operated

by Triangle Media from Triangle Media's business locations.[52] The principals of

Hardwire Interactive and Jasper Rain are employees of Triangle Media.[53] As a

result, the entities are jointly and severally liable for the conduct of the enterprise.

## IV.    Argument

Defendants' deceptive scheme violates Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section

1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).  To prevent any further injury

---

[47]    McKenney Dec., PX 10, Appx. at 216-23, ¶¶ 139-152.

[48]    *Id.*, Appx. at 207-13, ¶¶ 127-135; Appx. at 223-24, ¶ 153.

[49]    *Id.*, Appx. at 214-22, ¶¶ 136-152

[50]    *Id.*, Appx. at 207-27, ¶¶ 127-156.

[51]    *Id.*, Appx. at 224-26, ¶ 154.

[52]    *Id.*, Appx. at 207-27, ¶¶ 127-156.

[53]    *Id.*, Appx. at 163, ¶¶ 6 and 7; Appx. at 164, ¶¶ 9 and 10; Appx. at 224, ¶ 153.

21

**ER301**

to consumers, the FTC asks that the Court issue *ex parte* the proposed TRO. This order would enjoin Defendants' ongoing law violations and would provide other equitable relief designed to preserve the Court's ability to provide restitution to victims at the conclusion of the case.

**A.      This Court Has the Power to Grant the Requested Relief**

Section 13(b) of the FTC Act authorizes the Commission to seek, and this Court to issue, temporary, preliminary, and permanent injunctions. 15 U.S.C. § 53(b). Once the Commission invokes the court's equitable powers, the full breadth of the court's authority is available, including the power to grant such ancillary final relief as an asset freeze to preserve assets for eventual restitution to victims. *FTC v. Pantron I Corp.*, 33 F. 3d 1088, 1102 (9th Cir. 1994); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982). Federal courts in this district and elsewhere have routinely granted *ex parte* TROs with asset freezes in FTC cases,[54] including in FTC cases brought against online rebilling schemes like Defendants' operation.[55]

---

[54]      *See e.g.*, *FTC v. Membership Servs., Inc.*, 01-cv1868 (S.D. Cal. Oct. 17, 2001); *FTC v. National Art Pubs. & Distribs., Inc.*, CV-94-0518 (S.D. Cal. Apr. 5, 1994); *FTC v. Pac. Med. Clinics*, CV-90-1277 (S.D. Cal. Sept. 19, 1990); *FTC v. Properties Int'l*, CV-90-756 (S.D. Cal. June 6, 1990). In addition to the Southern District of California, other districts in the Ninth Circuit routinely grant *ex parte* TROs like the one proposed here. *See, e.g.*, *FTC v. A1 DocPrep Inc.*, CV-17-07044 (C.D. Cal. Sept. 28, 2017); *FTC v. Alliance Document Prep.*, CV-17-7048 (C.D. Cal. Sept. 28, 2017); *FTC v. M&T Fin. Group*, CV-17-6855 (C.D. Cal. Sept. 19, 2017); *FTC v. Good Ebusiness, LLC*, CV-16-1048-ODW (C.D. Cal. Feb. 16,

22

**B.    The FTC Meets the Standard for Issuance of a Temporary Restraining Order**

A temporary restraining order is appropriate once the FTC shows (1) a likelihood of success on the merits and (2) that the equities weigh in the FTC's favor. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999) (citing *FTC v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1160 (9th Cir. 1984)).  Unlike private litigants, the FTC need not prove irreparable harm. *See id.*; *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th Cir. 1989).  As demonstrated below, the FTC has demonstrated that it will succeed on the merits of its claims and that the balance of the equities favors injunctive relief.

**1.    The FTC is Likely to Succeed on the Merits**

To demonstrate that it is likely to succeed on the merits, the FTC need only present evidence that it has "some chance of probable success." *World Wide Factors*, 882 F.3d at 347 (citation omitted).  Here, the overwhelming evidence shows that: (1) Defendants engage in unfair and deceptive practices that violate Section 5(a) of the FTC Act; (2) Defendants make unauthorized charges on

2016); *FTC v. Telestar Consulting, Inc.*, CV-16-555-SJO (SSx) (C.D. Cal. Feb. 1, 2016); *FTC v. BAM Fin., LLC*, SACV15-01672 (C.D. Cal. Oct. 21, 2015); *FTC v. Sale Slash, LLC*, SACV15-3107 (C.D. Cal. Apr. 27, 2015); *FTC v. Wealth Educators, LLC*, SACV15-2357 (C.D. Cal. Apr. 6, 2015); *FTC v. Grant Connect, LLC*, No. 09-01349 (D. Nev. July 28, 2009).

[55]    *See, e.g.*, *FTC v. RevMountain, LLC*, 17-cv-02000-APG-GWF (D. Nev. July 24, 2017) (*ex parte* TRO in ROSCA case); *FTC v. Bunzai Media Group, Inc.*, No. CV15-C4527-GW (PLAx) (C.D. Cal. June 15, 2015) (same); *FTC v. Health Formulas, LLC*, No. 2:14-cv-01649 (D. Nev. Oct. 9, 2014) (same).

23

**ER303**

consumers' credit and debit cards in violation of ROSCA; and (3) Defendants make unauthorized deductions from consumers' bank accounts in violation of EFTA and Regulation E.  The evidence also shows that Defendant Phillips is individually liable for these practices.  Accordingly, the FTC is likely to succeed on the merits of its claims.

### a.    Defendants Are Violating the FTC Act

Defendants' online marketing practices violate Section 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a).  Defendants' practices are both deceptive and unfair.

### i.    Defendants' Practices Are Deceptive Under the FTC Act

An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances.  *See FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006); *FTC v. Gill*, 265 F.3d 944, 950 (9th Cir. 2001); *Pantron I*, 33 F.3d at 1095. A representation or omission is material if it "'involves information that is likely to affect a consumer's choice of, or conduct regarding, a product or service.'" *Cyberspace.com*, 453 F.3d at 1201 (quoting deception standard set forth in *In re Cliffdale Assocs.*, 103 F.T.C. 110, 164-65 (1984)).  Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material.  *Pantron I*, 33 F.3d at 1096.

24

**ER304**

In determining whether a practice is likely to mislead consumers acting reasonably, the Court determines the overall "net impression" that Defendants' representations make upon consumers. *Cyberspace.com*, 453 F.3d at 1200. Fine-print disclosures do not overcome a deceptive net impression. *See Cyberspace.com*, No. C00-1806L, 2002 U.S. Dist. LEXIS 25564, *8-9 (W.D. Wash. July 10, 2002) (holding that a fine print disclosure was inadequate to escape liability), *aff'd*, 453 F.3d at 1200 (collecting cases where deception found because fine print disclosures were inadequate). Consumer reliance upon express claims is presumptively reasonable. *FTC v. Five-Star Audio Club, Inc.*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) (citation omitted).

Here, Defendants have materially misled consumers about their "risk free" trials in at least three ways. First, Defendants misrepresent the price of the trial offer. Defendants falsely state that the consumer will only pay for shipping and handling, typically $4.95, to receive a trial of Defendants' product. In reality, Defendants' charge consumers the full price, up to $98.71, for a 30-day supply of the product. This express representation is presumed to be material because it influenced the consumer's decision to order a trial of Defendants' product. *FTC Policy Statement on Deception*, 103 F.T.C. 175, 182 (1983); *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992).

25

**ER305**

Second, Defendants misrepresent to consumers who have ordered a trial of Defendants' product that the order is not complete until they click a "COMPLETE ORDER" button or take further action.  In fact, the consumer's order is already complete before they click the "COMPLETE ORDER" button.  This misrepresentation causes consumers to unwittingly order an additional product, to thereby incur additional charges, and be enrolled in yet another continuity program.

Third, Defendants fail to adequately disclose several material terms of their purported "trial offer" including: (1) the total cost of the product; (2) that consumers will be charged the full cost of the trial product after 15 days; (3) that the consumer is automatically enrolled in a continuity program; and (4) the total cost of the continuity program and the frequency and duration of the recurring charges.

> **ii.    Defendants Also Violate the FTC Act by Unfairly Billing Consumers Without Authorization**

An act or practice is unfair if it causes, or is likely to cause, substantial injury to consumers that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or competition.  *FTC v. Neovi*, 604 F.3d 1150, 1153 (9th Cir. 2010).  Substantial injury may consist of "small harm to a large number of people" or "a significant risk of concrete harm."  *Id.* at 1157.

26

**ER306**

Courts routinely find substantial injury where a defendant has billed consumers for charges they did not authorize. *See e.g., Neovi*, 604 F.3d at 1157; *FTC v. Ideal Fin. Sols.*, No: 2:13-cv-00143-JAD-GWF, 2015 U.S. Dist. LEXIS 86348, at *30 (D. Nev. June 29, 2015) ("[T]aking consumers' funds without authorization causes substantial injury, even when the amount taken is relatively small.").

Here, hundreds of consumers have complained about Defendants' unauthorized charges ranging from $2.95 to $98.71.[56] This fact alone proves substantial injury. *See, e.g., FTC v. Neovi, Inc.*, 598 F. Supp. 2d 1104, 1115 (S.D. Cal. 2008) (substantial injury resulted from unauthorized charges to tens of thousands of customers), *aff'd*, 604 F.3d 1150 (9th Cir. 2010); *FTC v. Windward Mktg.*, No. 1:96-CV-615F, 1997 U.S. Dist. LEXIS 17114, at *31 (N.D. Ga. Sep. 30, 1997) (harm to large number of consumers sufficient to establish substantial injury). And "the time spent pursuing refunds constitutes additional injury" to consumers. *FTC v. Amazon.com, Inc.*, No. C14-1038-JCC, 2016 U.S. Dist. LEXIS 55569, at *17 (W.D. Wash. April 26, 2016).

Further, the injury was not reasonably avoidable. Injury is not reasonably avoidable unless consumers have a "free and informed choice" to avoid the harm. *Neovi*, 604 F.3d at 1158. Where, as here, consumers have been billed for charges they did not authorize, courts regularly find that consumers did not have a choice

---

[56]     McKenney Dec., PX 10, Appx. at 227, ¶¶ 157-61.

27

**ER307**

to avoid the injury before it occurred. *See e.g., Neovi*, 598 F. Supp. 2d at 1116; *FTC v. Inc21.com*, 745 F. Supp. 2d 975, 1004 (N.D. Cal. 2010) ("As other courts have wisely concluded, the burden should not be placed on defrauded customers to avoid charges that were never authorized to begin with.").

Finally, unauthorized billing does not produce any offsetting benefits to consumers or competition that outweigh the consumer injury. *See, e.g., Amazon*, 2016 U.S. Dist. LEXIS 55569, at \*22 (in unauthorized billing case, "cost–benefit prong . . . easily satisfied"); *Inc21.com*, 745 F. Supp. 2d at 1004 ("[I]t cannot be said that defendants' 'customers' benefitted at all from services that they never agreed to purchase, didn't know were being provided to them, and never wanted in the first place."). The cost of Defendants' practice of charging consumers without authorization, on the other hand, is significant and concrete: monetary loss to consumers in the millions of dollars.

### b. Defendants' Undisclosed, Unauthorized Charges Violate ROSCA

Defendants' billing practices also violate ROSCA. ROSCA prohibits charging consumers for goods or services sold online through a negative option feature like Defendants' continuity plans, unless the seller meets certain conditions. Specifically, section 4 of ROSCA, 15 U.S.C. § 8403, requires that the seller (1) clearly and conspicuously disclose all material terms of the transaction before obtaining the consumer's billing information, (2) obtain the consumer's

28

1   express informed consent before making the charge, and (3) provide a simple

2   mechanism to stop recurring charges.

3       Defendants violate ROSCA in three ways. First, Defendants fail to disclose

4

5   clearly and conspicuously the material terms of their continuity plans before

6   obtaining consumers' billing information. Instead, their terms, as another court in

7

8   this Circuit described similarly inadequate disclosures, "are either buried in fine

9   print on the payment page . . . or are stated in Terms and Conditions documents

10  that consumers are not required to read." *See FTC v. Health Formulas, LLC*, No.

11

12  2:14-cv-01649, 2015 U.S. Dist. LEXIS 59387, at *48 (D. Nev. May 6, 2015); *cf.*

13  *Barrer v. Chase Bank United States, N.A.*, 566 F.3d 883, 892 (9th Cir. 2009)

14

15  ("clear and conspicuous disclosures" are disclosures that a reasonable consumer

16  "would notice and understand").

17      Second, Defendants routinely charge consumers' accounts on a monthly

18

19  basis as part of a continuity plan without obtaining their express informed consent.

20  Because Defendants have not disclosed to consumers the material terms of their

21

22  offers, they do not obtain consumers' express informed consent before charging

23  them. *Health Formulas, LLC*, No. 2:14-cv-01649, 2015 U.S. Dist. LEXIS 59387,

24  at *48. Moreover, after violating ROSCA in connection with the initial "trial"

25

26  offer, Defendants violate it again by failing to obtain express informed consent to

27

28

29

the additional charges resulting from Defendants' deceptive order completion

page.

Third, Defendants fail to provide a simple mechanism for cancelling the

continuity plan.[57] *See Health Formulas, LLC*, 2015 U.S. Dist. LEXIS 59387 at

*49. Even when consumers do figure out the process to cancel, they report

difficulty in reaching Defendants' representatives, and are charged even after they

have cancelled.[58]

### c. Defendants' Unauthorized Debits also Violate the Electronic Fund Transfer Act and Regulation E

The EFTA and its implementing Regulation E regulate the circumstances

under which a merchant may make regularly recurring debits from a consumer's

bank account. EFTA and Regulation E require that before a merchant may make

such recurring debits, it must obtain a written authorization signed or similarly

authenticated by the consumer. 15 U.S.C. § 1693e(a); 12 C.F.R. § 205.10(b). For

an authorization to be valid, the terms of the preauthorization transfer must be

"clear and readily understandable" and the authorization "should evidence the

consumer's identity and assent to the authorization." *Consumer Financial*

---

[57] McKenney Dec., PX 10, Appx. at 172-174, ¶¶ 30-35; Appx. at 179-182, ¶¶ 51- 59; Appx. at 194-96, ¶¶ 93-97.

[58] *Id.*; Clark Dec., PX 1, Appx. at 5-6, ¶¶ 7-11; Fabbricante Dec., PX 2, Appx. at 22-23, ¶¶ 3-10; Lawhorn Dec., PX 4, Appx. at 64-66, ¶¶ 6-13; Mack Dec., PX 5, Appx. 87-89, ¶¶ 8-11; McCallum Dec., PX 6, Appx. at 98-99, ¶¶ 7-9; Pollard Dec., PX 7, Appx. 115-16, ¶¶ 10-15; Ulmer Dec., PX 8, Appx. at 136-37, ¶¶ 4-5; McCraner Dec., PX 9, Appx. 148-51, ¶¶ 5-10.

30

*Protection Board's Official Staff Commentary to Regulation E*, 12 C.F.R. Part 205,
Supp. I, ¶ 10(b), comments (5) & (6). Moreover, a copy of the authorization must
be provided to the consumer. 15 U.S.C. § 1693e(a); 12 C.F.R. § 205.10(b). These
protections ensure that consumers' consent to recurring debits will be knowing and
informed. A consumer's rights under EFTA cannot be waived. 15 U.S.C. § 1693l.

Defendants' business practices fail to comply with EFTA. Because
Defendants do not adequately disclose the terms of their continuity plan and that
consumers will be charged monthly, consumers did not knowingly authorize
Defendants to make recurring debits from their bank accounts.[59] Moreover,
consumers do not receive a copy of any purported authorization for debits to their
bank accounts.[60]

### 2. The Balance of Equities Strongly Favors Injunctive Relief

Once the FTC has shown a likelihood of success on the merits, the Court
must balance the equities, giving far greater weight to the public interest than any
of Defendants' private concerns. *See Affordable Media*, 179 F.3d at 1236; *World
Wide Factors*, 882 F.2d at 347. Here, there is a strong public interest in stopping
Defendants' deceptive scheme and preserving assets for a meaningful monetary

---

[59]     McKenney Dec., PX 10, Appx. at 167, ¶ 16 & Att. H, at 278-279; Appx. at
176-77, ¶ 40 & Att. I, at 312; Appx. at 184-85, ¶ 65 & Att. J, at 334; Appx. at 190-
91, ¶ 82 & Att. K, at 360; Appx. at 196-97, ¶ 100 & Att. L, at 379-80; Appx. at
199, ¶ 105 & Att. M, at 401-02; Appx. at 201-02, ¶ 111 & Att. N, at 435-37; Appx.
at 204, ¶ 119 & Att. O, at 483-85; Appx. at 206, ¶ 126 & Att. P at 507-08.
[60]     *Id.*

31

**ER311**

remedy for consumers. Defendants, in contrast, have no legitimate interest in continuing to deceive consumers, and compliance with the law is hardly an unreasonable burden. *See World Wide Factors*, 882 F.2d at 347 ("[T]here is no oppressive hardship to defendants in requiring them to comply with the FTC Act, refrain from fraudulent representation or preserve their assets from dissipation or concealment.").

