No. 22-56012

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TRIANGLE MEDIA CORPORATION, et al.,

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,
proposed Intervenors,

*Movants-Appellants,*

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

On Appeal from the United States District Court
for the Southern District of California
No. 3:18-cv-01388-LAB-WVG
Hon. Larry Alan Burns

## RECEIVER-APPELLEE'S ANSWERING BRIEF

Logan D. Smith (SBN 212041)
Cornelia J. B. Gordon (SBN 320207)
MCNAMARA SMITH LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
lsmith@mcnamarallp.com
cgordon@mcnamarallp.com
*Attorneys for Receiver-Appellee*
*Thomas W. McNamara*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Under Federal Rules of Appellate Procedure 26.1(a) and 28(a)(1), Appellee-Receiver Thomas W. McNamara (the "Receiver") certifies that he is a private attorney. The Receiver further certifies that none of the entities for which he serves as receiver—including Triangle Media Corporation; Jasper Rain Marketing LLC; BH Wellness LLC; Bizway Services LLC; Blended Wellness Marketing LLC; Brand Junction Wellness LLC; Centered Energy Marketing LLC; Clear Option Wellness LLC; Concur Marketing Solutions LLC; Direct Access Products LLC; Endeavour Steel Marketing LLC; Everjoy Nutrition LLC; Fast Order Marketing LLC; Flat6 Development LLC; Great Plains Nutrition LLC; Green Valley Wellness LLC; H1 Marketing LLC; Jester Youth Marketing LLC; Jet Time Marketing LLC; Joint Capital Marketing LLC; Jolt Line Marketing LLC; Kinetic Products Marketing LLC; Little Kite Wellness LLC; Mass Drift Marketing LLC; Meadow West Marketing LLC; Mind Wellness Marketing LLC; Rainbow Drop Wellness LLC; Real Vitality Marketing LLC; Rivers Edge Marketing LLC; Simple Gig Marketing LLC; Squad6 Services LLC; Sunrise Pointe Wellness LLC; Sunset Orders Marketing LLC; Total Market Products LLC; Turbid Elite Marketing LLC; Vital Global Marketing LLC; Zoom Standard Marketing LLC; and each of their subsidiaries, affiliates, successors, and assigns—is a parent, agent, subsidiary, or affiliate of any publicly owned corporation.

Date: May 8, 2023

/s/ Logan D. Smith
Logan D. Smith
*Attorneys for Thomas W. McNamara, as*
*the Court-Appointed Receiver for*
*Triangle Media Corporation-Appellee*

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ....................................................2

STATUTORY AND REGULATORY AUTHORITIES ..........................3

QUESTIONS PRESENTED................................................................3

STATEMENT OF THE CASE ............................................................4

ARGUMENT ..................................................................................11

  I.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
  WHEN IT DETERMINED THAT WELLS FARGO'S MOTION WAS
  NOT TIMELY ..............................................................................11

    A.   Wells Fargo Mischaracterizes the Reasoning Utilized by the
    District Court..........................................................................13

    B.   The Court Properly Found That a Four- to Six-Month Delay
    Would Still Make Wells Fargo's Motion Untimely .................15

    C.   The Court Correctly Determined that the FTC Would Be Prejudiced
    If Wells Fargo Is Allowed to Intervene .................................17

    D.   Wells Fargo's Other Arguments Regarding the Timing of
    Intervention Are Unavailing ...................................................21

    E.   The District Court's Determination Was Not Illogical, Implausible,
    or Without Support in the Record ...........................................22

  II.   THE DISTRICT COURT CORRECTLY HELD THAT WELLS
  FARGO MEETS NONE OF THE OTHER CRITERIA FOR
  INTERVENTION AS OF RIGHT .................................................30

    A.   Wells Fargo Has Failed to Demonstrate a Significant Protectable
    Interest in This Case...............................................................31

    B.   Wells Fargo Failed to Demonstrate That It Would be Unable to
    Protect Its Interests if the Action were to Proceed Without Intervention........33

  III.   THE DISTRICT COURT CORRECTLY HELD THAT
  WELLS FARGO LACKS ARTICLE III STANDING........................34

    A.   Wells Fargo Lacks a Concrete, Particularized, and Actual or
    Imminent Injury .....................................................................34

    B.   Wells Fargo's Alleged Injury Is Not Redressable by a
    Favorable Ruling....................................................................36

IV.  THE DISTRICT COURT CORRECTLY HELD THAT WELLS
     FARGO WAS NOT ENTITLED TO PERMISSIVE INTERVENTION............39

CONCLUSION .......................................................................................................40

## TABLE OF AUTHORITIES

**Cases**

*AMG Capital Management, LLC v. Federal Trade Commission*,
    141 S. Ct. 1341 (2021) ............................................................... passim

*Banco Popular de Puerto Rico v. Greenblatt*,
    964 F.2d 1227 (1st Cir. 1992) ...............................................................29

*Calvert v. Huckins*,
    109 F.3d 843 (9th Cir. 2016) ................................................................30

*Ciesniewski v. Aries Cap. Partners, Inc.*, No. 1:16-CV-817-WTL-TAB,
    2018 WL 4491211 (S.D. Ind. Sept. 19, 2018)...............................32, 36

*Citibank Int'l v. Collier-Traino, Inc.*,
    809 F.2d 1438 (9th Cir. 1987) ...............................................................20

*Cooper v. Newsom*,
    13 F.4th 857 (9th Cir. 2021) ...............................................................2, 3

*Dilks v. Aloha Airlines*,
    642 F.2d 1155 (9th Cir. 1981) .........................................................15, 16

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ...........................................................30, 31

*Fed. Trade Comm'n v. Apex Cap. Grp., LLC*, No. CV189573JFWJPRX,
    2022 WL 1060486 (C.D. Cal. Mar. 10, 2022) ......................................31

*Forest Stewardship Council-U.S. v. Off. of U.S. Trade Representative*,
    405 F. App'x 144 (9th Cir. 2010) ........................................................38

*FTC v. American Legal Distribs, Inc.*,
    890 F.2d 363 (11th Cir. 1989) ...............................................................29

*FTC v. Credit Bureau Center, LLC*,
    937 F.3d 764 (7th Cir. 2019) ................................................................24

*FTC v. Noland ("Noland I")*, No. CV-20-00047-PHX-DWL,
    2021 WL 3290461 (D. Ariz. Aug. 2, 2021) .......................................27

*FTC v. Noland ("Noland II")*, No. CV-20-00047-PHX-DWL,
    2021 WL 4318466 (D. Ariz. Sept. 23, 2021) .................................32, 33

*FTC v. Zurixx, LLC*, No. 2:19-CV-00713-DK-DAO,
    2021 WL 3510804 (D. Utah Aug. 10, 2021)........................................27

*FTC, Plaintiff, v. Electronic Payment Solutions of America, Inc., et al., Defendants*,
    2019 WL 5884761 (Mot. for Recons. D. Ariz. Sept. 10, 2019)..........24

*FTC, Plaintiff, v. Elegant Solutions, Inc., et al., Defendants*,
    2020 WL 2125164 (Mot. to Dissolve Prelim. Inj. C.D. Cal. Jan. 20, 2020) .......24

*FTC, Plaintiff, v. Jason Cardiff, et al., Defendants*, 2020 WL 8176097.................24

