# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TRIANGLE MEDIA CORPORATION, et al.,

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,
proposed Intervenors,

*Movants-Appellants,*

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

On Appeal from the United States District Court
for the Southern District of California
No. 3:18-cv-01388-LAB-WVG
Hon. Larry Alan Burns

## RECEIVER-APPELLEE'S
## SUPPLEMENTAL EXCERPTS OF RECORD
Volume 2 of 2 – Pages 2-SER-253 to 2-SER-316

Logan D. Smith (SBN 212041)
Cornelia J. B. Gordon (SBN 320207)
MCNAMARA SMITH LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
lsmith@mcnamarallp.com
cgordon@mcnamarallp.com
*Attorneys for Receiver-Appellee*
*Thomas W. McNamara*

SAMANTHA GORDON (IL Bar No. 6272135)
sgordon@ftc.gov
MATTHEW H. WERNZ (IL Bar No. 6294061)
mwernz@ftc.gov
Federal Trade Commission
230 South Dearborn, Suite 3030
Chicago, Illinois 60604
312.960.5623 (Gordon)
312.960.5596 (Wernz)
ATTORNEYS FOR PLAINTIFF

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No.: 18-cv-1388-MMA (NLS) |
| Plaintiff, | **PLAINTIFF FEDERAL TRADE COMMISSION'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT** |
| v. | |
| TRIANGLE MEDIA CORPORATION; JASPER RAIN MARKETING LLC; HARDWIRE INTERACTIVE INC.; and BRIAN PHILLPS, | Judge:   Hon. Michael M. Anello<br>Hearing Date:   December 3, 2018<br>Hearing Time:  2:30 p.m.<br>Courtroom: 3D |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on December 3, 2018, at 2:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 3D of the United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, CA 92101, Plaintiff Federal Trade Commission ("FTC"), will and hereby does move the Court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for an order granting leave to file the FTC's Amended Complaint for Permanent Injunction and Other Equitable Relief ("Amended Complaint").[1]

This motion is based on this notice of motion and motion, the accompanying memorandum of points and authorities, exhibits hereto, the files and records in this case, and such further evidence and argument as may be presented at any hearing on this motion.

On October 12, 2018, FTC counsel emailed a copy of the proposed amended complaint to defense counsel, and requested the parties' consent pursuant to Fed. R. Civ. P. 15(a)(2) to the filing of the proposed amended complaint.  As of the filing of this motion, FTC counsel has not received a response to that request.

Dated: October 19, 2018                    Respectfully submitted,


                                           /s/Samantha Gordon
                                           Samantha Gordon
                                           Attorney for Plaintiff
                                           Federal Trade Commission

---

[1]     A copy of the FTC's Amended Complaint along with a redline copy, are attached to this motion as Exhibit 1.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   Background

The FTC filed its Complaint for Permanent Injunction and Other Equitable Relief in this case on June 25, 2018 to stop Defendants' deceptive and unfair marketing of various products through negative option offerings.  (Dkt. # 1.)

As alleged in the Complaint, Defendants deceptively offer skincare products, electronic cigarettes, and dietary supplements online through trial offers for just the cost of shipping and handling, typically $4.95. (*Id.* at ¶ 12.)  Defendants charge consumers who accept these trial offers the full price of the offers and enroll them in an ongoing continuity program.  (*Id.*)  Defendants also charge consumers for additional products and enroll them in additional continuity programs related to these products.  (*Id.*)  The FTC further alleges in its Complaint that these full-price charges and continuity program enrollments are not adequately disclosed to consumers.  (*Id.*)  As alleged, Defendants' conduct violates Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), Section 4 of Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8403, Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).  (*Id.* at ¶¶ 35-64.)

To stop this ongoing harm, the FTC moved *ex parte* for a temporary restraining order (Dkt. # 5), which this Court granted on June 29, 2018 (Dkt. # 11 (the "TRO")).  In entering the TRO, the Court enjoined Defendants' illegal practices and froze their assets, appointed a Receiver over the corporate Defendants, and allowed the FTC immediate access to Defendants' business premises.  After briefing and oral argument, the Court entered a Preliminary Injunction on August 24, 2018, continuing the injunctive relief for the duration of the case.  (Dkt. # 75.)

1    On Setember 24, 2018, FTC counsel submitted to Magistrate Judge Stormes

2    a Rule 26(f) report, which was stipulated, and stated, in part, that FTC counsel

3    anticipated moving to amend the complaint by October 31, 2018.  At present, there

4    are no deadlines related to the amendment of the pleadings.

5    Since filing its Complaint, the FTC has identified an additional company

6    that is part of Defendants' common enterprise and an additional individual who

7    controlled that enterprise and, in particular, the illegal conduct at issue in this case.

8    The additional individual the FTC seeks to add as a defendant is Devin Keer, who

9    was been involved in this litigation already.  Earlier in this case, proposed

10    defendant Keer submitted multiple declarations regarding the operations of

11    Defendant Hardwire Interactive Inc. (Dkt. # 26.2, 35.1).  The Court noted in its

12    opinion granting the preliminary injunction that "Keer's role was the 'mastermind,

13    marketer, and businessman.'" (Dkt. #74, at 21.)  The additional company that the

14    FTC would add as a defendant in its Amended Complaint–Global Northern

15    Trading Ltd.—is subject to the Court-ordered Receivership and has had its assets

16    frozen by virtue of the Receiver's determination that it is appropriately part of the

17    Receivership.  (*See* Preliminary Report of Temporary Receiver, Dkt. #30, at 5.)

18    The company played an instrumental role in the common enterprise, receiving

19    consumer payments via the other corporate Defendants, paying the operation's

20    expenses, and transferring the remaining funds to Defendant Hardwire Interactive

21    Inc.  (*See* Dkt. #74, at 23.)

22    The FTC seeks to amend the Complaint to name these two additional

23    defendants.

24    **II.    Argument**

25    Rule 15 of the Federal Rules of Civil Procedure provides that a "court

26    should freely give leave" to amend a complaint "when justice so requires."  Fed. R.

27    

28    

FTC's Motion for Leave to File Amended Complaint
Case No. 18-cv-1388-MMA (NLS)

1   Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  The policy

2   favoring leave to amend a complaint is "to be applied with extreme liberality."

3   *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001)

4   (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th

5   Cir.1990)); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051

6   (9th Cir. 2003) (quoting *Owens*, 244 F.3d at 712).  As the Supreme Court has

7   stated:

8           In the absence of any apparent or declared reason—such as undue
            delay, bad faith or dilatory motive on the part of the movant, repeated
9           failure to cure deficiencies by amendments previously allowed, undue
            prejudice to the opposing party by virtue of allowance of the
10          amendment, futility of amendment, etc.—the leave sought should, as
            the rules require, be "freely given."
11

12  *Foman*, 371 U.S. at 182.

