No. 22-56012

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

TRIANGLE MEDIA CORPORATION, *et al.*,
*Defendants*,

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,
*Movants-Appellants*.

_____

THOMAS W. MCNAMARA,
*Receiver-Appellee*

_____

Appeal from the United States District Court
for the Southern District of California
No. 3:18-cv-01388-LAB-WVG
Hon. Larry A. Burns

_____

**ANSWERING BRIEF OF APPELLEE
THE FEDERAL TRADE COMMISSION**

_____

(*Counsel listed on following page*)

_____

ANISHA S. DASGUPTA
*General Counsel*

JOEL MARCUS
*Deputy General Counsel*

Of Counsel:
JONATHAN W. WARE
*Attorney*

MICHAEL BERGMAN
*Attorney*

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3184
mbergman@ftc.gov

## TABLE OF CONTENTS

Table of Authorities ............................................................................v

Introduction ........................................................................................1

JURISDICTIONAL STATEMENT ......................................................3

Statutory and Regulatory Authorities ..................................................4

Questions Presented ............................................................................4

Statement of the Case..........................................................................4

    A.   The FTC's Enforcement Suit Against Triangle Media. ............................4

    B.   The Receiver's Suit Against Wells Fargo. ...............................11

    C.   The *AMG* Decision. ...................................................14

    D.   Wells Fargo's Motion to Intervene. ........................................15

SUMMARY OF THE ARGUMENT .....................................................17

Argument...........................................................................................21

I.   The District Court Correctly Held That Wells Fargo Lacks Article III Standing To Intervene...........................................................21

    A.   Wells Fargo Failed to Show a Cognizable Injury ....................21

    B.   Intervention Would Not Likely Redress Any Injury................25

II.  The District Court Correctly Denied Wells Fargo's Motion To Intervene .....................................................................................27

    A.   The District Court Properly Exercised its Discretion in Finding Wells Fargo's Motion Untimely ..................................28

        1.   Wells Fargo sought to intervene long after it had reason to know that its interests were at stake. ...............................30

        2. Intervention would have prejudiced the parties. ..................36

        3.   Wells Fargo gave no valid reason for its delay. ................38

B.    Wells Fargo had no "significantly protectable" interest. ........................39

C.    Wells Fargo's Ability to Protect Its Interest Is Not Impaired. ................41

III.  The District Court Properly Denied Permissive Intervention ........................42

TABLE OF AUTHORITIES

## CASES

*Alaniz v. Tillie Lewis Foods,*
    572 F.2d 657 (9th Cir. 1978) ................................................. 28

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) .............................................. 20

*AMG Cap. Mgmt., LLC v. FTC,*
    141 S. Ct. 1341 (2021) ........................................................ 14

*Berger v. North Carolina State Conf. of the NAACP,*
    142 S. Ct. 2191 (2022) ........................................................ 28

*Bradley v. School Bd. of City of Richmond,*
    416 U.S. 696 (1974) ............................................................ 23

*Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.,*
    2017 WL 4769439 (C.D. Cal. 2017) .................................... 34

*California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
    54 F.4th 1078 (9th Cir. 2022) ............................................. 21

*Callahan v. Brookdale Senior Living Cmtys., Inc.,*
    42 F.4th 1013 (9th Cir. 2022) ............................................. 28

*Calvert v. Huckins,*
    109 F.3d 636 (9th Cir. 1997) ........................................ 28, 37

*Ciesniewski v. Aries Cap. Partners, Inc.,*
    2018 WL 4491211 (S.D. Ind. Sept. 19, 2018) ..................... 24

*Clapper v. Amnesty International USA,*
    133 S. Ct. 1138 (2013) ........................................................ 21

*Cooper v. Newsom,*
    13 F.4th 857 (9th Cir. 2021) ........................................ passim

*Cotton v. Wells Fargo Bank N.A.,*
    2011 WL 13227816 (C.D. Cal. Feb. 22, 2011) ................... 31

*Dilks v. Aloha Airlines,*
    642 F.2d 1155 (9th Cir. 1981) ............................................ 39

*Donell v. Kowell,*
    533 F.3d 762 (9th Cir. 2008) .............................................. 13

*Dreisbach v. Murphy*,
    658 F.2d 720 (9th Cir. 1981).....................................................................9

*FDIC v. O'Melveny & Myer*s,
    61 F.3d 17 (9th Cir. 1995)......................................................................13

*Friends of the Earth v. Sanderson Farms, Inc.*,
    992 F.3d 939 (9th Cir. 2021)..................................................................22

*FTC v. AMG Cap. Man.*,
    910 F.3d 417 (9th Cir. 2018)..................................................................35

*FTC v. AMG Servs., Inc.*,
    558 F. Supp. 3d 946 (D. Nev. 2021)......................................................35

*FTC v. Apex Cap. Grp., LLC*,
    2022 WL 1060486 (C.D. Cal. Mar. 10, 2022)................................. 11, 31, 32, 42

*FTC v. Apex Cap. Grp., LLC*,
    No. 22-55342 (9th Cir. filed March 31, 2022)......................................11

*FTC v. Cardiff*,
    2021 WL 3616071 (C.D. Cal. June 29, 2021) .......................................14

*FTC v. Cardiff*,
    830 F. App'x 844 (9th Cir. 2020) .........................................................39

*FTC v. Cardiff*,
    No. CV 5:18-2104 SJO (PLAx), 2020 WL 766336 (C.D. Cal. 2020) ...............39

*FTC v. Consumer Def., LLC*,
    2022 WL 18106047 (D. Nev. Dec. 30, 2022)........................................14

*FTC v. Credit Bureau Center*,
    *LLC*, 937 F.3d 764 (7th Cir. 2019) ......................................................35

*FTC v. Elegant Sols., Inc.*,
    2022 WL 2072735 (9th Cir. June 9, 2022) ...........................................14

*FTC v. H. N. Singer, Inc.*,
    668 F.2d 1107 (9th Cir. 1982) ................................................................7

*FTC v. Hanley*,
    No. 20-15143, 2022 WL 187848 (9th Cir. Jan. 20, 2022)....................14

*FTC v. Hardwire, et al.*,
    No. 18-56161 (9th Cir. March 19, 2019) ................................................8

*FTC v. Noland*,
    2021 WL 6426079 (9th Cir. Dec. 14, 2021) .........................................41

*FTC v. Noland*,
  No. 2021 WL 4318466 (D. Ariz. Sept. 23, 2021)................................................41

*FTC v. QYK Brands LLC*,
  2021 WL 5707477 (C.D. Cal. Nov.30, 2021)......................................................14

*FTC v. Simple Health Plans LLC,*
  58 F.4th 1322 (11th Cir. 2023) ...................................................... 7, 23

*George v. McDonough*,
  142 S. Ct. 1953 (2022).......................................................................23

*Hawaii v. U.S. Dep't of Educ.*,
  2010 WL 346445 (D. Haw. Jan. 29, 2010).........................................................37

*Herb Reed Enters., Inc. v. Bennett*,
   2012 WL 5989632 (D. Nev. Nov. 29, 2012)......................................................34

*Idaho Farm Bureau Fed'n v. Babbit*,
  58 F.3d 1392 (9th Cir. 1995).........................................................................39

*In re Wells Fargo Fraudulent Acct. Opening Litig.*,
  282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017) ......................................31

*Jones v. Wells Fargo Bank, N.A.*,
  666 F.3d 955, (5th Cir. 2012) ...............................................................31

*Juliana v. U.S.*,
  947 F.3d 1159 (9th Cir. 2020) ...............................................................25

*Kalbers v. United States Dep't of Just.*,
  22 F.4th 816 (9th Cir. 2021) ...................................................... 28, 29, 36

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,
  2020 WL 1052518 (D. Or. Mar. 4, 2020).........................................................41

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................. 25, 27

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018) ...............................................................25

*McNamara v. Wells Fargo & Co., et al.*,
  No. 3:21-cv-1245-LAB-DDL (S.D. Cal. filed July 8, 2021)....................... 12, 13

*Meland v. WEBER*,
  2 F.4th 838 (9th Cir. 2021) ...............................................................20

*Montgomery v. United States*,
  2012 WL 124854 (S.D. Cal. Jan. 17, 2012).........................................................36

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    926 F.3d 528 (9th Cir. 2019)..................................................................20

*Orange County v. Air California*,
    799 F.2d 535 (9th Cir. 1986)..................................................................33

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
    860 F.3d 1228 (9th Cir. 2017) ...............................................................21

*Palmer v. Nelson*,
    160 F.R.D. 118 (D. Neb. 1994)..............................................................42

*Perlman v. Wells Fargo Bank, N.A.*,
    559 F. App'x 988 (11th Cir. 2014) ........................................................31

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009)............................................................ 28, 43