### 3. Defendant Phillips is Individually Liable for Defendants' Practices

Defendant Phillips is individually responsible for Defendants' illegal activity. Once the FTC establishes corporate liability, an individual may be held jointly and severally liable under the FTC Act where he (1) participated directly in or had some measure of control over a corporation's deceptive practices, and (2) knew or should have known of the deceptive practices. *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009). Authority to control can arise from "active participation in corporate affairs, including assuming the duties of a corporate officer." *FTC v. Amy Travel Serv. Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). Likewise, the FTC can show that an individual knew or should have known of corporate defendants' activities if the individual was a principal owner or officer, controlled the business's finances, or oversaw its activities. *Amy Travel*, 875 F.2d at 574-75; *see Affordable Media*, 179 F.3d at 1234 ("The extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite

32

**ER312**

knowledge for personal restitutionary liability."). The FTC is not required to demonstrate subjective intent to defraud. *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1997).

Here, Phillips runs Defendants' deceptive scheme. He is the sole officer of Triangle Media.[61] He is a signatory on dozens of bank accounts related to the scheme, including those that are nominally held by the shell companies,[62] and is listed on the applications for several merchant processing accounts to bill consumers' credit and debit cards.[63] He also registered and paid for the website used to track Defendants' illegal marketing tactics.[64] Courts routinely find individual liability in such circumstances. *See FTC v. DiscountMetalBrokers, Inc.*, No. 2:16-cv-2112-ODW(JC), 2017 U.S. Dist. LEXIS 164878, at *14-15 (Oct. 4, 2017); *FTC v. Mortg. Relief Advocates*, No. CV-14-5434-MWF (AGRx), 2015 U.S. Dist. LEXIS 18609, at *17 (C.D. Cal. July 1, 2015).

## C. The Scope of the Proposed Temporary Restraining Order is Necessary and Appropriate

The evidence shows that the FTC is likely to succeed in showing that Defendants violated the law, and the balance of the equities weighs in the FTC's favor. The FTC therefore requests that the Court issue a TRO that prohibits future

---

[61] McKenney Dec., PX 10, Appx. at 162, ¶¶ 4 and 5.
[62] *Id.*, Appx. at 216-20, ¶¶ 139-47.
[63] *Id.*, Appx. at 214-16, ¶¶ 136-38.
[64] McKenney Dec., PX 10, Appx. at 213, ¶ 135.

33

law violations,[65] preserves assets for eventual restitution to victims, and imposes a temporary receivership over the corporate defendants.[66] Such an order is well within the Court's authority.

Courts have authority under 15 U.S.C. § 53(b) to impose an asset freeze to preserve the possibility of providing restitution to victimized consumers. *See, e.g., FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112-13 (9th Cir. 1982); *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996); *World Wide Factors*, 882 F.2d at 347; *FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1514 (9th Cir. 1987) (FTC's power to petition for injunctive relief and asset freeze "well established"). An asset freeze is appropriate here given the deceptive nature of Defendants' scheme and the magnitude of financial injury. *See, e.g., SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972) ("Because of the fraudulent nature of appellants' violations, the court could not be assured that appellants would not waste their assets prior to refunding public investors money.").

Defendants have taken tens of millions of dollars from consumers and already have moved some of those funds offshore. Defendant Hardwire Interactive is based in the British Virgin Islands and holds its accounts offshore. Triangle Media also has already transferred millions of dollars in proceeds from the scheme

---

[65] Specifically, the requested conduct prohibitions in the proposed TRO require only that the Defendants comply with the FTC Act, ROSCA, and the EFTA and Regulation E.

[66] The FTC has filed a proposed TRO concurrently with this application.

to Canada.[67]  Thus, in the absence of an asset freeze, there is a very real risk that

Defendants will move additional funds offshore, thereby threatening the Court's

ability to provide eventual restitution to victims.

The appointment of a temporary receiver for the Corporate Defendants is

also appropriate.  "The district court's exercise of its equity power in this respect is

particularly necessary in instances in which the corporate defendant, through its

management, has defrauded members of the investing public," *SEC v. First Fin.*

*Group*, 645 F.2d 429, 438 (5th Cir. 1981).  *See In the Matter of McGaughey*, 24

F.3d 904, 907 (7th Cir. 1994) (appointment of receiver is "an especially

appropriate remedy in cases involving fraud and the possible dissipation of

assets"); *see also FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir.

1984).  Here, where there is overwhelming evidence that Defendants are engaged

in widespread deception, a receiver could help assess the extent of the fraud,

prepare an accounting, and make an independent report of Defendants' activities to

the Court.  Additionally, a receiver could prevent the destruction of documents and

the dissipation of assets while the case is pending.

**D.      The Temporary Restraining Order Should be Issued *Ex Parte* to Preserve the Court's Ability to Fashion Meaningful Relief**

The requested TRO should be issued *ex parte* to prevent Defendants from

dissipating assets or destroying evidence.  *Ex parte* relief is appropriate when

---

[67]      McKenney Dec., PX 10, Appx. at 221, ¶ 150.

35

**ER315**

immediate and irreparable injury, loss, or damage will occur before the defendants can be heard in opposition. *See* Fed. R. Civ. P. 65(b); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Courts have routinely granted the FTC's requests for *ex parte* TROs in Section 13(b) cases like this one.[68]

Here, immediate and irreparable injury will likely result if notice is provided to Defendants.[69] Given the fraudulent nature of their scheme and strength of the evidence establishing their liability, Defendants would have every incentive to dissipate assets and destroy inculpatory evidence if given prior notice of the FTC's motion. Indeed, Defendants' use of multiple shell entities, and Defendant Phillips' efforts to conceal his association with those entities, demonstrate Defendants' attempts to evade detection. And Defendants have already transferred tens of millions of dollars out of the country.[70] For all these reasons, *ex parte* relief is both appropriate and necessary.

---

[68]     *See supra* notes 54 and 55.

[69]     The FTC's experience has shown that, upon discovery of legal action, many defendants withdraw funds, destroy vital documents, and flee. *See* Certification and Declaration of Plaintiff's Counsel Pursuant to Federal Rule of Civil Procedure 65(b) in Support of Plaintiff's *Ex Parte* Motion for Temporary Restraining Order and *Ex Parte* Application to Temporarily Seal Case File. Indeed, When previously contacted by the BBB regarding one of their shell entities, Defendants promptly dissolved the entity and continued doing business under a new name. McKenney Dec., PX 10, Appx. at 226-27, ¶ 155 and 156 & Att. Y and Z, at 600-611.

[70]     McKenney Dec., PX 10, Appx. at 221, ¶ 150.

36

## V. Conclusion

For the reasons set forth above, the FTC respectfully requests that the Court enter the proposed TRO and require that Defendants show cause why a preliminary injunction should not issue.

Dated: June 25, 2018

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
sgordon@ftc.gov
mwernz@ftc.gov
312-960-5623 (Gordon)
312-960-5596 (Wernz)

Attorneys for Plaintiff
Federal Trade Commission

37

**ER317**

1  ALDON F. ABBOTT
   General Counsel
2
3  SAMANTHA GORDON (IL Bar No. 6272135)
   sgordon@ftc.gov
4  MATTHEW H. WERNZ (IL Bar No. 6294061)
5  mwernz@ftc.gov
   Federal Trade Commission
6  230 South Dearborn, Suite 3030
7  Chicago, Illinois 60604
8  312.960.5623 (Gordon)
   312.960.5596 (Wernz)
9  ATTORNEYS FOR PLAINTIFF
10
**FILED**

Jun 25 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ joanag _____ DEPUTY

11                    **UNITED STATES DISTRICT COURT**
                      **SOUTHERN DISTRICT OF CALIFORNIA**

12
13  FEDERAL TRADE COMMISSION,          Case No.:    -cv-  **'18 CV 1388 BEN NLS**

14                          Plaintiff,   Plaintiff's Ex Parte Motion for
                                         Temporary Restraining Order with an
15  v.                                   Asset Freeze, Appointment of a
                                         Receiver, and Other Equitable Relief,
16  TRIANGLE MEDIA                       and Order to Show Cause Why a
17  CORPORATION, a Delaware             Preliminary Injunction Should Not
    corporation, also doing business as Issue
18  Triangle CRM, Phenom Health, Beauty
19  and Truth, and E-Cigs; et al.,

20                          Defendants.
21

22      Plaintiff, the Federal Trade Commission ("FTC"), having filed its Complaint

23  seeking preliminary and permanent injunctive relief, rescission or reformation of

24
25  contracts, restitution for consumers, the refund of monies paid, disgorgement of ill-

26  gotten monies, and any other equitable relief for Defendants' acts or practices in

27  violation of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15
28

                                       1

U.S.C. § 45(a), Section 4 of the Restore Online Shoppers' Confidence Act

("ROSCA"), 15 U.S.C. § 8403, Section 907(a) of the Electronic Fund Transfer Act

("EFTA"), 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12

C.F.R. § 1005.10(b), moves this Court on an *ex parte* basis without notice to

Defendants for a Temporary Restraining Order with an Asset Freeze, Appointment

of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a

Preliminary Injunction Should Not Issue ("TRO").[1] In support of this Motion, the

FTC states:

1.     The FTC seeks an order:

        a.     Temporarily restraining Defendants from further violations of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C.

§ 8403, Section 907(a) of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a)

and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b);

        b.     Temporarily freezing Defendants' assets;

        c.     Appointing a temporary equity receiver to take control of

corporate Defendants Triangle Media Corporation, Jasper Rain Marketing, LLC,

Hardwire Interactive, Inc., and their assets;

        d.     Temporarily restraining and enjoining Defendants from

destroying or concealing documents, and from transferring, concealing, or

---

[1]     The FTC has filed a proposed TRO concurrently with this motion.

2

otherwise disposing of assets;

   e. Temporarily requiring any third parties holding Defendants'

assets to retain within their control and prohibit the withdrawal, removal,

assignment, transfer, pledge, or other disposal of any of Defendants' assets, funds,

documents or other property held by or under the control of any third parties;

   f. Granting expedited discovery; and

   g. Requiring Defendants to show cause why this Court should not

issue a preliminary injunction extending such temporary relief pending an

adjudication on the merits.

   2. *Ex parte* relief is necessary here. An *ex parte* TRO is warranted where

the facts show that irreparable injury, loss, or damage will result before the

defendant can be heard in opposition. *See* Fed. R. Civ. P. 65(b). In other cases in

this district and circuit, courts have granted the FTC an *ex parte* TRO with an

asset freeze and appointment of a receiver based on defendants' deceptive acts and

practices.[2] As in those cases, irreparable injury, loss, or damage will likely result if

Defendants receive notice of this action.

---

[2] *See, e.g., FTC v. Am. Nat'l Cellular, Inc.*, 810 F.2d 1511, 1514 (9th Cir.
1987) ("FTC's power to petition the district court for injunctive relief is well
established.") (citing *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107 (9th Cir. 1982));
*FTC, et al. v. Membership Serv., Inc., et al.*, 01-CV-1868-JM (POR) (S.D. Cal.
Oct. 17, 2001) (granting an *ex parte* TRO with an asset freeze and appointment of
a receiver); *FTC v. RevMountain, LLC, et al.*, 17-cv-02000-APG-GWF (D. Nev.
July 25, 2017) (same); *FTC v. Applied Mktg. Servs., LLC*, CV-13-6794-CAS
(CWx) (C.D. Cal. Sept. 15, 2013) (same).

3

**ER320**

3.      In the FTC's experience, defendants engaged in similarly deceptive

marketing schemes have withdrawn funds from bank accounts and moved or

destroyed inculpatory documents when given notice of the FTC's action against

them.[3]

4.      In this case, the pervasive nature of the Defendants' unlawful

behavior and the deceptive nature of their misrepresentations demonstrates a

likelihood that they will dissipate or conceal assets and destroy or conceal evidence

of their unlawful conduct if given notice of the FTC's action before the entry of a

TRO. As explained in detail in the FTC's memorandum and the supporting

exhibits filed with this application, Defendants represent to consumers that they

can obtain "free trials" online of Defendants' skincare products, electronic

cigarettes and dietary supplements.  Although these free trials are advertised at a

minimal cost for shipping and handling purposes, Defendants actually charge

consumers the full price of the product shortly after the trial begins and also enroll

consumers in continuity plans by which they continue to ship consumers the

product, for which they again charge consumers full price, every month until

consumers cancel.  Consumers are further charged for add-on products at the time

---

[3]      *See* Certification and Declaration of Plaintiff's Counsel Pursuant to Federal
Rule of Civil Procedure 65(b) and Civ. L.R. 83.3(g)(2) in Support of Plaintiff's *Ex
Parte* Motion for Temporary Restraining Order and *Ex Parte* Motion to
Temporarily Seal the Case File, filed with this motion.

4

**ER321**

1  of purchase that are also attached to continuity plans.  These additional terms are

2  either not disclosed to consumers or not disclosed adequately.

3      5.    Defendants thus misrepresent the price of their trial orders, fail to

4

5  disclose the material terms of their trials, and charge consumers without their

6  authorization.  Consumers who seek refunds for these unanticipated charges made

7

8  by the Defendants are often unable to receive a refund due to the Defendants'

9  previously undisclosed refund restrictions.

10     6.    Since 2010, Defendants have charged consumers tens of millions of

11

12 dollars unlawfully.  At the same time, Defendants have operated through a series of

13 assumed names to disguise their true identities, and have transferred tens of

14

15 millions of dollars outside the United States.  Without an *ex parte* asset freeze,

16 funds may not be available to satisfy a final order granting restitution to defrauded

17 consumers.

18

19

20

21

22

23

24

25

26

27

28

5

**ER322**

WHEREFORE, Plaintiff Federal Trade Commission respectfully requests that the Court grant its Motion *ex parte* and waive notice of this Motion to Defendants.

Dated: 6/22/2018

Respectfully submitted,

Aldon F. Abbott
General Counsel

Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
sgordon@ftc.gov
mwernz@ftc.gov
312-960-5623 (Gordon)
312-960-5596 (Wernz)

Attorneys for Plaintiff
Federal Trade Commission

6

FILED

Jun 25 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ joanag        DEPUTY

1  ALDEN F. ABBOTT
   General Counsel
2

3  SAMANTHA GORDON (IL Bar No. 6272135)
   sgordon@ftc.gov
4  MATTHEW H. WERNZ (IL Bar No. 6294061)
5  mwernz@ftc.gov
   Federal Trade Commission
6  230 South Dearborn, Suite 3030
7  Chicago, Illinois 60604
   312.960.5623 (Gordon)
8  312.960.5596 (Wernz)
9  ATTORNEYS FOR PLAINTIFF

10

11             **UNITED STATES DISTRICT COURT**

               **SOUTHERN DISTRICT OF CALIFORNIA**
12

13

14  FEDERAL TRADE COMMISSION,        Case No.: **'18 CV 1388 BEN NLS**

15                      Plaintiff,   **COMPLAINT FOR PERMANENT**
                                     **INJUNCTION AND OTHER**
16  v.                               **EQUITABLE RELIEF**

17  TRIANGLE MEDIA CORPORATION, a
    Delaware corporation, also doing business
18  as Triangle CRM, Phenom Health, Beauty
    and Truth, and E-Cigs;
19

20  JASPER RAIN MARKETING LLC, a
    California limited liability company, also
21  doing business as Cranium Power and
    Phenom Health;
22

23  HARDWIRE INTERACTIVE INC., a
24  British Virgin Islands corporation, also
    doing business as Phenom Health, Beauty
25  and Truth, and E-Cigs; and

26
    BRIAN PHILLIPS, individually and as an
27

28
                              1

                                              [Case No.]

ER324

officer of Triangle Media Corporation,

Defendants.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), for its

Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), Section 5 of the Restore Online

Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary,

preliminary, and permanent injunctive relief, rescission or reformation of contracts,

restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC

Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the

EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R.

§ 1005.10(b).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b); and Section 5(a) of ROSCA, 15

U.S.C. § 8404(a).

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1),

(c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

2

**ER325**

**PLAINTIFF**

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which prohibits certain methods of negative option marketing on the Internet, as well as the EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, and the EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 8404, and 1693o(c).

**DEFENDANTS**

6.     Defendant **Triangle Media Corporation** ("Triangle Media"), also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs, is a Delaware corporation registered at 108 West 13th Street, Wilmington, Delaware 19801.  Its principal place of business was 1350 Columbia Street, San Diego, California 92101 until May 17, 2018, when it filed paperwork with the California Secretary of State changing its principal place of business to 4519 George Road, Tampa, Florida 33634.  At all times

3

**ER326**

material to this complaint, acting alone or in concert with others, Triangle Media
Corporation has advertised, marketed, distributed, or sold skincare products, electronic
cigarettes, and dietary supplements to consumers throughout the United States. Triangle
Media transacts or has transacted business in this district and throughout the United
States.

7.    Defendant **Jasper Rain Marketing LLC** ("Jasper Rain"), also doing
business as Cranium Power and Phenom Health, is a California limited liability company
registered and with its principal place of business at 4370 La Jolla Village Drive, Suite
400, San Diego, California 92122. At all times material to this complaint, acting alone or
in concert with others, Jasper Rain has advertised, marketed, distributed or sold dietary
supplements to consumers throughout the United States. Jasper Rain transacts or has
transacted business in this district and throughout the United States.

8.    Defendant **Hardwire Interactive Inc.** ("Hardwire Interactive"), also doing
business as Phenom Health, Beauty and Truth, and E-Cigs, is a British Virgin Islands
corporation with its principal place of business at R.G. Hodge Plaza 3/Floor, Upper Main
Street, Wickham's Cay 1, Road Town, Tortola, British Virgin Islands. At all times
material to this complaint, acting alone or in concert with others, Hardwire Interactive
has advertised, marketed, distributed or sold skincare products, electronic cigarettes, and
dietary supplements to consumers throughout the United States. Hardwire Interactive
transacts or has transacted business in this district and throughout the United States.