*Hawaii v. U.S. Department of Education*,
   2010 WL 346445 (D. Haw. 2010)...................................................30
*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ............................................... 15, 16
*In re Bofl Holding, Inc., Shareholder Litigation*,
   2018 WL 2731954 (S.D. Cal. 2018) ......................................35
*Kalbers v. United States Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021).................................................27
*Key Bank of Puget Sound v. Alaskan Harvester*,
   738 F. Supp. 398 (W.D. Wash. 1989) ............................... 12, 26
*League of United Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ......................................... 11, 26
*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...............................................................38
*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) ..............................................11
*Montgomery v. United States*, No. 09-CV-1588 JLS WVG,
   2012 WL 124854 (S.D. Cal. Jan. 17, 2012) ........................29
*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   926 F.3d 528 (9th Cir. 2019) ..............................................11
*Oregon Prescription Drug Monitoring Program v. DEA*,
   860 F.3d 1228 (9th Cir. 2017)....................................... 34, 36
*Perry v. Proposition 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009)...............................................39
*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
   584 F.3d 1 (1st Cir. 2009) ...................................................28
*San Diego Unified Port District v. Monsanto Co.*,
   309 F. Supp. 3d 854 (S.D. Cal. 2018) .................................35
*Schulte v. Aramark Servs., Inc.*, No. 16-CV-04429-JCS,
   2017 WL 4071350 (N.D. Cal. Sept. 14, 2017).....................20
*Snoqualmie Indian Tribe v. Washington*, No. 3:19-CV-06227-RBL,
   2020 WL 4729178 (W.D. Wash. Apr. 16, 2020) .................29
*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .............................................................37
*Stadnicki on Behalf of LendingClub Corp. v. Laplanche*,
   804 Fed. App'x 519 (9th Cir. 2020).....................................11
*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
   137 S. Ct. 1645 (2017) .........................................................34

*U.S., Plaintiff, v. Mylife.com, Inc., a Delaware Corporation, and Jeffrey Tinsley, Individually and as an Officer of Mylife.com, Inc., Defendants*,
   2020 WL 8483884 (Mot. to Dismiss Compl. C.D. Cal. Oct. 1, 2020) ...............24

*United States v. Aerojet Gen. Corp.*,
   606 F.3d 1142 (9th Cir. 2010) ...................................................................... 15, 16

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ........................................................................ 13, 15

*United States v. State of Oregon*,
   913 F.2d 576 (9th Cir. 1990) ...............................................................................13

*United States v. State of Washington*,
   86 F.3d 1499 (9th Cir. 1996) ...............................................................................11

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ...............................................................................39

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ................................................................................15

vii

## INTRODUCTION

*Two years* after the District Court publicly gave Thomas W. McNamara, the court-appointed federal equity receiver (the "Receiver") in two district court cases brought by the Federal Trade Commission ("FTC"), permission to sue the proposed intervenors, Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo" or the "Bank"); nearly *twenty months* after the Receiver initiated pre-litigation settlement discussions with Wells Fargo; more than *six months* after the Supreme Court held that Section 13(b) of the FTC Act does not authorize the FTC to seek equitable monetary relief in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021) ("*AMG Capital*"); and close to *four months* after the Receiver filed a lawsuit against Wells Fargo, Wells Fargo finally filed its motion to intervene in November 2021, with the purported aim of challenging the scope of the Receiver's appointment based on the Supreme Court's April 2021 decision in *AMG Capital*.

The District Court recognized that the untimeliness of Wells Fargo's motion alone merited its denial. In reaching that conclusion, it acted soundly within its discretion, as Wells Fargo let months go by after the opinion in *AMG Capital* was issued without moving to intervene as it had indicated it would. The District Court applied the correct legal standard in its analysis, and none of its reasoning was implausible, illogical, or without support in the record. On that basis alone, this

1

Court can easily affirm the lower court's denial of Wells Fargo's request to intervene.

Even if this Court were to determine that Wells Fargo's motion had been timely filed, however, the District Court's Order should be affirmed based on its rulings that Wells Fargo failed to meet other criteria for intervention as of right and that Wells Fargo could not show it had Article III standing. The District Court likewise acted well within its discretion in denying Wells Fargo's alternative request for permissive intervention. The Receiver respectfully submits that the District Court's decision can be quickly affirmed and Wells Fargo's appeal dismissed.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1345, because the case was brought by a federal agency, the FTC, and arose under the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 57b; Section 5(a) of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404(a); and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c). 3-ER-158.

This Court has jurisdiction over the District Court's denial of proposed intervenor Wells Fargo's motion to intervene as of right as an "appealable 'final decision.'" *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). The Court

"ha[s] jurisdiction over a district court's denial of permissive intervention only if [it] conclude[s] the district court abused its discretion." *Id*. at 868.

Wells Fargo's appeal of the District Court's denial of its motion to intervene on September 30, 2022, 1-ER-12, was timely filed pursuant to Fed. R. App. P. 4(a)(1)(B) on October 27, 2022, 3-ER-351.

## STATUTORY AND REGULATORY AUTHORITIES

Relevant statutes and regulations are included in an addendum to this brief.

## QUESTIONS PRESENTED

The District Court's Order concluded that Wells Fargo lacked Article III standing to intervene as required for intervention as a matter of right, but that even if Wells Fargo *did* have standing, it was still not entitled to intervene as of right because its motion was untimely, Wells Fargo failed to show it had a significant protectable interest in the case, and Wells Fargo failed to show that it would be unable to protect its interests if the case proceeded without intervention. The District Court also concluded that Wells Fargo was not entitled to permissive intervention because its motion was untimely.

The questions presented are:

I.   Whether the District Court abused its discretion in finding that Wells Fargo was not entitled to intervene as a matter of right because its motion was untimely[1];

II.  Whether the District Court's holding that Wells Fargo also (a) lacked a significant protectable interest and (b) failed to demonstrate that it would be unable to protect its interests without intervention in this case (and therefore could not intervene as a matter of right) was correct;

III. Whether the District Court correctly held that Wells Fargo lacked Article III standing because it has not suffered a concrete injury that could be redressed through intervention; and

IV.  Whether the District Court abused its discretion in finding that Wells Fargo was not entitled to permissive intervention.

## STATEMENT OF THE CASE

Thomas W. McNamara is the federal equity receiver appointed in two separate but similar cases: the lower court action, *Federal Trade Commission v. Triangle Media Corporation, et al.*, Case No. 3:18-cv-01388 (LAB-LL) (S.D. Cal.)

---

[1] Since the determination that Wells Fargo's motion to intervene was not timely is reviewed under the most deferential standard, for abuse of discretion, the Receiver addresses that issue first.

4

("*Triangle*"), and *Federal Trade Commission v. Apex Capital Group, LLC, et al.*, Case No. 2:18-cv-09573-JFW (JPRx) (C.D. Cal.) ("*Apex*"). 1-SER-135-136. Both cases were brought by the FTC against businesses operating unlawful "free trial" scams. 1-SER-130-131. The FTC filed its complaint against the *Triangle* defendants in June 2018, 3-ER-324-349, and against the *Apex* defendants in November 2018, 1-SER-135. Here, in *Triangle*, the FTC alleged that the defendants had violated provisions of the FTC Act, ROSCA, and EFTA, and sought injunctive and monetary relief, including under Section 13(b) of the FTC Act. 3-ER-325, 3-ER-348-349.

After initiating the *Triangle* and *Apex* actions, the FTC sought and obtained the appointment of a receiver (Thomas W. McNamara) over the corporate defendants and related entities in both cases. 3-ER-244-246; 1-SER-136-139. The FTC amended its complaint in *Triangle* in October 2018 to add one individual defendant, Devin Keer, and one corporate defendant, Global Northern Trading Ltd. (the latter of which was already subject to the receivership), based on allegations that the newly-added defendants had assisted the *Triangle* principals in their fraud. 2-SER-257. The FTC subsequently settled with the *Triangle* defendants in late May 2019, 1-ER-5, and the *Apex* defendants in early September 2019, 1-SER-137; stipulated orders for permanent injunctions and monetary relief were entered on May 30, 2019 in *Triangle*, 1-ER-5, and September 11, 2019 in *Apex*, 1-SER-137.