13          Here, there is no reason to deny the FTC's request for leave to file its

14  Amended Complaint.  This is the FTC's first request for leave to amend, and at

15  present there are no deadlines for a hearing on a motion to amend the pleadings or

16  add parties.  In addition, no prejudice will result to Defendants from the filing of

17  the Amended Complaint.  FTC counsel notified the Court and Defendants of its

18  intent to seek leave to amend in a timely fashion.  A brief filed within three weeks

19  of its filing of the Complaint specifically referred to counsel's intent to amend the

20  complaind and to add Keer as a defendant.  (Dkt. #28 at 14 n. 10.)  Similarly, the

21  parties received prompt notice of proposed defendant Global Northern Trading

22  Ltd.'s involvement in this litigation, thanks to the Receiver's designation of that

23  entity as part of the Receivership.  (Dkt. #30 at 5.)  Discovery is just commencing,

24  leaving Defendants ample time to obtain discovery relating to the Amended

25  Complaint.  Finally, there is no bad faith on the part of the FTC.  The Amended

26  Complaint is based on evidence recently obtained by the FTC, and the FTC's

27

28                                          FTC's Motion for Leave to File Amended Complaint
                                                       Case No. 18-cv-1388-MMA (NLS)

4

1   Amended Complaint seeks to enjoin additional parties responsible for the illegal

2   conduct at the core of this case.

3   **III.   <u>Conclusion</u>**

4       For the foregoing reasons, the FTC respectfully requests that the Court grant

5   the FTC leave to file the attached Amended Complaint.

6

7   Dated:  October 19, 2018

8

9                                   Respectfully submitted,

10                                  <u>/s/Samantha Gordon</u>

11                                  Samantha Gordon

12                                  Attorney for Plaintiff
                                    Federal Trade Commission

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    FTC's Motion for Leave to File Amended Complaint
                                    Case No. 18-cv-1388-MMA (NLS)

## **CERTIFICATE OF SERVICE**

My name is Samantha Gordon.  I am an attorney employed by the Federal Trade Commission, 230 South Dearborn Street, Suite 3030, Chicago, Illinois 60604.  On Friday, October 19, 2018, I filed the attached Plaintiff Federal Trade Commission's Notice of Moiton and Motion For Leave to File Amended Complaint and served it:

by FedEx upon:
> Global Northern Trading Ltd.
> 205-2964 Trethewey St.
> Abbotsford, BC V2T 6P4, Canada
> *Proposed Defendant*

and by the Court's CM/ECF filing system upon:
> Frederick K. Taylor (fred.taylor@procopio.com)
> Nicholas Kawuka (nicholas.kawuka@procopio.com)
> Matthew B. Shields (matthew.shields@procopio.com)
> *Attorneys for Defendants Triangle Media Corporation, Jasper Rain Marketing LLC, and Brian Phillips*

> Ari N. Rothman (anrothman@venable.com)
> Gerald S. Sachs (gsachs@venable.com)
> Stephen R. Freeland (srfreeland@vehable.com)
> Witt W. Chang (wwchang@venable.com)
> *Attorneys for Defendant Hardwire Interactive, Inc. and proposed Defendant Devin Keer*

> Andrew W. Robertson (arobertson@mcnamarallp.com)
> Edward Chang (echang@mcnamarallp.com)
> *Attorneys for Court-appointed Receiver Thomas W. McNamara*

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of October, 2018, at Chicago, Illinois.

/s/ Samantha Gordon

Samantha Gordon

FTC's Motion for Leave to File Amended Complaint
Case No. 18-cv-1388-MMA (NLS)

6

1  ALDEN F. ABBOTT
2  General Counsel

3  SAMANTHA GORDON (IL Bar No. 6272135)
4  sgordon@ftc.gov
   MATTHEW H. WERNZ (IL Bar No. 6294061)
5  mwernz@ftc.gov
   Federal Trade Commission
6  230 South Dearborn, Suite 3030
7  Chicago, Illinois 60604
   312.960.5623 (Gordon)
8  312.960.5596 (Wernz)
9  ATTORNEYS FOR PLAINTIFF

10
                    **UNITED STATES DISTRICT COURT**
11
                 **SOUTHERN DISTRICT OF CALIFORNIA**
12

13

14  FEDERAL TRADE COMMISSION,          Case No.: 18-cv-1388-MMA (NLS)
                                       FIRST AMENDED COMPLAINT
15                        Plaintiff,

16  v.                                 **FIRST AMENDED COMPLAINT**
                                       **FOR PERMANENT INJUNCTION**
17  TRIANGLE MEDIA CORPORATION, a      **AND OTHER EQUITABLE RELIEF**
    Delaware corporation, also doing business
18  as Triangle CRM, Phenom Health, Beauty
    and Truth, and E-Cigs;             Judge:  Hon. Michael M. Anello
19

20  JASPER RAIN MARKETING LLC, a
    California limited liability company, also
21  doing business as Cranium Power and
22  Phenom Health;

23  HARDWIRE INTERACTIVE INC., a
24  British Virgin Islands corporation, also
    doing business as Phenom Health, Beauty
25  and Truth, and E-Cigs;

26
    GLOBAL NORTHERN TRADING
27  LIMITED, a Canadian corporation;

28
                                1

EXHIBIT 1

                                        18-cv-1388-MMA (NLS)
                                        FIRST AMENDED COMPLAINT

2-SER-261

BRIAN PHILLIPS, individually and as an officer of Triangle Media Corporation;

and

DEVIN KEER, individually and as an officer of Triangle Media Corporation and Hardwire Interactive,

                                                        Defendants.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), Section 5 of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

## JURISDICTION AND VENUE

2

EXHIBIT 1

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b); and Section 5(a) of ROSCA, 15 U.S.C. § 8404(a).

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), (c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

**PLAINTIFF**

4.     The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which prohibits certain methods of negative option marketing on the Internet, as well as the EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, ROSCA, and the EFTA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 8404, and 1693o(c).

**DEFENDANTS**

6.     Defendant **Triangle Media Corporation** ("Triangle Media"), also doing business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs, is a Delaware

3

corporation registered at 108 West 13th Street, Wilmington, Delaware 19801.  Its

principal place of business was 1350 Columbia Street, San Diego, California 92101 until

May 17, 2018, when it filed paperwork with the California Secretary of State changing its

principal place of business to 4519 George Road, Tampa, Florida 33634.  At all times

material to this complaint, acting alone or in concert with others, Triangle Media

Corporation has advertised, marketed, distributed, or sold skincare products, electronic

cigarettes, and dietary supplements to consumers throughout the United States.  Triangle

Media transacts or has transacted business in this district and throughout the United

States.

7.      Defendant **Jasper Rain Marketing LLC** ("Jasper Rain"), also doing

business as Cranium Power and Phenom Health, is a California limited liability company

registered and with its principal place of business at 4370 La Jolla Village Drive, Suite

400, San Diego, California 92122.  At all times material to this complaint, acting alone or

in concert with others, Jasper Rain has advertised, marketed, distributed or sold dietary

supplements to consumers throughout the United States.  Jasper Rain transacts or has

transacted business in this district and throughout the United States.

8.      Defendant **Hardwire Interactive Inc.** ("Hardwire Interactive"), also doing

business as Phenom Health, Beauty and Truth, and E-Cigs, is a British Virgin Islands

corporation with its principal place of business at R.G. Hodge Plaza 3/Floor, Upper Main

Street, Wickham's Cay 1, Road Town, Tortola, British Virgin Islands.  At all times

material to this complaint, acting alone or in concert with others, Hardwire Interactive

4

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

2-SER-264

has advertised, marketed, distributed or sold skincare products, electronic cigarettes, and dietary supplements to consumers throughout the United States.  Hardwire Interactive transacts or has transacted business in this district and throughout the United States.

9.     Defendant **Global Northern Trading Limited** ("Global Northern"), is a Canadian corporation with its principal place of business at 205-2964 Trethewey St., Abbotsford, British Columbia, V2T 6PA, Canada.  At all times material to this complaint, acting alone or in concert with others, Global Northern has advertised, marketed, distributed or sold skin care products, electronic cigarettes, and dietary supplements to consumers throughout the United States.  Global Northern transacts or has transacted business in this district and throughout the United States.