*Reynoldsville Casket Co. v. Hyde*,
    514 U.S. 749 (1995).......................................................................... 23, 26

*Shulman v. Kaplan*,
    58 F.4th 404 (9th Cir. 2023) ..................................................................27

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016)........................................................... 20, 29

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...........................................................................22

*Stadnicki on Behalf of LendingClub Corp. v. Laplanche*,
    804 F. App'x 519 (9th Cir. 2020) ..........................................................36

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)..................................................................41

*Teague v. Lane*,
    489 U.S. 288 (1989)........................................................................ 23, 26

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) ...........................................................................21

*Trunk v. City of San Diego*,
    2012 WL 6213712 (S.D. Cal. Dec. 12, 2012) ......................................34

*United States v. Aerojet Gen. Corp.*,
    606 F.3d 1142 (9th Cir. 2010) ...............................................................39

*United States v. Lande*,
    2008 WL 11490112 (D. Mont. Jan. 17, 2008)......................................35

*United States v. N. Colorado Water Conservancy Dist.,*
   251 F.R.D. 590 (D. Colo. 2008) ...........................................................42

*United States v. Washington,*
   86 F.3d 1499 (9th Cir. 1996)....................................................... 28, 32

*W. Watersheds Project v. Haaland,*
   22 F.4th 828 (9th Cir. 2022) ..............................................................29

*Wiand v. Wells Fargo Bank, N.A.,*
   677 F. App'x 573 (11th Cir. 2017) ....................................................31

*Wiand v. Wells Fargo Bank, N.A.,*
   86 F. Supp. 3d 1316 (M.D. Fla. 2015) ..............................................31

## STATUTES

12 C.F.R. § 1005.10(b) .............................................................................5

15 U.S.C. § 1693e(a).................................................................................5

15 U.S.C. § 1693o(c) .............................................................................3, 6

15 U.S.C. § 45(a) ............................................................................ 3, 5, 38

15 U.S.C. § 53(b) .................................................................................3, 6

15 U.S.C. § 57b............................................................................. 3, 6, 23

15 U.S.C. § 8403 ......................................................................................5

15 U.S.C. § 8404 ..................................................................... 3, 6, 23, 24

28 U.S.C. § 1331 ......................................................................................3

28 U.S.C. § 1337(a) .................................................................................3

28 U.S.C. § 1345 ......................................................................................3

28 U.S.C. § 1651 ......................................................................................7

## RULES

Fed. R. App. P. 4(a) ................................................................................4

Fed. R. Civ. P. 24 ............................................................... 27, 41, 42, 44

Fed. R. Civ. P. 65 ....................................................................................7

# INTRODUCTION

In 2018, the FTC charged two sets of defendants, Triangle Media and Hardwire, with deceptively obtaining consumers' credit and debit card information and then placing unauthorized recurring charges on their accounts. The district court enjoined the scheme and appointed an equity receiver to recover assets of the corporate defendants. Both defendant groups settled, and the ensuing 2019 stipulated judgments continued the receivership and ordered that money collected by the Receiver be used to redress injured consumers for their losses, which totaled over $170 million.

As part of the attempt to recover money for redress, the Receiver then (with the district court's permission) brought suit under state law against Wells Fargo, which had not been a party to the FTC case, for aiding the deceptive scheme. The Receiver alleged that Wells Fargo opened a large number of fraudulent shell accounts for Hardwire and Triangle that they used to process the illegal charges. The bank did so, the Receiver charged, knowing that the defendants operated unlawfully.

Two years after the FTC and defendants settled, the FTC enforcement case was closed, and the district court gave the Receiver permission to hire counsel to sue Wells Fargo, and 19 months after Wells Fargo knew of the Receiver's intent to

1

sue the bank – Wells Fargo attempted to intervene in the FTC's now-closed

enforcement case. Wells Fargo wished to eliminate the bank's liability for assisting

the scheme by challenging the Receiver's ability to seek monetary damages from

Wells Fargo resulting from the bank's knowing assistance to further the fraudulent

scheme effectuated by its former operators. Its contention was that an April 2021

Supreme Court decision holding that the FTC could not recover monetary

judgments under Section 13(b) of the FTC Act had nullified the underlying

judgment on which the Receiver based his claims.

In the order on review, the district court denied intervention. The court held

that Wells Fargo lacked a concrete, non-speculative, and redressable injury

sufficient to convey standing. First, the court concluded that Wells Fargo's claimed

injury of having to defend itself against and face the threat of an adverse judgment

from the Receiver's still in-progress suit were too remote to support standing.

Second, the court determined that the underlying judgments were issued under an

independent statutory ground unaffected by the Supreme Court's April 2021

decision. Beyond that, the court explained, Wells Fargo failed to satisfy the

intervention of right criteria, because the motion was untimely and would prejudice

the FTC, and the bank had no protectable interest anyway because intervention

would neither shield the bank from the Receiver's claims nor reduce the bank's

potential liability. Each of these points would independently sustain the ruling.

2

The district court's decision should be affirmed. Wells Fargo lacks standing because its claimed harm was not redressable through intervention. And even if the bank has standing, it has no excuse for its lengthy delay in seeking relief.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345 . The underlying case was brought by the Federal Trade Commission, a federal agency, and arose under the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, the Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8404(a), and the Electronic Fund Transfer Act, 15 U.S.C. § 1693o(c). 3-ER-158.[1]

This Court has jurisdiction over the district court's denial of a motion to intervene as of right as an "appealable 'final decision.'" *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). The FTC submits that the Court does not have jurisdiction over the district court's denial of a motion for permissive intervention because the court properly exercised its discretion. *See id*. at 868. The district court's order denying Wells Fargo's motion to intervene was issued on September

---

[1] "X-ER-X" refers to pages in Appellants' Excerpts of Record; "FTCSER-X" refers to the FTC's Supplemental Excerpts of Record; "Dkt." refers to district court docket entries; page cites are to ECF-generated page numbers; and "Br." refers to the Appellants' Brief.

3

30, 2022, 1-ER-3-12, and Wells Fargo timely filed its notice of appeal pursuant to

Fed. R. App. P. 4(a)(1)(B) on October 27, 2022. 3-ER-350-351.

## STATUTORY AND REGULATORY AUTHORITIES

Relevant statutes and regulations are set forth in the addendum.

## QUESTIONS PRESENTED

1.      Whether the district court correctly held that Wells Fargo lacked

Article III standing to intervene because it failed to show a redressable injury;

2.      Whether the district court correctly held that Wells Fargo was not

entitled to intervene as of right in this case because (i) its request to intervene was

untimely; (ii) it did not have a significant protectable interest at stake; and (iii)

it could protect its interest by raising its arguments in a different case;

3.      Whether the district court properly exercised its discretion to deny

permissive intervention to Wells Fargo for the same reasons it rejected intervention

as of right.

## STATEMENT OF THE CASE

### A. The FTC's Enforcement Suit Against Triangle Media.

*Complaint, TRO, and Preliminary Injunction*. In June 2018, the FTC

charged violations against defendants Brian Phillips, Triangle Media Corporation

and Jasper Rain Marketing LLC, and Hardwire Interactive Inc., 3-ER-324-349, and

against defendants Kerr and Global Northern in an amended complaint filed in

4

December 2018. 3-ER-157-83.[2] The complaint charged that all the defendants were engaged in a deceptive scheme in which they offered consumers "RISK FREE" "trial offers" of various consumer products for a modest cost ($4.95 or less) for shipping and handling. But once the defendants had collected consumers' credit or debit card information, defendants charged consumers as much as $98.71 for a single shipment and placed recurring monthly debit or credit charges of similarly high amounts, all without the consumers' consent. 3-ER-329-331. The FTC charged that those acts violated Section 5(a) of the Federal Trade Commission (FTC) Act, 15 U.S.C. § 45(a); Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403; Section 907(a) of the Electronic Fund Transfer Act (EFTA), 15 U.S.C. § 1693e(a); and Section 1005.10(b) of "Regulation E,"  which implements EFTA, 12 C.F.R. § 1005.10(b).

---

[2]  The record evidence eventually showed that the defendants operated as a common enterprise consisting of two groups: Phillips and his companies Triangle Media and Jasper Rain (the "Triangle Media defendants") and Kerr and his companies Hardwire Interactive and Global Northern (the "Hardwire defendants"). The final stipulated judgments were entered against each group separately. Because the complaints are not materially different for purposes of this appeal and to maintain consistency with the district court's order on review and Wells Fargo's brief, references here are to the original complaint.

3-ER-325, 339-347. The violations caused millions of dollars of consumer injury.[3] 3-ER-329.