4

[Case No.]

**ER327**

9.     Defendant **Brian Phillips** is an owner and officer of Triangle Media.  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of **Triangle Media**, **Jasper Rain**, and **Hardwire Interactive**, including the acts and practices set forth in this Complaint.  Defendant Phillips resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.  Among other things, Defendant Phillips has had the authority to control the advertising and marketing of Defendants' products, including by registering websites used to track Defendants' online advertising and marketing activities; the processing of payments from consumers victimized by Defendants' practices, including by having signatory authority over bank accounts used to receive and process consumer payments; and Defendants' customer service operations, including Defendants' restrictive cancellation and refund policies.

10.     Defendants **Triangle Media**, **Jasper Rain,** and **Hardwire Interactive** (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of the law alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations and that use common business names and commingle funds.  Because these Corporate Defendants have

5

**ER328**

operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendant Phillips has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

<div align="center">

**COMMERCE**

</div>

11.    At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

<div align="center">

**DEFENDANTS' BUSINESS PRACTICES**

</div>

12.    Defendants advertise, market, promote, distribute, and sell skincare products, electronic cigarettes, and dietary supplements online. Defendants claim to offer trials of these products for just the cost of shipping and handling, typically $4.95 or less. Instead, Defendants charge consumers who accept the trial offers as much as $98.71 for a single shipment and enroll them in a continuity program costing the same amount on a monthly basis. Additionally, Defendants frequently also charge consumers for additional products and enroll consumers in continuity programs related to these additional products, all without the consumers' knowledge or consent. Consumers who discover Defendants' charges and seek a refund often find that they are unable to get their money back because of Defendants' undisclosed refund restrictions. Defendants have brought in tens of millions of dollars through their deceptive trial offers.

<div align="center">

6

</div>

<div align="center">

**ER329**

</div>

*Defendants' Deceptive Trial Offers*

13.     Defendants advertise through third-party websites, blog posts, banner advertisements, and surveys, offering consumers a "trial" of products such as "Wrinkle Rewind," "ProVapor," "Cerebral X," "Test X Core," and "Garcinia Clean XT." These advertisements often say that consumers can receive a "trial" for just the cost of shipping and handling.  When consumers click on these advertisements, they are directed to Defendants' websites, which include findbeautyandtruth.com, trycerebralx.com, tryphenomcore.com, tryprovapor.com, and trygarciniaclean.com.

14.     Defendants' websites offer consumers a "RISK FREE" trial of one of Defendants' products. The websites create a sense of urgency by telling consumers there is a limited supply of the trial product and that they need to act quickly.  Representative statements include:

- Warning: Due to extremely high media demand, there is limited supply of [PRODUCT] in stock as of [today's date].  HURRY!

- ONLY [X] NUMBER OF TRIALS AVAILABLE NOW!

- ATTENTION: Due to high demand from recent media coverage we can no longer guarantee supply.  As of [TODAY'S DATE] we currently have product in-stock and will ship within 24 hours of purchase.

7

The websites also prominently display the logos of news organizations such as CBS News, NBC, Fox News, and CNN, suggesting that these products have been featured on those outlets.

15.     Consumers who are interested in the trial offer are asked to provide their contact information.  Upon doing so, consumers are directed to a payment page on which Defendants request their credit or debit card information and represent that consumers need to pay only a shipping and handling charge, typically $4.95 or less, to receive a trial of Defendants' product.  Defendants' websites prominently state that the "Total" cost of the product is equal to the cost of shipping and handling.  As shown in the screenshot below of Defendants' website for Cerebral X, for example, Defendants list the shipping cost of $4.95 and highlight the "Total," also $4.95, in yellow:

8

**Figure 1**

16. Similarly, in the following screenshots of Defendants' website for Garcinia Clean XT as depicted on a mobile device, Defendants list the "Price" of the product as $0.00, highlighted in green, the $4.95 shipping and handling charge, and a "Total" of $4.95 in bold, followed by a request for billing information when consumers scroll down on their mobile device:

9

**Figure 2**

17.     Once consumers enter their billing information, they are asked to place their order by clicking a brightly colored button labeled either "GET MY RISK FREE TRIAL" or "CONTINUE."

18.     Unbeknownst to consumers, 15 days after they click "GET MY RISK FREE TRIAL" or "CONTINUE," Defendants will charge consumers the full price of the product—as much as $98.71.

19.     Defendants also enroll consumers who accept the trial offer into a continuity program.  Under the continuity program, Defendants send consumers additional

10

shipments of the product each month and charge consumers' credit or debit cards the full price of each product shipped.

20.     Consumers typically only learn that the trial was not free and that they have been enrolled in a continuity program when they see Defendants' monthly charges on their credit card or bank statements.

21.     As Figs. 1 and 2 illustrate, Defendants either hide the terms of their offer in barely discernable print  far below the colorful graphics and text where consumers input their personal and payment information and continue with their purchase, or bury them in a separate "Terms & Conditions" hyperlink.  Those terms typically reveal that the consumer has a limited time to cancel the trial, usually 15 days, or the consumer will be charged the full price of the product.  The terms also state that the consumer will receive and be charged for additional shipments of the product every 30 days until they cancel.

22.     On the desktop page depicted in Fig. 1, consumers would not encounter these terms unless they were to look closely at the small, faint type far below where they enter their payment information and click "GET MY RISK FREE TRIAL."  On the mobile pages depicted in Fig. 2, to see the terms, consumers would need to click on the separate "terms and conditions" hyperlink or scroll past the large, brightly colored "CONTINUE" button.  But there is nothing on the billing screen in Fig. 2 to indicate that consumers should look beyond the "CONTINUE" button to find additional content below.

11

23.     As a result of these inadequate disclosures, Defendants' websites misrepresent the total cost of Defendants' trial products, and fail to adequately apprise consumers that they are being enrolled in a continuity program.

### Defendants' Deceptive Order Completion Page

24.     After clicking "GET MY RISK FREE TRIAL" or "CONTINUE" to order a trial of one of Defendants' products, consumers are then directed to a webpage that indicates that their order is not complete.  For example, consumers who think they already have ordered a trial of Defendants' brain supplement Cerebral X are taken to a page on the same website that has a "Cerebral X" banner at the top but that indicates in large, red type directly beneath the banner, "Wait!  Your Order is Not Complete!" That page then offers a "FREE" trial of the product VitaMood+, which, the ad indicates, should be "paired together" with Cerebral X.

12

**ER335**





       



Advanced Cognitive Enhancer
Internet Exclusive Offer
Available to USA Residents Only
Wait! Your Order Is Not Complete!
We want to offer you a free Vitamood+ trial bottle because we're so confident that when paired together with Cerebral X you'll see unparalleled results! There's no reason to feel blue. Add Vitamood+ to your order.
SPECIAL
BOOST YOUR MOOD!
VITAMOOD+
VITAMOOD+
FOR A CALM, RELAXED STATE OF MIND
FEELINGS OF POSITIVITY & OPTIMISM
EMOTIONAL HEALTH
BALANCED BRAIN CHEMISTRY
Add your bottle
Free Shipping Included!
Secure 256-bit SSL Encryption
COMPLETE CHECKOUT
MasterCard. SecureCode.
Verified by VISA
Yes, add Protect Package™ for $6.95 to my order.
No, I don't want to improve my mood.
PRIVACY VERIFIED
CERTIFIED BY
SECURITY VERIFIED
BUSINESS VERIFIED
VISA
DISCOVER
FedEx Express
UNITED STATES POSTAL SERVICE
Shop Online with Confidence

Figure 3

25.     As noted in Fig. 3, Defendants represent that consumers have not completed their order of the initial trial product until they click the "COMPLETE CHECKOUT" button located under the advertisement for the second product.

26.     But when consumers click the "COMPLETE CHECKOUT" button, they are deemed by Defendants to have ordered a trial of both the original product and the second product. If consumers do not click the "COMPLETE CHECKOUT" button, however, they will still receive a trial of the first product.

27.     Defendants represent that the second product is free, but in reality, the consumer will be charged the full price of the product 18 days later. Defendants also will enroll consumers who click the "COMPLETE CHECKOUT" button in a second continuity program, meaning that consumers also will receive and be charged for monthly shipments of the second product.

28.     As with Defendants' initial offers, the "order completion" pages also fail to disclose important terms and conditions of the offer. For example, the order page for the VitaMood+ offer (Fig. 3) does not disclose adequately that Defendants will charge consumers the full price of the product after 18 days, and will also enroll them in a continuity program. These terms only appear in small, faint print well below the prominent "COMPLETE CHECKOUT" button.

29.     Below the "COMPLETE CHECKOUT" button, and below a line-break, in tiny, faint print, Defendants include a hyperlink that consumers can click to decline the

14

second offer. For example, the order page for the VitaMood+ offer, depicted in Fig. 3 above, includes a faint hyperlink that says "No, I don't want to improve my mood." Consumers who click on this hyperlink are then redirected to a series of web pages that make similar deceptive offers.

30.     Once consumers place an order for one or more of Defendants' products, they receive a confirmation email that either does not list any charges associated with the products or lists only the shipping and handling charge. The confirmation email thus reinforces the false impression from the websites that, other than the obligation to pay shipping and handling, the trial product is free.

### *Defendants' Restrictive Cancellation and Refund Practices*

31.     In numerous instances, consumers who ordered Defendants' trial products report that Defendants subsequently charge them without their knowledge or consent for the full price of these products and sign them up for one or more continuity programs. Many consumers subsequently attempt to cancel their enrollment in the continuity program and to obtain a refund of Defendants' unauthorized charges, but they often have difficulty cancelling and obtaining a refund.

32.     Consumers who call Defendants to cancel the trial and continuity program often have difficulty reaching Defendants' customer service representatives, despite calling numerous times. Even if they are able to reach a customer service representative to request cancellation, consumers report that they often continue to receive and be

15

charged for shipments of Defendants products even after cancelling. The same is sometimes true when consumers use Defendants' "easy" online cancellation.

33.    Consumers who request a refund are often told that they cannot get one because, according to Defendants, their "terms and conditions" require that refund requests be made within 30 days. Where the refund period has not lapsed, consumers are told they can only get a refund if the trial product is returned unopened and at the consumer's expense. Often, consumers who send back the trial product unopened and within the refund period are nevertheless refused a refund, with Defendants' customer service representative telling them that Defendants never received the return shipment.

34.    In many instances, consumers attempt to get their money back by initiating chargebacks with their credit card companies. In other instances, consumers receive refunds directly from Defendants only after they complain to the Better Business Bureau or a state regulatory agency. Even in those instances, however, Defendants have not always issued full refunds, but have refunded only the monthly continuity program charges.

### VIOLATIONS OF THE FTC ACT

35.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

36.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

16

[Case No.]

**ER339**

37.     Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

### *Misrepresentations of the Price of the Trial Offers*

38.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants will charge consumers at most only a shipping and handling fee for a one-time shipment of Defendants' product.

39.     In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 38 of this Complaint, Defendants have charged consumers more than a shipping and handling fee for one or more shipments of Defendants' product.

40.     Therefore, Defendants' representation described in paragraph 38 of this Complaint, is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

17

[Case No.]

**ER340**

## COUNT II

### *Misrepresentation that Order is Not Complete*

41.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements to consumers who have already ordered a trial of one of Defendants' products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers' initial orders are not complete and that clicking the "COMPLETE CHECKOUT" button will merely complete their initial orders.

42.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 41 of this Complaint, consumers' initial orders were complete, and clicking the "COMPLETE CHECKOUT" button ordered an additional product and enrolled consumers in a continuity plan for that product.

43.    Therefore, Defendants' representation described in paragraph 41 of this Complaint is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### *Failure to Disclose Adequately Material Terms of Trial Offer*

44.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by

18

implication, that consumers can obtain a trial of Defendants' product for the cost of shipping and handling, or for free.

45.     In numerous instances in which Defendants have made the representation set forth in Paragraph 44 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

(a)     The total cost of the product;

(b)     That Defendants will charge consumers the total cost of the trial product upon the expiration of the trial period, typically 15 days;

(c)     That Defendants will automatically enroll consumers in a continuity plan with additional charges; and

(d)     The cost of the continuity plan, and the frequency and duration of the recurring charges.

46.     Defendants' failure to disclose, or disclose adequately, the material information described in Paragraph 45, above, in light of the representation described in Paragraph 44, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

### *Unfairly Charging Consumers Without Authorization*

47.     In numerous instances, Defendants have charged consumers without their express informed consent.

19

[Case No.]

**ER342**

48.     Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

49.     Therefore, Defendants' practices as described in Paragraph 47, above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

50.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, which became effective on December 29, 2010. Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Section 2 of ROSCA, 15 U.S.C. § 8401.

51.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the

20

charge; and (c) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

52.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w).

53.     As described above, Defendants advertise and sell Defendants' skincare, electronic cigarette, and dietary supplement products to consumers through a negative option feature as defined by the TSR. *See* 16 C.F.R. § 310.2(w).

54.     Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, and therefore constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT V

### *Violation of ROSCA – Auto-Renewal Continuity Plan*

55.     In numerous instances, in connection with the selling of their products on the Internet through a negative option feature, Defendants have failed to:

    (a)     clearly and conspicuously disclose all material terms of the negative option feature of the product transaction before obtaining the consumer's billing information;

21

[Case No.]

**ER344**

(b) obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction; and/or

(c) provide simple mechanisms for a consumer to stop recurring charges for products to the consumer's credit card, debit card, bank account, or other financial account.

56.     Defendants' practices as set forth in Paragraph 55 are a violation of Section 4 of ROSCA, 15 U.S.C. § 8403, and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, 15 U.S.C. § 8404(a), and therefore constitute an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E**

57.     Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized" electronic fund transfer from a consumer's account may be "authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

58.     Section 903(10) of the EFTA, 15 U.S.C. § 1693a(10), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

22

**ER345**

59.     Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

60.     Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b), cmt. 5, Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." The Official Staff Commentary to Regulation E further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." 12 C.F.R. § 1005.10(b), cmt. 6, Supp. I.

## COUNT VI

### *Unauthorized Debiting from Consumers' Accounts*

61.     In numerous instances, Defendants debit consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

62.     Further, in numerous instances, Defendants debit consumers' bank accounts on a recurring basis without providing a copy of written authorization signed or similarly

23

authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

63.     Under Section 918(c) of the EFTA, 15 U.S.C. § 1693o(c), a violation of the EFTA and Regulation E constitutes a violation of the FTC Act.

64.     Accordingly, by engaging in violations of the EFTA and Regulation E as alleged in Paragraphs 61 and 62 of this Complaint, Defendants have engaged in violations of the FTC Act.  15 U.S.C. § 1693o(c).

**CONSUMER INJURY**

65.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and the EFTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

**THIS COURT'S POWER TO GRANT RELIEF**

66.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of

24

ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

67.    Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and the EFTA, including the rescission or reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such temporary and preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B.    Enter a permanent injunction to prevent future violations of the FTC Act, ROSCA, and the EFTA by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA,

25

and the EFTA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.    Award Plaintiff the cost of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: June 22, 2018           Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
sgordon@ftc.gov
mwernz@ftc.gov
312-960-5623 (Gordon)
312-960-5596 (Wernz)

Attorneys for Plaintiff
Federal Trade Commission

26

[Case No.]

**ER349**

**MCGUIREWOODS LLP**
DAVID C. POWELL (SBN 129781)
dpowell@mcguirewoods.com
ALICIA A. BAIARDO (SBN 254228)
abaiardo@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

**MCGUIREWOODS LLP**
KEVIN M. LALLY (SBN 226402)
klally@mcguirewoods.com
355 S. Grand Avenue, Suite 4200
Los Angeles, CA 90071
Telephone: 213.627.2268
Facsimile: 213.627.2579

Attorneys for Proposed Intervenors
Wells Fargo & Company and
Wells Fargo Bank, N.A.

<div align="center">

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

</div>

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC; GLOBAL NORTHERN TRADING LIMITED; BRIAN PHILLIPS; and DEVIN KEER,<br><br>    Defendants. | CASE NO. 18-cv-1388-LAB-WVG<br><br>Judge: Hon. Larry Alan Burns<br><br>**PROPOSED INTERVENORS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.'S NOTICE OF APPEAL** |

**TO THE HONORABLE COURT, PARTIES, AND COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that Proposed Intervenors Wells Fargo & Company and Wells Fargo Bank, N.A. appeal to the United States Court of Appeals for the Ninth Circuit from the Order entered on September 30, 2022 (Dkt. 176), denying Proposed Intervenors' Motion to Intervene.

DATED: October 27, 2022            Respectfully submitted,

**MCGUIREWOODS LLP**

_/s/ Alicia A. Baiardo_
David C. Powell, Esq.
Kevin M. Lally, Esq.
Alicia A. Baiardo, Esq.

_Counsel for Proposed Intervenors_
_Wells Fargo & Company and Wells Fargo_
_Bank, N.A._

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

      I hereby certify that on October 27, 2022, I electronically filed the foregoing document entitled with the Clerk of the Court for the United States District Court, Southern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system. Any counsel of record who has not consented to or registered for electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile, and/or overnight delivery.