As the Receiver investigated the schemes at issue in both the *Triangle* and *Apex* actions, he realized that they had something in common beyond the similarity of their underlying business models: in both cases, Wells Fargo was the bank of choice for the scammers. *See* 1-SER-131-135. That was no coincidence; as the Receiver ultimately determined, the *Triangle* and *Apex* frauds could not have persisted as long as they did without Wells Fargo's continued willingness to support the enterprises by, among other things, repeatedly opening new accounts for shell companies used in the fraud to process consumer credit and debit payments. *See id.* On October 22, 2019, the Receiver filed a motion asking the District Court to extend the receivership "for the sole purpose of pursuing litigation against Wells Fargo, and administratively closing th[e] case while that litigation [was] pursued," which the District Court granted on November 18, 2019. 1-ER-5; 1-SER-241-248.

After the District Court granted the Receiver's motion for authorization to engage contingency counsel to pursue litigation against Wells Fargo, *see* 1-ER-5, the Receiver engaged the Bank in extensive pre-filing settlement discussions beginning in April 2020, *see* 1-SER-35; 1-SER-39-41. When the settlement talks proved unsuccessful, the Receiver sued Wells Fargo on July 8, 2021 on behalf of the Receivership Entities in the *Apex* and *Triangle* matters. *See McNamara v.*

6

*Wells Fargo & Company, et al.*, No. 3:21-cv-01245-LAB-DDL (S.D. Cal.) (the "Wells Fargo Litigation"); 1-ER-5; 1-SER-129-216.

The Receiver brought claims for aiding and abetting fraud; conspiracy to commit fraud; aiding and abetting breach of fiduciary duty; aiding and abetting conversion; aiding and abetting fraudulent transfers; and negligence, among others. *See* 1-SER-199-216 (referenced in the Order, 1-ER-5). As the Receiver alleged:

> Wells Fargo bankers were aware of the [*Apex* and *Triangle*] Enterprises' risk-free trial schemes, understood the people listed as "owners" of the Wells Fargo accounts did not actually own or control them, and knew the Enterprises were engaged in credit card laundering. Despite this knowledge, Well Fargo gladly opened ***more than 150 bank accounts for the shell companies and straw owners, sometimes opening as many as 6 bank accounts in one day***. Wells Fargo then allowed millions of dollars to be deposited in the accounts, knowing that these funds were unlawfully obtained in the risk-free trial schemes, and afterwards allowing the Enterprises' operators to transfer their ill-gotten gains from the shell accounts to third-party bank accounts, including accounts located outside of the United States.

1-SER-132 (emphasis in original). Though the Receiver sought monetary relief based in part on the judgments outstanding against the *Triangle* and *Apex* Receivership Entities, none of his claims was premised on the FTC Act. *See* 1-SER-199-216.

On April 22, 2021, roughly a year after the Receiver's counsel first contacted Wells Fargo, "the Supreme Court held that the FTC lacks the authority to obtain equitable monetary relief under Section 13(b)" in *AMG Capital*

*Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021)

("*AMG Capital*"). 1-ER-7, 1-ER-10.

Wells Fargo filed its motion to intervene on November 10, 2021. 1-ER-6. The FTC and the Receiver filed oppositions to the motion on December 20, and Wells Fargo filed a reply in support on January 5, 2022. 1-ER-6; 2-ER-44-74. The District Court issued its ruling (the "Order") on September 30, 2022. 1-ER-12.

In its Order, the District Court listed multiple reasons for denying Wells Fargo's motion to intervene as of right. The Order began by concluding that Wells Fargo lacked the required Article III standing to intervene as of right because it only alleged a "speculative injury," and any hypothetical injury was not redressable given that "the Wells Fargo Litigation ha[d] already been filed and . . . [was] well underway" and that the FTC's claims against the *Triangle* defendants were premised not just on Section 13(b) of the FTC Act, but also on Section 5 of ROSCA. 1-ER-7-8.

The District Court then determined that even if Wells Fargo did have Article III standing, its motion to intervene as of right would fail on other grounds. 1-ER-8-11. In particular, the District Court found that even if Wells Fargo had no ability to intervene until April 2021, after *AMG Capital* was decided, or July 2021, after the Receiver filed suit, its motion was still untimely given the lapse of more than

six months and nearly four months, respectively. *See* 1-ER-10. The District Court

further held that even if it considered such a delay "inconsequential," the prejudice

to the FTC—which "would no doubt be forced to relitigate issues that ha[d]

already been adjudicated in this case"—weighed heavily against intervention, such

that the timeliness element was not satisfied. *See id.*

While that alone was enough to justify the District Court's denial of Wells

Fargo's request for intervention as of right, the District Court also held that Wells

Fargo had failed to demonstrate it had a significant protectable interest for the

same reasons it lacked Article III standing, and that it had failed to show there was

no way for it to protect any interest it had absent intervention. 1-ER-10-11.

Finally, the District Court exercised its discretion to deny Wells Fargo's alternative

request for permissive intervention, for which an even higher standard of

timeliness is applied. 1-ER-11-12.

After the District Court's Order denying the motion was entered, Wells

Fargo appealed.

## SUMMARY OF THE ARGUMENT

I.     First, the District Court did not abuse its discretion when determining

that Wells Fargo's motion to intervene was untimely. Wells Fargo is wrong that

the District Court applied the incorrect legal standard; what it cites as the

"incorrect" standard is one which the District Court never even used, making this

argument moot. Nor was the District Court's determination that Wells Fargo's motion was untimely illogical, implausible, or without support in the record. As the District Court found, *even if* Wells Fargo's own preferred dates for intervention were used, its dilatory filing was untimely given the prejudice to the FTC and the late stage in the proceedings at which its motion was brought.

II.     Second, the District Court correctly held that Wells Fargo failed to meet the other criteria for intervention as of right. Wells Fargo lacked a significant protectable interest for the same underlying reasons it lacked standing. Wells Fargo also failed to demonstrate that it would be unable to protect its interests if the action were to proceed without intervention, given the existence of the Wells Fargo Litigation.

III.    Third, the District Court correctly held that Wells Fargo lacks Article III standing to intervene as of right. Wells Fargo has no concrete, particularized, and actual or imminent injury, and any alleged injury it might arguably have would not be redressable by a favorable ruling.

IV.  Lastly, the District Court did not abuse its discretion by determining that Wells Fargo was not entitled to permissive intervention given the untimeliness of its filing.

## STANDARD OF REVIEW

A district court's determination that a proposed intervenor lacks constitutional standing is reviewed de novo, *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010), but "underlying factual findings are reviewed for clear error." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 531 (9th Cir. 2019) (citations and internal quotations omitted).

A district court's denial of a motion for intervention as of right is reviewed de novo. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). However, the district court's underlying timeliness determination is reviewed for abuse of discretion. *Id.*; *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). A district court's denial of a motion for permissive intervention is reviewed for abuse of discretion. *League of United Latin Am. Citizens*, 131 F.3d at 1307.

## ARGUMENT

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT WELLS FARGO'S MOTION WAS NOT TIMELY

Wells Fargo's appeal merits a swift denial for multiple reasons, but none more so than the untimeliness of its underlying motion to intervene either as of right or permissively. *See Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, 804 Fed. App'x 519, 522 (9th Cir. 2020) (untimely motion to intervene as of right

is "necessarily untimely" as a request for permissive intervention). The District Court recognized as much, determining that even if the decision in *AMG Capital* and the Receiver's initiation of his lawsuit against Wells Fargo were necessary prerequisites to its motion to intervene, "Wells Fargo [still] waited over six months after the *AMG* decision and nearly four months from the date the Wells Fargo Litigation commenced to file the [intervention] motion . . . [and] [a]s such, the Court does not find that the timeliness element has been satisfied." 1-ER-10; *see also*, *e.g.*, *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398, 405 (W.D. Wash. 1989) (leave to intervene denied where proposed intervenor "failed to identify any specific facts pertaining to the nearly four month delay in filing" that could "explain[] its tardy prosecution of its claim").