10.    Defendant **Brian Phillips** is an owner and officer of Triangle Media.  At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of **Triangle Media**, **Jasper Rain**, **Hardwire Interactive**, and **Global Northern**, including the acts and practices set forth in this Complaint.  Defendant Phillips resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.  Among other things, Defendant Phillips has had the authority to control the advertising and marketing of Defendants' products, including by registering websites used to track Defendants' online advertising and marketing activities; the processing of payments from consumers victimized by Defendants' practices, including by having signatory authority over bank accounts used

5

EXHIBIT 1

2-SER-265

to receive and process consumer payments; and Defendants' customer service operations, including Defendants' restrictive cancellation and refund policies.

11.     Defendant **Devin Keer** has been an owner and officer of Triangle Media Corporation and Hardwire Interactive.  At all times relevant to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of **Triangle Media**, **Jasper Rain**, **Hardwire Interactive**, and **Global Northern,** including the acts and practices set forth in this Complaint.  Defendant Keer, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States. Among other things, Defendant Keer has had the authority to control the advertising and marketing of Defendants' products, including overseeing the Corporate Defendants' overall business strategy and operations, paying for registration of the deceptive websites, entering into contracts with advertisers, and managing distribution and fulfillment of Defendants' products.

12.     Defendants **Triangle Media**, **Jasper Rain, Hardwire Interactive**, and **Global Northern** (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of the law alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations and that use common business names and commingle funds.  Because these Corporate

6

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Defendants Phillips and Keer have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

COMMERCE

13.    At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

DEFENDANTS' BUSINESS PRACTICES

14.    Defendants advertise, market, promote, distribute, and sell skincare products, electronic cigarettes, and dietary supplements online.  Defendants claim to offer trials of these products for just the cost of shipping and handling, typically $4.95 or less. Instead, Defendants charge consumers who accept the trial offers as much as $98.71 for a single shipment and enroll them in a continuity program costing the same amount on a monthly basis.  Additionally, Defendants frequently also charge consumers for additional products and enroll consumers in continuity programs related to these additional products, all without the consumers' knowledge or consent.  Consumers who discover Defendants' charges and seek a refund often find that they are unable to get their money back because of Defendants' undisclosed refund restrictions.  Defendants have brought in tens of millions of dollars through their deceptive trial offers.

7

EXHIBIT 1

18-cv-1388-MMA (NLS)<br>FIRST AMENDED COMPLAINT

*Defendants' Deceptive Trial Offers*

15.    Defendants advertise through third-party websites, blog posts, banner advertisements, and surveys, offering consumers a "trial" of products such as "Wrinkle Rewind," "ProVapor," "Cerebral X," "Test X Core," and "Garcinia Clean XT." These advertisements often say that consumers can receive a "trial" for just the cost of shipping and handling. When consumers click on these advertisements, they are directed to Defendants' websites, which include findbeautyandtruth.com, trycerebralx.com, tryphenomcore.com, tryprovapor.com, and trygarciniaclean.com.

16.    Defendants' websites offer consumers a "RISK FREE" trial of one of Defendants' products. The websites create a sense of urgency by telling consumers there is a limited supply of the trial product and that they need to act quickly. Representative statements include:

- Warning: Due to extremely high media demand, there is limited supply of [PRODUCT] in stock as of [today's date]. HURRY!

- ONLY [X] NUMBER OF TRIALS AVAILABLE NOW!

- ATTENTION: Due to high demand from recent media coverage we can no longer guarantee supply. As of [TODAY'S DATE] we currently have product in-stock and will ship within 24 hours of purchase.

The websites also prominently display the logos of news organizations such as CBS News, NBC, Fox News, and CNN, suggesting that these products have been featured on those outlets.

8

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

17.     Consumers who are interested in the trial offer are asked to provide their contact information.  Upon doing so, consumers are directed to a payment page on which Defendants request their credit or debit card information and represent that consumers need to pay only a shipping and handling charge, typically $4.95 or less, to receive a trial of Defendants' product.  Defendants' websites prominently state that the "Total" cost of the product is equal to the cost of shipping and handling.  As shown in the screenshot below of Defendants' website for Cerebral X, for example, Defendants list the shipping cost of $4.95 and highlight the "Total," also $4.95, in yellow:

**Figure 1**

18.    Similarly, in the following screenshots of Defendants' website for Garcinia Clean XT as depicted on a mobile device, Defendants list the "Price" of the product as $0.00, highlighted in green, the $4.95 shipping and handling charge, and a "Total" of $4.95 in bold, followed by a request for billing information when consumers scroll down on their mobile device:

10

EXHIBIT 1




**Figure 2**

19.  Once consumers enter their billing information, they are asked to place their order by clicking a brightly colored button labeled either "GET MY RISK FREE TRIAL" or "CONTINUE."

20.  Unbeknownst to consumers, 15 days after they click "GET MY RISK FREE TRIAL" or "CONTINUE," Defendants will charge consumers the full price of the product—as much as $98.71.

21.  Defendants also enroll consumers who accept the trial offer into a continuity program.  Under the continuity program, Defendants send consumers additional shipments of the product each month and charge consumers' credit or debit cards the full price of each product shipped.

11

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

22.    Consumers typically only learn that the trial was not free and that they have been enrolled in a continuity program when they see Defendants' monthly charges on their credit card or bank statements.

23.    As Figs. 1 and 2 illustrate, Defendants either hide the terms of their offer in barely discernable print far below the colorful graphics and text where consumers input their personal and payment information and continue with their purchase, or bury them in a separate "Terms & Conditions" hyperlink.  Those terms typically reveal that the consumer has a limited time to cancel the trial, usually 15 days, or the consumer will be charged the full price of the product.  The terms also state that the consumer will receive and be charged for additional shipments of the product every 30 days until they cancel.

24.    On the desktop page depicted in Fig. 1, consumers would not encounter these terms unless they were to look closely at the small, faint type far below where they enter their payment information and click "GET MY RISK FREE TRIAL."  On the mobile pages depicted in Fig. 2, to see the terms, consumers would need to click on the separate "terms and conditions" hyperlink or scroll past the large, brightly colored "CONTINUE" button.  But there is nothing on the billing screen in Fig. 2 to indicate that consumers should look beyond the "CONTINUE" button to find additional content below.

25.    As a result of these inadequate disclosures, Defendants' websites misrepresent the total cost of Defendants' trial products, and fail to adequately apprise consumers that they are being enrolled in a continuity program.

12

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

*Defendants' Deceptive Order Completion Page*

26.    After clicking "GET MY RISK FREE TRIAL" or "CONTINUE" to order a trial of one of Defendants' products, consumers are then directed to a webpage that indicates that their order is not complete.  For example, consumers who think they already have ordered a trial of Defendants' brain supplement Cerebral X are taken to a page on the same website that has a "Cerebral X" banner at the top but that indicates in large, red type directly beneath the banner, "Wait!  Your Order is Not Complete!" That page then offers a "FREE" trial of the product VitaMood+, which, the ad indicates, should be "paired together" with Cerebral X.

13

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Figure 3**

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

27.     As noted in Fig. 3, Defendants represent that consumers have not completed their order of the initial trial product until they click the "COMPLETE CHECKOUT" button located under the advertisement for the second product.