The FTC sought an injunction and a monetary judgment, including "relief . . . necessary to redress injury to consumers," such as "restitution, [and] the refund of monies paid." 3-ER-348-349 (prayer for relief). Those remedies were based on Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 918(c) of EFTA, 15 U.S.C. § 1693o(c). 3-ER-325, 348. Section 13(b) authorizes a court to grant a "permanent injunction," which at the time had been consistently interpreted by courts, including the Ninth Circuit, to include monetary remedies. Separately, ROSCA provides for monetary relief for unfair or deceptive internet sales practices that have injured consumers. It states that violations of ROSCA "shall be treated as a violation of a rule" under the FTC Act, and provides further that the FTC "shall enforce [ROSCA] in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC] Act were incorporated into and made part of" ROSCA. 15 U.S.C. § 8404(a), (b). The "applicable provisions" of the FTC Act allowing monetary remedies then included both Section 13(b) and

---

[3] Wells Fargo incorrectly claims (Br. 4) that the complaint alleged one violation of ROSCA. Although ROSCA violations are charged in a single count (Count V), the complaint charges "numerous" ROSCA violations that cost consumers "tens of millions of dollars." *See* 3-ER-329, 344.

Section 19, 15 U.S.C. § 57b. Section 19(a)(1) allows the Commission to file suit against anyone who "violates any rule under [the FTC Act]." 15 U.S.C. § 57b(a)(1). And Section 19(b) empowers a court to grant "relief as the court finds necessary to redress injury to consumers . . . includ[ing] . . . the refund of money." 15 U.S.C. § 57b(b).

The FTC sought a temporary restraining order freezing the defendants' assets and appointing a receiver to run the business. *See* 3-ER-244-323. Courts have long recognized that the permanent injunction authorized by Section 13(b) included preliminary relief necessary to ensure effective final relief. *See FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982). Section 19(b), which grants the power to order "such relief as the court finds necessary to redress injury to consumers," likewise permits preliminary remedies, including asset freezes and receiverships, necessary to secure ultimate relief. *See id.* at 1109-1110, 1112; *FTC v. Simple Health Plans LLC,* 58 F.4th 1322, 1328-29 (11th Cir. 2023).

In June 2018, the court granted the TRO and found "good cause" to appoint a receiver and freeze defendants' assets. 3-ER-213, 215-16. [4] It based those actions on Section 13(b), Fed. R. Civ. P. 65, and the All Writs Act, 28 U.S.C. § 1651. 3-

---

[4] Judge Anello, who issued the TRO, recused himself in November 2018, and Judge Burns then presided over the case. Dkt. 88; 1-ER-4 n.1.

ER-216. The court appointed Thomas W. McNamara as the temporary Receiver and the court's "agent" "with full powers of an equity receiver" over the corporate defendants and their affiliates ("Receivership Entities" or "receivership companies"). 3-ER-229. Among other duties, the court bestowed on the Receiver the "power to sue for, collect, and receive, all Assets of the Receivership Entities" and to "[i]nstitute . . . any legal action . . . to preserve or recover the Assets of the Receivership Entities, or to carry out the Receiver's mandate under this Order, including actions challenging fraudulent or voidable transfers." 3-ER-230, 232.

Because the Triangle Media and Hardwire defendants maintained accounts at Wells Fargo, the Receiver notified the bank of the FTC's lawsuit, the TRO and asset freeze. The bank then froze dozens of accounts related to the defendants. FTCSER-155; FTCSER-149-151.

In August 2018, the court issued an order and a preliminary injunction prohibiting further deceptive business practices and continuing the asset freeze and receivership. FTCSER-118-147 (order); 3-ER-184-211 (injunction).[5] The court found good cause to believe that defendants had violated the FTC Act, ROSCA and EFTA and that the FTC was likely to succeed on the merits of its claims. 3-

---

[5] On August 28, 2018, the Hardwire defendants sought interlocutory review of the preliminary injunction. This Court affirmed the district court's order. *See FTC v. Hardwire, et al.* No. 18-56161 (9th Cir. March 19, 2019).

8

ER-185. The court invoked all three statutes as authority for the order. FTCSER-123-126 [Dkt. 74 at 6-9]. The court expressly empowered the Receiver "to sue for, collect, [and] receive . . . all assets . . . of the Receivership Entities," and to "[i]nstitute, . . . appear in, . . . or become party" to any legal action "that the Receiver deems necessary . . . to preserve or recover the Assets of the Receivership Entities . . ." 3-ER-200, 202.[6] "Assets," under the preliminary injunction, include "any legal or equitable interest in, right to, or claim to, any property." 3-ER-186.

*Stipulated Final Judgments*. The parties settled, and on May 30, 2019, the district court entered a Stipulated Order for Permanent Injunction and Monetary Judgment against the Triangle Media defendants (the "Triangle Stipulated Judgement"), 2-ER-125, and a similar Stipulated Order against the Hardwire defendants (the "Hardwire Stipulated Judgment"), 2-ER-100 (collectively "the Stipulated Judgments"), which resolved all claims between the FTC and the defendants. The court permanently enjoined the defendants from misrepresenting the cost and other material terms of products sold with a negative option feature and from using billing information from consumers without obtaining the consumers' express informed consent. 2-ER-130-131, 133-135; 2-ER-104-105,

---

[6] Receivers do not sue under the FTC Act, *see*, *e.g.*, *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981), and therefore may bring claims against banks under state law for aiding and abetting, breach of fiduciary duty, conversion, and fraudulent transfers when marshalling assets in FTC cases.

107-109. The court also required defendants to make affirmative disclosures about products sold with a negative option feature and to provide a simple mechanism for consumers to cancel charges arising from the sale of such products. 2-ER-131-133, 135-136; 2-ER-105-107; 109-110. It also imposed monetary judgments of $48.1 million on the Triangle defendants, 2-ER-136, and $123 million on the Hardwire defendants, 2-ER-110. Both monetary judgments were suspended in lieu of payments of about $400,000 by Triangle Media, 2-ER-136-138, and $3 million by Hardwire, 2-ER-110, as well as the transfer to the Receiver of specific additional assets, and compliance with the behavioral remedies in the injunction.

The district court invoked Section 13(b), Section 5 of ROSCA, and Section 918(c) of EFTA, as authority for the behavioral and monetary remedies. 2-ER-125-126; 2-ER-100-101. Payments made to satisfy the judgments would be used for "consumer redress." 2-ER- 138–139; 2-ER-137.

The Receiver was directed to liquidate the assets of the corporate defendants as partial payment toward the monetary judgments. 2-ER-140; 2-ER-114. The Receiver consequently transferred $4 million to the FTC. The court also vested in the Receiver the power to hire attorneys to "recover the [a]ssets of the [corporate defendants]," such as by filing claims against third parties. 2-ER-54; 2-ER-94; 2-

ER-98. Since 2019, the receivership has been extended several times,[7] now until "30 days after final" resolution of the Receiver's suit against the bank. 2-ER-84.

In August 2019, the Receiver told the district court that he had "identified troubling conduct on the part of a domestic financial institution used by [the corporate defendants]" and determined "that "there may be a viable lawsuit against the financial institution," which he did not name at that time. 2-ER-98. The Receiver had discovered that Wells Fargo opened more than 150 bank accounts through approximately 100 shell companies for the Triangle Media and Hardwire defendants as well as in a similar phony "free trial" scheme subject to a separate FTC enforcement suit in which he is also the Receiver. FTCSER-6 ¶7.[8]

**B. The Receiver's Suit Against Wells Fargo.**

On October 22, 2019, the Receiver sought court approval to extend the receivership and to hire counsel to sue Wells Fargo for "providing substantial, knowing assistance" to the defendants in violation of state law. 2-ER-51; *see also* 2-ER-88, 201. The Receiver had determined that "litigation against Wells Fargo is meritorious, and the potential recovery for the Receivership Estate is significant."

---

[7] The Stipulated Judgments provide that "any party or the Receiver may request that the Court extend the Receiver's term for good cause." 2-ER-114, 140.

[8] *See FTC v. Apex Cap. Grp., LLC*, No. 1060486, 2022 WL 1060486 (C.D. Cal. Mar. 10, 2022), *appeal pending*, No. 22-55342 (9th Cir. filed March 31, 2022). *Apex Capital* presents questions highly similar to those here.