                               By: */s/ Alicia A. Baiardo*
                                   Alicia A. Baiardo

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*
Name(s) of party/parties:

| |
|---|
| Wells Fargo & Company and Wells Fargo Bank, N.A. |

Name(s) of counsel (if any):

| |
|---|
| McGuireWoods LLP<br>David C. Powell (SBN 129781); Alicia A. Baiardo (SBN 254228);<br>Kevin M. Lally (SBN 226402) |

Address: | 355 South Grand Avenue, Suite 4200, Los Angeles, CA 90071

Telephone number(s): | (213) 457-9862

Email(s): | klally@mcguirewoods.com; abaiardo@mcguirewoods.com; dpowell@mcguirewoods.com

Is counsel registered for Electronic Filing in the 9th Circuit? ⦿ Yes ◯ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*
Name(s) of party/parties:

| |
|---|
| Court-Appointed Receiver, Thomas W. McNamara |

Name(s) of counsel (if any):

| |
|---|
| McNamara Smith, LLP<br>Logan D. Smith (SBN 212041); Cornelia J. B. Gordon (SBN 320207) |

Address: | 655 West Broadway, Suite 900, San Diego, CA 92101

Telephone number(s): | (619) 269-0400

Email(s): | lsmith@mcnamarallp.com; cgordon@mcnamarallp.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**ER353**

Continued list of parties and counsel: *(attach additional pages as necessary)*

**<u>Appellants</u>**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?  ○ Yes  ○ No

**<u>Appellees</u>**

Name(s) of party/parties:

Federal Trade Commission

Name(s) of counsel (if any):

Jonathan W. Ware (DC Bar 989414)

Address: 600 Pennsylvania Avenue NW, CC-9528, Washington, DC 20580

Telephone number(s): (202) 326-2726

Email(s): jware1@ftc.gov

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

Form 6     *2*     *New 12/01/2018*

**ER354**

1
2
3
4
5
6
7
8
9
10

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

11   FEDERAL TRADE COMMISSION,

12                               Plaintiff,

13   v.

14   TRIANGLE MEDIA CORPORATION;
15   JASPER RAIN MARKETING LLC;
     HARDWIRE INTERACTIVE INC.;
16   GLOBAL NORTHERN TRADING
     LIMITED; BRIAN PHILLIPS; and
17   DEVIN KEER,

18                               Defendants.

19

Case No.: 18-cv-1388-LAB-WVG

**ORDER DENYING MOTION TO INTERVENE [Dkt. 153]**

20        Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells
21   Fargo") is a non-party proposed intervenor seeking to have this Court vacate its
22   November 18, 2019 Order authorizing the Court-appointed Receiver, Thomas
23   McNamara ("Receiver"), to pursue litigation against Wells Fargo for over
24   $160 million in monetary damages owed by the named Defendants in this case.
25   Wells Fargo argues that, per the Supreme Court's ruling in *AMG Capital*
26   *Management, LLC v. FTC*, 141 S. Ct. 1341 (2021), the Federal Trade Commission
27   ("FTC") lacks the authority to obtain equitable monetary relief under Section 13(b)
28   of the FTC Act, 15 U.S.C. § 53(b).

1   The Court has read and considered all materials submitted in support of and
2   in opposition to Wells Fargo's Motion to Intervene ("Motion"). For the reasons
3   stated herein, the Motion is **DENIED**. (Dkt. 153).

## I.   BACKGROUND

5   In June 2018, the FTC brought an enforcement action against Brian Phillips
6   and Devin Keer, as well as their web of companies, including Triangle Media
7   Corporation, Jasper Rain Marketing, LLC, Hardwire Interactive, Inc., and Global
8   Northern Trading Limited (collectively, "Defendants"). (Dkt. 1). The FTC alleged
9   that Defendants were engaged in a multi-level scheme to sell trial offers of
10  discounted skincare products, electronic cigarettes, and dietary supplements
11  online in order to obtain consumers' credit and debit card information and instead
12  enroll them in a continuity program, charging them a recurring fee on a monthly
13  basis without their knowledge or consent. (*Id*. ¶ 12). The FTC sought, amongst
14  other remedies, equitable monetary relief under Section 13(b) of the FTC Act,
15  15 U.S.C. § 53(b); Section 5 of the Restore Online Shoppers' Confidence Act
16  ("ROSCA"), 15 U.S.C. § 8404; and Section 918(c) of the Electronic Fund Transfer
17  Act ("EFTA"), 15 U.S.C. § 1693o(c). (*Id*. ¶ 1).

18  On June 29, 2018, United States District Judge Michael Anello partially
19  granted the FTC's request for a Temporary Restraining Order ("TRO") and
20  temporarily appointed the Receiver to oversee, seize, and manage Defendants'
21  assets ("TRO Order"). (Dkt. 11).[1] In doing so, the Court ruled that it "has the
22  authority to issue this order pursuant to Section 13(b) of the FTC Act; 15 U.S.C.
23  § 53(b); Fed. R. Civ. P. 65; and the All Writs Act, 28 U.S.C. § 1651." (Dkt. 11 at 5).
24  The Court empowered the Receiver "to sue for, collect, and receive, all Assets of
25  the Receivership Entities and of other persons or entities whose interests are now

---

[1]  Judge Anello presided over this matter until his recusal in November 2018, following which this Court assumed jurisdiction over the matter. (*See* Dkt. 88).

under the direction, possession, custody, or control of, the Receivership Entities." (*Id*. at 19). It also authorized the Receiver to "[i]nstitute, . . .or otherwise become party to any legal action in state, federal or foreign courts or arbitration proceedings as the Receiver deems necessary and advisable to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers." (*Id*. at 21).

On August 24, 2018, Judge Anello issued a preliminary injunction, enjoining Defendants' deceptive business practices and making the Receiver's appointment permanent. (Dkt. 74, 75). The Ninth Circuit affirmed the preliminary injunction on appeal. (Dkt. 119). Thereafter, on May 30, 2019, the parties entered into two settlements that fully resolved all of the FTC's claims against Defendants. (Dkt. 121, 126–27). The Court accepted the settlements and entered a Modified Stipulated Order for Permanent Injunction and Monetary Judgment in the amount of $48,110,267.14 in equitable monetary relief as to Defendants Triangle Media Corporation, Jasper Rain Marketing, LLC, and Brian Phillips, (Dkt. 126), and $123,095,438.18 in equitable monetary relief as to Defendants Hardwire Interactive Inc., Global Norther Trading Limited, and Devin Keer, (Dkt. 127).

On November 18, 2019, this Court issued an order granting the Receiver's motion to extend the receivership for the sole purpose of pursuing litigation against Wells Fargo, and administratively closing this case while that litigation is pursued ("November 2019 Order"). (Dkt. 142). On July 8, 2021, the Receiver brought suit against Wells Fargo in this District in *McNamara v. Wells Fargo & Co.*, 3:21-cv-01245-LAB-DDL (S.D. Cal. July 8, 2021) ("Wells Fargo Litigation"), seeking, in part, the return of funds acquired by Wells Fargo through allegedly fraudulent transfers and/or unjust enrichment at the expensive of the Receivership Entities, as well all applicable damages proximately caused by Wells Fargo's allegedly tortious conduct, including punitive damages. (Dk. 154, Request for Judicial

1  Notice ("RJN"), Ex. C).[2] The Complaint against Wells Fargo alleges twelve causes
2  of action under state law for Wells Fargo's alleged "knowing provision of
3  substantial assistance" to not only the fraud scheme perpetrated by the
4  Defendants in this case, but also to a separate and unrelated fraud scheme
5  perpetrated by the former operators of Apex Capital Group. (*Id*. ¶¶ 1–2).

6      On November 10, 2021, Wells Fargo filed the present Motion to Intervene,
7  accompanied by a proposed Motion to Vacate the Court's November 2019 Order.
8  (Dkt. 153). Both the FTC and the Receiver filed oppositions in response, arguing
9  that Wells Fargo hasn't met its burden of demonstrating that intervention is
10  warranted here. (Dkt. 167, 168). On January 5, 2022, Wells Fargo filed a reply in
11  support of its motion. (Dkt. 169).

12  **II.   ANALYSIS**

13      **A.   Article III Standing**

14      The FTC argues that, as a preliminary matter, Wells Fargo lacks Article III
15  standing to intervene in this case because its alleged injuries are merely
16  hypothetical, and it cannot establish "a likelihood that an injury-in-fact will be
17  redressed by a favorable decision." (Dkt. 167 at 8–9 (quoting *San Diego United*
18  *Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 866–67 (S.D. Cal. 2018)). Indeed, in
19  any case where any relief is sought, "there must be a litigant with standing,
20  whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of
21  right." *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017) ("[A]t

22
23

24  _____
[2] Court records filed in a related litigation are proper subjects of judicial notice.
*See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
25  971 F.2d 244, 248 (9th Cir. 1992). The Court, therefore, takes judicial notice of the
Complaint, Notice of Related Case, Order of Transfer filed in the Wells Fargo
26  Litigation, attached as Exhibits C–E to Wells Fargo's Request for Judicial Notice.
27  (Dk. 154, Request for Judicial Notice ("RJN"), Exs. C, D, E). As the Court has not
considered the remainder of the documents submitted in support of Wells Fargo's
28  RJN, its request for judicial notice as to those exhibits is **DENIED AS MOOT**.

the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.").

To establish Article III standing, Wells Fargo must demonstrate that it has suffered: 1) an injury in fact that is 2) fairly traceable to the defendant's challenged conduct, and that is 3) likely to be redressed by a favorable ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Wells Fargo's injury amounts to "having to defend itself against litigation that this Court authorized based on an invalidated legal principle," namely allowing the FTC to seek equitable monetary relief under Section 13(b) of the FTC Act. (Dkt. 153-1 at 1). It argues that it may have to pay a monetary judgment contingent on the Receiver's success in the separate Wells Fargo Litigation. (*Id.* at 21). But such speculative injury is insufficient to confer standing here. *See FTC v. Apex Cap. Grp., LLC*, No. CV189573JFWJPRX, 2022 WL 1060486, at *3 (C.D. Cal. Mar. 10, 2022) (finding in case grounded in facts similar to those alleged here, that "injuries stemming from the cost or potential damages of litigation [in a separate suit] are insufficient to confer standing"); *San Diego Unified Port Dist.*, 309 F. Supp. 3d at 867 (holding "[t]he threat that Monsanto may be found liable in this action, . . . or future actions remains speculative" and insufficient to confer standing to assert counterclaims).

Wells Fargo also fails to establish "a likelihood that an injury-in-fact will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560. First, the Wells Fargo Litigation has already been filed and litigation is well underway—it commenced in July 2021 and the parties have already begun discovery. And second, even if this Court granted its request to vacate the November 2019 Order authorizing the Receiver to sue Wells Fargo under Section 13(b) of the FTC Act, the Receiver would still have the authority to continue its ongoing litigation against Wells Fargo to obtain a monetary judgment. In *AMG*, the Supreme Court held that the FTC lacks the authority to obtain equitable monetary relief under Section 13(b), 141 S. Ct. at 1352, but notably here, the FTC's Complaint and request for a preliminary

**ER359**

injunction, as well as its request for a TRO, sought relief under not only Section 13(b), *but also* Section 5 of ROSCA, which authorizes the FTC to pursue monetary relief on behalf of consumers for unfair or deceptive acts or practices. (*See* Dkt. 1 ¶ 1; Dkt. 5 at 1–2). The Court relied on ROSCA in granting in part the TRO and in issuing the preliminary injunction against Defendants, the latter which Order explicitly authorized the Receiver to institute an action in federal court to recover Defendants' assets. (Dkt. 11 at 1, 4; Dkt. 75 at 1–2, 17, 19). And the stipulated orders imposing permanent injunction and judgment also relied on ROSCA. (Dkt. 126 at 1; Dkt. 127 at 1). Wells Fargo argues in response that reliance on ROSCA to recover monetary relief is not permitted where the FTC never expressly pled Section 19 of the FTC Act. (Dkt. 172 at 3). But the FTC's failure to specifically invoke Section 19 does not bar its ability to recover under ROSCA. *See FTC v. Credit Bureau Ctr., LLC*, No. 17 C 194, 2021 WL 4146884, at *2 (N.D. Ill. Sept. 13, 2021) (granting FTC's motion for judgment under ROSCA where, like here, the original complaint pled ROSCA but not Section 19 of the FTC Act). Nor does Wells Fargo's argument address how *AMG* affects the state law claims brought against Wells Fargo that are not based on the FTC regulatory scheme. Thus, even if the Court vacated its November 2019 Order to preclude the Receiver from seeking to recover monetary damages under Section 13(b), the Receiver could still pursue damages under ROSCA and the state law claims.

Wells Fargo fails to establish that it suffered a concrete injury redressable through intervention, and therefore fails to establish it has Article III standing to intervene in this case.

## B. Intervention as of Right

Even if Wells Fargo could establish constitutional standing, Wells Fargo fails to meet the Ninth Circuit's four-part test to determine whether a motion to intervene should be granted as a matter of right: "(1) the motion must be timely; (2) the applicant must claim a 'significantly protectable' interest relating to the

18-cv-1388-LAB-WVG

property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011)).

The first element, timeliness, "is the threshold requirement for intervention." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). Timeliness hinges on "three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (internal citation and quotation marks omitted). Critically here, the Court entered stipulated orders for permanent injunction and monetary judgment on May 20, 2019, and administratively closed the case on November 19, 2019. Over two years passed before Wells Fargo filed its motion requesting intervention. That fact alone weighs heavily against intervention. *See United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996) ("Although the length of the delay is not determinative, any substantial lapse of time weighs heavily against intervention. If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements of Rule 24.") (internal citations omitted); *see also Lee v. Pep Boys–Manny Moe & Jack of Cal.*, No. 12-cv-05064-JSC, 2016 WL 324015, at *5 (N.D. Cal. Jan. 27, 2016) ("The age of this case weighs against a finding of timeliness, as this case was originally filed nearly three and a half years ago.").

The FTC argues that Wells Fargo was on notice that its interests were at risk by at least October 22, 2019, when the Receiver filed a motion notifying the Court of the conclusion of its investigation into a potential receivership estate lawsuit against Wells Fargo and requesting permission to engage contingency counsel to represent the Receiver in that action. (*See* Dkt. 136-1). In response,

7

**ER361**

Wells Fargo contends that even though the present action was filed against Defendants in 2018, Wells Fargo was never a party to that action, and it wasn't until April 22, 2021 that the Supreme Court issued its instructive ruling in *AMG*, and July 8, 2021 that the Receiver actually filed a complaint in the Wells Fargo Litigation. (Dkt. 153-1 at 13–14; Dkt. 172 at 6–7). But this still ignores the fact that Wells Fargo waited over six months after the *AMG* decision and nearly four months from the date the Wells Fargo Litigation commenced to file the present motion. And importantly, even if the Court considered a four to six month delay inconsequential, permitting intervention would prejudice the FTC, which is still empowered to pursue monetary judgment against Wells Fargo regardless of Section 13(b)'s applicability. If the Court granted the intervention request, the FTC would no doubt be forced to relitigate issues that have already been adjudicated in this case. As such, the Court does not find that the timeliness element has been satisfied.

As to the second element, Wells Fargo maintains that it has a protectable interest "in not having to defend itself against litigation" initiated by the Receiver based "on an invalidated legal principle." (Dkt 153-1 at 16). However, Wells Fargo fails to demonstrate that it has a significant protectable interest in this case "[f]or the same reason that Wells Fargo's litigation exposure fails to establish an injury sufficient to confer standing." *Apex Cap. Grp., LLC*, 2022 WL 1060486, at *5. As discussed previously, the Receiver continues to properly assert claims for monetary damages against Wells Fargo, regardless of whether the Receiver can seek a monetary judgment under Section 13(b) of the FTC Act.

Finally, even if Wells Fargo could demonstrate that it has a protectable interest, it must also demonstrate that it would be unable to protect its interests if it isn't allowed to intervene here. Notably, nothing precludes Wells Fargo from raising the same arguments and defenses in the Wells Fargo Litigation as the ones it seeks to assert here through intervention. It remains unclear why the Court

would need to reopen a closed case, potentially undo stipulated orders and judgments, and vacate its previous order, just so Wells Fargo can belatedly argue here what it can more effectively argue in the case actually brought against it. As such, Wells Fargo hasn't met the third requirement, and the Court concludes that Wells Fargo isn't entitled to intervene as of right in this case.

### C.    Permissive Intervention

Wells Fargo argues in the alternative that it is entitled to permissive intervention under Rule 24(b). A district court has discretion to permit intervention when the movant presents "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Callahan*, 42 F.4th at 1022 (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011)). As part of its discretion, the Court may also consider "whether intervention will prolong or unduly delay the litigation" and "whether parties seeking intervention will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

The Court applies the same timeliness analysis as the one used in considering whether intervention as of right is warranted. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997) (citing *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir.1984)) ("In the context of permissive intervention, however, we analyze the timeliness element more strictly than we do with intervention as of right."). This case has long been closed, and even after the *AMG* decision was issued and the Wells Fargo Litigation commenced, Wells Fargo still waited at least four months to bring this motion. And given that Wells Fargo is already embroiled in that litigation, where it's free to raise the same arguments and defenses it seeks to raise here, the Court finds that permitting

1  intervention in this case is unnecessary and will result in yet further delay and
2  avoidable litigation.

3      Accordingly, the Court exercises its discretion and denies Wells Fargo's
4  request for permissive intervention under Rule 24(b).