In order to reverse the District Court's finding that Wells Fargo's motion to intervene was untimely, this Court would need to determine that the District Court abused its discretion either by "fail[ing] to apply the correct legal rule or standard," or by applying the correct rule in a way that was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853-54 (9th Cir. 2016). For the reasons discussed below, the District Court did neither, and its decision can be affirmed on timeliness grounds alone.

A.     **Wells Fargo Mischaracterizes the Reasoning Utilized by the District Court**

Wells Fargo first attempts to claim that the District Court abused its discretion by applying the wrong legal standard for determining timeliness. Appellants' Br. at 32-34.  In doing so, however, it dramatically mischaracterizes the District Court's reasoning and ruling.  The Receiver submits that this alone is grounds to dismiss the appeal.

Wells Fargo contends that the District Court applied the wrong legal standard, because "it concluded that Wells Fargo had to intervene essentially as soon as it knew or should have known that its interests might be adversely affected by the outcome of the litigation."  Appellant's Br. at 33.  Wells Fargo appears to be arguing, as it did in its appeal of the denial of its motion to intervene in the parallel *Apex* litigation, that the District Court applied a standard similar to that used in *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004), which held that "[a] party must intervene when he 'knows or has reason to know that his interests might be adversely affected by the outcome of litigation,'" *id.* (citing and quoting *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990)), when it should have considered "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties," *Smith*, 830 F.3d at 854.

Wells Fargo's argument fails on multiple fronts. First, and most critically, the District Court *did not conduct the legal analysis in the manner Wells Fargo says*. In fact, there is nothing in the District Court's opinion that references the standard that Wells Fargo claims it applied. To the contrary, the District Court's conclusion that Wells Fargo's filing was untimely was predicated on its analysis of the three factors assessed in the course of a timeliness analysis: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016); *see also* Appellants' Br. at 32 (citing and quoting *Smith* for the same standard).

The District Court applied the *Smith* factors when making its ruling. It noted that the "stage of the proceeding" was more than advanced, as Wells Fargo's motion came two years after the case was administratively closed in November 2019, and that this kind of delay weighed against Wells Fargo. *See* 1-ER-9. Beyond that, though, it found that *even if* Wells Fargo's preferred dates (the decision in *AMG Capital* and the initiation of the Receiver's lawsuit against Wells Fargo) were used to assess the timeliness of intervention, and "*even if* the Court considered [that] four to six month delay inconsequential" (1-ER-9-10 (emphasis added)—in other words, *even if* the Court were to fully accept Wells Fargo's proffered "reason for and length of the delay"—the FTC would be severely

14

prejudiced if the Court were to allow Wells Fargo to intervene, as it "would no doubt be forced to relitigate issues that have already been adjudicated in this case" (1-ER-10). Upon weighing these factors, the District Court determined that "the timeliness element ha[d not] been satisfied" (1-ER-10).

Second, though the District Court never relied on *Alisal Water Corp.* or the standard cited therein like Wells Fargo intimates (making this argument improper on its face), the Receiver notes that the case remains good law. *Alisal Water Corp.* was cited and quoted for the standard quoted above in a published Ninth Circuit opinion from just last year. *See W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). To the extent the standard is framed differently from that set forth in *Smith*, it is clearly a distinction without a difference. Even if the Court had applied the *Alisal Water Corp.* standard, Wells Fargo's argument would still fail.

## B.   The Court Properly Found That a Four- to Six-Month Delay Would Still Make Wells Fargo's Motion Untimely

Recognizing, perhaps, that its argument on the legal standard is likely to fail, Wells Fargo also briefly argues that "while the district court held that a four- to six-month delay in intervening was untimely, this Court has held that motions filed at or beyond this length of time to be timely." *See* Appellant's Br. at 36 (citing *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981)). This argument holds no water.

First, citations to unrelated cases have minimal value in the context of assessing timeliness for purposes of a motion to intervene, since "district court[s] ha[ve] considerable discretion to assess timeliness." *Dilks*, 642 F.2d at 1156.

Second, and regardless, the cases that Wells Fargo cites are inapposite. In *Aerojet*, the parties did not dispute the timeliness of the motion to intervene. *See* 606 F.3d at 1149. In *Idaho Farm Bureau Federation*, where timeliness *was* disputed, there was no contention that intervention would be prejudicial. *See* 58 F.3d at 1397; *compare with* 1-ER-10 ("[E]ven if the Court considered a four to six month delay inconsequential, permitting intervention would prejudice the FTC . . . ."). And in *Dilks*, while the motion to intervene was denied by the court below (as here), it was not denied on timeliness grounds; as such, the appellate court did not address the issue when upholding the lower court's decision. *See* 642 F.2d at 1156 ("The district court has considerable discretion to assess timeliness. It did not deny the motion on that ground, and we will not disturb the implied finding of timeliness.").

All that these cases stand for is the uncontroversial proposition that district courts have ample discretion when assessing the timeliness of a motion to intervene. Here, the District Court determined that Wells Fargo's motion was untimely. The Receiver submits that its exercise of discretion should be upheld.

16

**C.    The Court Correctly Determined that the FTC Would Be Prejudiced If Wells Fargo Is Allowed to Intervene**

Wells Fargo also attempts to discredit the District Court's determination that the FTC would be prejudiced if its intervention were allowed.  To make its argument, Wells Fargo overlooks the Court's clear and unambiguous determination that the FTC would suffer substantial prejudice by being forced to "relitigate issues" that the Court already determined in the underlying case.  *See* 1-ER-10.  To craft this tenuous argument, Wells Fargo ignores both the District Court's unequivocal language and the history of the underlying case, in which the very same Court previously entered injunctions and judgments in favor of the FTC after thorough analyses of the merits.

It appears that Wells Fargo is trying to hang its hat on an allegedly "improper determination" of prejudice to the FTC based on what appears to the Receiver to be, at most, a clear and immaterial scrivener's error in the sentence before the District Court's uncontroversial determination that the FTC—the party in whose favor the long-settled judgments, temporary restraining order, and preliminary injunctions were entered—would suffer prejudice if forced to relitigate previously-adjudicated issues.  When assessing timeliness in its Order, the District Court held as follows:

> And importantly, even if the Court considered a four to six month delay inconsequential, permitting intervention would prejudice the FTC, which is still empowered to pursue monetary judgment against

17

> Wells Fargo regardless of Section 13(b)'s applicability. If the Court granted the intervention request, the FTC would no doubt be forced to relitigate issues that have already been adjudicated in this case.

1-ER-10. In its brief, Wells Fargo tries to transmute these sentences into legal error by the District Court. Its position is that because the FTC lacks the authority to sue banks under the FTC Act, and there are no issues to relitigate as to Wells Fargo, the District Court's holding is "categorically false," "wrong as a matter of law," and "completely unsupported by the record." Appellant's Br. at 39-40.