28.     But when consumers click the "COMPLETE CHECKOUT" button, they are deemed by Defendants to have ordered a trial of both the original product and the second product.  If consumers do not click the "COMPLETE CHECKOUT" button, however, they will still receive a trial of the first product.

29.     Defendants represent that the second product is free, but in reality, the consumer will be charged the full price of the product 18 days later.  Defendants also will enroll consumers who click the "COMPLETE CHECKOUT" button in a second continuity program, meaning that consumers also will receive and be charged for monthly shipments of the second product.

30.     As with Defendants' initial offers, the "order completion" pages also fail to disclose important terms and conditions of the offer.  For example, the order page for the VitaMood+ offer (Fig. 3) does not disclose adequately that Defendants will charge consumers the full price of the product after 18 days, and will also enroll them in a continuity program.  These terms only appear in small, faint print well below the prominent "COMPLETE CHECKOUT" button.

31.     Below the "COMPLETE CHECKOUT" button, and below a line-break, in tiny, faint print, Defendants include a hyperlink that consumers can click to decline the second offer.  For example, the order page for the VitaMood+ offer, depicted in Fig. 3

15

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

above, includes a faint hyperlink that says "No, I don't want to improve my mood." Consumers who click on this hyperlink are then redirected to a series of web pages that make similar deceptive offers.

32.     Once consumers place an order for one or more of Defendants' products, they receive a confirmation email that either does not list any charges associated with the products or lists only the shipping and handling charge.  The confirmation email thus reinforces the false impression from the websites that, other than the obligation to pay shipping and handling, the trial product is free.

### Defendants' Restrictive Cancellation and Refund Practices

33.     In numerous instances, consumers who ordered Defendants' trial products report that Defendants subsequently charge them without their knowledge or consent for the full price of these products and sign them up for one or more continuity programs. Many consumers subsequently attempt to cancel their enrollment in the continuity program and to obtain a refund of Defendants' unauthorized charges, but they often have difficulty cancelling and obtaining a refund.

34.     Consumers who call Defendants to cancel the trial and continuity program often have difficulty reaching Defendants' customer service representatives, despite calling numerous times.  Even if they are able to reach a customer service representative to request cancellation, consumers report that they often continue to receive and be charged for shipments of Defendants products even after cancelling.  The same is sometimes true when consumers use Defendants' "easy" online cancellation.

16

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

35.    Consumers who request a refund are often told that they cannot get one because, according to Defendants, their "terms and conditions" require that refund requests be made within 30 days.  Where the refund period has not lapsed, consumers are told they can only get a refund if the trial product is returned unopened and at the consumer's expense.  Often, consumers who send back the trial product unopened and within the refund period are nevertheless refused a refund, with Defendants' customer service representative telling them that Defendants never received the return shipment.

36.    In many instances, consumers attempt to get their money back by initiating chargebacks with their credit card companies.  In other instances, consumers receive refunds directly from Defendants only after they complain to the Better Business Bureau or a state regulatory agency.  Even in those instances, however, Defendants have not always issued full refunds, but have refunded only the monthly continuity program charges.

## VIOLATIONS OF THE FTC ACT

37.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

38.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

39.    Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and

17

EXHIBIT 1

that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

## COUNT I

### *Misrepresentations of the Price of the Trial Offers*

40.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants will charge consumers at most only a shipping and handling fee for a one-time shipment of Defendants' product.

41.    In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 40 of this Complaint, Defendants have charged consumers more than a shipping and handling fee for one or more shipments of Defendants' product.

42.    Therefore, Defendants' representation described in paragraph 40 of this Complaint, is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### *Misrepresentation that Order is Not Complete*

43.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements to consumers who have already ordered a trial of one of Defendants'

18

EXHIBIT 1

2-SER-278

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers' initial orders are not complete and that clicking the "COMPLETE CHECKOUT" button will merely complete their initial orders.

44.     In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 43 of this Complaint, consumers' initial orders were complete, and clicking the "COMPLETE CHECKOUT" button ordered an additional product and enrolled consumers in a continuity plan for that product.

45.     Therefore, Defendants' representation described in paragraph 43 of this Complaint is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### *Failure to Disclose Adequately Material Terms of Trial Offer*

46.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that consumers can obtain a trial of Defendants' product for the cost of shipping and handling, or for free.

47.     In numerous instances in which Defendants have made the representation set forth in Paragraph 46 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

(a)     The total cost of the product;

19

EXHIBIT 1

(b) That Defendants will charge consumers the total cost of the trial product upon the expiration of the trial period, typically 15 days;

(c) That Defendants will automatically enroll consumers in a continuity plan with additional charges; and

(d) The cost of the continuity plan, and the frequency and duration of the recurring charges.

48. Defendants' failure to disclose, or disclose adequately, the material information described in Paragraph 47, above, in light of the representation described in Paragraph 46, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT IV

### *Unfairly Charging Consumers Without Authorization*

49. In numerous instances, Defendants have charged consumers without their express informed consent.

50. Defendants' actions cause or are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

51. Therefore, Defendants' practices as described in Paragraph 49, above, constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. §§ 45(a) and 45(n).

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

20

EXHIBIT 1

52.     In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C. §§ 8401-05, which became effective on December 29, 2010.  Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business."  Section 2 of ROSCA, 15 U.S.C. § 8401.

53.     Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges.  *See* 15 U.S.C. § 8403.

54.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer."  16 C.F.R. § 310.2(w).

55.     As described above, Defendants advertise and sell Defendants' skincare, electronic cigarette, and dietary supplement products to consumers through a negative option feature as defined by the TSR.  *See* 16 C.F.R. § 310.2(w).

21

EXHIBIT 1

56.    Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, and therefore constitutes an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT V**

*Violation of ROSCA – Auto-Renewal Continuity Plan*

57.    In numerous instances, in connection with the selling of their products on the Internet through a negative option feature, Defendants have failed to:

(a)    clearly and conspicuously disclose all material terms of the negative option feature of the product transaction before obtaining the consumer's billing information;

(b)    obtain the consumer's express informed consent to the negative option feature before charging the consumer's credit card, debit card, bank account, or other financial account for the transaction; and/or

(c)    provide simple mechanisms for a consumer to stop recurring charges for products to the consumer's credit card, debit card, bank account, or other financial account.

58.    Defendants' practices as set forth in Paragraph 57 are a violation of Section 4 of ROSCA, 15 U.S.C. § 8403, and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, 15 U.S.C. § 8404(a), and therefore constitute

22

EXHIBIT 1

2-SER-282

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

an unfair or deceptive act or practice in or affecting commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E**

59.     Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized" electronic fund transfer from a consumer's account may be "authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

60.     Section 903(10) of the EFTA, 15 U.S.C. § 1693a(10), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

61.     Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer.  The person that obtains the authorization shall provide a copy to the consumer."

62.     Section 1005.10 of the Consumer Financial Protection Bureau's Official Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b), cmt. 5, Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization."  The Official Staff Commentary to Regulation E further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable."  12 C.F.R. § 1005.10(b), cmt. 6, Supp. I.

EXHIBIT 1

## COUNT VI

### *Unauthorized Debiting from Consumers' Accounts*

63.     In numerous instances, Defendants debit consumers' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated from consumers for preauthorized electronic fund transfers from their accounts, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

64.     Further, in numerous instances, Defendants debit consumers' bank accounts on a recurring basis without providing a copy of written authorization signed or similarly authenticated by the consumer for preauthorized electronic fund transfers from the consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

65.     Under Section 918(c) of the EFTA, 15 U.S.C. § 1693o(c), a violation of the EFTA and Regulation E constitutes a violation of the FTC Act.