11

FTCSER-111. The Receiver's filing identifying Wells Fargo by name was placed on the public docket. A month later, the court found "good cause" to grant the Receiver's request after concluding that the defendants would not be prejudiced by the lawsuit. 2-ER-82-84. The court also administratively closed the FTC's underlying enforcement case. *Id.*[9]

On April 1, 2020, the Receiver sent Wells Fargo a draft complaint for monetary remedies stemming from the Triangle/Hardwire matter. FTCSER-6 ¶ 10. The Receiver and Wells Fargo then attempted to settle for over a year, but when that effort proved fruitless, the Receiver sued the bank on July 8, 2021. FTCSER-7-8 ¶¶ 12-28; FTCSER-17-104 (complaint in *McNamara v. Wells Fargo & Co.,* No. 3:21-cv-1245-LAB-DDL (S.D. Cal. filed July 8, 2021) (Dkt. 1)). The Receiver's complaint alleged twelve causes of action under state law for Wells Fargo's alleged "knowing provision of substantial assistance" both to the fraud scheme here and in the similar deceptive program in the *Apex Capital* case. FTCSER-87-103 ¶¶ 1, 236-312. The Receiver charged Wells Fargo with knowingly using "atypical banking services, widely deviating from accepted

---

[9] Further, the court extended the Receiver's duties until 30 days after the lawsuit against Wells Fargo is resolved and stated that it would "retain jurisdiction over the Receivership" and would continue to consider "matters related to the Receivership or enforcement of the Court's judgments, filings and other proceedings in this matter" in the interim. 2-ER-84.

banking standards and violating applicable banking laws" to assist Triangle in prolonging its deceptive conduct, despite knowledge of Triangle's high chargeback rates, discrepancies in account information, and the nature of Triangle's internet business. FTCSER-18-23, 25-27, 30-38, 60-86 ¶¶ 1-15, 22-26, 39-68, 141-231. Wells Fargo thereby aided and abetted fraud, breached its fiduciary duty, and fraudulently transferred assets, among other violations of state law. FTCSER-87-103 ¶¶ 236-310.[10]

The Receiver sought the return of funds Wells Fargo received through allegedly fraudulent transfers and/or unjust enrichment at the expense of the Receivership Entities, as well as damages proximately caused by Wells Fargo's allegedly tortious conduct.[11] FTCSER-103-104 (prayer for relief). Damages include bank service fees, defense costs, receivership set up costs, and the

---

[10] The court dismissed several other asserted claims, *see McNamara*, *supra*, Dkt. 20, so the state law charges recited in the text remain live before the trial court.

[11] Equity receivers may maintain lawsuits to recover corporate assets even where the corporate defendants played an integral role in misconduct. Equitable defenses such as unclean hands "do not generally apply against that party's receiver" because the receiver is not "a party to the original inequitable conduct." *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995). *See also Donell v. Kowell*, 533 F.3d 762, 777 (9th Cir. 2008) (receiver may "su[e] to redress injuries that [the corporate defendant] suffered when its managers caused [the corporation] to commit waste and fraud."). The Receiver in this case therefore has clear power to maintain the companies' claims against Wells Fargo for the acts charged, which include helping the principals of Hardwire and Triangle pilfer corporate funds for their personal use.

13

receivership companies' "legal obligations to satisfy the FTC judgments" in order "to make whole" consumers duped by the scheme. FTCSER-23, 88, ¶¶ 15, 240. That suit remains pending.

### C. The *AMG* Decision.

On April 22, 2021, the Supreme Court held that Section 13(b) of the FTC Act does not authorize monetary remedies. *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1344, 1347, 1352 (2021). The Court recognized, however, that Section 19 of the Act expressly provides for "monetary relief," including "the refund of money." *Id*. at 1348-49. The Court emphasized that "nothing" in its decision "prohibits the Commission from using its authority under . . . § 19 to obtain restitution on behalf of consumers." *Id*. at 1352. Since then, this Court and others have acknowledged that *AMG* does not affect the availability of monetary relief under Section 19, ROSCA, or statutes containing enforcement provisions analogous to those set forth in ROSCA. *See e.g.*, *FTC v. Elegant Sols., Inc.*, 2022 WL 2072735, *2-*3 (9th Cir. June 9, 2022) (Section 19 provides "monetary relief based on . . . consumer loss"); *FTC v. Hanley*, 2022 WL 187848 (9th Cir. Jan. 20, 2022); *FTC v. Consumer Def., LLC*, 2022 WL 18106047, at *4 (D. Nev. Dec. 30, 2022); *FTC v. QYK Brands LLC*, 2021 WL 5707477, at *4 (C.D. Cal. Nov.30, 2021); *FTC v. Cardiff*, 2021 WL 3616071 at *2, *5-*8 (C.D. Cal. June 29, 2021).

14

**D. Wells Fargo's Motion to Intervene.**

On November 10, 2021 – nearly two years after the Receiver publicly sought permission to sue Wells Fargo, more than 19 months after the Receiver gave the bank his proposed complaint, six months after the *AMG* decision, and more than four months after the Receiver filed suit – Wells Fargo moved to intervene in the now-closed FTC enforcement case to seek vacatur of the November 2019 order authorizing the Receiver to hire counsel to pursue litigation against the bank. *See* 1-ER-3; 2-ER-84, 2-ER-75–77. Wells Fargo claimed that it was injured by "having to defend itself against [the Receiver's] litigation" that the district court "had authorized based on an invalidated legal principle, namely allowing the FTC to seek equitable monetary relief under Section 13(b)," *see* 1-ER-7 (citing Dkt. 153-1 at 1), which *AMG* had since disallowed.

In the order on review, the district court denied intervention on several independent grounds. 1-ER-3-12. The court first ruled that Wells Fargo failed to establish Article III standing because its claims of injury were legally insufficient. 1-ER-7. Specifically, the bank asserted harm from defending itself against the Receiver's suit and harm from the possibility that it might need to pay damages if the Receiver is successful. *Id*. But the court found such injury claims inadequate to bestow standing because litigation costs do not constitute a cognizable injury and because the "potential damages of litigation" or the possibility that the bank might

be found liable in the Receiver's suit were only "speculative." *Id.* The court also held that Wells Fargo had failed to establish "a likelihood that an injury-in-fact will be redressed by a favorable decision." *Id*. Even if *AMG* barred the monetary judgments under Section 13(b), those judgments remained supportable under ROSCA, and the Receiver could continue to pursue his state law claims for the assets illegally taken by Wells Fargo. 1-ER-8. The court held that the FTC had sufficiently pled a monetary remedy under ROSCA and thus did not need to include an additional reference to Section 19. 1-ER-8. Accordingly, Wells Fargo failed to show it suffered a concrete injury redressable through intervention. *Id.*

The court held further that Wells Fargo was not entitled to intervention as a matter of right anyway. The motion to intervene, filed two and half years after the court had entered the Stipulated Judgments and two years after the court had administratively closed the case, was untimely. 1-ER-9-10. Indeed, Wells Fargo failed to intervene until more than six months after the *AMG* decision and nearly four months after the Receiver's suit. *Id.* The court further ruled that intervention would prejudice the FTC, that Wells Fargo lacked a significantly protectable interest in this case for the same reason it failed to show injury under Article III, and that any interests Wells Fargo has could be raised as a defense in the Receiver's suit. 1-ER-10-11. The court denied permissive intervention for the same reasons. 1-ER-11-12. This appeal followed.

16

## SUMMARY OF THE ARGUMENT

The district court correctly denied Wells Fargo's attempt to intervene on two independent grounds: (1) lack of standing and (2) an utter failure to meet the test for mandatory intervention. For the same reasons, Wells Fargo has not nearly shown that the court abused its discretion when it denied permissive intervention.

1.    Wells Fargo lacks Article III standing to intervene because it faces no concrete injury that is likely to be redressed by a favorable decision. The claimed injury is having to defend against a lawsuit brought by a Receiver that Wells Fargo claims was unlawfully appointed in the first place. But the law is clear that defending against a lawsuit and bearing the costs of defense are not cognizable Article III injuries. That alone should end the standing inquiry.

Even if defense burden were a cognizable injury, it is not an injury-in-fact here because Wells Fargo cannot show that the Receiver was appointed improperly. The intervening decision in *AMG* does not render the Receiver improper for two reasons. First, Supreme Court decisions apply retroactively only to cases open on direct review; they do not disturb settled judgments like those here. *AMG* thus could have no effect on the appointment of the Receiver. Second, the judgments the Receiver was appointed to collect rested not only on Section 13(b) of the FTC Act (which *AMG* later held does not authorize monetary remedies) but also independently on ROSCA and Section 19 of the FTC Act. The

17

FTC's authority to obtain consumer redress and the appointment of an equity receiver under those statutes are unaffected by *AMG* and unchallenged by the bank.

Wells Fargo has no likelihood of redress for similar reasons. Even if Wells Fargo were permitted to intervene, and even if it convinced the court to vacate the appointment of the Receiver under Section 13(b), the Receiver's suit would continue, and Wells Fargo would have no relief, because the judgments remain supported by ROSCA and Section 19.