5  **III.    CONCLUSION**

6      Wells Fargo's Motion to Intervene is **DENIED**. (Dkt. 153).

7      **IT IS SO ORDERED.**

8  Dated:  September 30, 2022

   _Larry A. Burns_

   _____
   **Hon. Larry Alan Burns**
   United States District Judge

10

18-cv-1388-LAB-WVG

APPEAL,CLOSED,STAYED,.,ENE

# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:18–cv–01388–LAB–WVG

Federal Trade Commission v. Triangle Media Corporation et al
Assigned to: Judge Larry Alan Burns
Referred to: Magistrate Judge William V. Gallo
Related Case: 3:21–cv–01245–LAB–DDL
Case in other court: USCA, 18–56161
                 USCA, 22–56012
Cause: 15:0053(b) Prelim & Perm Inj Relief & other Equitable
Relief

Date Filed: 06/25/2018
Date Terminated: 11/19/2019
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**Federal Trade Commission**      represented by    **Jonathan Wesley Ware**
Federal Trade Commission
600 Pennsylvania Avenue, NW
Suite Cc–9528
Washington, DC 20580
202–326–2726
Fax: 202–326–3197
Email: jware1@ftc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Hart Wernz**
Federal Trade Commission
230 South Dearborn Street
Suite 3030
Chicago, IL 60604
312–960–5596
Fax: 312–960–5600
Email: mwernz@ftc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rebecca Grace Church**
United States Attorney's Office
Southern District of California
880 Front Street
Room 6293
San Diego, CA 92101
(619) 546–7721
Email: rebecca.church@usdoj.gov
*TERMINATED: 11/17/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Gordon**
Federal Trade Commission
230 South Dearborn
Suite 3030
Chicago, IL 60604
312–960–5623
Email: sgordon@ftc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Triangle Media Corporation**
*A Delaware corporation*
*also known as*
Triangle CRM
*also known as*
Phenom Health
*also known as*
Beauty and Truth
*also known as*
E–Cigs

represented by **Frederick K Taylor**
Procopio Cory Hargreaves and Savitch
LLP
525 B Street
Suite 2200
San Diego, CA 92101–4469
(619)238–1900
Fax: (619)235–0398
Email: fred.taylor@procopio.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Brian Shields**
Procopio, Cory, Hargreaves & Savitch
LLP
525 B Street, Suite 2200
San Diego, CA 92101
619–238–1900
Fax: 619–235–0398
Email: matthew.shields@procopio.com
*(Inactive)*
*ATTORNEY TO BE NOTICED*

**Nicholas S. Kawuka**
Procopio, Cory, Hargreaves and Savitch,
LLP
525 B Street
Suite 2200
San Diego, CA 92101
(619) 238–1900
Fax: (619) 235–0398
Email: nka@procopio.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jasper Rain Marketing, LLC**
*a California limited liability company*
*also known as*
Phenom Health
*also known as*
Cranium Power

represented by **Frederick K Taylor**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Brian Shields**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S. Kawuka**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hardwire Interactive, Inc.**
*a British Virgin Islands corporation*
*also known as*
Phenom Health
*also known as*
Beauty and Truth
*also known as*
E–Cigs

represented by **Ari N. Rothman**
Venable LLP
2049 Century Park East
Suite 2300
Los Angeles, CA 90067
310–229–9900
Fax: 310–229–9901
Email: anrothman@venable.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerald Stuart Sachs**
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001

202–344–4598
Email: gssachs@venable.com *(Inactive)*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephen Ray Freeland**
Venable LLP
600 Massachusetts Avenue, NW
Washington, DC 20001
202–344–4000 x24837
Email: srfreeland@venable.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Witt W. Chang**
VENABLE LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310–229–9900
Fax: 310–229–9901
Email: WWChang@venable.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian Phillips**
*individually and as an officer of Triangle Media Corporation*

represented by **Frederick K Taylor**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Brian Shields**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Nicholas S. Kawuka**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Global Northern Trading Limited**
*a Canadian corporation*

represented by **Karl S. Kronenberger**
Kronenberger Rosenfeld, LLP
150 Post Street
Suite 520
San Francisco, CA 94108
(415)955–1155
Fax: (415)955–1158
Email: karl@kr.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Devin Keer**
*individually and as an officer of Triangle Media Corporation and Hardwire Interactive*

represented by **Ari N. Rothman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gerald Stuart Sachs**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**ER367**

**Receiver**

| | | |
|---|---|---|
| **Thomas W. McNamara** | represented by | **Andrew W Robertson** |

**Andrew W Robertson**
McNamara Smith LLP
655 West Broadway
Suite 900
San Diego, CA 92101
619–269–0400
Fax: 619–269–0401
Email: arobertson@mcnamarallp.com
*TERMINATED: 01/24/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cornelia J.B. Gordon**
McNamara Smith LLP
655 West Broadway
Suite 900
San Diego, CA 92101
(619) 269–0400
Fax: (619) 269–0401
Email: cgordon@mcnamarallp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Chang**
McNamara Smith, LLP
655 West Broadway
Suite 1600
San Diego, CA 92101
(619) 269–0400
Fax: (619) 269–0401
Email: echang@mcnamarallp.com
*TERMINATED: 10/21/2020*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Logan Daniel Smith**
McNamara Smith LLP
655 West Broadway
Suite 900
San Diego, CA 92101
619–269–0400
Fax: 619–269–0401
Email: lsmith@mcnamarallp.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor**

| | | |
|---|---|---|
| **Wells Fargo & Company**<br>*TERMINATED: 09/30/2022* | represented by | **Alicia A. Baiardo** |

**Alicia A. Baiardo**
McGuireWoods LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
415–844–9944
Email: abaiardo@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Anthony Q Le**
McGuireWoods LLP
1800 Century Park East

**ER368**

8th Floor
Los Angeles, CA 90067
310−315−8225
Email: ale@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David C. Powell**
McGuireWoods LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
415−844−1948
Fax: 415−844−1928
Email: dpowell@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kevin M Lally**
McGuireWoods LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
213−667−2268
Fax: 213−667−2579
Email: klally@mcguirewoods.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jenny Yi**
McGuireWoods LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
415−844−1943
Fax: 415−844−1937
Email: jyi@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Molly M. White**
McGuirewoods
1800 Century Park East
8th Floor
Los Angeles, CA 90067
310−315−8200
Fax: 310−315−8210
Email: mwhite@mcguirewoods.com
*ATTORNEY TO BE NOTICED*

**Intervenor**

| | | |
|---|---|---|
| **Wells Fargo Bank N.A.** | represented by | **Alicia A. Baiardo**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Anthony Q Le**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David C. Powell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ER369**

**Kevin M Lally**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jenny Yi**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Molly M. White**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/25/2018 | 1 | COMPLAINT against Hardwire Interactive, Inc., Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation, No Fee Required, filed by Federal Trade Commisson. (Attachments: # 1 Civil Cover Sheet)<br><br>The new case number is 3:18–cv–1388–MMA–NLS. Judge Michael M. Anello and Magistrate Judge Nita L. Stormes are assigned to the case. (Gordon, Samantha) (cc: MMA Chambers; Atty. Samantha Gordon) (jjg)(sjt). Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 2 | NOTICE of Appearance of *Attorney Samantha Gordon* by Samantha Gordon on behalf of Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 3 | NOTICE of Appearance of *Matthew Hart Wernz* by Matthew Hart Wernz on behalf of Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 4 | Plaintiff's Ex Parte Motion to Temporarily Seal the Case File and Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion to Temporarily Seal the Case File by Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 5 | Plaintiff's Ex Parte Motion for Temporary Restraining Order with an Asset Freeze, Appointment of a Receiver, and other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue by Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) (Additional attachment(s) added on 6/27/2018: # 1 Declarations is Support for Temp. Restraining Order Vol. 1 of 2 Exh. 1–9) (jjg). (Additional attachment(s) added on 6/27/2018: # 3 Declarations in Support for Temp. Restraining Order Vol. 2 of 2 Exh. 10.) (jjg). Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 6 | Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Motion for Temporary Restraining Order with an Asset Freeze, Appointment of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue by Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 7 | Ex Parte Motion for Leave to File Memorandum in Excess of 25 Pages in Support of Plaintiff's Ex Parte Motion for a Temporary Restraining Order by Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 8 | Certification and Declaration of Plaintiff's Counsel Pursuant to Federal Rule of Civil Procedure 65(b)and Civ. L.R. 83.3(g)(2) in Support of Plaintiff's Ex Parte Motion for Temporary Restraining Order and Ex Parte Motion to Temporarily Seal the Case File by Plaintiff Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/25/2018 | 9 | Plaintiff's Recommendation for Temporary Receiver by Federal Trade Commission. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). |

| | | |
|---|---|---|
| | | (Entered: 06/27/2018) |
| 06/26/2018 | 10 | ORDER Granting Plaintiff's Ex Parte Motion to Temporarily Seal the Case File [Doc. No. 4]. Signed by Judge Michael M. Anello on 6/26/2018. (cc: MMA Chambers; Atty. Samantha Gordon) (jjg) Modified on 6/28/2018 (tb–v). (Entered: 06/27/2018) |
| 06/29/2018 | 11 | ORDER Granting in Part and Denying in Part 5 Plaintiff's Ex Parte Motion for Temporary Restraining Order with Asset Freeze, Appointment of Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue. The Court grants Plaintiff's ex parte motion to for leave to file a memorandum in excess of 25 pages in support of Plaintiff's ex parte motion for a TRO. It is further ordered that, pursuant to Fed. R. Civ. P. 65(b), Defendants shall appear before this Court on 7/13/2018 at 2:30 p.m. in Courtroom 3D to show cause, if there is any, why this Court should not enter a preliminary injunction, pending final ruling on the Complaint against Defendants, enjoining the violations of the law alleged in the Complaint, continuing the freeze of their Assets, continuing the receivership, and imposing such additional relief as may be appropriate. Defendants shall file with the Court and serve on Plaintiffs counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda no later than 7/6/2018. Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than 7/11/2018. It is further ordered that the Receiver shall file with the Clerk of this Court a bond in the sum of $30,000.00 with sureties to be approved by the Court, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs. Signed by Judge Michael M. Anello on 6/29/2018. (Attachments: # 1 Attachments A–D) (cc: Atty. Samantha Gordon, Atty. Matthew Wernz) (rmc) Copy provided to AUSA R. Church per Chambers on 6/29/2018 (rmc). (Entered: 06/29/2018) |
| 06/29/2018 | 12 | NOTICE of Appearance by Rebecca Grace Church on behalf of Federal Trade Commission. Attorney Rebecca Grace Church added to party Federal Trade Commission (pty:pla) (cc: All Counsel) (jah) Modified on 7/2/2018 (tb–v). (Entered: 06/29/2018) |
| 07/03/2018 | 13 | NOTICE of Appearance by Edward Chang on behalf of Thomas W. McNamara (Chang, Edward)Attorney Edward Chang added to party Thomas W. McNamara(pty:rc) (rmc). (Entered: 07/03/2018) |
| 07/03/2018 | 14 | NOTICE of Appearance by Andrew W Robertson on behalf of Thomas W. McNamara (Robertson, Andrew)Attorney Andrew W Robertson added to party Thomas W. McNamara(pty:rc) (rmc). (Entered: 07/03/2018) |
| 07/06/2018 | 16 | SUMMONS Returned Executed by Federal Trade Commission. Triangle Media Corporation served. (Wernz, Matthew) (rmc). (Entered: 07/06/2018) |
| 07/06/2018 | 17 | SUMMONS Returned Executed by Federal Trade Commission. Jasper Rain Marketing, LLC served. (Wernz, Matthew) (rmc). (Entered: 07/06/2018) |
| 07/06/2018 | 18 | SUMMONS Returned Executed by Federal Trade Commission. Brian Phillips served. (Wernz, Matthew) (rmc). (Entered: 07/06/2018) |
| 07/06/2018 | 19 | Joint MOTION for Extension of Time to File *Responsive Pleadings and to Extend the TRO* by Federal Trade Commission. (Attachments: # 1 Exhibit A)(Gordon, Samantha) QC mail sent re not e–filing proposed orders (rmc). (Entered: 07/06/2018) |
| 07/08/2018 | 20 | NOTICE of Appearance *for Specially–Appearing Defendant Hardwire Interactive, Inc.* by Ari N. Rothman on behalf of Hardwire Interactive, Inc. (Rothman, Ari)Attorney Ari N. Rothman added to party Hardwire Interactive, Inc. (pty:dft) (rmc). (Entered: 07/08/2018) |
| 07/08/2018 | 21 | AFFIDAVIT *of Non–Compliance with Temporary Restraining Order by Defendant Hardwire Interactive Inc.* by Receiver Thomas W. McNamara. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Chang, Edward) (rmc). (Entered: 07/08/2018) |
| 07/09/2018 | 22 | ORDER Granting 19 Joint Motion to Extend Ex Parte Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue. The hearing on Plaintiffs' motion for a preliminary injunction is reset to 8/9/2018, at 2:30 p.m. in |

| | | |
|---|---|---|
| | | Courtroom 3D, United States District Court for the Southern District of California. Defendants shall file with the Court and serve on Plaintiff's counsel any answering pleadings, affidavits, motions, expert reports or declarations, or legal memoranda concerning the TRO no later than 7/20/2018. Plaintiff may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than 7/30/2018. Signed by Judge Michael M. Anello on 7/9/2018. (rmc) (Entered: 07/09/2018) |
| 07/09/2018 | <u>23</u> | NOTICE of Appearance by Frederick K Taylor on behalf of Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation (Taylor, Frederick)Attorney Frederick K Taylor added to party Jasper Rain Marketing, LLC(pty:dft), Attorney Frederick K Taylor added to party Brian Phillips(pty:dft), Attorney Frederick K Taylor added to party Triangle Media Corporation(pty:dft) (rmc). (Entered: 07/09/2018) |
| 07/09/2018 | <u>24</u> | NOTICE of Appearance by Nicholas S. Kawuka on behalf of Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation (Kawuka, Nicholas)Attorney Nicholas S. Kawuka added to party Jasper Rain Marketing, LLC(pty:dft), Attorney Nicholas S. Kawuka added to party Brian Phillips(pty:dft), Attorney Nicholas S. Kawuka added to party Triangle Media Corporation(pty:dft) (rmc). (Entered: 07/09/2018) |
| 07/09/2018 | <u>25</u> | NOTICE of Appearance by Matthew Brian Shields on behalf of Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation (Shields, Matthew)Attorney Matthew Brian Shields added to party Jasper Rain Marketing, LLC(pty:dft), Attorney Matthew Brian Shields added to party Brian Phillips(pty:dft), Attorney Matthew Brian Shields added to party Triangle Media Corporation(pty:dft) (rmc). (Entered: 07/09/2018) |
| 07/09/2018 | <u>26</u> | MOTION to Modify Temporary Restraining Order and For Other Equitable Relief re <u>11</u> Order on Motion for TRO, Order on Motion for Leave to File Excess Pages by Hardwire Interactive, Inc. (Attachments: # <u>1</u> Memo of Points and Authorities I/S/O Motion to Modify Temporary Restraining Order and For Other Equitable Relief, # <u>2</u> Declaration of Devin Keer I/S/O Motion to Modify TRO, # <u>3</u> Exhibit TOC and Exhibits A–E to Declaration Devin Keer I/S/O Motion to Modify TRO, # <u>4</u> Declaration of Witt W. Chang I/S/O Motion to Modify TRO, # <u>5</u> Exhibit TOC and Exhibits 1–2 to Declaration Witt W. Chang I/S/O Motion to Modify TRO)(Rothman, Ari) (rmc). (Entered: 07/09/2018) |
| 07/10/2018 | 27 | <u>Minute Order Vacating and Resetting Motion Hearing and Setting Response Deadline</u>: Defendant Hardwire Interactive, Inc. ("Hardwire") has filed a <u>26</u> motion seeking to modify the terms of the Court's June 29, 2018 <u>11</u> Temporary Restraining Order, currently set for hearing on June 13, 2018. After an initial review, the Court determines that it is appropriate to hear the motion on an expedited schedule, but finds good cause to vacate and reset the hearing date in order to provide Plaintiff Federal Trade Commission ("FTC") adequate time to respond to the motion, and the Court sufficient time to prepare for the hearing. Accordingly, FTC must file a response to Hardwire's motion on or before Monday, **July 16, 2018**. No reply brief will be accepted. The Court RESETS the motion hearing set for Thursday, **July 19, 2018 at 10:30 a.m.** in Courtroom 3D. SO ORDERED by Judge Michael M. Anello on 7/10/2018. (no document attached) (amk) (Entered: 07/10/2018) |
| 07/16/2018 | <u>28</u> | RESPONSE in Opposition re <u>26</u> MOTION to Modify Temporary Restraining Order and For Other Equitable Relief re <u>11</u> Order on Motion for TRO, Order on Motion for Leave to File Excess Pages, filed by Federal Trade Commission. (Attachments: # <u>1</u> Exhibit PX 11 – Supplemental Declaration of D. McKenney Pt. 1, # <u>2</u> Exhibit PX 11 – Supplemental Declaration of D. McKenney Pt. 2, # <u>3</u> Exhibit PX11 – Supplemental Declaration of D. McKenney Pt. 3)(Gordon, Samantha) (rmc). (Entered: 07/16/2018) |
| 07/16/2018 | 29 | <u>Minute Order Taking Motion Under Submission</u>: Defendant's <u>26</u> MOTION to Modify Temporary Restraining Order and For Other Equitable Relief re <u>11</u> Order on Motion for TRO is currently set for hearing on July 19, 2018. The Court finds this matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Accordingly, no appearances are required and the hearing shall be taken off calendar. SO ORDERED by Judge Michael M. Anello on July 16, 2018. (no document attached) (jb1) (Entered: 07/16/2018) |