Wells Fargo's reading of the text, however, is both inconsistent with the record (neither the FTC nor the Receiver ever argued in the underlying case that the FTC somehow had the authority to pursue claims against Wells Fargo) and based on its selective parsing of words devoid of context. Contrary to what Wells Fargo argues, the context surrounding the District Court's assessment of prejudice—the reference to the FTC's ability to recover monetary damages under the FTC Act, "regardless of Section 13(b)'s applicability" (*i.e.*, the foundation for Wells Fargo's argument that the appointment orders governing the Receivership Entities are invalid), and to the "relitigat[ion] [of] issues that have already been adjudicated in this case," where the only claims brought were brought by the FTC against the *Triangle* defendants—makes it clear that the District Court was referring to the prejudice to the FTC if Wells Fargo was successful in overturning the underlying judgments against the *Triangle* defendants. Despite Wells Fargo's

efforts to sow confusion on this point, the Court's reference to the FTC's ability "to pursue monetary judgment against Wells Fargo regardless of Section 13(b)'s applicability" clearly refers to the FTC's continued ability to pursue monetary judgments against the *Triangle* defendants, even if Wells Fargo's appeal is successful.

Such a reading is entirely consistent with the rest of the District Court's Order. *Compare* 1-ER-10 ("[P]ermitting intervention would prejudice the FTC, which is still empowered to pursue monetary judgment against Wells Fargo [*sic*, Defendants] regardless of Section 13(b)'s applicability."), *with* 1-ER-7-8 ("In *AMG*, the Supreme Court held that the FTC lacks the authority to obtain equitable monetary relief under Section 13(b), 141 S. Ct. at 1352, but notably here, the FTC's Complaint and request for a preliminary injunction, as well as its request for a TRO, sought relief under not only Section 13(b), *but also* Section 5 of ROSCA, which authorizes the FTC to pursue monetary relief on behalf of consumers for unfair or deceptive acts or practices." (emphasis in original)).

Wells Fargo also claims that the District Court's determination that the FTC would be prejudiced is incorrect for a second reason: namely, that "[t]he FTC would not have to relitigate the *Triangle* judgment (which was entered through a stipulated agreement at the outset of the proceedings), because Wells Fargo does not seek to overturn the judgments but instead seeks to modify the orders giving

the Receiver authority to pursue Wells Fargo." Appellant's Br. at 40. But the gravamen of Wells Fargo's grievance belies this assertion. While Wells Fargo's intervention efforts are nominally aimed at challenging the appointment orders, what Wells Fargo *actually* wants is to undo the stipulated judgments into which the parties entered. It describes those judgments as being "incorrectly secured, at least in principal part, under Section 13(b)," and states that once it intervenes, it intends to challenge "the continued enforceability of the district court's ongoing orders in the *Triangle* action . . . [including] what portion of the *Triangle* judgments the Receiver can properly pursue against Wells Fargo." Appellant's Br. at 32.

The judgments are Wells Fargo's real target. Unfortunately for Wells Fargo, it lacks any ability under Federal Rule 60 to challenge the stipulated judgments. "By its terms, Rule 60(b)," which allows parties to seek relief from final judgments, "affords relief only to 'parties.'" *Schulte v. Aramark Servs., Inc.*, No. 16-CV-04429-JCS, 2017 WL 4071350, at *3 (N.D. Cal. Sept. 14, 2017) (citing *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1440 (9th Cir. 1987)). Wells Fargo neither was, nor is, a party to the stipulated judgments, and has no ability to seek relief from the judgments. Its targeting of the appointment orders is merely a back-door attempt at undoing judgments it has no ability under the Federal Rules to alter—for good reason. If Wells Fargo is allowed to intervene, both the FTC and the Receiver will suffer immense prejudice.

20

**D.      Wells Fargo's Other Arguments Regarding the Timing of Intervention Are Unavailing**

Wells Fargo's remaining arguments are inconsistent, unpersuasive, and difficult to parse.  For example, Wells Fargo strenuously argues that it could not have intervened until after the Receiver filed suit against it on July 8, 2021.  *See* Appellant's Br. at 34-37.  But the District Court's conclusion was that *even if* Wells Fargo could not have intervened until the Receiver filed suit, its motion was untimely based on its consideration of all three timeliness factors.  *See* 1-ER-9-10.  Wells Fargo's argument that the District Court should have accepted Wells Fargo's position—when the Court did, in fact, accept that position for purposes of rendering its decision—is both circular and irrelevant.[2]

Wells Fargo also confusingly argues that "the district court clearly erred in concluding that the case was closed" because "the case remains open as to matters related to the Receivership."  *See* Appellant's Br. at 37.  But the District Court

---

[2] For example, Wells Fargo states, "The district court also erroneously held that Wells Fargo's intervention six months after the AMG Capital decision and nearly four months after the instigation of the Wells Fargo Litigation was untimely.  1-ER-10.  However, it was not until April 2021 that the Supreme Court clarified that the FTC lacked authority to obtain equitable monetary relief under Section 13(b) of the FTC Act."  Appellant's Br. at 35.  The "however" which begins the second sentence implies a conflict, but the two sentences are consistent: the District Court's holding was that Wells Fargo's motion was untimely six months after *AMG Capital* was decided—it accepted Wells Fargo's premise (at least for purposes of its analysis) that "it was not until April 2021" that it would have known it had grounds to challenge the appointment orders under Section 13(b).

"conclud[ed]" no such thing. The Order simply noted that the Court had "administratively closed the case on November 19, 2019," and that the passage of two years between then and when Wells Fargo filed its motion "weigh[ed] heavily against intervention." 1-ER-9. The District Court's opinion never suggested the case was anything other than "administratively" closed, nor did it state (or even imply) that the receivership was part of that closure.

**E.     The District Court's Determination Was Not Illogical, Implausible, or Without Support in the Record**

For this Court to determine that the District Court abused its discretion, it would need to find that the District Court's conclusions were illogical, implausible, or without support in the record. *See Smith*, 830 F.3d at 854. Contrary to what Wells Fargo argues in its brief, the District Court's analysis of each of the three factors was well-reasoned and sound. First, Wells Fargo did not offer any legitimate explanation for its protracted and repeated delays (occurring over a period of two years) before it moved for relief in this case; second, Wells Fargo's intervention request came after the case has been administratively closed; and third, intervention would prejudice the FTC and the Receiver by, among things, seeking to upend a closed case and stipulated judgment and forcing parties to litigate across multiple actions.

1. <u>Wells Fargo Offers No Legitimate Reason for Its Delay</u>

 i. Wells Fargo has no explanation for its pre-*AMG Capital* delay.

The Receiver first made his intention to pursue claims against Wells Fargo public on October 22, 2019, when he "request[ed] the Court's permission to engage contingency counsel and s[ought] to extend the receivership for the singular and limited purpose of allowing the Receiver to pursue the litigation" against Wells Fargo. 1-SER-242. At the time the Receiver's intent to pursue Wells Fargo was made public, Wells Fargo already had a vested interest in the case: it was a "cooperative, third-party corporate witness that complied with court processes by freezing accounts and providing information relating to select accounts opened by [the *Triangle*] Defendants." Appellants' Br. at 6.

Wells Fargo knew about the Receiver's proposed lawsuit by April 2020 at the latest. That was the month in which the Receiver contacted Wells Fargo directly to initiate pre-litigation settlement discussions, and he provided the Bank with a copy of a draft complaint in that initial correspondence. 1-SER-35; 1-SER-39-41. At that point, Wells Fargo had direct notice that its interest (to the extent it has one, *see* Part II.A) in this case could be affected. But despite knowing that the Receiver intended to pursue claims against it based on his appointment in the *Apex* and *Triangle* actions, *see* 1-SER-35, 1-SER-39-41, Wells Fargo did not move to

intervene in *Triangle* until almost twenty months later, in November 2021. *See* 1-ER-6.