66.     Accordingly, by engaging in violations of the EFTA and Regulation E as alleged in Paragraphs 63 and 64 of this Complaint, Defendants have engaged in violations of the FTC Act.  15 U.S.C. § 1693o(c).

### CONSUMER INJURY

67.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and the EFTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.

24

EXHIBIT 1

Absent injunctive relief by this Court, Defendants are likely to continue to injure

consumers, reap unjust enrichment, and harm the public interest.

### THIS COURT'S POWER TO GRANT RELIEF

68.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to

grant injunctive and such other relief as the Court may deem appropriate to halt and

redress violations of any provision of law enforced by the FTC.  The Court, in the

exercise of its equitable jurisdiction, may award ancillary relief, including rescission or

reformation of contracts, restitution, the refund of monies paid, and the disgorgement of

ill-gotten monies, to prevent and remedy any violation of any provision of law enforced

by the FTC.

69.    Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of the EFTA, 15

U.S.C. § 1693o(c), authorize this Court to grant such relief as the Court finds necessary

to redress injury to consumers resulting from Defendants' violations of the FTC Act,

ROSCA, and the EFTA, including the rescission or reformation of contracts and the

refund of money.

### PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C.

§ 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 917(c) of the EFTA, 15 U.S.C.

§ 1693o(c), and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such temporary and preliminary injunctive and ancillary

relief as may be necessary to avert the likelihood of consumer injury during

25

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

the pendency of this action and to preserve the possibility of effective final

relief, including but not limited to temporary and preliminary injunctions, an

order freezing assets, immediate access, and appointment of a receiver;

B.   Enter a permanent injunction to prevent future violations of the FTC Act,

ROSCA, and the EFTA by Defendants;

C.   Award such relief as the Court finds necessary to redress injury to

consumers resulting from Defendants' violations of the FTC Act, ROSCA,

and the EFTA, including but not limited to, rescission or reformation of

contracts, restitution, the refund of monies paid, and the disgorgement of ill-

gotten monies; and

D.   Award Plaintiff the cost of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated: October 19, 2018                    Respectfully submitted,

ALDEN F. ABBOTT
General Counsel


<u>/s/Samantha Gordon</u>
Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
sgordon@ftc.gov
mwernz@ftc.gov
312-960-5623 (Gordon)

26

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

312-960-5596 (Wernz)

Attorneys for Plaintiff
Federal Trade Commission

27

EXHIBIT 1

18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT



1  ALDEN F. ABBOTT
2  General Counsel

3  SAMANTHA GORDON (IL Bar No. 6272135)
4  sgordon@ftc.gov
   MATTHEW H. WERNZ (IL Bar No. 6294061)
5  mwernz@ftc.gov
   Federal Trade Commission
6  230 South Dearborn, Suite 3030
7  Chicago, Illinois 60604
   312.960.5623 (Gordon)
8  312.960.5596 (Wernz)
9  ATTORNEYS FOR PLAINTIFF

10

11                  UNITED STATES DISTRICT COURT

12                  SOUTHERN DISTRICT OF CALIFORNIA

13

14  FEDERAL TRADE COMMISSION,          Case No.: 18-cv-1388-MMA (NLS)
                                       FIRST AMENDED COMPLAINT
15                     Plaintiff,

16  v.                                 COMPLAINT FOR PERMANENT
                                       INJUNCTION AND OTHER
17  TRIANGLE MEDIA CORPORATION, a      EQUITABLE RELIEF
    Delaware corporation, also doing business   FIRST AMENDED COMPLAINT
18  as Triangle CRM, Phenom Health, Beauty   FOR PERMANENT INJUNCTION
    and Truth, and E-Cigs;             AND OTHER EQUITABLE RELIEF
19

20  JASPER RAIN MARKETING LLC, a
    California limited liability company, also
21  doing business as Cranium Power and   Judge:  Hon. Michael M. Anello
22  Phenom Health;

23  HARDWIRE INTERACTIVE INC., a
    British Virgin Islands corporation, also
24  doing business as Phenom Health, Beauty
25  and Truth, and E-Cigs; and

26                                                          Formatted: Line spacing:  single

27

28                          1

                                   [Case No.]
                          18-cv-1388-MMA (NLS)
                          FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-288



| | |
|---|---|
| 1 | ~~BRIAN PHILLIPS, individually and as an~~ |
| 2 | ~~officer of Triangle Media Corporation,~~ |
| 3 | TRIANGLE MEDIA CORPORATION, a Delaware corporation, also doing business |
| 4 | as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs; |
| 5 | |
| 6 | JASPER RAIN MARKETING LLC, a California limited liability company, also |
| 7 | doing business as Cranium Power and |
| 8 | Phenom Health; |
| 9 | HARDWIRE INTERACTIVE INC., a |
| 10 | British Virgin Islands corporation, also doing business as Phenom Health, Beauty |
| 11 | and Truth, and E-Cigs; |
| 12 | GLOBAL NORTHERN TRADING |
| 13 | LIMITED, a Canadian corporation; |
| 14 | BRIAN PHILLIPS, individually and as an |
| 15 | officer of Triangle Media Corporation; |
| 16 | and |
| 17 | |
| 18 | DEVIN KEER, individually and as an |
| 19 | officer of Triangle Media Corporation and Hardwire Interactive, |
| 20 | Defendants. |

Formatted: Font: Not Bold

Formatted: Line spacing: 1.5 lines

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), for its

Complaint alleges:

1.    The FTC brings this action under Section 13(b) of the Federal Trade

Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), Section 5 of the Restore Online

Formatted: Line spacing: single

2

~~[Case No.]~~

EXHIBIT 1
2-SER-289

Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404, and Section 918(c) of the

Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c), to obtain temporary,

preliminary, and permanent injunctive relief, rescission or reformation of contracts,

restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other

equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC

Act, 15 U.S.C. § 45(a), Section 4 of ROSCA, 15 U.S.C. § 8403, Section 907(a) of the

EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of Regulation E, 12 C.F.R.

§ 1005.10(b).

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,

1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b); and Section 5(a) of ROSCA, 15

U.S.C. § 8404(a).

3.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1),

(c)(2), (c)(3), and (d), and 15 U.S.C. § 53(b).

### PLAINTIFF

4.     The FTC is an independent agency of the United States Government created

by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15

U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting

commerce. Additionally, the FTC enforces ROSCA, 15 U.S.C. §§ 8401-05, which

Formatted: Line spacing: single

3

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-290

prohibits certain methods of negative option marketing on the Internet, as well as the

EFTA, 15 U.S.C. § 1693 *et seq*., which regulates the rights, liabilities, and

responsibilities of participants in electronic fund transfer systems.

5.      The FTC is authorized to initiate federal district court proceedings, by its

own attorneys, to enjoin violations of the FTC Act, ROSCA, and the EFTA, and to secure

such equitable relief as may be appropriate in each case, including rescission or

reformation of contracts, restitution, the refund of monies paid, and the disgorgement of

ill-gotten monies. -15 U.S.C. §§ 53(b), 8404, and 1693o(c).