2. Wells Fargo did not have a right to intervene under the established test, because it failed to show timeliness, the presence of a protectable interest, and that intervention is necessary protect those interests. Failing to satisfy any one of these requirements dooms intervention.

a. Wells Fargo fails each prong of the three-part test for timeliness, which is the threshold requirement for assessing motions to intervene.

i. The clock began to run when the bank should have been aware that its interests might be adversely affected by the case, which it knew or should have known multiple times. Wells Fargo knew that accounts it established for the defendants were implicated even before the underlying enforcement case began, when the FTC subpoenaed information about the accounts. Wells Fargo was again put on notice in June 2018, when the TRO froze the accounts. Even if those events were insufficient, Wells Fargo undoubtedly knew its interests were at stake in

October 2019 when the Receiver sought permission in public filings to hire counsel to sue the bank. Any residual doubt was eliminated in April 2020, when the Receiver sent a draft complaint to Wells Fargo and began settlement discussions. Yet Wells Fargo did not attempt to intervene at any of those multiple opportunities. Even after the Receiver filed suit in July 2021, Wells Fargo still waited four months before seeking intervention. The court was well within its discretion to conclude that the bank's filing was untimely.

ii. Intervention would have prejudiced the FTC because it would have led to unnecessary and wasteful litigation. The monetary judgments remain supported by ROSCA and Section 19, so litigation over the continuing applicability of Section 13(b) would add nothing. Worse, the FTC would be forced to litigate claims that could have been raised two years earlier.

iii. Wells Fargo provides no good excuse for its delay. Waiting for the Supreme Court to decide *AMG* is no excuse at all. The issues resolved in that case had been raised years before the decision; the case itself had been pending long before Wells Fargo tried to intervene even though the potential effects of the eventual decision were obvious.

b. Wells Fargo failed to show a significant protectable interest in this case. The bank never identified the law that protects its claimed interest. Arguments based on *AMG*, which only voided Section 13(b) as a source of monetary relief and

does not apply retroactively to the Stipulated Judgments, would not have let the bank avoid the Receiver's suit.

c. Wells Fargo did not show that it could protect its interests only by intervening in this case. No issues remain to be decided in the underlying litigation. Both district courts addressing the bank's intervention requests recognized that the bank could raise its arguments in the Receiver's suit.

3. The district court properly exercised its discretion to deny Wells Fargo's motion for permissive intervention for the same reasons that it denied intervention as of right. Wells Fargo has not shown otherwise.

## STANDARD OF REVIEW

This Court reviews a district court's denial of Article III standing *de novo*, *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021), but "underlying factual findings" regarding standing are reviewed "for clear error." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., 926 F.3d 528, 531 (9th Cir. 2019). The Court reviews a denial of a motion to intervene as of right *de novo*, *Cooper*, 13 F.4th at 864, but rulings on timeliness are reviewed for abuse of discretion. *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 853 (9th Cir. 2016). Denial of a motion for permissive intervention is reviewed for abuse of discretion. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015).

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO LACKS ARTICLE III STANDING TO INTERVENE

A would-be intervenor as of right seeking "relief that is broader than or different from the relief sought by existing parties to the case" must independently satisfy the requirements of Article III standing. *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022) (citing *Town of Chester, N.Y. v. Laroe Estates, In*c., 137 S. Ct. 1645, 1651 (2017)). Doing so requires showing an injury that is: (1) "concrete, particularized and actual or imminent" and not "speculative"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Oregon Prescription Drug Monitoring Program v. U.S. DEA*, 860 F.3d 1228, 1234-35 (9th Cir. 2017) (quoting *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013)). Applying that test, the district court correctly held that Wells Fargo lacked standing because it failed to show a concrete injury redressable by a favorable decision. 1-ER-6-8.

### A. Wells Fargo Failed to Show a Cognizable Injury

Wells Fargo's theory of standing is doubly flawed. The bank claims that it suffers injury by having to defend itself (and pay litigation costs) based on "orders . . . issued under the overbroad application of equitable authority under Section 13(b) that the Supreme Court invalidated in *AMG Capital*." Br. 21.

21

As an initial matter, the underlying monetary judgment was correctly entered and remains unaffected by *AMG*. Further, Wells Fargo's claim fails because incurring litigation costs does not amount to a cognizable Article III injury. *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942-943 (9th Cir. 2021). The Court need not proceed further to find that the district court thus correctly held that Wells Fargo failed to show an injury-in-fact.[12]

Even if the defense of allegedly wrongful litigation were an injury for purposes of standing, Wells Fargo is also wrong that the Receiver's suit was improper. The Stipulated Judgments forming the basis for the Receiver's claims against Wells Fargo were fully lawful at the time they were entered, which was nearly two years before *AMG* was decided. Wells Fargo's argument rests on the premise that *AMG* invalidated the closed judgments. But "[i]t has long been established that a final civil judgment entered under a given rule of law may

---

[12] Wells Fargo is wrong that the district court failed to address its "principal injury" of being subjected to the Receiver's suit. Br. 20. The district court explicitly discussed (and rejected) Wells Fargo's claim that it was injured by "'having to defend itself against litigation that this Court authorized based on an invalidated legal principle.'" 1-ER-7. Wells Fargo simply does not like the court's resolution of that question.

Wells Fargo has seemingly abandoned its attempt to establish standing based on the potential damages that could result from the Receiver's suit. *See* Br. 21. As the district court correctly noted, the prospect of having to pay a judgment in pending litigation is not an "actually exist[ing]" injury and therefore does not qualify as "concrete" and "imminent." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

withstand subsequent judicial change in that rule." *Teague v. Lane*, 489 U.S. 288, 308 (1989). In other words, "[n]ew legal principles . . . do not apply to cases already closed." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995); *see George v. McDonough*, 142 S. Ct. 1953, 1962 (2022) (retroactive effect of new statutory interpretation only for "decisions still open on direct review."). *AMG* thus changed the law going forward, but did not reopen the final judgments, for which "the availability of appeal has been exhausted or has lapsed, and the time to petition for certiorari has passed." *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 n.14 (1974) (cleaned up).

Furthermore, even if Section 13(b) no longer supports monetary remedies after *AMG*, Wells Fargo suffers no injury from having to face the Receiver's suit because the challenged monetary remedies in the Stipulated Judgments are supported by other sources of authority unaffected by *AMG*, namely ROSCA and Section 19 of the FTC Act. ROSCA supports the judgment in two ways. First, it states that violations "shall be treated as a violation of a rule" under the FTC Act, 15 U.S.C. § 8404(a). Section 19(b) of the FTC Act, in turn, empowers district courts to order redress to victims. *See* 15 U.S.C. § 57b(a)(1). Courts have recognized the availability of monetary relief under Section 19(b) for violations of a rule issued under statutes with enforcement language substantively identical to that in ROSCA. *See, e.g.*, *Simple Health*, 58 F.4th at 1328-29.

23

Second, ROSCA expressly incorporates all of the enforcement powers in the FTC Act, stating that the FTC "shall enforce [ROSCA] in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC] Act were incorporated in and made part of" ROSCA. 15 U.S.C. § 8404(a). As a result, a complaint that seeks relief for a ROSCA violation effectively seeks relief under Section 19 as well. Thus, the district court correctly held that even if it allowed Wells Fargo to intervene and "granted its request to vacate the November 2019 Order authorizing the Receiver to sue Wells Fargo under Section 13(b) . . . the Receiver would still have the authority to continue its ongoing litigation against Wells Fargo to obtain a monetary judgment" by virtue of the ROSCA violations. 1-ER-7-8.[13]

Finally, as the district court noted, *AMG* does not affect the Receiver's state law claims (nor does Wells Fargo allege it did). Wells Fargo thus cannot show that the Receiver's suit is improper.[14]

---

[13] Wells Fargo contends that the 3-year limitations period for relief under Section 19 "would . . . limit recovery of potential consumer redress," Br. 24, but fails to explain or provide any record support showing how a recovery under Section 19 alone would differ from that under Section 13(b).

[14] For this reason, Wells Fargo misplaces its reliance (Br. 20-21) on *Ciesniewski v. Aries Cap. Partners, Inc*., No. 1:16-CV-817-WTL-TAB 2018 WL 4491211 (S.D. Ind. Sept. 19, 2018). There, the court held that a plaintiff had a sufficient injury from litigation expenses incurred to defend against garnishment proceedings brought by debt collectors who could not lawfully collect the debt from him. Here, the Receiver filed suit in connection with a valid judgment.

**B. Intervention Would Not Likely Redress Any Injury**

Wells Fargo's standing also fails for lack of redressability. "To establish Article III redressability, [a plaintiff must show that the relief they seek is both (1) substantially likely to redress [the plaintiff's] injuries; and (2) within the district court's power to award." *Juliana v. U.S.*, 947 F.3d 1159, 1170 (9th Cir. 2020); *see also M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("To establish redressability, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'") (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Even if Wells Fargo could show an injury from being subjected to the Receiver's lawsuit, it cannot show a substantial likelihood that any such injury will be redressed by intervention and a modification of the Stipulated Judgments or the appointment order to avoid suit by the Receiver.