| 07/16/2018 | 30 | STATUS REPORT by Thomas W. McNamara. (Attachments: # 1 Appendix, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25, # 27 Exhibit 26, # 28 Exhibit 27)(Chang, Edward) (rmc). (Entered: 07/16/2018) |
|---|---|---|
| 07/17/2018 | 31 | ORDER Denying 26 Defendant Hardwire Interactive Inc.'s Motion to Modify Temporary Restraining Order. Signed by Judge Michael M. Anello on 7/17/2018. (rmc) (Entered: 07/17/2018) |
| 07/20/2018 | 32 | DECLARATION *of Samantha Gordon regarding service on Hardwire Interactive* by Plaintiff Federal Trade Commission. (Gordon, Samantha) (rmc). (Entered: 07/20/2018) |
| 07/20/2018 | 33 | Ex Parte MOTION for Contempt *Against Hardwire Interactive Inc.* by Thomas W. McNamara. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Edward Chang, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13)(Chang, Edward) (rmc). (Entered: 07/20/2018) |
| 07/20/2018 | 34 | RESPONSE in Opposition re 5 MOTION for Temporary Restraining Order *and Entry of Preliminary Injunction with Asset Freeze* filed by Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation. (Attachments: # 1 Declaration of Brian Phillips)(Shields, Matthew) Courtesy QC mail sent re filer not matching signatures (rmc). (Entered: 07/20/2018) |
| 07/20/2018 | 35 | RESPONSE re 21 Affidavit *of Non−Compliance of Receiver* filed by Hardwire Interactive, Inc.. (Attachments: # 1 Declaration of Devin Keer, # 2 Exhibit TOC and Exhibit A to Keer Decl., # 3 Declaration of Ari Rothman, # 4 Exhibit TOC and Exhibit 1 to Rothman Decl.)(Rothman, Ari) (rmc). (Entered: 07/20/2018) |
| 07/20/2018 | 36 | RESPONSE in Opposition re 5 MOTION for Temporary Restraining Order *and Preliminary Injunction* filed by Hardwire Interactive, Inc.. (Attachments: # 1 Declaration of Devin Keer, # 2 Exhibit TOC and Exhibit A to Keer Decl.)(Rothman, Ari) (rmc). (Entered: 07/20/2018) |
| 07/23/2018 | 37 | RESPONSE in Opposition re 33 Ex Parte MOTION for Contempt *Against Hardwire Interactive Inc.* filed by Hardwire Interactive, Inc.. (Rothman, Ari) (rmc). (Entered: 07/23/2018) |
| 07/23/2018 | 38 | ORDER Setting Briefing Schedule. On 7/20/2018, the Receiver filed an 33 ex parte motion for contempt against Defendant Hardwire Interactive, Inc. Accordingly, the Court sets the following briefing schedule: Hardwire's opposition to the motion, if any, must be filed on or before 7/27/2018. The Receiver's reply, if any, must be filed on or before 8/1/2018. The Court sets the motion for hearing on 8/9/2018 at 2:30 p.m. Signed by Judge Michael M. Anello on 7/23/2018.(rmc) (Entered: 07/23/2018) |
| 07/23/2018 | 39 | NOTICE of Appearance *for Specially−Appearing Defendant Hardwire Interactive, Inc.* by Witt W. Chang on behalf of Hardwire Interactive, Inc. (Chang, Witt)Attorney Witt W. Chang added to party Hardwire Interactive, Inc. (pty:dft) (rmc). (Entered: 07/23/2018) |
| 07/23/2018 | 40 | MOTION for Extension of Time to File *Response to Complaint* by Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation. (Shields, Matthew) Modified to correct event on 7/24/2018 (rmc). (Entered: 07/23/2018) |
| 07/23/2018 | 41 | MOTION to Amend/Correct 34 Response in Opposition to Motion, *for Temporary Restraining Order and Entry of Preliminary Injunction with Asset Freeze (Doc. No. 34) and the Declaration of Brian Phillips (Doc. No. 34−1)* by Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation. (Attachments: # 1 Exhibit A (Amended Version of Doc. No. 34), # 2 Exhibit B (Redline of Amended Version of Doc. No. 34), # 3 Exhibit C (Amended Version of Doc. No. 34−1), # 4 Exhibit D (Redline of Amended Version of Doc. No. 34−1))(Taylor, Frederick) (rmc). (Entered: 07/23/2018) |

| 07/24/2018 | 42 | Minute Order Granting 41 Motion to Amend/Correct: Upon due consideration and good cause appearing, the Court **GRANTS** Defendants' motion to amend/correct. SO ORDERED by Judge Michael M. Anello on July 24, 2018. (no document attached) (jb1) (Entered: 07/24/2018) |
|---|---|---|
| 07/24/2018 | 43 | ORDER Granting 40 Defendants' Motion for Extension of Time to Respond to 1 Complaint. Upon due consideration and good cause appearing, the Court grants Defendants' motion. Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips must file their initial response to Plaintiff's Complaint on or before 7/30/2018. Signed by Judge Michael M. Anello on 7/24/2018. (rmc) (Entered: 07/24/2018) |
| 07/26/2018 | 44 | Minute Order Vacating and Resetting Motion Hearing Receiver's 33 Ex Parte Motion for Contempt Against Hardwire Interactive Inc. and Plaintiffs' 5 Motion for a Preliminary Injunction are currently set for hearing on 8/9/2018 at 2:30 p.m. The Court RESETS the Motion Hearing for 8/9/2018 at 3:30 PM in Courtroom 3D before Judge Michael M. Anello.(no document attached) (rmc) (Entered: 07/26/2018) |
| 07/27/2018 | 45 | RESPONSE in Opposition re 33 Ex Parte MOTION for Contempt *Against Hardwire Interactive Inc.* filed by Hardwire Interactive, Inc.. (Attachments: # 1 Exhibit TOC and Exhibit 1 to Opposition to Ex Parte Application for OSC re Contempt)(Rothman, Ari) (rmc). (Entered: 07/27/2018) |
| 07/30/2018 | 46 | REPLY to Response to Motion re 5 MOTION for Temporary Restraining Order *and Order to Show Cause Why A Preliminary Injunction Should Not Issue as to Triangle Media, Jasper Rain, and Brian Phillips* filed by Federal Trade Commission. (Gordon, Samantha) (rmc). (Entered: 07/30/2018) |
| 07/30/2018 | 47 | REPLY to Response to Motion re 5 MOTION for Temporary Restraining Order *and Order to Show Cause Why a Preliminary Injunction Should Not Issue as to Hardwire Interactive* filed by Federal Trade Commission. (Gordon, Samantha) (rmc). (Entered: 07/30/2018) |
| 07/30/2018 | 48 | ANSWER to 1 Complaint, by Triangle Media Corporation.(Taylor, Frederick) (rmc). (Entered: 07/30/2018) |
| 07/30/2018 | 49 | ANSWER to 1 Complaint, by Jasper Rain Marketing, LLC.(Taylor, Frederick) (rmc). (Entered: 07/30/2018) |
| 07/30/2018 | 50 | ANSWER to 1 Complaint, by Brian Phillips.(Taylor, Frederick) (rmc). (Entered: 07/30/2018) |
| 07/31/2018 | 51 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974–11509594.) (Application to be reviewed by Clerk.) (Sachs, Gerald) (dsn) (Entered: 07/31/2018) |
| 08/01/2018 | 52 | ORDER Requiring Response from Temporary Receiver. The Court orders the Receiver to file a declaration specifically identifying which, if any, of the six businesses listed by the Triangle Defendants are individual components that could be lawful and profitable businesses except as to Hardwire and other clients deploying the negative option feature, and otherwise respond to the 41 Triangle Defendants' contention. The Receiver must file this declaration on or before 8/6/2018. Signed by Judge Michael M. Anello on 8/1/2018.(rmc) (Entered: 08/01/2018) |
| 08/01/2018 | 53 | REPLY to Response to Motion re 33 Ex Parte MOTION for Contempt *Against Hardwire Interactive Inc.* filed by Thomas W. McNamara. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7)(Chang, Edward) (rmc). (Entered: 08/01/2018) |
| 08/02/2018 | 54 | Request to Appear Pro Hac Vice ( Filing fee received: $ 206 receipt number 0974–11516920.) (Application to be reviewed by Clerk.) (Freeland, Stephen) (dsn) (Entered: 08/02/2018) |
| 08/02/2018 | 55 | MOTION for Extension of Time to File Answer re 1 Complaint, by Hardwire Interactive, Inc.. (Rothman, Ari) (rmc). (Entered: 08/02/2018) |
| 08/03/2018 | 56 | ORDER Granting 55 Extension of Time to Respond to 1 Plaintiff's Complaint. Defendant Hardwire Interactive Inc. must file its response to Plaintiff's Complaint on or before 8/20/2018. Signed by Judge Michael M. Anello on 8/3/2018. (rmc) (Entered: |

| | | 08/03/2018) |
|---|---|---|
| 08/03/2018 | 57 | NOTICE AND ORDER Setting Telephonic Early Neutral Evaluation Conference with Counsel Only. An Early Neutral Evaluation with counsel only will be held telephonically on 9/5/2018 at 2:30 p.m. Counsel for plaintiffs is responsible for initiating the telephonic ENE. Signed by Magistrate Judge Nita L. Stormes on 8/3/2018.(rmc) (Entered: 08/03/2018) |
| 08/06/2018 | 58 | ORDER Approving the Pro Hac Vice Application of Gerald S. Sachs, re 51 Request to Appear Pro Hac Vice. Signed by Judge Michael M. Anello on 8/2/2018. (mdc) (Entered: 08/06/2018) |
| 08/06/2018 | 59 | DECLARATION re 52 Order,, *regarding Lawful/Profitable Issue* by Receiver Thomas W. McNamara. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5)(Chang, Edward) (rmc). (Entered: 08/06/2018) |
| 08/07/2018 | 60 | ORDER Approving the Pro Hac Vice Application of Stephen R. Freeland, re 54 Request to Appear Pro Hac Vice. Signed by Judge Michael M. Anello on 8/3/2018. (mdc) (Entered: 08/07/2018) |
| 08/07/2018 | 61 | STATUS REPORT *regarding Motion for Contempt* by Federal Trade Commission. (Attachments: # 1 Exhibit Declaration of S. Gordon)(Gordon, Samantha) (rmc). (Entered: 08/07/2018) |
| 08/07/2018 | 62 | DECLARATION re 61 Status Report *and Exhibit A* by Plaintiff Federal Trade Commission. (Attachments: # 1 Exhibit A)(Gordon, Samantha) (rmc). (Entered: 08/07/2018) |
| 08/08/2018 | 63 | OBJECTION by Hardwire Interactive, Inc. *Defendant Hardwire Interactive, Inc.'s Objection to FTC's Proposed Preliminary Injunction Emailed to the Court on August 2, 2018.* (Attachments: # 1 Ex TOC and Exhibits 1 & 2)(Rothman, Ari) (rmc). (Entered: 08/08/2018) |
| 08/08/2018 | 64 | Notice and Order Providing Tentative Rulings re: Orders to Show Cause. As these rulings are tentative, the Court looks forward to the oral arguments of counsel at the hearing. The Court advises the parties that no additional filings will be accepted on this matter prior to the currently scheduled hearing set for 8/9/2018 at 3:30 p.m. Signed by Judge Michael M. Anello on 8/8/2018.(rmc) (Entered: 08/08/2018) |
| 08/09/2018 | 65 | Minute Entry for proceedings held before Judge Michael M. Anello:Motion Hearing held on 8/9/2018. Court affirmed its tentative ruling and denies 33 Ex Parte Motion for Contempt. Court takes preliminary injunction matter under submission and will issue an order in due course. (Court Reporter/ECR Frank Rangus). (Plaintiff Attorneys Samantha Gordon and Matthew Wernz).(Defense Attorneys Stephen Freeland, Ari Rothman and Frederick Taylor).(Attorney Michael Breslauer and Thomas McNamara). (no document attached) (pdc) (Entered: 08/10/2018) |
| 08/10/2018 | 66 | Order Following Show Cause Hearing. The Court orders the Federal Trade Commission ("FTC"), counsel for the Triangle Defendants, and counsel for Nicole Phillips to meet and confer regarding reasonable attorneys' fees and living expenses on or before 8/17/2018. It is further ordered that the FTC lodge with the Court, on or before 8/22/2018, a proposed preliminary injunction containing the following modifications: (1) a method for Defendants to request a release of frozen funds for attorneys' fees and living expenses from the Receiver; and (2) eliminating provisions from the expedited discovery section pertaining to depositions of parties and non–parties, interrogatories, and subpoenas upon non–parties. Any future discovery requests, including motions for expedited discovery, will be heard by Magistrate Judge Nita L. Stormes. Signed by Judge Michael M. Anello on 8/10/2018.(rmc) (Entered: 08/10/2018) |
| 08/13/2018 | 67 | DEMAND for Trial by Jury by Brian Phillips. (Kawuka, Nicholas) (rmc). Modified on 8/21/2018 – Withdrawal of Jury Demand granted 8/21/2018 (rmc). (Entered: 08/13/2018) |
| 08/13/2018 | 68 | DEMAND for Trial by Jury by Triangle Media Corporation. (Kawuka, Nicholas) Courtesy QC mail sent re filer not matching signature (rmc). Modified on 8/21/2018 – Withdrawal of Jury Demand granted 8/21/2018 (rmc). (Entered: 08/13/2018) |

| | | |
|---|---|---|
| 08/13/2018 | 69 | DEMAND for Trial by Jury by Jasper Rain Marketing, LLC. (Kawuka, Nicholas) Courtesy QC mail sent re filer not matching signatures (rmc). Modified on 8/21/2018 – Withdrawal of Jury Demand granted 8/21/2018 (rmc). (Entered: 08/13/2018) |
| 08/20/2018 | 70 | Joint MOTION to Withdraw 67 Jury Demand, 69 Jury Demand, 68 Jury Demand by Federal Trade Commission. (Gordon, Samantha) (rmc). (Entered: 08/20/2018) |
| 08/20/2018 | 71 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Motion Hearing) held on 8/9/2018, before Judge Michael M. Anello. Court Reporter/Transcriber: Frank J. Rangus. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E–File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 9/10/2018. Redacted Transcript Deadline set for 9/20/2018. Release of Transcript Restriction set for 11/19/2018. (akr) (Entered: 08/20/2018) |
| 08/20/2018 | 72 | ANSWER to 1 Complaint, by Hardwire Interactive, Inc..(Rothman, Ari) (rmc). (Entered: 08/20/2018) |
| 08/21/2018 | 73 | ORDER Granting 70 Joint Motion to Withdraw Jury Demands. The Court grants the parties' joint motion [Doc. No. 70] and withdraws the Triangle Defendants' jury demands [Doc. Nos. 67, 68, 69]. Signed by Judge Michael M. Anello on 8/21/2018. (rmc) (Entered: 08/21/2018) |
| 08/24/2018 | 74 | Memorandum Order re: Preliminary Injunction. The Court finds a preliminary injunction and continued asset freeze appropriate. The Court also finds it appropriate to appoint the temporary receiver as the permanent receiver in this action. Accordingly, the Court grants in part the FTC's request for a preliminary injunction, which is issued this date in a separate document entitled "Preliminary Injunction." Signed by Judge Michael M. Anello on 8/24/2018. (rmc) (Entered: 08/24/2018) |
| 08/24/2018 | 75 | PRELIMINARY INJUNCTION. Signed by Judge Michael M. Anello on 8/24/2018.(rmc) (Entered: 08/24/2018) |
| 08/27/2018 | 76 | NOTICE OF APPEAL to the 9th Circuit as to 75 Preliminary Injunction, 74 Memorandum Order re: Preliminary Injunction, by Hardwire Interactive, Inc. (Filing fee $ 505 receipt number 0974–11602811.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Rothman, Ari). (Modified on 8/27/2018: Edited docket text re linked Order.) (akr). (Entered: 08/27/2018) |
| 08/28/2018 | 77 | USCA Case Number 18–56161 for 76 Notice of Appeal to 9th Circuit, filed by Hardwire Interactive, Inc. (akr) (Entered: 08/28/2018) |
| 08/28/2018 | 78 | MOTION for Order *Granting Receiver's First Interim Fee Application* by Thomas W. McNamara. (Attachments: # 1 Declaration of Thomas W. McNamara, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E)(Chang, Edward) (rmc). (Entered: 08/28/2018) |
| 09/05/2018 | 79 | Minute Entry for proceedings held before Magistrate Judge Nita L. Stormes: Early Neutral Evaluation Conference held on 9/5/2018. The case did not settle. Rule 26 Order to issue. (Plaintiff Attorney Samantha Gordon, Matthew Wernz). (Defendant Attorney Ari Rothman, Gerald Sachs [Hardwire], Fred Taylor [Triangle]). (no document attached) (bm1) (Entered: 09/05/2018) |
| 09/05/2018 | 80 | Order (1) Following Early Neutral Evaluation Conference; (2) Setting Rule 26 Compliance; and (3) Notice of Telephonic Case Management Conference. Counsel must appear telephonically on 10/12/2018 at 10:30 a.m. before Magistrate Judge Stormes for a Case Management Conference pursuant to Federal Rule of Civil Procedure 16(b). Plaintiff's counsel must arrange the telephonic conference. The parties must lodge a Joint Discovery Plan with Judge Stormes by 9/24/2018. Signed by Magistrate Judge Nita L. Stormes on 9/5/2018.(rmc) (Entered: 09/05/2018) |
| 09/07/2018 | 81 | TRANSCRIPT DESIGNATION AND ORDERING FORM by Hardwire Interactive, Inc., for proceedings held on 08/09/2018 re 76 Notice of Appeal to 9th Circuit. (Rothman, Ari). (akr). (Entered: 09/07/2018) |