Contrary to what Wells Fargo now claims (*see* Appellant's Br. at 35-36), it did not need to wait until *AMG Capital* was decided to move. Wells Fargo had the right to challenge existing Ninth Circuit law, just as multiple defendants within this Circuit did pre-*AMG Capital*. *See*, *e.g.*, *FTC, Plaintiff, v. Electronic Payment Solutions of America, Inc., et al., Defendants*, 2019 WL 5884761 (Mot. for Recons. D. Ariz. Sept. 10, 2019) (seeking reconsideration of motion for judgment on the pleadings in light of the Seventh Circuit's holding in *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019), that Section 13(b) did not give FTC the ability to seek monetary restitution); *FTC, Plaintiff, v. Elegant Solutions, Inc., et al., Defendants*, 2020 WL 2125164 (Mot. to Dissolve Prelim. Inj. C.D. Cal. Jan. 20, 2020) (citing *Credit Bureau* and arguing that Section 13(b) does not authorize monetary relief); *FTC, Plaintiff, v. Jason Cardiff, et al., Defendants*, 2020 WL 8176097 (Mot. for Summ. J. C.D. Cal. Aug. 7, 2020) (same); *U.S., Plaintiff, v. Mylife.com, Inc., a Delaware Corporation, and Jeffrey Tinsley, Individually and as an Officer of Mylife.com, Inc., Defendants*, 2020 WL 8483884 (Mot. to Dismiss Compl. C.D. Cal. Oct. 1, 2020) (same). Litigants were already making (and had been making for years) the very arguments that Wells Fargo is now trying to

leverage. Particularly once the Supreme Court granted certiorari on July 9, 2020,[3] Wells Fargo had a good faith basis to intervene and make these arguments. Instead, it made the conscious decision to wait.

As discussed above in Part I.B, these earlier dates were ultimately irrelevant to the District Court's determination that Wells Fargo's motion to intervene was untimely, which was based on accepting, *arguendo*, Wells Fargo's premise that it could not have intervened until after *AMG Capital* was decided *and* the Receiver had filed suit against it. Nonetheless, the reality is that Wells Fargo had every opportunity to intervene well beforehand—it simply chose not to do so.

> ii. Wells Fargo could and should have moved to intervene immediately after the *AMG Capital* decision.

Wells Fargo and its counsel were on notice of *AMG Capital*'s holding almost as soon as the opinion was issued.[4] If Wells Fargo had really viewed *AMG Capital* as the watershed event that it now claims it to be, *see*, *e.g.*, Appellants' Br. at 34-37, it should have immediately moved to intervene in this action following

---

[3] *See AMG Capital Management, LLC v. Federal Trade Commission*, No. 19-508 (S. Ct.), *available at* https://www.supremecourt.gov/docket/docketfiles/html/public/19-508.html.

[4] For example, Wells Fargo's counsel in this action, McGuireWoods, immediately published a News Alert regarding the decision on its website dated April 22, 2021. *See* https://www.mcguirewoods.com/client-resources/Alerts/2021/4/us-supreme-court-rejects-federal-trade-commissions-restitution-authority.

that decision. Instead, Wells Fargo waited *six months* after issuance of the *AMG Capital* decision to move to intervene in the lower court action—even though Wells Fargo knew that the Receiver was still actively pursuing his claims against it during the entire time, both because Wells Fargo continued to negotiate with the Receiver (including at an in-person mediation session in April 2021) and because the Receiver filed suit against it in July 2021. 1-SER-35-41; 1-SER-129-216. Such delay merits denial of Wells Fargo's motion as untimely.

Courts require proposed intervenors to move to intervene with far greater alacrity than Wells Fargo did here. In *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398 (W.D. Wash. 1989), for example, the court denied leave to intervene where the proposed intervenor "failed to identify any specific facts pertaining to the nearly four month delay in filing" that could "explain[] its tardy prosecution of its claim." *Id*. at 405; *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (affirming district court's denial of intervention when proposed intervenor admitted to knowing about case when it was first filed, but decided to wait twenty-seven months to file its motion).

Wells Fargo's delay is particularly long here when compared to that of other potential intervenors who similarly tried and failed to blame their late requests for intervention on the *AMG Capital* opinion. These intervenors have had their motions deemed untimely despite moving much faster than Wells Fargo did here.

*See*, *e.g.*, *FTC v. Zurixx, LLC*, No. 2:19-CV-00713-DK-DAO, 2021 WL 3510804, at \*4 (D. Utah Aug. 10, 2021) (motion to intervene citing *AMG Capital* filed on May 11, 2021—less than three weeks after decision—denied as untimely, with court determining that "even if *AMG Capital Management* does weaken [the FTC's] case, it does not change the nature of [the intervenors]' interest in this proceeding"); *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 3290461, at \*4 (D. Ariz. Aug. 2, 2021) ("*Noland I*") (motion to intervene citing *AMG Capital* filed on June 1, 2021—less than six weeks after decision—denied as untimely, with court determining that "[a]lthough the Proposed Intervenors may view *AMG Capital* []as providing additional support for the arguments they wish to advance, they have been aware of those arguments for a very long time").

Wells Fargo tries to explain its delay in part by arguing that it could not have intervened until after the Receiver filed his lawsuit in July 2021, because until then its intervention would have been "premature." Appellants' Br. at 36. But the only case cited by Wells Fargo in support, *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 825 (9th Cir. 2021), doesn't move the needle. It identified no specific "point" when an intervention is premature (or not), and ultimately concluded that the intervenor moved timely based on a *far* shorter delay than the one at issue here. *See id.* ("Properly measured, the delay between when VW should have known that its interests might be inadequately protected by the parties (early-to mid-September

27

2019) and when VW filed its motion (September 27, 2019) was just a few weeks.").

      iii.    Wells Fargo could and should have moved to intervene immediately after the Receiver filed his lawsuit.

Wells Fargo appears to concede that it had some obligation to intervene beginning in July 2021, after the Receiver filed suit. *See* Appellants' Br. at 34 ("Wells Fargo could not intervene before commencement of the Wells Fargo Litigation."). But instead of moving to intervene promptly after the Receiver filed his lawsuit on July 8, *see* 1-SER-129-216, Wells Fargo weighed its options and decided to wait another *four months* before moving to intervene. *See* 1-ER-7 ("Wells Fargo waited . . . nearly four months from the date the Wells Fargo Litigation commenced to file the present motion. . . . As such, the Court does not find that the timeliness element has been satisfied.").

Wells Fargo could have intervened at any point in time after the Receiver filed his lawsuit; it simply chose not to do so. Especially where the proposed intervenor is a multinational bank represented by a national law firm, such delay is inexcusable. *See*, *e.g.*, *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009) (finding two-and-a-half-month delay unreasonable where proposed intervenor – "a sophisticated financial institution with lawyers on staff" – had threatened intervention on August 14 based on facts known in July, but

"inexplicably waited until October 2 before moving to intervene"); *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992) (affirming denial of request to intervene three months after notice of action); *FTC v. American Legal Distribs, Inc.*, 890 F.2d 363, 365 (11th Cir. 1989) (per curiam) (delay of two months); *see also Lewis*, 2010 WL 3735485, at *4.

 2. Wells Fargo's Motion Was Brought Late in the Proceedings

 The District Court correctly concluded that the fact that "the Court entered stipulated orders for permanent injunction and monetary judgment on May 20, 2019, and administratively closed the case on November 19, 2019 . . . weigh[ed] heavily against intervention."  1-ER-9.  The parties settled their claims and the case is closed, and this factor strongly favors the Receiver.  *See, e.g.*, *Snoqualmie Indian Tribe v. Washington*, No. 3:19-CV-06227-RBL, 2020 WL 4729178, at *1 (W.D. Wash. Apr. 16, 2020) ("The general rule [is] that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal, which is 30 days for most civil cases.") (internal quotation marks and citation omitted); *Montgomery v. United States*, No. 09-CV-1588 JLS WVG, 2012 WL 124854, at *8 (S.D. Cal. Jan. 17, 2012) ("[W]here a lot of water has passed under the bridge and the case has proceeded to settlement, this factor [stage of the proceedings] weighs heavily against finding [an intervenor's] motion is timely.").