DEFENDANTS

6.      Defendant **Triangle Media Corporation** ("Triangle Media"), also doing

business as Triangle CRM, Phenom Health, Beauty and Truth, and E-Cigs, is a Delaware

corporation registered at 108 West 13th Street, Wilmington, Delaware 19801.  Its

principal place of business was 1350 Columbia Street, San Diego, California 92101 until

May 17, 2018, when it filed paperwork with the California Secretary of State changing its

principal place of business to 4519 George Road, Tampa, Florida 33634.  At all times

material to this complaint, acting alone or in concert with others, Triangle Media

Corporation has advertised, marketed, distributed, or sold skincare products, electronic

cigarettes, and dietary supplements to consumers throughout the United States.  Triangle

4

Formatted: Line spacing:  single

EXHIBIT 1
2-SER-291

Media transacts or has transacted business in this district and throughout the United States.

7.     Defendant **Jasper Rain Marketing LLC** ("Jasper Rain"), also doing business as Cranium Power and Phenom Health, is a California limited liability company registered and with its principal place of business at 4370 La Jolla Village Drive, Suite 400, San Diego, California 92122.  At all times material to this complaint, acting alone or in concert with others, Jasper Rain has advertised, marketed, distributed or sold dietary supplements to consumers throughout the United States.  Jasper Rain transacts or has transacted business in this district and throughout the United States.

8.     Defendant **Hardwire Interactive Inc.** ("Hardwire Interactive"), also doing business as Phenom Health, Beauty and Truth, and E-Cigs, is a British Virgin Islands corporation with its principal place of business at R.G. Hodge Plaza 3/Floor, Upper Main Street, Wickham's Cay 1, Road Town, Tortola, British Virgin Islands.  At all times material to this complaint, acting alone or in concert with others, Hardwire Interactive has advertised, marketed, distributed or sold skincare products, electronic cigarettes, and dietary supplements to consumers throughout the United States.  Hardwire Interactive transacts or has transacted business in this district and throughout the United States.

9.     Defendant **Global Northern Trading Limited** ("Global Northern"), is a Canadian corporation with its principal place of business at 205-2964 Trethewey St.,

5

Formatted: Line spacing:  single

EXHIBIT 1
2-SER-292

Abbotsford, British Columbia, V2T 6PA, Canada.  At all times material to this complaint,

acting alone or in concert with others, Global Northern has advertised, marketed,

distributed or sold skin care products, electronic cigarettes, and dietary supplements to

consumers throughout the United States.  Global Northern transacts or has transacted

business in this district and throughout the United States.

9.10.  Defendant **Brian Phillips** is an owner and officer of Triangle Media.  At all

times material to this complaint, acting alone or in concert with others, he has formulated,

directed, controlled, had the authority to control, or participated in the acts and practices

of **Triangle Media**, **Jasper Rain**, and **Hardwire Interactive**, and **Global Northern**,

including the acts and practices set forth in this Complaint.  Defendant Phillips resides in

this district and, in connection with the matters alleged herein, transacts or has transacted

business in this district and throughout the United States.  Among other things, Defendant

Phillips has had the authority to control the advertising and marketing of Defendants'

products, including by registering websites used to track Defendants' online advertising

and marketing activities; the processing of payments from consumers victimized by

Defendants' practices, including by having signatory authority over bank accounts used

to receive and process consumer payments; and Defendants' customer service operations,

including Defendants' restrictive cancellation and refund policies.

6

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-293

11.     Defendant **Devin Keer** has been an owner and officer of Triangle Media Corporation and Hardwire Interactive.  At all times relevant to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of **Triangle Media**, **Jasper Rain**, **Hardwire Interactive**, and **Global Northern,** including the acts and practices set forth in this Complaint.  Defendant Keer, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.  Among other things, Defendant Keer has had the authority to control the advertising and marketing of Defendants' products, including overseeing the Corporate Defendants' overall business strategy and operations, paying for registration of the deceptive websites, entering into contracts with advertisers, and managing distribution and fulfillment of Defendants' products.

10.12. Defendants **Triangle Media**, **Jasper Rain**, and **Hardwire Interactive**, and **Global Northern** (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices and other violations of the law alleged below.  Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations and that use common business names and commingle funds.  Because these Corporate

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-294

Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. ~~Defendant~~Defendants Phillips ~~has~~and Keer have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

### COMMERCE

~~11.~~13. At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

### DEFENDANTS' BUSINESS PRACTICES

~~12.~~14. Defendants advertise, market, promote, distribute, and sell skincare products, electronic cigarettes, and dietary supplements online.  Defendants claim to offer trials of these products for just the cost of shipping and handling, typically $4.95 or less.  Instead, Defendants charge consumers who accept the trial offers as much as $98.71 for a single shipment and enroll them in a continuity program costing the same amount on a monthly basis.  Additionally, Defendants frequently also charge consumers for additional products and enroll consumers in continuity programs related to these additional products, all without the consumers' knowledge or consent.  Consumers who discover Defendants' charges and seek a refund often find that they are unable to get their money

**Formatted:** Line spacing:  single

8

EXHIBIT 1
2-SER-295

back because of Defendants' undisclosed refund restrictions.  Defendants have brought in tens of millions of dollars through their deceptive trial offers.

### *Defendants' Deceptive Trial Offers*

13.15. Defendants advertise through third-party websites, blog posts, banner advertisements, and surveys, offering consumers a "trial" of products such as "Wrinkle Rewind," "ProVapor," "Cerebral X," "Test X Core," and "Garcinia Clean XT."  These advertisements often say that consumers can receive a "trial" for just the cost of shipping and handling.  When consumers click on these advertisements, they are directed to Defendants' websites, which include findbeautyandtruth.com, trycerebralx.com, tryphenomcore.com, tryprovapor.com, and trygarciniaclean.com.

14.16. Defendants' websites offer consumers a "RISK FREE" trial of one of Defendants' products.  The websites create a sense of urgency by telling consumers there is a limited supply of the trial product and that they need to act quickly.  Representative statements include:

- Warning: Due to extremely high media demand, there is limited supply of [PRODUCT] in stock as of [today's date].  HURRY!

- ONLY [X] NUMBER OF TRIALS AVAILABLE NOW!

9

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-296

- ATTENTION: Due to high demand from recent media coverage we can no longer guarantee supply.  As of [TODAY'S DATE] we currently have product in-stock and will ship within 24 hours of purchase.

The websites also prominently display the logos of news organizations such as CBS News, NBC, Fox News, and CNN, suggesting that these products have been featured on those outlets.

15.17. Consumers who are interested in the trial offer are asked to provide their contact information.  Upon doing so, consumers are directed to a payment page on which Defendants request their credit or debit card information and represent that consumers need to pay only a shipping and handling charge, typically $4.95 or less, to receive a trial of Defendants' product.  Defendants' websites prominently state that the "Total" cost of the product is equal to the cost of shipping and handling.  As shown in the screenshot below of Defendants' website for Cerebral X, for example, Defendants list the shipping cost of $4.95 and highlight the "Total," also $4.95, in yellow:

Formatted: Line spacing:  single

10

EXHIBIT 1
2-SER-297



**Figure 1**

16.18. Similarly, in the following screenshots of Defendants' website for Garcinia Clean XT as depicted on a mobile device, Defendants list the "Price" of the product as $0.00, highlighted in green, the $4.95 shipping and handling charge, and a "Total" of $4.95 in bold, followed by a request for billing information when consumers scroll down on their mobile device:

Formatted: Line spacing: single

11

EXHIBIT 1
2-SER-298



**Figure 2**

17.19. Once consumers enter their billing information, they are asked to place their

order by clicking a brightly colored button labeled either "GET MY RISK FREE

TRIAL" or "CONTINUE."