Wells Fargo argues that a favorable decision would "modify [the district court's] receivership orders so they reflect the proper scope of equitable authority under Section 13(b) as understood after *AMG Capital*." Br. 23-24. The result, Wells Fargo asserts, would be to (1) "remove, or curtail, the financial basis at the foundation of" the Receiver's suit, (2) "limit the amount and kinds of damages the Receiver can actively pursue," (3) "limit or reduce the costs of Wells Fargo defending itself in" the Receiver's suit, and (4) "extinguish Wells Fargo's due

25

process concerns . . . inherent . . . [in] defend[ing] itself in a lawsuit brought by this Court's representative that is built on . . . orders . . . now known to be erroneous." Br. 24.

As the district court correctly explained, however, even if Wells Fargo intervened and the court vacated the receivership orders' reliance on Section 13(b), the Receiver would still maintain authority to pursue his suit and seek monetary damages based on ROSCA's support of the monetary component in the Stipulated Judgments. 1-ER-7-8. For the same reasons, Wells Fargo gains no benefit from its statement that a federal appellate court "'assume[s] that [the] plaintiff's claim has legal merit'" when considering a district court's remedial power regarding intervention. Br. 23 (quoting *Shulman v. Kaplan*, 58 F.4th 404, 409 (9th Cir. 2023)). In short, Wells Fargo's asserted injury is not redressable by a favorable ruling.[15]

Wells Fargo is not aided by its observation that redressability only requires that it is "likely, as opposed to merely speculative, that the injury will be redressed

---

[15] Furthermore, it is highly speculative whether Wells Fargo could succeed in convincing the district court to excise any reliance on Section 13(b) in its orders empowering the Receiver to sue. Doing so would require the court to undo the Stipulated Judgments agreed to by the parties and approved by the court nearly three years ago and retroactively apply the change of law wrought by *AMG*. Legal authorities would not support such an action. *See Teague*, 489 U.S. at 308; *Hyde*, 514 U.S. at 758.

by a *favorable* decision." Br. 22; *see also* Br. 25-26. The district court expressly considered and applied the *Lujan* redressability standard when concluding that Wells Fargo had "fail[ed] to establish a likelihood that an injury-in-fact will be redressed by a favorable decision." 1-ER-7 (citing *Lujan*, 504 U.S. at 560). For the same reasons, Wells Fargo's contention that the redressability "question is whether the district court has the power to issue the relief requested," Br. 23, does not further its cause. Even if the court granted the bank's request to remove reliance on Section 13(b) as a source of monetary relief, doing so would not prevent the Receiver's suit which is based on his state law claims and seeks monetary relief in part based on orders supported by ROSCA and Section 19 which were unaffected by *AMG*. Where "the court is unable to grant the relief that relates to the harm, the plaintiff lacks standing." *Shulman*, 58 F.4th at 409.

## II. THE DISTRICT COURT CORRECTLY DENIED WELLS FARGO'S MOTION TO INTERVENE

Even if Wells Fargo had standing, it did not meet its burden of establishing a right to intervene under Fed. R. Civ. P. 24(a)(2).[16] An intervenor must show four things: (1) its motion is timely; (2) it has a "significantly protectable" interest

---

[16] Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

27

relating to the property or transaction which is the subject of the action;

(3) disposing of the action without intervention may impair or impede the

intervenor's ability to protect that interest; and (4) its interest is not adequately

represented by the parties. *Berger v. North Carolina State Conf. of the NAACP*,

142 S. Ct. 2191, 2200-01 (2022); *Callahan v. Brookdale Senior Living Cmtys.,*

*Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022); *Cooper*, 13 F.4th at 864–65. Failing to

satisfy any one of these requirements is fatal to the attempted intervention. *Perry*

*v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

"Postjudgment intervention," as Wells Fargo sought, "is generally disfavored

because it creates delay and prejudice to existing parties." *Calvert v. Huckins*, 109

F.3d 636, 638 (9th Cir. 1997) (cleaned up). Such belated intervention is reserved

for "exceptional cases." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir.

1978). Wells Fargo failed to satisfy at least three of the four factors, the absence of

any one of which suffices to affirm the denial of intervention.

### A. The District Court Properly Exercised its Discretion in Finding Wells Fargo's Motion Untimely

Timeliness "is the threshold requirement for intervention," *Kalbers v. United*

*States Dep't of Just*., 22 F.4th 816, 822 (9th Cir. 2021), and potentially dispositive,

for where a "court finds that the motion to intervene was not timely, it need not

reach any of the remaining elements of Rule 24." *United States v. Washington*, 86

F.3d 1499, 1503 (9th Cir. 1996). Timeliness turns on the totality of the

circumstances, but courts "focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith*, 830 F.3d at 854 (cleaned up).

Contrary to Wells Fargo's claims (Br. 33), the district court did not express a benchmark by when intervention should be measured. But even if it had, Wells Fargo never explains the difference between the two approaches it described and would be hard pressed to do so in light of this Court's recent recognition that the two verbal formulations are different ways of saying the same thing. In *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835–36 (9th Cir. 2022), the court explained that:

> A party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (citation and quotation marks omitted) . . . When evaluating [the three] factors, courts should be mindful that "the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *Smith*, 830 F.3d at 854 (citation and alteration omitted).

*Kalbers* also used both formulations when describing the standard by which timeliness should be measured. *Id.*, 22 F.4th at 822–23 (citing *State of Oregon,* 913 F.2d at 589). Against either benchmark, Wells Fargo's attempt to intervene was plainly untimely on each of the three factors.

## 1. Wells Fargo sought to intervene long after it had reason to know that its interests were at stake.

Wells Fargo moved to intervene in November 2021. It had known about the FTC's investigation into Triangle since 2017, when the FTC subpoenaed information about numerous accounts the bank had opened for the Triangle and Hardwire defendants. FTCSER-157-165 ¶¶ 139, 141-143, 147-153. In early July 2018, soon after the district court entered the TRO, the Receiver served Wells Fargo with the order, FTCSER-155 to which the bank responded by freezing dozens of Triangle Media and Hardwire accounts. FTCSER-149-151. As the Receiver began seeking information about the defendants' accounts, Wells Fargo turned over funds from 40 accounts belonging to the defendants in September 2018. FTCSER-5-6. The Receiver also served a subpoena on Wells Fargo for information about accounts it opened in the similar *Apex* case. FTCSER-6. The Receiver ultimately identified more than 150 accounts that Wells Fargo opened through approximately 100 shell companies for the defendants in both this case and the *Apex* action. *Id.*

At the very least, Wells Fargo was on notice by the fall of 2018 that its interests might become implicated, since it was also then subject to regulatory and criminal investigations and civil litigation, including receivers' suits stemming from government law enforcement cases, and had been found liable for over a billion dollars in fines – all stemming from its widespread improper account

30

opening practices.[17] At the end of May 2019, FTC and defendants settled, and the court entered Stipulated Judgments against both sets of defendants. *See* 2-ER-149–153; 2-ER-125-48; 2-ER-100-124.

Five months later, in October 2019, Wells Fargo had even more reason to know that its rights might be affected when the Receiver publicly sought court approval to hire counsel to sue the bank.[18] 2-ER-88-90; FTCSER-6 ¶ 8. The court granted the request a few weeks later and administratively closed the case on November 19, 2019. 2-ER-82-84.[19]

By April 2020, Wells Fargo undoubtedly knew its interests might be at stake. On the first of that month, the Receiver served the bank with a proposed

---

[17] *See* FTCSER-30-32, 39-40 [Dkt. 154 at 26-28, 35-36] (noting $185 million in fines in 2016, and one billion dollars in 2018 fines); *In re Wells Fargo Fraudulent Acct. Opening Litig.*, 282 F. Supp. 3d 1360 (U.S. Jud. Pan. Mult. Lit. 2017) (noting 8 open cases against Wells Fargo).

[18] The bank was directly familiar with claims by receivers, having defended against multiple lawsuits brought by equity receivers appointed in FTC and other government law enforcement cases. *See, e.g.*, *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 989 (11th Cir. 2014) (receiver in FTC case); *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) (receiver in SEC case); *aff'd*, 677 F. App'x 573 (11th Cir. 2017); *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 958-59 (5th Cir. 2012) (same); *Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816, at *1 (C.D. Cal. Feb. 22, 2011) (same).