| 09/20/2018 | 82 | NOTICE of Party With Financial Interest by Hardwire Interactive, Inc. . Identifying Corporate Parent Mantra Media Capital, Inc., Other Affiliate Devin Keer for Hardwire Interactive.. (Rothman, Ari) (rmc). (jao). (Entered: 09/20/2018) |
|---|---|---|
| 09/24/2018 | 83 | NOTICE of Party With Financial Interest by Triangle Media Corporation . Identifying Other Affiliate Brian Phillips for Triangle Media Corporation. (Taylor, Frederick) (rmc). (jao). (Entered: 09/24/2018) |
| 09/24/2018 | 84 | NOTICE of Party With Financial Interest by Jasper Rain Marketing, LLC . Identifying Other Affiliate Sierra Owen for Jasper Rain Marketing, LLC. (Taylor, Frederick) (rmc). (jao). (Entered: 09/24/2018) |
| 09/25/2018 | 85 | ORDER Granting 78 Receiver's First Interim Fee Application. Having reviewed the unopposed applications and exhibits submitted in support, and good cause appearing, the Court approves the Receiver's application for the following payment of fees and expenses for the period of June 23, 2018 through July 31, 2018: 1. $79,475.00 fees and $2,434.39 expenses of the Receiver and staff to be paid to Thomas W. McNamara dba Regulatory Resolutions; 2. $50,960.00 fees and $3,340.89 expenses of the Receiver's counsel, McNamara Smith LLP; 3. $11,841.36 fees of the Receiver's computer forensic expert, Setec Investigations; 4. $3,900.00 fees of the Receiver's IT consultant, The Computer Admin; and 5. $8,167.50 fees of the Receiver's forensic accountant, Alliance Turnaround Management, Inc. It is ordered that the Receiver is authorized to pay such sums out of assets of the Receivership Entities. Signed by Judge Michael M. Anello on 9/25/2018. (rmc) (Entered: 09/25/2018) |
| 10/16/2018 | 86 | SCHEDULING ORDER Regulating Discovery and Other Pre–Trial Proceedings. A Mandatory Settlement Conference will be conducted on 10/16/2019 at 2:30 p.m. in the chambers of Magistrate Judge Nita L. Stormes. Signed by Magistrate Judge Nita L. Stormes on 10/16/2018.(rmc) (Entered: 10/16/2018) |
| 10/19/2018 | 87 | MOTION to Amend/Correct 1 Complaint, by Federal Trade Commission. (Gordon, Samantha) Courtesy QC mail sent re attachments not filed as attachments per rule, filer not instructed to re–file (rmc). (Entered: 10/19/2018) |
| 10/22/2018 | 88 | MINUTE ORDER OF RECUSAL. Judge Michael M. Anello is no longer assigned. Case randomly reassigned to Judge Thomas J. Whelan for all further proceedings. Pending hearings previously set before the original Judge have been transferred to the newly assigned Judge. The new case number is 18cv1388 W (NLS).(no document attached) (jcj) (Entered: 10/22/2018) |
| 10/23/2018 | 89 | ORDER Vacating Hearing on Motion for Leave to File Amended Complaint, Doc 87 . Signed by Judge Thomas J. Whelan on 10/23/2018.(jao) (Entered: 10/23/2018) |
| 10/29/2018 | 90 | MINUTE ORDER OF RECUSAL. Judge Thomas J. Whelan is no longer assigned. Case reassigned to Judge Larry Alan Burns for all further proceedings. Pending hearings previously set before the original Judge have been transferred to the newly assigned Judge. The new case number is 18cv01388–LAB–NLS.(no document attached) (mme) (dsn) (Entered: 10/29/2018) |
| 11/06/2018 | 91 | TRANSFER ORDER. Magistrate Judge Nita L. Stormes is no longer assigned. Case reassigned to Magistrate Judge Linda Lopez for all further proceedings. Pending hearings previously set before the original Judge have been transferred to the newly assigned Judge. The new case number is 18cv1388–LAB–LL. Signed by Magistrate Judge Nita L. Stormes on 11/6/2018.(jdt) (Entered: 11/06/2018) |
| 11/09/2018 | 92 | STATUS REPORT by Thomas W. McNamara. (Attachments: # 1 Exhibit A)(Chang, Edward) (jdt). (Entered: 11/09/2018) |
| 11/16/2018 | 93 | MOTION for Order *Granting Receiver's Second Interim Fee Application* by Thomas W. McNamara. (Attachments: # 1 Declaration of Thomas W. McNamara, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Chang, Edward) (acc). (Entered: 11/16/2018) |
| 11/16/2018 | 94 | ORDER Resetting Briefing Schedule re 93 MOTION for Order *Granting Receiver's Second Interim Fee Application* : Any party opposing that application shall file an opposition by 11/30/2018. McNamara's reply, if any, is due 12/7/2018. The 1/7/2019 hearing date is VACATED. Signed by Judge Larry Alan Burns on 11/16/2018.(acc) (Entered: 11/19/2018) |

| 11/19/2018 | 95 | RESPONSE in Opposition re 87 MOTION to Amend/Correct 1 Complaint, filed by Hardwire Interactive, Inc. (Attachments: # 1 Declaration of Witt W. Chang ISO Opp to Motion for Leave to File Amended Complaint, # 2 Exhibit TOC and Exhibits A–B to Decl Chang ISO Opp to Motion for Leave to File Amended Complaint)(Rothman, Ari) (acc). (Entered: 11/19/2018) |
|---|---|---|
| 11/21/2018 | 96 | Joint MOTION for Extension of Time to File Response/Reply as to 95 Response in Opposition to Motion, 87 MOTION to Amend/Correct 1 Complaint, by Federal Trade Commission. (Gordon, Samantha) (acc). (Entered: 11/21/2018) |
| 11/21/2018 | 97 | ORDER Granting 96 Extension of Time to Reply re 87 MOTION to Amend/Correct 1 Complaint. FTC shall file its reply by 11/30/2018. Signed by Judge Larry Alan Burns on 11/21/2018. (acc) (Entered: 11/21/2018) |
| 11/30/2018 | 98 | REPLY to Response to Motion re 87 MOTION to Amend/Correct 1 Complaint, filed by Federal Trade Commission. (Gordon, Samantha) (jdt). (Entered: 11/30/2018) |
| 12/03/2018 | 99 | ORDER Granting Plaintiff's Motion for Leave to File an Amended Complaint (Dkt. 87 ). Signed by Judge Larry Alan Burns on 12/3/2018. (jdt) (Entered: 12/03/2018) |
| 12/03/2018 | 100 | ORDER Granting Receiver's Unopposed Second Interim Fee Application (Dkt. 93 ). the Court approves the Receiver's application for the following payment of fees and expenses for the period of 8/1/2018 through 10/31/2018: 1. $56,212.00 fees of the Receiver and staff to be paid to Thomas W. McNamara dba Regulatory Resolutions; 2. $35,070.00 fees and $1,383.94 expenses of the Receiver's counsel, McNamara Smith LLP; 3. 2,220.50 (British pounds) fees of the Receiver's United Kingdom counsel, NME Law Limited; and 4. $562.50 fees of the Receiver's IT consultant, The Computer Admin. The Receiver is authorized to pay such sums out of assets of the Receivership Entities. Signed by Judge Larry Alan Burns on 12/3/2018. (jdt) Modified on 12/3/2018 to note British pounds as to fee/expense No. 3 (jdt). (Entered: 12/03/2018) |
| 12/11/2018 | 101 | FIRST AMENDED COMPLAINT against All Defendants, filed by Federal Trade Commission. New Summons Requested. (Gordon, Samantha) Modified on 12/12/2018 to note "First" amending (jdt). (Entered: 12/11/2018) |
| 12/12/2018 | 102 | Summons Issued as to First Amended Complaint. **Counsel receiving this notice electronically should print this summons and serve it in accordance with Rule 4, Fed.R.Civ.P and LR 4.1.** (jdt) (Entered: 12/12/2018) |
| 12/17/2018 | 103 | ANSWER to 101 Amended Complaint by Hardwire Interactive, Inc..(Rothman, Ari) (jdt). (Entered: 12/17/2018) |
| 12/26/2018 | 104 | ANSWER to 101 Amended Complaint by Triangle Media Corporation.(Taylor, Frederick) (jdt). (Entered: 12/26/2018) |
| 12/26/2018 | 105 | ANSWER to 101 Amended Complaint by Jasper Rain Marketing, LLC.(Taylor, Frederick) (jdt). (Entered: 12/26/2018) |
| 12/26/2018 | 106 | ANSWER to 101 Amended Complaint by Brian Phillips.(Taylor, Frederick) (jdt). (Entered: 12/26/2018) |
| 01/14/2019 | 107 | ORDER Resetting Mandatory Settlement Conference. The Mandatory Settlement Conference currently scheduled for 10/16/2019 at 2:30 p.m. is reset to 10/16/2019 at 9:30 a.m. in the chambers of Magistrate Judge Linda Lopez. Signed by Magistrate Judge Linda Lopez on 1/14/2019.(jdt) (Entered: 01/14/2019) |
| 02/22/2019 | 108 | MOTION for Order *Approving and Confirming Sale of Real Property* by Thomas W. McNamara. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Edward Chang, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H)(Chang, Edward) (jdt). (Entered: 02/22/2019) |
| 02/28/2019 | 109 | ORDER of USCA as to 76 Notice of Appeal to 9th Circuit filed by Hardwire Interactive, Inc. The time allotted for oral arguments is reduced to ten minutes for each side. (akr) (Entered: 02/28/2019) |
| 03/14/2019 | 110 | ORDER Granting Receiver's Unopposed Motion for Order Approving and Confirming Sale of Real Property (Dkt. 108 ). The Court finds this matter suitable for disposition without oral argument and vacates the 3/25/2019 hearing. The sale of 1350 Columbia |

|  |  | Street, Unit 302, San Diego, California from Receivership Entity Flat6 Development, LLC to Jacko Properties, LLC is approved and confirmed without further notice, hearing, order, or overbidding. Signed by Judge Larry Alan Burns on 3/14/2019. (jdt) (Entered: 03/14/2019) |
|---|---|---|
| 04/01/2019 | 111 | Joint MOTION to Stay *Proceedings and All Case Deadlines as to Defendants Hardwire Interactive, Global Northern Trading, and Devin Keer* by Federal Trade Commission. (Gordon, Samantha). Modified on 4/2/2019 – Sent QC mail to have counsel for Global Northern Trading file Notice of Appearance. (jdt). (Entered: 04/01/2019) |
| 04/04/2019 | 112 | Joint MOTION to Stay *Proceedings and All Case Deadlines as to Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips* by Federal Trade Commission. (Gordon, Samantha) (jdt). (Entered: 04/04/2019) |
| 04/08/2019 | 113 | ORDER Granting Joint Motions to Stay the Case (Dkts. 111 , 112 ). This stay will expire in 45 days from entry of this order unless the parties show cause why it should be extended further. Signed by Chief Judge Larry Alan Burns on 4/5/2019. (jdt) (Entered: 04/08/2019) |
| 04/22/2019 | 114 | NOTICE of Appearance by Karl S. Kronenberger on behalf of Global Northern Trading Limited (Kronenberger, Karl)Attorney Karl S. Kronenberger added to party Global Northern Trading Limited(pty:dft) (jdt). (Entered: 04/22/2019) |
| 04/26/2019 | 115 | MOTION for Order *Directing Turnover of Receivership Assets* by Thomas W. McNamara. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Edward Chang, # 3 Exhibit (s) A–G)(Chang, Edward) (jdt). (Entered: 04/26/2019) |
| 05/09/2019 | 116 | Notice of Document Discrepancies and Order Thereon by Chief Judge Larry Alan Burns Accepting Document: Opposition to Receiver's Notice of Motion and Motion For Order Directing Turnover of Receivership Assets, from Interested Party Nicole D. Phillips. Non–compliance with local rule(s), OTHER: Civ L.Rule 5.1.h Filer not a party to the case. Nunc Pro Tunc 5/9/2019. Signed by the Chambers of Chief Judge Larry Alan Burns on 5/9/2019. (Nicole D. Phillips added as Interested Party.) (All non–registered users served via U.S. Mail Service)(jdt) Modified on 5/10/2019 to correct judge's signature by chambers. (jdt). (Entered: 05/10/2019) |
| 05/09/2019 | 117 | RESPONSE in Opposition re 115 MOTION for Order *Directing Turnover of Receivership Assets* filed by Nicole D. Phillips. (Attachments: # 1 Memo of Points and Authorities, # 2 Declaration of Nicole D. Phillips, # 3 Proof of Service)(jdt) (Entered: 05/10/2019) |
| 05/10/2019 | 118 | NON Opposition re 115 MOTION for Order *Directing Turnover of Receivership Assets* filed by Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation. (Taylor, Frederick) (jdt). (Entered: 05/10/2019) |
| 05/13/2019 | 119 | MANDATE of USCA affirming the decision of the USDC as to 76 Notice of Appeal to the 9th Circuit filed by Hardwire Interactive, Inc. (akr) (Entered: 05/13/2019) |
| 05/14/2019 | 120 | NON Opposition re 115 MOTION for Order *Directing Turnover of Receivership Assets* filed by Federal Trade Commission. (Gordon, Samantha) (jdt). (Entered: 05/14/2019) |
| 05/20/2019 | 121 | Joint MOTION for Order *Entering Stipulated Orders for Permanent Injunction and Monetary Judgment* by Federal Trade Commission. (Gordon, Samantha) (jdt). Modified on 5/30/2019 to change to Joint Motion for Permanent Injunction (jdt). (Entered: 05/20/2019) |
| 05/21/2019 | 122 | REPLY to Response to Motion re 115 MOTION for Order *Directing Turnover of Receivership Assets* filed by Thomas W. McNamara. (Chang, Edward) (jdt). (Entered: 05/21/2019) |
| 05/22/2019 | 123 | ORDER Setting Oral Argument; Order Requiring Response as to Stipulated Judgment. The hearing on Receiver Thomas W. McNamara's Motion for Order Directing Turnover of Receivership Assets will go forward on Tuesday, 5/28/2019 11:30 a.m. (Dkt. 115 ). The clerk is directed to serve a copy of this order on Ms. Phillips at the email address listed in her Opposition. (Dkt. 117 ). The parties to the recently filed Joint Motion for Order Entering Stipulated Orders for Permanent Injunction and |

| | | |
|---|---|---|
| | | Monetary Judgment, (Dkt. 121 ), shall inform the Court by Tuesday, 5/28/2019 whether they will consent to the assigned Magistrate Judge, rather than District Judge, retaining jurisdiction to resolve issues of construction, modification, and enforcement. Signed by Chief Judge Larry Alan Burns on 5/22/2019. (All non−registered users served via U.S. Mail Service. Interested Party Nicole D. Phillips served via email at address listed in Dkt. 117 .) (jdt) (Entered: 05/22/2019) |
| 05/28/2019 | 124 | Minute Entry for proceedings held before Chief Judge Larry Alan Burns: Motion Hearing held on 5/28/2019. Court to issue order.(Court Reporter/ECR Cynthia Ott). (Plaintiff Attorney Samantha Gordon (telephonic); (Receiver Attorney Tom McNamara. (Defendant Attorney Nicholas Kawuka. (Other − Nicole Phillps).(no document attached) (tlw) (Entered: 05/28/2019) |
| 05/29/2019 | 125 | ORDER granting in part Motion for Order Directing Turnover of Receivership Assets re 115 . It is further ordered that the Receiver shall, within 14 days of receiving the Funds, transfer $75,000 to Nicole Phillips. Signed by Chief Judge Larry Alan Burns on 5/28/2019.(jao)(All non−registered users served via U.S. Mail Service) (Entered: 05/29/2019) |
| 05/30/2019 | 126 | (Modified) Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips. Signed by Chief Judge Larry Alan Burns on 5/29/2019. (jdt) (Entered: 05/30/2019) |
| 05/30/2019 | 127 | (Modified) Stipulated Order for Permanent Injunction and Monetary Judgment as to Defendants Hardwire Interactive Inc., Northern Trading Limited, and Devin Keer. Signed by Chief Judge Larry Alan Burns on 5/29/2019. Signed by Chief Judge Larry Alan Burns on 5/29/2019.(jdt) (Entered: 05/30/2019) |
| 05/30/2019 | 128 | Notice, Consent and Reference of a Civil Action to a Magistrate Judge by Federal Trade Commission, Global Northern Trading Limited, Hardwire Interactive, Inc., Jasper Rain Marketing, LLC, Devin Keer, Brian Phillips, Triangle Media Corporation. This case is referred to United States Magistrate Judge Linda Lopez for purposes of construction, modification, and enforcement of the Stipulated Orders for Permanent Injunction and Monetary Judgment as to Triangle Media Corporation, Jasper Rain Marketing LLC, Brian Phillips, Hardwire Interactive Inc., Global Northern Trading Ltd., and Devin Keer. Signed by Chief Judge Larry Alan Burns on 5/29/2019.(jdt) (Entered: 05/30/2019) |
| 08/27/2019 | 129 | MOTION for Order *to Extend Completion Deadline* by Thomas W. McNamara. (Attachments: # 1 Memo of Points and Authorities)(Chang, Edward) (jdt). (Entered: 08/27/2019) |
| 08/28/2019 | 130 | RESPONSE in Opposition re 129 MOTION for Order *to Extend Completion Deadline* filed by Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation. (Taylor, Frederick) (jdt). (Entered: 08/28/2019) |
| 08/29/2019 | 131 | ORDER Setting Briefing Schedule (Dkt. 129 ). Any other oppositions must be filed no later than 9/6/2019. No replies are to be filed. The Court will rule on the papers, so the hearing currently scheduled for 10/7/2019 is vacated. Signed by Chief Judge Larry Alan Burns on 8/29/2019. (All non−registered users served via U.S. Mail Service) (jdt) (Entered: 08/29/2019) |
| 09/06/2019 | 132 | RESPONSE in Opposition re 129 MOTION for Order *to Extend Completion Deadline* filed by Hardwire Interactive, Inc., Devin Keer. (Attachments: # 1 Declaration of Stephen R. Freeland, # 2 Exhibit 1)(Rothman, Ari) (jdt). (Entered: 09/06/2019) |
| 09/06/2019 | 133 | RESPONSE to Motion re 129 MOTION for Order *to Extend Completion Deadline Non−opposition* filed by Federal Trade Commission. (Gordon, Samantha) (jdt). (Entered: 09/06/2019) |
| 09/09/2019 | 134 | ORDER Granting in Part Receiver's Motion to Extend Completion Deadline (Dkt. 129 ). Signed by Chief Judge Larry Alan Burns on 9/9/2019. (All non−registered users served via U.S. Mail Service) (jdt) (Entered: 09/09/2019) |
| 10/10/2019 | 135 | MINUTE ORDER. In light of the procedural posture of this case, the Court VACATES the Mandatory Settlement Conference currently set for 10/16/2019 at 9:30 a.m. Signed by Magistrate Judge Linda Lopez on 10/10/2019. (no document attached) |