3.      The Other Parties Will Be Prejudiced

The prejudice to both the Receiver and the FTC is significant and apparent

on its face.  As discussed above in Part I.C, the District Court correctly found that

the FTC, in particular, would be prejudiced because it "would no doubt be forced

to relitigate issues that have already been adjudicated in this case."  *See* 1-ER-10;

*see also Hawaii v. U.S. Department of Education*, 2010 WL 346445 at *3 (D.

Haw. 2010) (finding prejudice in having to relitigate old issues where the case is

already closed and the judgment had been entered a year earlier); *Calvert v.

Huckins*, 109 F.3d 843, 854 (9th Cir. 2016) (intervention after final judgment is

highly disfavored because it results in severe prejudice to the parties to the action).

At a minimum, the FTC would be forced to relitigate the issues underlying the

appointment orders that Wells Fargo challenges in order to reinstate the relevant

portions of those orders.

## II.      THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO MEETS NONE OF THE OTHER CRITERIA FOR INTERVENTION AS OF RIGHT

In addition to timely filing a motion to intervene, a potential intervenor must

have a significant protectable interest in the suit in which he is seeking to

intervene, and the disposition of the suit must potentially "impair or impede the

applicant's ability to protect its interest."  *See Donnelly v. Glickman*, 159 F.3d 405,

409 (9th Cir. 1998).  The District Court correctly found that Wells Fargo should

not be entitled to intervene as a matter of right because it failed to meet these additional requirements. *See* 1-ER-10-11.

## A. Wells Fargo Has Failed to Demonstrate a Significant Protectable Interest in This Case

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409. In its briefing here and below, Wells Fargo has defined its interest as "the basic due process right to litigate these [unspecified] issues so that, if it is to be sued by a representative of the district court, it be done based on orders consistent with current law." Appellants' Br. at 30. That vague description identifies neither the law under which that interest is protected nor the relationship between the purported interest "and the plaintiff's claims." *See Donnelly*, 159 F.3d at 409. The District Court, like the *Apex* court, found this to be plainly insufficient. *See* 1-ER-10 ("Wells Fargo fails to demonstrate that it has a significant protectable interest in this case '[f]or the same reason that Wells Fargo's litigation exposure fails to establish an injury sufficient to confer standing.'" (citing and quoting *Fed. Trade Comm'n v. Apex Cap. Grp., LLC*, No. CV189573JFWJPRX, 2022 WL 1060486, at *5 (C.D. Cal. Mar. 10, 2022)).

Wells Fargo's only citation in support of its theory of a significant protectable interest is to *Ciesniewski*, which dealt with Article III standing in the

context of a suit brought under the Fair Debt Collection Practices Act, in which the plaintiff had alleged that the defendants attempted to garnish his wages by claiming they owned his debt when they did not. *See Ciesniewski v. Aries Cap. Partners, Inc.*, No. 1:16-CV-817-WTL-TAB, 2018 WL 4491211, at *1 (S.D. Ind. Sept. 19, 2018). It was not an intervention case, and it assessed standing under a specific statutory scheme (the FDCPA) not at issue here.[5] *Ciesniewski* does not apply where the Receiver, acting in good faith, brought claims based on orders that *actually* appointed him and empowered him to do so.

In the context of making its argument under *Ciesniewski*, Wells Fargo also briefly cites *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4318466, at *1–4 (D. Ariz. Sept. 23, 2021) ("*Noland II*"), for the proposition that "post-*AMG Capital*, the scope of a receiver's duties is to prevent receivership entities from engaging in ongoing and future harm, not to pursue monetary relief." Appellant's Br. at 30. *Noland II* addressed two separate questions: whether or not a receivership premised on Section 13(b) had any purpose after *AMG Capital*, and whether or not the freeze of the defendants' assets should remain in place in light of the FTC's parallel claims under Section 19 of the FTC Act; it does not stand for

---

[5] Obviously, certain claims allow for Article III standing in connection with the cost of litigation—for example, a malicious prosecution claim. That is plainly not the case here.

the broad proposition that post-*AMG Capital*, a receiver's only utility lies in restraining defendants' unlawful conduct.  *See id. Noland II* is also distinguishable because the question of damages remained open.  Though "[t]he Individual Defendants' liability as to the § 19 claims ha[d] already been established via summary judgment[,] . . . the FTC's separate motion for summary judgment as to monetary remedies" had not yet been decided, and "the Individual Defendants ha[d] identified various grounds for challenging [the FTC's] damages methodology."  *Id.* at *5.  In contrast, this case is over and done.  Stipulated judgments were entered more than two years before Wells Fargo sought to intervene.

In sum, Wells Fargo has no significant protectable interest justifying intervention as of right.

**B.      Wells Fargo Failed to Demonstrate That It Would be Unable to Protect Its Interests if the Action were to Proceed Without Intervention**

The District Court also correctly concluded that Wells Fargo could adequately protect its interests outside of this litigation.  Its summation on this point captures precisely why Wells Fargo has no right to intervene:

> [N]othing precludes Wells Fargo from raising the same arguments and defenses in the Wells Fargo Litigation as the ones it seeks to assert here through intervention.  ***It remains unclear why the Court would need to reopen a closed case, potentially undo stipulated orders and judgments, and vacate its previous order, just so Wells Fargo can belatedly argue here what it can more effectively argue in the case actually brought against it.***

33

1-ER-10-11 (emphasis added). The District Court's conclusion that Wells Fargo was not without recourse to protect its alleged interests is correct, and it serves as another reason that the Order should be affirmed.

## III. THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO LACKS ARTICLE III STANDING

To intervene as of right, Wells Fargo must have Article III standing. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017). As the District Court correctly found, however, "Wells Fargo fail[ed] to establish that it suffered a concrete injury redressable through intervention." 1-ER-8. That remains the case nearly two years after the Receiver formally filed suit, as Wells Fargo is still unable to articulate a "concrete, particularized and actual or imminent" injury that it has suffered, let alone one which could be "redress[ed] by a favorable ruling" post-intervention. *See Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1234-35 (9th Cir. 2017). The District Court's ruling that Wells Fargo lacks Article III standing should be affirmed.

## A. Wells Fargo Lacks a Concrete, Particularized, and Actual or Imminent Injury

On appeal, Wells Fargo claims that the District Court ignored its "principal injury," which it frames as "the continuing harm directly imposed on Wells Fargo as a result of the district court's deputization of the Receiver to hire outside

counsel and sue Wells Fargo for monetary damages that the Receiver is no longer properly entitled to pursue." Appellant's Br. at 20. But having had at least *seven* opportunities to clarify that "harm"—the motions and replies in the lower court and *Apex* actions, the opening and reply briefs in the *Apex* appeal, and the opening brief in this case—Wells Fargo has completely failed to do so.

Wells Fargo is quite clear that its "harm" "is not the potential damages and liability stemming from the Receiver's unlawful pursuit that is Wells Fargo's concrete injury, but rather the unlawful pursuit itself." *Id.* at 21. In prior briefing, Wells Fargo alleged reputational injury and the costs of litigation as its injury-in-fact for purposes of standing. *See, e.g.*, 2-ER-37 n.4 ("Wells Fargo has established that it . . . has suffered an injury resulting from the unlawful order permitting the Receiver to pursue litigation against it, ***as well as the resulting reputational harm and litigation costs incurred from this lawsuit***." (emphasis added)). Wells Fargo appears to have abandoned these "damages" on appeal, presumably because they cannot serve as an injury for standing purposes. *See San Diego Unified Port District v. Monsanto Co.*, 309 F. Supp. 3d 854, 866-67 (S.D. Cal. 2018); *In re Bofl Holding, Inc., Shareholder Litigation*, 2018 WL 2731954 at *11 (S.D. Cal. 2018).