18.20. Unbeknownst to consumers, 15 days after they click "GET MY RISK FREE

TRIAL" or "CONTINUE," Defendants will charge consumers the full price of the

product—as much as $98.71.

19.21. Defendants also enroll consumers who accept the trial offer into a continuity

program.  Under the continuity program, Defendants send consumers additional

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-299

shipments of the product each month and charge consumers' credit or debit cards the full price of each product shipped.

20.22. Consumers typically only learn that the trial was not free and that they have been enrolled in a continuity program when they see Defendants' monthly charges on their credit card or bank statements.

21.23. As Figs. 1 and 2 illustrate, Defendants either hide the terms of their offer in barely discernable print- far below the colorful graphics and text where consumers input their personal and payment information and continue with their purchase, or bury them in a separate "Terms & Conditions" hyperlink.  Those terms typically reveal that the consumer has a limited time to cancel the trial, usually 15 days, or the consumer will be charged the full price of the product.  The terms also state that the consumer will receive and be charged for additional shipments of the product every 30 days until they cancel.

22.24. On the desktop page depicted in Fig. 1, consumers would not encounter these terms unless they were to look closely at the small, faint type far below where they enter their payment information and click "GET MY RISK FREE TRIAL."  On the mobile pages depicted in Fig. 2, to see the terms, consumers would need to click on the separate "terms and conditions" hyperlink or scroll past the large, brightly colored "CONTINUE" button.  But there is nothing on the billing screen in Fig. 2 to indicate that

Formatted: Line spacing:  single

13

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-300

1  consumers should look beyond the "CONTINUE" button to find additional content

2  below.

3      23.25. As a result of these inadequate disclosures, Defendants' websites

4  misrepresent the total cost of Defendants' trial products, and fail to adequately apprise

6  consumers that they are being enrolled in a continuity program.

*Defendants' Deceptive Order Completion Page*

9      24.26. After clicking "GET MY RISK FREE TRIAL" or "CONTINUE" to order a

10  trial of one of Defendants' products, consumers are then directed to a webpage that

12  indicates that their order is not complete.  For example, consumers who think they

13  already have ordered a trial of Defendants' brain supplement Cerebral X are taken to a

14  page on the same website that has a "Cerebral X" banner at the top but that indicates in

15  large, red type directly beneath the banner, "Wait!  Your Order is Not Complete!" That

16  page then offers a "FREE" trial of the product VitaMood+, which the ad indicates,

17  should be "paired together" with Cerebral X.

14

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-301

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Figure 3

15

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

Formatted: Line spacing: single

EXHIBIT 1
2-SER-302

25.27. As noted in Fig. 3, Defendants represent that consumers have not completed their order of the initial trial product until they click the "COMPLETE CHECKOUT" button located under the advertisement for the second product.

26.28.  But when consumers click the "COMPLETE CHECKOUT" button, they are deemed by Defendants to have ordered a trial of both the original product and the second product.  If consumers do not click the "COMPLETE CHECKOUT" button, however, they will still receive a trial of the first product.

27.29. Defendants represent that the second product is free, but in reality, the consumer will be charged the full price of the product 18 days later.  Defendants also will enroll consumers who click the "COMPLETE CHECKOUT" button in a second continuity program, meaning that consumers also will receive and be charged for monthly shipments of the second product.

28.30. As with Defendants' initial offers, the "order completion" pages also fail to disclose important terms and conditions of the offer.  For example, the order page for the VitaMood+ offer (Fig. 3) does not disclose adequately that Defendants will charge consumers the full price of the product after 18 days, and will also enroll them in a continuity program.  These terms only appear in small, faint print well below the prominent "COMPLETE CHECKOUT" button.

Formatted: Line spacing:  single

16

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-303

29.31.  Below the "COMPLETE CHECKOUT" button, and below a line-break, in tiny, faint print, Defendants include a hyperlink that consumers can click to decline the second offer.  For example, the order page for the VitaMood+ offer, depicted in Fig. 3 above, includes a faint hyperlink that says "No, I don't want to improve my mood." Consumers who click on this hyperlink are then redirected to a series of web pages that make similar deceptive offers.

30.32.Once consumers place an order for one or more of Defendants' products, they receive a confirmation email that either does not list any charges associated with the products or lists only the shipping and handling charge.  The confirmation email thus reinforces the false impression from the websites that, other than the obligation to pay shipping and handling, the trial product is free.

### *Defendants' Restrictive Cancellation and Refund Practices*

31.33.In numerous instances, consumers who ordered Defendants' trial products report that Defendants subsequently charge them without their knowledge or consent for the full price of these products and sign them up for one or more continuity programs. Many consumers subsequently attempt to cancel their enrollment in the continuity program and to obtain a refund of Defendants' unauthorized charges, but they often have difficulty cancelling and obtaining a refund.

17

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-304

32.34. Consumers who call Defendants to cancel the trial and continuity program often have difficulty reaching Defendants' customer service representatives, despite calling numerous times.  Even if they are able to reach a customer service representative to request cancellation, consumers report that they often continue to receive and be charged for shipments of Defendants products even after cancelling.  The same is sometimes true when consumers use Defendants' "easy" online cancellation.

33.35. Consumers who request a refund are often told that they cannot get one because, according to Defendants, their "terms and conditions" require that refund requests be made within 30 days.  Where the refund period has not lapsed, consumers are told they can only get a refund if the trial product is returned unopened and at the consumer's expense.  Often, consumers who send back the trial product unopened and within the refund period are nevertheless refused a refund, with Defendants' customer service representative telling them that Defendants never received the return shipment.

34.36. In many instances, consumers attempt to get their money back by initiating chargebacks with their credit card companies.  In other instances, consumers receive refunds directly from Defendants only after they complain to the Better Business Bureau or a state regulatory agency.  Even in those instances, however, Defendants have not always issued full refunds, but have refunded only the monthly continuity program charges.

18

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-305

**VIOLATIONS OF THE FTC ACT**

35.37. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

36.38. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

37.39. Acts or practices are unfair under Section 5 of the FTC Act if they cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition. 15 U.S.C. § 45(n).

**COUNT I**

*Misrepresentations of the Price of the Trial Offers*

38.40. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants will charge consumers at most only a shipping and handling fee for a one-time shipment of Defendants' product.

39.41. In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 3840 of this Complaint, Defendants have

19

**Formatted:** Line spacing:  single

EXHIBIT 1
2-SER-306

charged consumers more than a shipping and handling fee for one or more shipments of Defendants' product.

40.42. Therefore, Defendants' representation described in paragraph 3840 of this Complaint, is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### COUNT II

#### *Misrepresentation that Order is Not Complete*

41.43. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements to consumers who have already ordered a trial of one of Defendants' products, Defendants have represented, directly or indirectly, expressly or by implication, that consumers' initial orders are not complete and that clicking the "COMPLETE CHECKOUT" button will merely complete their initial orders.

42.44. In truth and in fact, in numerous instances in which Defendants have made the representation set forth in paragraph 4143 of this Complaint, consumers' initial orders were complete, and clicking the "COMPLETE CHECKOUT" button ordered an additional product and enrolled consumers in a continuity plan for that product.