[19] On February 4, 2020, the Receiver sought approval to sue Wells Fargo in the similar *Apex* case, which that court granted on March 9, 2020. *See* FTCSER-6 ¶ 9 [Dkt. 167-1 ¶ 9]; *Apex Cap.*, 2022 WL 1060486 at *2. The Receiver's suit against Wells Fargo alleges unlawful conduct by the bank arising out of both enforcement cases.

complaint detailing legal claims and requesting damages, along with a mediation proposal. FTCSER-6 ¶ 10. Yet the bank waited another 19 months to intervene. FTCSER-7-8 ¶¶12-21, 23-27. On July 8, 2021, having exhausted other options, the Receiver sued the bank. FTCSER-8 ¶ 28. Yet even then the bank waited another *four months* to intervene.[20]

The district court properly considered the two years it took Wells Fargo to intervene after the case was closed as a factor that "weighs heavily against intervention." 1-ER-9 (*citing, inter alia, Washington*, 86 F.3d at 1503). Wells Fargo claims that "the case remains open as to matters related to the Receivership." Br. 37 (citing 2-ER-84). While that might be true, the enforcement case has been closed as to the parties since November 2019 because all of the FTC's claims

---

[20] On the following day, July 9, 2021, a group of defendants in the similar *Apex* action moved to modify or vacate the monetary portion of the stipulated judgments against them based on the *AMG* decision. *See Apex Cap*., 2022 WL 1060486, at *2. The *Apex* court denied the motion in September 2021, ruling that (1) circuit precedent prior to *AMG* provided an "arguable basis" for the court's exercise of jurisdiction to issue the Stipulated Judgment based on Section 13(b) so Rule 60(b)(4) does not apply; (2) unpaid monetary judgments are not "prospective" under Rule 60(b)(5) and thus do not qualify for relief under that rule; and (3) *AMG* did not create "extraordinary circumstances" to justify relief under Rule 60(b)(6) because defendants settled even though they knew that the FTC's authority to obtain monetary relief under Section 13(b) was being challenged. *Id*. at *3. To the extent Wells Fargo made the strategic choice to wait and see whether the *AMG*-based arguments by the defendants in *Apex* would be successful, that choice weights against it in the timeliness analysis.

32

against all of the defendants had been resolved in May 2019 through the Stipulated Judgments.

Reopening a long-closed case that was settled runs the risk of undoing settlements that the parties had entered into more than two years earlier. This Court has affirmed denials of intervention that would similarly upend settlements. *See County of Orange v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986); *Cal. Dept. Toxic Subst. Control v. Comm. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002). Wells Fargo argues that it had no reason to intervene in October 2019 when the Receiver sought on the public record court permission to sue the bank. Br. 34-35. It claims that "[a]s a non-party, [it] was never served with these filings and did not know that it would" be sued by the Receiver. *Id.* But for Wells Fargo to assert that it had *no* expectation of being sued, or reason to follow the case to know the Receiver specifically sought to sue the bank in October 2019, is simply implausible given the dozens of accounts it was forced to close pursuant to the TRO, its repeated experiences defending against receivers' lawsuits, and the bank's status as a target of regulatory and criminal investigations and civil lawsuits relating to its improper account opening practices.

There is no reason Wells Fargo could not have intervened at that time to make the same arguments it made two years later, such as asserting that Section 13(b) does not allow monetary remedies or complaining that the FTC's May 2019

33

settlements were too lenient. *See* FTCSER-106-109. Instead, it chose to sit on the sidelines and forego whatever ability to intervene it may have held. *See Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc*., 2017 WL 4769439, *1 (C.D. Cal. 2017) ("A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'"); *Herb Reed Enters., Inc. v. Bennett*, 2012 WL 5989632, at *4 (D. Nev. Nov. 29, 2012) (denying intervention where applicant "made a strategic decision" to pursue another path for months before seeking intervention). *compare Trunk v. City of San Diego*, 2012 WL 6213712, at *1-4 (S.D. Cal. Dec. 12, 2012) (permitting intervention where putative intervenors raised their interest to intervene before the district court the day they became aware that their rights were affected).

Wells Fargo is not aided by its argument that it had no reason to intervene until at least April 2021 because the FTC's right to monetary remedies under Section 13(b) had not yet been overturned in *AMG* and any challenge to the Receiver's powers to seek monetary damages would have been futile. Br. 35. A would-be intervenor cannot strategically sit out the fight until the law has changed in its favor. Wells Fargo should have intervened to protect its interests within a reasonable time of knowing they were at stake – and in such a motion it could have made the arguments that the *AMG* defendants were making at that time. Indeed, by 2018, two judges on the Ninth Circuit had expressed their view that Section 13(b)

34

did not authorize monetary remedies. *See FTC v. AMG Cap. Man.*, 910 F.3d 417 (9th Cir. 2018). The next year, the Seventh Circuit overruled its precedent and held that Section 13(b) did not allow such remedies. *See FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019). On that background, any reasonable party in Well Fargo's position would have known no later than 2020, during negotiations with the Receiver, that the time for intervention was at hand. Wells Fargo further asserts even after *AMG* it had no reason to intervene until it was sued by the Receiver. Br. 35. But, as explained, the Receiver provided its draft complaint and damages claim to the bank in April 2020: a full year before the *AMG* decision.[21]

As the district court recognized, Wells Fargo's timeliness argument "ignores the fact that Wells Fargo waited over six months after the *AMG* decision and nearly four months from the date the [Receiver's suit] commenced to file [its] motion." 1-ER-10. *See*, *e.g.*, *United States v. Lande*, 2008 WL 11490112, at *1 (D. Mont. Jan. 17, 2008) (moving just *four days* after a judgment "indicates the

---

[21] The bank contends it had no reason to know its risks after *AMG* because it was uncertain how the FTC would treat receiverships in cases in which it had sought monetary relief under Section 13(b). Br. 35. As an example of such "uncertainty," Wells Fargo claims that the FTC conceded on remand in *AMG* that the monitorship in that case should end, Br. 36, suggesting that the agency might take the same position regarding the receivership in this case. But it was the Monitor in *AMG* – not the FTC – that commented about the end of the monitorship. *See* Br. 36 n.9. More importantly, in *AMG* (unlike here) the FTC sought monetary relief only under Section 13(b). *See FTC v. AMG Servs., Inc.*, 558 F. Supp. 3d 946, 967 (D. Nev. 2021).

motion's untimeliness"); *see also Montgomery v. United States*, 2012 WL 124854, at *1, 8 (S.D. Cal. Jan. 17, 2012) (moving 22 days after the parties noticed their settlement "weighs heavily against" timeliness). The bank never submitted a declaration or other evidence establishing a factual basis for its four-to-six month delay. Nor did it provide a reason for its extended tardiness. Wells Fargo now suggests that it didn't intervene earlier in order to avoid "premature intervention' that unnecessarily 'squander[s] scarce judicial resources and increase[s] litigation costs.'" Br. 36-37 (citing *Kalbers*, 22 F.4th at 823). But it provides no answer for why intervening months (or years) after the underlying case had settled and closed would not impose an even greater waste of judicial and party resources.

### 2. Intervention would have prejudiced the parties.

While "emphasiz[ing] that timeliness must be evaluated by the 'totality of the circumstances,'" this Court has recognized that "prejudice to the parties is the most important consideration" of the three timeliness factors. *Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, 804 F. App'x 519, 521 (9th Cir. 2020) (cleaned up).

The district court correctly ruled that allowing Wells Fargo to intervene to challenge the reliance of the Stipulated Judgments and other receivership orders on Section 13(b) six months after *AMG* and four months after the Receiver's suit would prejudice the FTC. 1-ER-10. That is true for several reasons. First, Wells

Fargo's litigation of such a claim would do little more than waste FTC and judicial resources because, even if successful, the result would not eliminate the monetary judgments or even change their amount because they are equally supported by ROSCA and Section 19. Further, the FTC would be prejudiced by having to litigate Wells Fargo's claims, which raise new issues and which Wells Fargo could have raised two years ago. *See Calvert*, 109 F. 3d at 638 (intervention would have prejudiced the parties by having to litigate the merits of the intervenors' claims); *Alisal Water*, 370 F.3d at 922 (finding prejudice where "intervention would inject new issues into the litigation" at a "late date" (cleaned up)); *Hawaii v. U.S. Dep't of Educ*., 2010 WL 346445, at *3 (D. Haw. Jan. 29, 2010) (finding prejudice in having to litigate new issues where the "case was already closed and judgment entered" a year earlier).