| | | (bbc) (Entered: 10/10/2019) |
|---|---|---|
| 10/22/2019 | 136 | MOTION *for Authorization to Engage Contingency Fee Counsel and Extend Receivership* by Thomas W. McNamara. (Attachments: # 1 Memo of Points and Authorities, # 2 Exhibit A)(Chang, Edward). Added MOTION *to Extend Receivership*, MOTION *to Administratively Close the Case* on 10/22/2019 (jdt). (Entered: 10/22/2019) |
| 11/08/2019 | 137 | NON Opposition re 136 MOTION *for Authorization to Engage Contingency Fee Counsel and Extend Receivership* MOTION *to Extend Receivership* MOTION *to Administratively Close the Case* filed by Federal Trade Commission. (Gordon, Samantha) (jdt). (Entered: 11/08/2019) |
| 11/08/2019 | 138 | RESPONSE in Opposition re 136 MOTION *for Authorization to Engage Contingency Fee Counsel and Extend Receivership* MOTION *to Extend Receivership* MOTION *to Administratively Close the Case* filed by Hardwire Interactive, Inc., Devin Keer. (Rothman, Ari) (jdt). (Entered: 11/08/2019) |
| 11/08/2019 | 139 | RESPONSE to Motion re 136 MOTION *for Authorization to Engage Contingency Fee Counsel and Extend Receivership* MOTION *to Extend Receivership* MOTION *to Administratively Close the Case* filed by Jasper Rain Marketing, LLC, Brian Phillips, Triangle Media Corporation. (Taylor, Frederick) (jdt). (Entered: 11/08/2019) |
| 11/08/2019 | 140 | RESPONSE in Opposition re 136 MOTION *for Authorization to Engage Contingency Fee Counsel and Extend Receivership* MOTION *to Extend Receivership* MOTION *to Administratively Close the Case* filed by Global Northern Trading Limited. (Kronenberger, Karl) Modified on 11/12/2019 – QC email: Missing hearing date and time. No refile (jdt). (Entered: 11/08/2019) |
| 11/15/2019 | 141 | REPLY to Response to Motion re 136 MOTION *for Authorization to Engage Contingency Fee Counsel and Extend Receivership* MOTION *to Extend Receivership* MOTION *to Administratively Close the Case* filed by Thomas W. McNamara. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Chang, Edward) (jdt). (Entered: 11/15/2019) |
| 11/19/2019 | 142 | ORDER granting 136 Receiver's Motion for Authorization to Engage Contingency Fee Counsel and Extend Receivership. The Court shall continue to retain jurisdiction over the Receivership. The hearing currently scheduled for November 25, 2019 at 11:30 a.m. is VACATED.Signed by Chief Judge Larry Alan Burns on 11/18/2019. (All non–registered users served via U.S. Mail Service)(mme) (Entered: 11/19/2019) |
| 03/09/2020 | 144 | NOTICE of Change of Address by Andrew W Robertson (Robertson, Andrew) (jdt). (Entered: 03/09/2020) |
| 03/09/2020 | 145 | NOTICE of Change of Address by Edward Chang (Chang, Edward) (jdt). (Entered: 03/09/2020) |
| 10/09/2020 | 146 | MOTION for Attorney Fees *and Expenses of the Receiver and His Professionals* by Thomas W. McNamara. (Attachments: # 1 Declaration of Thomas W. McNamara, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D)(Chang, Edward) (jdt). (Entered: 10/09/2020) |
| 10/16/2020 | 147 | MOTION to Withdraw as Attorney *of Record* by Thomas W. McNamara. (Attachments: # 1 Declaration of Edward Chang)(Chang, Edward) (jdt). (Entered: 10/16/2020) |
| 10/21/2020 | 148 | ORDER Granting Motion to Withdraw as Counsel of Record (Dkt. 147 ). Attorney Edward Chang terminated. Signed by Chief Judge Larry Alan Burns on 10/21/2020. (All non–registered users served via U.S. Mail Service) (jdt) (Entered: 10/21/2020) |
| 11/10/2020 | 149 | MINUTE ORDER. Currently on calendar for Monday, 11/16/2020 at 11:30 a.m. is a hearing on Receiver's Third Interim Fee Application. (Dkt. No. 146 .) The Court finds this motion suitable for decision without oral argument. The 11/16/ 2020 hearing is vacated. The Court will not require appearances in this matter on 11/16/2020. Signed by the chambers of Chief Judge Larry Alan Burns on 11/10/2020. (All non–registered users served via U.S. Mail Service)(jdt) (Entered: 11/10/2020) |

**ER381**

| 11/12/2020 | 150 | ORDER Granting Receiver's Unopposed Third Interim Fee Application (Dkt. 146 ). Signed by Chief Judge Larry Alan Burns on 11/12/2020. (All non–registered users served via U.S. Mail Service) (jdt) (Entered: 11/12/2020) |
|---|---|---|
| 12/16/2020 | 151 | NOTICE of Change of Address by Andrew W Robertson (Robertson, Andrew) (jdt). (Entered: 12/16/2020) |
| 11/10/2021 | 152 | NOTICE of Appearance by Jonathan Wesley Ware on behalf of Federal Trade Commission (Ware, Jonathan)Attorney Jonathan Wesley Ware added to party Federal Trade Commission(pty:pla) (dxf). (Entered: 11/10/2021) |
| 11/10/2021 | 153 | MOTION to Intervene by Wells Fargo & Company, Wells Fargo Bank N.A.. (Attachments: # 1 Memo of Points and Authorities, # 2 Exhibit 1)(Baiardo, Alicia)Attorney Alicia A. Baiardo added to party Wells Fargo & Company(pty:intv), Attorney Alicia A. Baiardo added to party Wells Fargo Bank N.A.(pty:intv) (dxf). (Entered: 11/10/2021) |
| 11/10/2021 | 154 | REQUEST FOR JUDICIAL NOTICE by Wells Fargo & Company, Wells Fargo Bank N.A. re 153 MOTION to Intervene (Baiardo, Alicia) (dxf). (Entered: 11/10/2021) |
| 11/10/2021 | 155 | NOTICE of Appearance by David C. Powell on behalf of Wells Fargo & Company, Wells Fargo Bank N.A. (Powell, David)Attorney David C. Powell added to party Wells Fargo & Company(pty:intv), Attorney David C. Powell added to party Wells Fargo Bank N.A.(pty:intv) (dxf). (Entered: 11/10/2021) |
| 11/10/2021 | 156 | NOTICE of Appearance by Anthony Q Le on behalf of Wells Fargo & Company, Wells Fargo Bank N.A. (Le, Anthony)Attorney Anthony Q Le added to party Wells Fargo & Company(pty:intv), Attorney Anthony Q Le added to party Wells Fargo Bank N.A.(pty:intv) (dxf). (Entered: 11/10/2021) |
| 11/10/2021 | 157 | NOTICE of Appearance by Molly M. White on behalf of Wells Fargo & Company, Wells Fargo Bank N.A. (White, Molly)Attorney Molly M. White added to party Wells Fargo & Company(pty:intv), Attorney Molly M. White added to party Wells Fargo Bank N.A.(pty:intv) (dxf). (Entered: 11/10/2021) |
| 11/11/2021 | 158 | NOTICE of Appearance by Logan Daniel Smith on behalf of Thomas W. McNamara (Smith, Logan)Attorney Logan Daniel Smith added to party Thomas W. McNamara(pty:rc) (dxf). (Entered: 11/11/2021) |
| 11/11/2021 | 159 | NOTICE of Appearance by Cornelia J.B. Gordon on behalf of Thomas W. McNamara (Gordon, Cornelia)Attorney Cornelia J.B. Gordon added to party Thomas W. McNamara(pty:rc) (dxf). (Entered: 11/11/2021) |
| 11/19/2021 | 160 | NOTICE of Appearance by Jenny Yi on behalf of Wells Fargo & Company, Wells Fargo Bank N.A. (Yi, Jenny)Attorney Jenny Yi added to party Wells Fargo & Company(pty:intv), Attorney Jenny Yi added to party Wells Fargo Bank N.A.(pty:intv) (dxf). (Entered: 11/19/2021) |
| 11/22/2021 | 161 | Order Continuing Hearing On Motion To Intervene. Signed by Judge Larry Alan Burns on 11/19/2021.(All non–registered users served via U.S. Mail Service)(dxf) (dlg). (Entered: 11/22/2021) |
| 12/07/2021 | 162 | Ex Parte MOTION for Leave to Appear Remotely by Zoom or Teleconference by Federal Trade Commission. (Attachments: # 1 Exhibit A – Decl. of Jonathan W. Ware, # 2 Proposed Order)(Ware, Jonathan) QC Mailer, re Proposed Orders Should not be attached (dxf). (Entered: 12/07/2021) |
| 12/10/2021 | 163 | MOTION to Intervene *Stipulation to Modify Briefing Schedule for Wells Fargo's Motion to Intervene*, MOTION by Wells Fargo & Company, Wells Fargo Bank N.A.. (Attachments: # 1 Proposed Order)(Lally, Kevin)Attorney Kevin M Lally added to party Wells Fargo & Company(pty:intv), Attorney Kevin M Lally added to party Wells Fargo Bank N.A.(pty:intv) QC Mailer, re Proposed Orders should be emailed (dxf). (Entered: 12/10/2021) |
| 12/13/2021 | 164 | ORDER Granting Joint Motion To Modify Briefing Schedule [Dkt. 163 ]. Signed by Judge Larry Alan Burns on 12/13/2021. (All non–registered users served via U.S. Mail Service)(dxf) (Entered: 12/13/2021) |

**ER382**

| 12/13/2021 | 165 | ORDER Granting Ex Parte Application To Appear Remotely By Videoconference [Dkt. 162 ]. Signed by Judge Larry Alan Burns on 12/13/2021. (All non−registered users served via U.S. Mail Service)(dxf) (Entered: 12/13/2021) |
|---|---|---|
| 12/16/2021 | 166 | MOTION to Withdraw as Attorney by Thomas W. McNamara. (Attachments: # 1 Declaration of Andrew W. Robertson)(Robertson, Andrew) (dxf). (Entered: 12/16/2021) |
| 12/20/2021 | 167 | RESPONSE in Opposition re 153 MOTION to Intervene filed by Federal Trade Commission. (Attachments: # 1 Declaration of Logan D. Smith, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C)(Ware, Jonathan) (dxf). (Entered: 12/20/2021) |
| 12/20/2021 | 168 | RESPONSE in Opposition re 153 MOTION to Intervene filed by Thomas W. McNamara. (Attachments: # 1 Declaration Logan D. Smith, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8)(Smith, Logan) (dxf). (Entered: 12/20/2021) |
| 01/05/2022 | 169 | REPLY − Other re 153 MOTION to Intervene *Proposed Intervenor Wells Fargos Ex Parte Application for Order Authorizing Single Omnibus Reply in Support of Wells Fargo & Company and Wells Fargo Bank N.A.S Motion to Intervene* filed by Wells Fargo & Company, Wells Fargo Bank N.A.. (Attachments: # 1 Declaration Declaration of Kevin M. Lally in Support of Proposed Intervenor Wells Fargos Ex Parte Application for Order Authorizing Single Omnibus Reply in Support of Wells Fargo & Company and Wells Fargo Bank N.A.S Motion to Intervene)(Baiardo, Alicia) (jms). (Entered: 01/05/2022) |
| 01/06/2022 | 170 | MINUTE ORDER OF TRANSFER: IT IS HEREBY ORDERED that this case be transferred from the calendar of the Honorable Linda Lopez to the calendar of the Honorable William V. Gallo for all further proceedings. All conference or hearing dates currently set before Magistrate Judge Lopez remain as scheduled before Magistrate Judge Gallo. Any dates set before any district judge remain unchanged. The new case number is 18cv1388 LAB (WVG).(no document attached) (jcj) (Entered: 01/06/2022) |
| 01/07/2022 | 171 | ORDER Authorizing Single Omnibus Reply in Support of Wells Fargo's Motion to Intervene 169 . Wells Fargo may submit a single omnibus reply brief no longer than 20 pages by January 10, 2022. Signed by Judge Larry Alan Burns on 1/7/2022. (srm) (Entered: 01/07/2022) |
| 01/10/2022 | 172 | RESPONSE in Support re 153 MOTION to Intervene filed by Wells Fargo & Company, Wells Fargo Bank N.A.. (Baiardo, Alicia) (jms). (Entered: 01/10/2022) |
| 01/19/2022 | 173 | MINUTE ORDER. Currently on calendar for Monday, January 24, 2022 at 11:30 a.m. is a hearing on non−party Wells Fargo & Company's Motion to Intervene. Pursuant to Civil Local Rule 7.1(d), the Court finds this motion suitable for decision without oral argument. The January 24, 2022 hearing is VACATED. The Court will not require appearances in this matter on January 24, 2022. Signed by the chambers of Judge Larry Alan Burns on 1/19/2022. (fth) (Entered: 01/19/2022) |
| 01/24/2022 | 174 | ORDER granting 166 Motion to Withdraw as Attorney. Attorney Andrew W Robertson terminated. Signed by Judge Larry Alan Burns on 1/24/2022. (All non−registered users served via U.S. Mail Service)(jms) (Entered: 01/24/2022) |
| 03/10/2022 | 175 | NOTICE *of Supplemental Authority* by Thomas W. McNamara re 168 Response in Opposition to Motion, (Attachments: # 1 Exhibit 1)(Smith, Logan) (fth). (Entered: 03/10/2022) |
| 09/30/2022 | 176 | ORDER Denying 153 Motion to Intervene. Signed by Judge Larry Alan Burns on 9/30/2022. (srm) (Entered: 09/30/2022) |
| 10/27/2022 | 177 | NOTICE OF APPEAL to the 9th Circuit as to 176 Order on Motion to Intervene by Wells Fargo & Company, Wells Fargo Bank N.A.. ( Filing fee $ 505 receipt number ACASDC−17293608.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (Baiardo, Alicia) (smy1). (Entered: 10/27/2022) |
| 10/28/2022 | 178 | USCA Case Number 22−56012 for 177 Notice of Appeal to 9th Circuit, filed by Wells Fargo Bank N.A., Wells Fargo & Company. (Attachments: # 1 Attention All Parties and Counsel, # 2 Case Opening Packet, # 3 Mediation Letter)(smy1)(jrd) (Entered: |

**ER383**

| | | |
|---|---|---|
| | | 10/31/2022) |
| 10/28/2022 | <u>179</u> | USCA Time Schedule Order as to <u>177</u> Notice of Appeal to 9th Circuit, filed by Wells Fargo Bank N.A., Wells Fargo & Company. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court, provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 11/28/2022 (see Ninth Circuit Rule 10–3.1); Due date for filing of transcripts in US District Court is 12/28/2022.). (smy1)(jrd) (Entered: 10/31/2022) |
| 11/04/2022 | <u>180</u> | TRANSCRIPT DESIGNATION AND ORDERING FORM by Wells Fargo & Company, Wells Fargo Bank N.A. re <u>177</u> Notice of Appeal to 9th Circuit,. (Attachments: # <u>1</u> Proof of Service)(Baiardo, Alicia) (jms). (Entered: 11/04/2022) |
| 11/17/2022 | <u>181</u> | NOTICE *of Withdrawal as Counsel* by Federal Trade Commission (Attachments: # <u>1</u> Declaration)(Church, Rebecca) (jms). (Entered: 11/17/2022) |

**ER384**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing was filed with the Clerk of the United States

Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which

will also serve counsel of record.


Dated: March 8, 2023                 */s/ Brian D. Schmalzbach*
                                     Brian D. Schmalzbach