As a result, though, all Wells Fargo is left with is the nebulous harm of an "unlawful pursuit," which is the exact opposite of the kind of "concrete, particularized, and actual or imminent" injury required under Article III. *See*

*Oregon Prescription Drug Monitoring Program*, 860 F.3d at 1234-35.  It again

cites to *Ciesniewski* for support of its proposition, but *Ciesniewski* is inconsistent

with the premise for which Wells Fargo cites it.  Wells Fargo attempts to use that

case as support for its theory of an "unlawful pursuit" injury, but the standing

assessment in *Ciesniewski* was not conducted in the context of a motion for

intervention (rather, as a more straightforward standing inquiry), the case involved

a specific statutory mechanism, and the plaintiff alleged *actual* damages resulting

from the wrongful litigation.  *See Ciesniewski v. Aries Cap. Partners, Inc.*, No.

1:16-CV-817-WTL-TAB, ECF No. 43 (First Amended Complaint) (Oct. 28, 2016)

(alleging as damages "[d]eprivation of accurate and truthful information about the

owner of the debt and who the attorney defendants were representing, as required

by federal law," "[t]ime and money spent attempting to obtain truthful

information," and "[a]ggravation and distress").  The injuries alleged in

*Ciesniewski* are a world apart from that which Wells Fargo attempts to use for

purposes of Article III standing, and the District Court correctly held that "such

speculative injury is insufficient to confer standing here."  1-ER-7.

**B.    Wells Fargo's Alleged Injury Is Not Redressable by a Favorable Ruling**

Even if Wells Fargo had shown a cognizable injury, it failed to establish "a

likelihood that an injury-in-fact will be redressed by a favorable decision."  *San

Diego Unified Port Dist.*, 309 F. Supp. 3d at 867; *see also Spokeo, Inc. v. Robins*,

578 U.S. 330 (2016).  The District Court found as much for two reasons: "First, [because] the Wells Fargo Litigation has already been filed and litigation is well underway—it commenced in July 2021 and the parties have already begun discovery"; and second, because "***even if*** this Court granted its request to vacate the November 2019 Order authorizing the Receiver to sue Wells Fargo . . . the FTC's Complaint and request for a preliminary injunction, as well as its request for a TRO, sought relief under not only Section 13(b), *but also* Section 5 of ROSCA, which authorizes the FTC to pursue monetary relief on behalf of consumers for unfair or deceptive acts or practices."  1-ER-7-8 (first emphasis added).

The District Court's reasoning on both points was sound.  To the extent Wells Fargo is alleging any harm based on the existence of the lawsuit itself (such as, *e.g.*, reputational harm), the lawsuit has existed for nearly two years without any such "injury" materializing.  Wells Fargo's decision to drop its allegations of reputational damages (*compare* 2-ER-37 n.4, *with* Appellant's Br. at 20-22 (not referencing such harm)) confirms as much.  And as the District Court recognized, even if it were to somehow determine that the appointment orders were inappropriate with respect to Section 13(b) of the FTC Act, they would remain in place under Section 5 of ROSCA.

This is not "a new requirement that prospective intervenors prove a likelihood of success on the merits," Appellant's Br. at 25; rather, it is a simple

determination that *even if* Wells Fargo, as the prospective intervenor, succeeded on the merits, its "injuries" would not be redressable. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (internal quotation marks and citations omitted)); *compare*, *e.g.*, *Forest Stewardship Council-U.S. v. Off. of U.S. Trade Representative*, 405 F. App'x 144, 146 (9th Cir. 2010) ("Even if we were to order USTR to conduct a NEPA analysis, Appellants cannot point to any specific measures USTR can take…to mitigate any alleged environmental harm," and "Appellants therefore fail to show how the relief requested will make mitigation of their alleged injury likely, or even possible.").

Wells Fargo's arguments to the contrary are misleading, flat-out wrong, and/or frankly unpersuasive. A decision in Wells Fargo's favor would not "remove, or curtail, the financial basis at the foundation of the Wells Fargo Litigation," which is based on state law claims and premised on both compensatory damages and damages stemming from the stipulated judgments (which Wells Fargo is adamantly "*not seeking to modify*," Appellant's Br. at 40 (emphasis in original)). For the same reason, a decision in Wells Fargo's favor would not "limit the amount and kinds of damages the Receiver can actively pursue." And even if the District Court's decision "limit[ed] or reduce[d] the costs of Wells Fargo defending itself in the Wells Fargo Litigation" (it would not, for the same reason

that damages would be unaffected), or "extinguish[ed] Wells Fargo's due process concerns," neither is the kind of harm that can serve as an injury-in-fact (*see* discussion *supra*), making the question of redressability irrelevant.

The District Court's conclusion that "Wells Fargo fail[ed] to establish that it suffered a concrete injury redressable through intervention," 1-ER-8, as required for Article III standing, was correct and should be affirmed.

## IV. THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO WAS NOT ENTITLED TO PERMISSIVE INTERVENTION

A denial of a motion for permissive intervention is reviewed for abuse of discretion. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). Permissive intervention may be granted when "(1) [there are] independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common," *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009), but "even if these requirements are met, the district court still has discretion to deny intervention," 1-ER-8 (citing *Perry*).

Here, the District Court acted well within its discretion when denying Wells Fargo's request for permissive intervention. The District Court "exercise[d] its discretion and denie[d] Wells Fargo's request for permissive intervention under Rule 24(b)" on timeliness grounds. 1-ER-11. The timeliness factor, "[i]n the context of permissive intervention, . . . [is] analyze[d] . . . more strictly

than . . . with intervention as of right." *Id.* (citing and quoting *United States v. Oregon*, 745 F.2d at 552). The District Court did not abuse its discretion when it concluded that Wells Fargo's motion was untimely because "[t]his case has long been closed, and even after the *AMG* decision was issued and the Wells Fargo Litigation commenced, Wells Fargo still waited at least four months to bring this motion." 1-ER-11. The District Court's denial of Wells Fargo's alternative request for permissive intervention should be upheld.

## CONCLUSION

For the foregoing reasons, the Receiver respectfully submits that the District Court's Order should be affirmed in all respects.

Dated:  May 8, 2023                        Respectfully submitted,

MCNAMARA SMITH LLP

By:   /s/ Logan D. Smith
Logan D. Smith
Cornelia J. B. Gordon
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: (619) 269-0400
lsmtih@mcnamarallp.com
cgordon@mcnamarallp.com
*Attorneys for Receiver-Appellee*
*Thomas W. McNamara*

## STATEMENT OF RELATED CASES

I hereby certify that I am unaware of any related cases currently pending in this Court.

Dated: May 8, 2023

/s/ Logan D. Smith
Logan D. Smith
*Attorney for Receiver-Appellee*
*Thomas W. McNamara*

## **CERTIFICATE OF COMPLIANCE**

I am the attorney for Receiver-Appellee, Thomas W. McNamara.

This brief contains 9,369 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated: May 8, 2023

/s/ Logan D. Smith
Logan D. Smith
*Attorney for Receiver-Appellee*
*Thomas W. McNamara*

# ADDENDUM

# STATUTES AND REGULATIONS

Fed. R. Civ. P. 24 provides:

(a) INTERVENTION OF RIGHT.

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General*. On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency*.  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order

43

administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice*.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) NOTICE AND PLEADING REQUIRED.  A motion to intervene must be served on the parties as provided in Rule 5.  The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

Dated: May 8, 2023 /s/ Logan D. Smith
Logan D. Smith