**Formatted:** Line spacing: single

20

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-307

43.45. Therefore, Defendants' representation described in paragraph 4143 of this Complaint is false and misleading, and constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT III**

***Failure to Disclose Adequately Material Terms of Trial Offer***

44.46. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of skin care products, electronic cigarettes, and dietary supplements, Defendants have represented, directly or indirectly, expressly or by implication, that consumers can obtain a trial of Defendants' product for the cost of shipping and handling, or for free.

45.47. In numerous instances in which Defendants have made the representation set forth in Paragraph 4446 of this Complaint, Defendants have failed to disclose, or disclose adequately to consumers, material terms and conditions of their offer, including:

(a)     The total cost of the product;

(b)     That Defendants will charge consumers the total cost of the trial product upon the expiration of the trial period, typically 15 days;

(c)     That Defendants will automatically enroll consumers in a continuity plan with additional charges; and

21

Formatted: Line spacing:  single

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-308

(d)     The cost of the continuity plan, and the frequency and duration of the

recurring charges.

46.48. Defendants' failure to disclose, or disclose adequately, the material

information described in Paragraph 4547, above, in light of the representation described

in Paragraph 4446, above, constitutes a deceptive act or practice in violation of Section

5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT IV**

***Unfairly Charging Consumers Without Authorization***

47.49. In numerous instances, Defendants have charged consumers without their

express informed consent.

48.50. Defendants' actions cause or are likely to cause substantial injury to

consumers that consumers cannot reasonably avoid themselves and that is not

outweighed by countervailing benefits to consumers or competition.

49.51. Therefore, Defendants' practices as described in Paragraph 4749, above,

constitute unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C.

§§ 45(a) and 45(n).

**VIOLATIONS OF THE RESTORE ONLINE SHOPPERS' CONFIDENCE ACT**

50.52. In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15

U.S.C. §§ 8401-05, which became effective on December 29, 2010.  Congress passed

22

Formatted: Line spacing:  single

EXHIBIT 1
2-SER-309

ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Section 2 of ROSCA, 15 U.S.C. § 8401.

~~51.~~53. Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller: (a) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information; (b) obtains the consumer's express informed consent before making the charge; and (c) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

~~52.~~54. The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the consumer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w).

~~53.~~55. As described above, Defendants advertise and sell Defendants' skincare, electronic cigarette, and dietary supplement products to consumers through a negative option feature as defined by the TSR. *See* 16 C.F.R. § 310.2(w).

~~[Case No.]~~
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

Formatted: Line spacing: single

EXHIBIT 1
2-SER-310

54. 56. Under Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a

violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, and

therefore constitutes an unfair or deceptive act or practice in or affecting commerce in

violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT V**

***Violation of ROSCA – Auto-Renewal Continuity Plan***

55. 57. In numerous instances, in connection with the selling of their products on the

Internet through a negative option feature, Defendants have failed to:

    (a)    clearly and conspicuously disclose all material terms of the negative

            option feature of the product transaction before obtaining the

            consumer's billing information;

    (b)    obtain the consumer's express informed consent to the negative option

            feature before charging the consumer's credit card, debit card, bank

            account, or other financial account for the transaction; and/or

    (c)    provide simple mechanisms for a consumer to stop recurring charges

            for products to the consumer's credit card, debit card, bank account,

            or other financial account.

56. 58. Defendants' practices as set forth in Paragraph 55 57 are a violation of

Section 4 of ROSCA, 15 U.S.C. § 8403, and are therefore a violation of a rule

24

Formatted: Line spacing:  single

EXHIBIT 1
2-SER-311

1 promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a, 15 U.S.C. § 8404(a), and

2 therefore constitute an unfair or deceptive act or practice in or affecting commerce in

3 violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

5 **VIOLATIONS OF THE ELECTRONIC FUND TRANSFER ACT AND REGULATION E**

6 57.59. Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a

7 "preauthorized" electronic fund transfer from a consumer's account may be "authorized

9 by the consumer only in writing, and a copy of such authorization shall be provided to the

10 consumer when made."

12 58.60. Section 903(10) of the EFTA, 15 U.S.C. § 1693a(10), provides that the term

13 "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in

14 advance to recur at substantially regular intervals."

16 59.61. Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b), provides that

17 "[p]reauthorized electronic fund transfers from a consumer's account may be authorized

19 only by a writing signed or similarly authenticated by the consumer.  The person that

20 obtains the authorization shall provide a copy to the consumer."

21 60.62. Section 1005.10 of the Consumer Financial Protection Bureau's Official

22 Staff Commentary to Regulation E, 12 C.F.R. § 1005.10(b), cmt. 5, Supp. I, provides that

23 "[t]he authorization process should evidence the consumer's identity and assent to the

25 authorization."  The Official Staff Commentary to Regulation E further provides that

26 25

"[a]n authorization is valid if it is readily identifiable as such and the terms of the

preauthorized transfer are clear and readily understandable." 12 C.F.R. § 1005.10(b),

cmt. 6, Supp. I.

**COUNT VI**

*Unauthorized Debiting from Consumers' Accounts*

61.63. In numerous instances, Defendants debit consumers' bank accounts on a

recurring basis without obtaining a written authorization signed or similarly authenticated

from consumers for preauthorized electronic fund transfers from their accounts, thereby

violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 1005.10(b) of

Regulation E, 12 C.F.R. § 1005.10(b).

62.64. Further, in numerous instances, Defendants debit consumers' bank accounts

on a recurring basis without providing a copy of written authorization signed or similarly

authenticated by the consumer for preauthorized electronic fund transfers from the

consumer's account, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a),

and Section 1005.10(b) of Regulation E, 12 C.F.R. § 1005.10(b).

63.65. Under Section 918(c) of the EFTA, 15 U.S.C. § 1693o(c), a violation of the

EFTA and Regulation E constitutes a violation of the FTC Act.

**Formatted:** Line spacing: single

EXHIBIT 1
2-SER-313

64.66. Accordingly, by engaging in violations of the EFTA and Regulation E as alleged in Paragraphs 6163 and 6264 of this Complaint, Defendants have engaged in violations of the FTC Act.  15 U.S.C. § 1693o(c).

CONSUMER INJURY

65.67. Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, and the EFTA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

THIS COURT'S POWER TO GRANT RELIEF

66.68. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

67.69. Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), authorize this Court to grant such relief as the Court finds necessary

Formatted: Line spacing: single

27

EXHIBIT 1
2-SER-314

to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and the EFTA, including the rescission or reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 917(c) of the EFTA, 15 U.S.C. § 1693o(c), and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such temporary and preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B. Enter a permanent injunction to prevent future violations of the FTC Act, ROSCA, and the EFTA by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, and the EFTA, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

Formatted: Line spacing:  single

28

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-315



D.     Award Plaintiff the cost of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Dated: ~~June 22~~October 19, 2018                    Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

_____/s/Samantha Gordon

Samantha Gordon
Matthew H. Wernz
Federal Trade Commission
Midwest Region
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
sgordon@ftc.gov
mwernz@ftc.gov
312-960-5623 (Gordon)
312-960-5596 (Wernz)

Attorneys for Plaintiff
Federal Trade Commission

**Formatted:** Underline

**Formatted:** Tab stops:  1.06", Left

**Formatted:** Line spacing:  single

29

[Case No.]
18-cv-1388-MMA (NLS)
FIRST AMENDED COMPLAINT

EXHIBIT 1
2-SER-316