Moreover, intervention could upset this closed case and the Stipulated Judgments. Undoing closed matters is precisely why post-judgment intervention is "generally disfavored." *Calvert*, 109 F.3d at 638. This principle gains even greater force where intervention could affect settlements reached after compromises made by the parties. *Cal. Dept. of Toxic Subst. Control*, 309 F.3d at 1119. Wells Fargo insists that it does not seek to modify the Stipulated Judgments, but rather to "modify the orders giving the Receiver authority to pursue Wells Fargo." Br. 40. But the receivership orders are part and parcel of the Stipulated Judgments; they

give the Receiver authority to pursue assets belonging to the corporate defendants in the possession of third parties to satisfy the monetary awards. If the judgments were undone with respect to Wells Fargo, there is no stopping point. The whole point of intervention is to change Wells Fargo's potential liability by taking away one of the statutory bases on which the Stipulated Judgments (agreed to by the parties years earlier) were based. Beyond the FTC and the Triangle defendants, reopening the case and engaging in additional litigation delay would threaten redress intended for defrauded consumers.[22]

### 3. Wells Fargo gave no valid reason for its delay.

Wells Fargo did not filed its motion for intervention until more than two years after the Court approved the Receiver's request to hire contingency counsel to sue the bank and 19 months after the bank knew the terms of the Receiver's suit. That conduct "weighs heavily against intervention." *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997) .

As explained above, *AMG* does not excuse Wells Fargo's delay because neither the Receiver's suit nor the monetary judgments are affected by the decision. *See supra at* 23-24, 34-35. Even if the Court were to accept Wells Fargo's contention that it could not intervene until it had been sued by the

---

[22] While the district court misstated the FTC's ability to sue banks, *see* 15 U.S.C. § 45(a)(2), that error is harmless because the court's prejudice finding is supported by other evidence and arguments as shown above.

Receiver, Br. 34, the bank still fails to explain the four-month gap after the Receiver's lawsuit. It argues that motions to intervene filed at or beyond four months have been found timely, Br. 36, but all the cases it relies upon are distinguishable from this one.[23] Further, courts have denied intervention as untimely in a far shorter period of time in cases challenging receivership actions. *See*, *e.g.*, *FTC v. Cardiff*, 2020 WL 766336, at *4 (C.D. Cal. 2020) (delay of *less than two months* after interests in matter arose from an order related to receivership considered untimely), *aff'd*, 830 F. App'x 844, 845 (9th Cir. 2020).

### B. Wells Fargo had no "significantly protectable" interest.

"A would-be intervenor has a significant protectable interest if the interest is protected by law and there is a relationship between that interest and the claim or claims at issue." *Cooper*, 13 F.4th at 865. Wells Fargo asserts that it has "a significant protectable interest to not have unlawful orders applied and enforced against it." Br. 30. That nebulous explanation identifies neither the law that

---

[23] For example, in *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010), none of the parties challenged intervention where the proposed intervenors took several actions within four months of learning that their interests might be at risk by a proposed consent decree followed by their motion to intervene. Here, Wells Fargo took no action to protect its interests during the intervening four months. In *Idaho Farm Bureau Fed'n v. Babbit*, 58 F.3d 1392, 1397 (9th Cir. 1995), the intervention motion was filed "at a very early stage" of the case and before the preliminary injunction hearing. *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981) also involved an intervention motion filed in an open case. In contrast, Wells Fargo moved to intervene two years after the parties settled and the case closed.

protects its claimed interest nor the relationship between that interest and the "claims at issue." The district court correctly concluded that Wells Fargo failed "to demonstrate that it has a significantly protectable interest" under Rule 24(a)(2) for the same reason it lacked an injury sufficient to confer standing: intervention will not affect its "litigation exposure" to suits by the Receiver who can still assert his claims regardless of the availability of Section 13(b). 1-ER-10.

Wells Fargo is mistaken that it was reversible error for the district court to "equate[] the more stringent threshold for injury required for Article III standing with the similar, but lesser, threshold for establishing a significant protectable interest under Rule 24(a)." Br. 29. Even if the two showings are marginally different, as explained above Wells Fargo failed to name the law that protects its claimed interest or how it does so; nor did the bank explain how that interest is related to the claims at issue, both of which are required under Rule 24(a). *See Cooper*, *supra*.[24] Further, as the court below explained, intervention will not result

---

[24] Wells Fargo's contention that it met the Article III threshold and thus necessarily showed a significant protectable interest under Rule 24(a), Br. 29-30, fails because it made no showing of an Article III injury. *See supra* at Section I.A.

in the bank avoiding the Receiver's suit for monetary damages, because those claims rest on grounds other than Section 13(b). 1-ER-10.[25]

### C. Wells Fargo's Ability to Protect Its Interest Is Not Impaired.

Even if Wells Fargo had an interest to protect, Rule 24 requires a movant to be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). The inquiry is whether "an absentee would be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Disposition of this case will not impair Wells Fargo's ability to protect its interests. This case is closed. There is no future disposition that can affect Wells Fargo's interests because nothing is left to be decided in this action where all claims as to all parties have been resolved. *See Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 2020 WL 1052518, at *2 (D. Or. Mar. 4, 2020);

---

[25] Wells Fargo's reliance on *FTC v. Noland*, 2021 WL 4318466 (D. Ariz. Sept. 23, 2021), *appeal dismissed*, 2021 WL 6426079 (9th Cir. Dec. 14, 2021), is misplaced. It asserts that *Noland* supports the idea that after *AMG* the scope of a receiver's duties is limited to preventing receivership entities from engaging in harmful conduct and not to pursue monetary remedies. Br. 30. While confirming that a receiver may be appointed without a need to recover money, the district court in *Noland* did not hold, or even suggest, that receivers would be unable to seek monetary remedies post-*AMG* where the monetary remedy could be sustained on a basis other than Section 13(b). There, as here, "the now-established § 19 violations justify the asset freeze." 2021 WL 4318466 at *6.

*Palmer v. Nelson*, 160 F.R.D. 118, 122 (D. Neb. 1994); *see also United States v. N. Colorado Water Conservancy Dist.*, 251 F.R.D. 590, 598–99 (D. Colo. 2008) ("The claimed impairment under Rule 24(a)(2) must result from some pending action of the court.") In addition, Wells Fargo is raising a new claim that was not the subject of the FTC's enforcement action. Wells Fargo does not contend otherwise.

Wells Fargo argues that under the collateral attack doctrine it must raise its challenges to the district court's receivership orders in the court that issued the orders. Br. 30-31. The district court, however, observed that Wells Fargo may raise as defenses in the Receiver's suit the same arguments that it wants to assert here through intervention. *See* 1-ER-10-11. The court in the *Apex* case made the same point. *See Apex Cap.*, 2022 WL 1060486, at *5. And while that court recognized "that Wells Fargo chose not to raise the [*AMG*] issue in its Motion to Dismiss the Receiver's Complaint in the [Receiver's] Action," *id.*, n.2, it did not say that Wells Fargo was prevented from doing so.

## III. THE DISTRICT COURT PROPERLY DENIED PERMISSIVE INTERVENTION

Wells Fargo also moved for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Such a request may be granted "where the applicant 'shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a

42

question of fact in common.'" *Perry*, 587 F.3d at 955. The "timeliness element" is analyzed "more strictly" in deciding permissive intervention than in intervention as of right. *Wilson*, 131 F.3d at 1308.

The district court correctly denied permissive intervention for the same reasons that it denied intervention as of right. 1-ER-11-12. Wells Fargo's challenge to that ruling fails for all the reasons explained above. Moreover, because the district court's decision fell well within its discretion, this Court lacks jurisdiction to review that ruling. *Cooper*, 13 F.4th at 868.

## CONCLUSION

The district court's denial of Wells Fargo's motion to intervene as of right under Fed. R. Civ. P. 24(a)(2) should be affirmed. The district court's denial of Wells Fargo's motion for permissive intervention under Fed. R. Civ. P. 24(b) should be dismissed for lack of jurisdiction.

Date: May 8, 2023

Respectfully submitted,

ANISHA S. DASGUPTA
*General Counsel*

JOEL MARCUS
*Deputy General Counsel*

Of Counsel:
Jonathan W. Ware
*Attorney*
Federal Trade Commission
Washington, D.C. 20580

/s/ *Michael D. Bergman*
MICHAEL BERGMAN
*Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

44

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**    22-56012

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ x ]   I am unaware of any related cases currently pending in this court other than
the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case
number and name of each related case and its relationship to this case are:

**Signature**  s/ *Michael D. Bergman*                **Date**  May 8, 2023
*(use "s/[typed name]" to sign electronically filed documents)*
+

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  22-56012

I am the attorney or self-represented party.

**This brief contains  10,772  words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/ *Michael D. Bergman*  **Date May 8, 2023**
*(use "s/[typed name]" to sign electronically filed documents)*

# ADDENDUM

# STATUTES AND REGULATIONS

Fed. R. Civ. P. 24 provides:

(a) **Intervention of Right.**

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) **Permissive Intervention.**

(1) In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

(2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) **Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing Brief on May 8, 2023

using the appellate CM/ECF system. All participants in the case are registered

CM/ECF users, and service will be accomplished by the CM/ECF system.

Dated: May 8, 2023

/s/ *Michael D. Bergman*
Michael D. Bergman
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580