**No. 22-56012**

---

In the

# United States Court of Appeals
## For the Ninth Circuit

---

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

TRIANGLE MEDIA CORPORATION, *et al.,*

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., proposed Intervenors,

*Movants-Appellants,*

---

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of California
The Honorable Larry Alan Burns
Case No. 3:18-cv-01388-LAB-WVG

---

**REPLY BRIEF OF APPELLANTS WELLS FARGO & COMPANY AND
WELLS FARGO BANK, N.A.**

---

*(Counsel listed on following page)*

---

June 29, 2023

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
Jenny Yi
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com
jyi@mcguirewoods.com

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*

### TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

I.    Wells Fargo Has Article III Standing .............................................2

    A.    Wells Fargo has a Cognizable, Concrete Injury ..................4

    B.    Wells Fargo's Injury Can Only Be Redressed by the District
        Court That Issued the Challenged Orders ............................7

II.    Wells Fargo Timely Moved to Intervene ........................................9

    A.    The District Court Abused its Discretion by Applying an
        Incorrect Legal Standard ...................................................10

        1.    The District Court's Determination was Illogical,
            Implausible, and Without Support in the Record ...................12

        2.    Wells Fargo Could Not Intervene Until the Receiver
            Filed the Wells Fargo Litigation .............................13

        3.    The District Court Abused Its Discretion in Finding that
            Wells Fargo Brought Its Motion Late in the Proceeding.........20

        4.    The District Court Abused its Discretion in Finding
            Prejudice................................................................22

    CONCLUSION ....................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AMG Capital Management, LLC v. FTC*,
  141 S. Ct. 1341 (2021)............................................................1, 5, 6, 11, 15, 21

*Banco Popular de Puerto Rico v. Greenblatt*,
  964 F.2d 1227 (1st Cir. 1992)..............................................................14

*Ciesniewski v. Aries Cap. Partners, Inc.*,
  No. 1:16-CV-817-WTL-TAB,
  2018 WL 4491211 (S.D. Ind. Sept. 19, 2018).....................................4

*Citizens for Clean Air v. Wheeler*,
  No. C18-1803 TSZ, 2019 WL 3205851 (W.D. Wash. July 16, 2019)...............20

*Clark v. City of Seattle*,
  899 F.3d 802 (9th Cir. 2018) ...............................................................16

*Dilks v. Aloha Airlines*,
  642 F.2d 1155 (9th Cir. 1981) .......................................................15, 20

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993) .................................................................6

*FTC v. Wash. Data Res.*,
  856 F. Supp. 2d 1247 (M.D. Fla. 2012), *aff'd sub nom.*
  *FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323 (11th Cir. 2013) ...........6

*Grant v. A.B. Leach & Co.*,
  280 U.S. 351 (1930).................................................................................9

*Grondal v. United States*,
  37 F.4th 610 (9th Cir. 2022) .................................................................17

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) .........................................................15, 19, 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992).................................................................................7

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ...............................................................8

*Montgomery v. United States*,
    No. 09-CV-1588 JLS WVG, 2012 WL 124854 (S.D. Cal. Jan 17, 2012) .........20

*Mullis v. U.S. Bankr. Court for Dist. of Nev.*,
    828 F.2d 1385 (9th Cir. 1987) ...............................................................9

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
    860 F.3d 1228 (9th Cir. 2017) .............................................................19

*Orange Cnty. v. Air Cal.*,
    799 F.2d 535 (9th Cir. 1986) ...............................................................22

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
    584 F.3d 1 (1st Cir. 2009) ....................................................................14

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ...............................................10, 12, 22

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) .............................................................22

*Snoqualmie Indian Tribe v. Wash.*,
    No. 3:19-CV-06227-RBL, 2020 WL 4729178 (W.D. Wash. Apr. 16, 2020)....20

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) .........................................................................14

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ...........................................................................3

*United States v. Carpenter*,
    298 F.3d 1122 (9th Cir. 2002) .............................................................19

*United States v. Palomar-Santiago*,
    141 S. Ct. 1615 (2021) ...........................................................................8

*United States v. State of Or.*,
    745 F.2d 550 (9th Cir. 1984) ...............................................................23

*United States v. Aerojet Gen. Corp.*,
   606 F.3d 1142 (9th Cir. 2010) ....................................................15, 19

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ......................................................10, 12

**Other Authorities**

Donald R. C. Pongrace,
   *Requirement of Notice of Third-Party Subpoenas Issued in SEC
   Investigations: A New Limitation on the Administrative Subpoena Power*,
   33 Am. U. L. Rev. 701 (1984) ..........................................................18

SEC, *Investor Bulletin: SEC Investigations* (Oct. 22, 2014),
   https://www.sec.gov/oiea/investor-alerts-
   bulletins/ib_investigations ...............................................................18

Stipulated Judgment, *FTC v. Apex Cap. Grp., LLC*,
   No. 2:18-cv-9573-JFW-JPR (C.D. Cal. filed Sept. 11, 2019), Dkt. 120.............7

Stipulated Judgment, *FTC v. Apex Cap. Grp., LLC*,
   No. 2:18-cv-9573-JFW-JPR (C.D. Cal. filed Sept. 11, 2019), Dkt. 121.............7

iv

## INTRODUCTION

The question in this case is whether Wells Fargo can intervene to challenge the district court's orders allowing the Receiver to wage a litigation war against Wells Fargo based on an invalid theory of authority. The district court, the FTC, and the Receiver, however, have miscast Wells Fargo's basis for intervention as an attempt to reopen the Stipulated Judgments with third parties. They are wrong. Wells Fargo has no intent to disturb the Stipulated Judgments. It simply objects to the ongoing unlawful campaign to satisfy those judgments by pursuing Wells Fargo's assets.

That mischaracterization of Wells Fargo's motion to intervene underscores the district court's errors in barring Wells Fargo's challenge under Article III and Rule 24. This Court should reverse and allow Wells Fargo to challenge the district court's orders. These orders set a bounty on Wells Fargo based on the construction of the FTC Act that the Supreme Court rejected in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341, 1352 (2021) (Section 13(b) of the FTC Act "does not grant the Commission authority to obtain equitable monetary relief").

As to Article III standing, Wells Fargo's injury is concrete and particularized because Wells Fargo is *now* being pursued based on orders appointing the Receiver and granting him authority to sue Wells Fargo that are rooted in an invalidated construction of Section 13(b). Wells Fargo's injury can be redressed by the district

1

court vacating or modifying its orders granting the Receiver authority to pursue Wells Fargo to collect monetary damages. Indeed, this redress can *only* be made before the district court that issued the orders because challenges to the orders elsewhere are barred by the collateral-attack doctrine.

As to Wells Fargo's intervention, again, the district court, the FTC, and the Receiver fail to understand that a court cannot begin to measure timeliness until an intervening party has Article III standing to intervene. In Wells Fargo's case, it did not have Article III standing until the Receiver filed the Wells Fargo Litigation in July of 2021. Also critical to the timeliness analysis is that Wells Fargo was bound by the *Apex* district court's Standing Order, which required Wells Fargo to meaningfully meet and confer before moving to intervene. In doing so, Wells Fargo complied with the letter and spirit of that court's Standing Order, by considering the FTC's and the Receiver's arguments and consequently narrowing the issues for intervention here. The upshot of the district court's erroneous ruling is that Wells Fargo will be boxed out from challenging orders that have *already* created concrete and particularized injury. And the district court's circumvention of recent Supreme Court precedent will be rendered unreviewable. This Court should reverse.

## ARGUMENT

## I.    Wells Fargo Has Article III Standing.

The FTC and the Receiver continue to mischaracterize and marginalize Wells

Fargo's injuries as too speculative to meet the requirement that its injury is actual or imminent and prematurely jumps to merits arguments. Receiver Br. at 35-36; FTC Br. at 21-24. However, Wells Fargo showed that it satisfies all the Article III requirements to challenge the erroneous orders instigating the Receiver's monetary damages campaign. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); Opening Br. at 20-22. First, Wells Fargo is suffering the Article III injury of being subject to that litigation campaign, which the district court ignored in mischaracterizing Wells Fargo's injury as "hav[ing] to pay a monetary judgment contingent on the Receiver's success in the separate Wells Fargo Litigation." 1-ER-7. The Receiver and the FTC likewise continue to mischaracterize Wells Fargo's injury as "nebulous" and rely on merits arguments. Receiver Br. at 34-36; FTC Br. at 21-24. Second, Wells Fargo's injury is redressable. The district court erroneously engaged in a merits-based analysis, essentially imposing a new requirement that proposed intervenors prove a likelihood of success on the merits. 1-ER-7–8. Like the district court, the FTC and the Receiver erroneously and prematurely rely on a merits analysis to argue against redressability and fail to address the collateral-attack doctrine that requires Wells Fargo to seek redress before the district court. And there is no dispute that Wells Fargo satisfies the traceability requirement. Opening Br. at 21-22.

### A.    Wells Fargo has a Cognizable, Concrete Injury.

Wells Fargo's injury is concrete and actual. Relying on an inaccurate view of Wells Fargo's injury, the FTC and the Receiver argue that (1) Wells Fargo fails to identify its harm and instead marginalize Wells Fargo's harm to litigation costs, and (2) Wells Fargo's injury fails because the Receiver's Action is proper. Receiver Br. at 34-36; FTC Br. at 21-24. These arguments fail for three reasons.

First, contrary to the FTC and the Receiver's arguments, Wells Fargo has clearly identified its "continuing harm directly imposed on Wells Fargo as a result of the district court's deputization of the Receiver to hire outside counsel and sue Wells Fargo for monetary damages that the Receiver is no longer properly entitled to pursue." Opening Br. at 20. Wells Fargo does not assert that its injury is based upon a future potential finding of liability, a potential judgment for damages as a result of the Receiver's lawsuit, or limited to the cost of litigation. *See* Opening Br. at 20-22. With orders founded on a now invalid construction of Section 13(b), the district court empowered the Receiver to pursue Wells Fargo. The Receiver took full advantage of the impermissible grant of power, such that once the Receiver sued Wells Fargo, Wells Fargo suffered a concrete and actual injury. *See, e.g.*, *Ciesniewski v. Aries Cap. Partners, Inc.*, No. 1:16-CV-817-WTL-TAB, 2018 WL 4491211, at *2 (S.D. Ind. Sept. 19, 2018) (finding standing where plaintiff had to defend himself in a prior garnishment action later found to be brought by parties who

were not entitled to collect). Contrary to the Receiver's argument, *Ciesniewski* fully supports the principle that defending against an unlawful lawsuit amounts to a concrete, particularized, and actual injury. Here, the Receiver's Action against Wells Fargo is unlawful because the Supreme Court made clear that Section 13(b) does not permit prospective monetary relief. *AMG Cap. Mgmt., LLC*, 141 S. Ct. at 1349-50. Accordingly, the Receiver's unlawful pursuit is Wells Fargo's concrete and actual injury, which satisfies the injury requirement for Article III standing.

Second, the FTC's arguments about the validity of the Stipulated Judgments are a red herring. *See* FTC Br. at 22-24. As an initial matter, Wells Fargo's motion to intervene, and this appeal, do not seek to vacate or amend those Stipulated Judgments. Wells Fargo was not a party to the Stipulated Judgments and thus does not have standing to challenge the Stipulated Judgments. Wells Fargo's intervention to challenge the district court's orders is further distinguishable because Wells Fargo's challenge is only to the overbroad and unlawful reach of the orders granting the Receiver the ability to sue Wells Fargo to recover damages based upon the monetary judgments to the extent they are erroneously predicated on Section 13(b). It is not a direct challenge to the Stipulated Judgments. *See* Opening Br. at 1-2, 3, 18, 21, 23, 30, 31. Even if the Stipulated Judgments are valid because they were entered into before *AMG Capital*, new efforts to recover monetary judgments erroneously predicated on Section 13(b) post-*AMG Capital* are improper. Indeed,

5

third-party litigation to recover monetary judgments predicated on Section 13(b) have been voluntarily dismissed by court-appointed receivers and monitors in other cases, including other cases in which the Receiver has been appointed. *See* 1-SER-115–16 (McNamara, the court-appointed monitor in *FTC v. AMG Cap. Servs. Inc.*, Case No. 2:12-cv-00536-GMN-VCF, conceding that he no longer has authority to pursue litigation stemming from the underlying FTC action in light of the Supreme Court's *AMG Capital* decision and dismissing parallel actions).

Lastly, the argument that Wells Fargo suffers no injury from having to face the Receiver's suit because the challenged monetary remedies in the Stipulated Judgments are supported by other sources of authority, such as ROSCA and Section 19, also fails for several reasons. FTC Br. at 22-24. First, even if Section 19 is a basis for recovery, it is well-established that any recovery under Section 19 is limited to consumer redress. *AMG Cap. Mgmt., LLC*, 141 S. Ct. at 1346 (Congress enacted Section 19, which authorizes courts to grant "such relief as the court finds necessary to redress injury to consumers"); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 607 (9th Cir. 1993) (Congress's intent under Section 19 is "only to authorize redress to consumers and others for 'injury resulting 'from the trade practice"); *FTC v. Wash. Data Res.*, 856 F. Supp. 2d 1247, 1281 (M.D. Fla. 2012), *aff'd sub nom. FTC v. Wash. Data Res., Inc.*, 704 F.3d 1323 (11th Cir. 2013) (Section 19 "prohibits disgorgement in excess of consumer redress"). However, the Receiver seeks to

potentially recover more than $160,000,000 from Wells Fargo—well above and beyond any consumer redress.[1] FER-22 (citing to RJN, Ex. C. Wells Fargo Litigation Complaint). Even if Section 19 were a basis for the FTC's recovery, Wells Fargo has suffered an injury because the Receiver seeks to recover beyond what is permitted. Further, the extent of any recovery under current law will need to be determined by the district court in a merits determination. Accordingly, Wells Fargo has satisfied the injury requirement for Article III standing.

### B. Wells Fargo's Injury Can Only Be Redressed by the District Court That Issued the Challenged Orders.

Wells Fargo's injury stems from the district court's orders appointing the Receiver and authorizing the Receiver to sue Wells Fargo. Opening Br. at 4-5. Its injury can be redressed by vacating or modifying those orders. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The district court, the FTC, and the Receiver all erroneously engaged in a merits-based analysis about whether the Receiver could nevertheless pursue monetary damages under Section 19, ROSCA, and state law claims to determine redressability—even though those issues were not before the district court. Receiver Br. at 36-39; FTC Br. at 25-27; 1-ER-6; 2-ER-26–30. It is

---

[1] The Stipulated Judgments between the FTC and the Apex Defendants and Triangle Defendants are the result of negotiated "no-fault" contractual agreements between the parties, which do not include any findings of consumer redress. *See* 1-ER-125–48; 1-ER-100–24; *FTC v. Apex Cap. Grp., LLC*, No. 2:18-cv-9573-JFW-JPR (C.D. Cal. filed Sept. 11, 2019), Dkts. 120, 121.

well established that redressability is a preliminary determination, with the merits to be decided after full briefing of the substantive issues post-intervention. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). Wells Fargo has been denied the opportunity to fully brief the substantive issues.

If Wells Fargo succeeds in challenging the appointment orders, its injury will be redressed. If the district court were to modify its order appointing the Receiver to reflect the proper scope of his equitable authority, the Receiver would no longer be able to pursue Wells Fargo for monetary damages rooted in the Stipulated Judgments. Such a determination needs to be made after Wells Fargo is permitted to intervene and then able to brief the merits.

Further, the district court erred in holding that Wells Fargo's injury could be redressed by raising the issue in the Wells Fargo Litigation. 1-ER-10–11. The collateral-attack doctrine—which both the FTC and the Receiver ignore in their response briefs—requires Wells Fargo's challenge to be brought in the action that entered the challenged orders. Any challenges to the Receiver's authority must be made to the district court that issued the order; challenges in any other case would be stricken as a collateral attack on the orders. The collateral-attack doctrine thus requires that Wells Fargo's injury be redressed by the district court in the case the order was issued—and *only* in the issuing court. *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021) (collateral attack doctrine requires that challenge to an

order be made in case in which the order was issued); *Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1393 (9th Cir. 1987); *Grant v. A.B. Leach & Co.*, 280 U.S. 351, 359 (1930) (holding that an erroneous appointment of a receiver "plainly…[can] not [be] questioned by a collateral attack in another court."). Wells Fargo's challenge of the district court's orders in any other case would put Wells Fargo and the parties right where we are now—knocking on the doorstep of the court that issued the challenged orders.

For these reasons, the district court erred in holding that Wells Fargo lacks a concrete injury that can be redressed in this case. To the contrary, Wells Fargo satisfied all the requirements of Article III standing.

## II. Wells Fargo Timely Moved to Intervene.

The threshold issue for intervention is not timeliness alone, but the timeliness of intervention once Article III standing is established and whether that timing prejudices the other parties to the litigation. The district court's order, applying the incorrect legal standard, and the Appellees' answering briefs discuss the purported untimeliness of Wells Fargo's intervention, at various points in time, without regard to the threshold issues of Article III standing and prejudice to the parties. 1-ER-12–15; Receiver Br. at 15-16; FTC Br. at 30-32.

### A.     The District Court Abused its Discretion by Applying an Incorrect Legal Standard.

The district court abused its discretion in determining the timeliness of Wells Fargo's intervention motion by focusing on when the district court entered the Stipulated Judgments and administratively closed the case. 1-ER-7. Additionally, by implying that Wells Fargo had to intervene as soon as it was "on notice that its interests were at risk…when the Receiver filed a motion notifying the Court…[of] a potential receivership estate lawsuit against Wells Fargo," the district court focused on the hypothesized outcome of the litigation, rather than on the incentives and actions of the existing parties. *See* 1-ER-7; *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 858 (9th Cir. 2016). As Appellees agree, "the crucial date for assessing the timeliness of a motion to intervene is when [Wells Fargo] should have been aware that their interests would not be adequately protected by the existing parties." Receiver Br. at 13 (citing *Smith*, 830 F.3d at 858); *see also* FTC Br. at 29 (citing *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835-36 (9th Cir. 2022)).

Using an improper legal standard, the district court incorrectly held that Wells Fargo's intervention was not timely, without regard to: (a) Article III standing requirements; (b) efforts in related litigation (*Apex*) to meet and confer to narrow the scope of the intervention that would necessarily affect Wells Fargo's intervention in both cases; or (c) prejudice to the parties. On that basis, the district court held that Wells Fargo was on notice that its interests might be adversely affected when: (1)

10

the Receiver filed his motion requesting permission to sue Wells Fargo on February 4, 2020 (even though Wells Fargo was not a party to the litigation and was not served with the motion or orders); (2) the Supreme Court entered its decision in *AMG Capital* (even though the Receiver had not filed the Wells Fargo Litigation); (3) the Receiver entered into pre-litigation negotiations with Wells Fargo to explore resolution of the Receiver's threatened claims in April 2020 (even though the Receiver had not filed the Wells Fargo Litigation); and (4) the Receiver filed the Wells Fargo Litigation on July 8, 2021 (before Wells Fargo had met and conferred with the Receiver as required by the *Apex* court's Standing Order)[2]. 1-ER-9–10.

Contrary to the FTC's and the Receiver's contentions, the district court imposed the wrong benchmark when it held that Wells Fargo had to intervene essentially as soon as it knew or should have known that its interests might be adversely affected by the outcome of the litigation. 1-ER-7–8. To be clear, the correct standard—as the FTC points out—must consider when Wells Fargo should

---

[2] Because the *Apex* district court has a meet and confer requirement, Wells Fargo met and conferred with the Receiver and the FTC on multiple occasions, with the last meeting on August 23, 2021. 2-ER-41. Given the similarity of the challenge to the orders in both *Apex* and *Triangle*, the meet and confer efforts in *Apex* naturally impacted the substance of Wells Fargo's challenge to the *Triangle* orders. As a result of ongoing meet and confer efforts following the initial August 2021 discussion, Wells Fargo narrowed the scope of its challenges; it determined to challenge the orders related to the appointment of the Receiver and the orders permitting the Receiver to pursue Wells Fargo – instead of challenging the Stipulated Judgments in both cases. Accordingly, on November 11, 2021, Wells Fargo moved to intervene as of right, under Rule 24(a), and permissively, under Rule 24(b). 2-ER-75–77.

have been aware that its interests would not be adequately protected by the existing parties. FTC Br. at 29; *Smith*, 830 F.3d at 854; Opening Br. at 33. Rather, the district court merely applied the three factors outlined in *Smith* without analyzing when Wells Fargo knew or should have known that its interests might be adversely affected by the outcome of the litigation as the FTC's cited case *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835-36 (9th Cir. 2022) held. 1-ER-7–8; FTC Br. at 29; Receiver Br. at 14 (noting the district court merely applied the three *Smith* factors with no analysis into when Wells Fargo should have been aware that its interests would not be adequately protected by the existing parties). Failing to analyze the *Smith* factors in the context of when Wells Fargo should have been aware that its interests would not be adequately protected by the existing parties is an abuse of discretion.

### 1. The District Court's Determination was Illogical, Implausible, and Without Support in the Record.

Wells Fargo has established that the district court abused its discretion in applying the three primary factors identified in *Smith*: "(1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *See* Opening Br. at 32-33; 1-ER-9 (internal quotation marks omitted); *see also W. Watersheds Project*, 22 F.4th at 836 (citing and quoting *Smith*, 830 F.3d at 854). The district court's analysis was flawed for several reasons. First, Wells Fargo established that it intervened at the

only stage of the proceeding that it lawfully could. This is because before the Receiver filed the Wells Fargo Litigation, Wells Fargo lacked Article III standing. *See* Opening Br. at 34-37. Second, Wells Fargo could not intervene before it met and conferred, as required by the district court's Standing Order in *Apex*, which naturally impacted the substance of Wells Fargo's challenge to the *Triangle* orders. 2-ER-41; Opening Br. at 14. Thus, any purported delay was reasonable. Lastly, as the Receiver recognizes, the case may have been administratively closed, but it remains active for purposes of the Receiver's authority which Wells Fargo is challenging. Most importantly, no parties will be prejudiced by Wells Fargo's intervention because it is not challenging the Stipulated Judgments and would not force any of the parties to litigate across multiple actions. Receiver Br. at 22.

### 2. Wells Fargo Could Not Intervene Until the Receiver Filed the Wells Fargo Litigation.

The FTC exaggerates the facts by arguing that Wells Fargo "chose to sit on the sidelines" after reciting events that occurred before the Receiver filed the Wells Fargo Litigation and arguing that therefore the district court did not abuse its discretion in finding that Wells Fargo's intervention was untimely. FTC Br. at 34. The FTC's recitation of the events fails to acknowledge or consider – just as the district court did not – that Wells Fargo *did not have Article III standing to intervene* during many of those events. Wells Fargo had to wait to see if the Receiver would *actually* pursue litigation against Wells Fargo based on authority rooted in an

invalidated legal theory.[3] Timeliness must be considered from when the intervenor obtained Article III standing to intervene. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a co-plaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."). Waiting to establish Article III standing before intervening is not an excuse, nor is it delay for a "strategic advantage," but it is a constitutional

---

[3] The Receiver cites *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1 (1st Cir. 2009), as support that a two-and-a-half month delay was unreasonable where the proposed intervenor was a "sophisticated financial institution with lawyers on staff". Receiver Br. at 28. The case is inapposite. The proposed intervenors in *R & G* had a stake in the settlement of the case, as it directly impeded proposed intervenor's servicing contract with a named party and their right to service loans. Despite being informed of their affected interests, proposed intervenors delayed two and a half months to seek intervention until after the consummation of the settlement. *Id.* at *8-9. In contrast, Wells Fargo did not have a stake in the settlement in *Triangle* and does not seek to disturb the underlying judgments against Defendants. Additionally, *Banco Popular de Puerto Rico* is also inapposite as the proposed intervenors, whose interests related to retention of discovery documents sought to be destroyed by a protective order, asked the court to modify the protective order but delayed in intervening until three months later when the protective order was embodied in a final judgment. *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992). In contrast, Wells Fargo was not given an opportunity to challenge the basis of the appointment of the Receiver and does not seek to disturb the underlying judgments against the *Triangle* Defendants. Wells Fargo solely seeks to address the issues of the Receiver's authority to pursue monetary damages against Wells Fargo.

requirement.[4]

The district court held, and the FTC and the Receiver argue, that Wells Fargo could, and should, have intervened when: (1) the Receiver filed his motion requesting permission to sue Wells Fargo on February 4, 2020; (2) the Supreme Court entered its decision in *AMG Capital* (even though the Receiver had not filed the Wells Fargo Litigation); and (3) the Receiver filed the Wells Fargo Litigation on July 8, 2021 (before Wells Fargo had met and conferred with the Receiver as required by the *Apex* district court's Standing Order).[5] 1-ER-9–10; Receiver Br. at 22-23; FTC Br. at 30-36. But the district court and Appellees fail to identify what injury would have satisfied the "injury" requirement of Article III standing at those points in time. Wells Fargo's concrete and particularized injury was the filing of the Wells Fargo Litigation. Wells Fargo could not have intervened at the issuance of the *AMG Capital* opinion as the Receiver argues, because before the Wells Fargo Litigation was filed, there was no particularized or concrete injury. Instead, all that existed was a hypothetical injury that could only materialize when the Receiver filed

---

[4] The Receiver's distinction of *United States v. Aerojet Gen. Corp.*, *Idaho Farm Bureau Fed'n*, and *Dilks*, is also misplaced. Despite the Receiver's attempts to distinguish, those courts found that the delay was not untimely. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (four-month delay not untimely); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (same); *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981) (upholding district court's implied finding of timeliness of a motion to intervene filed eighteen months after a complaint was filed).

[5] *See supra* n.4.

suit against Wells Fargo.[6]

The FTC and Receiver go further by arguing that non-parties should intervene any time there is a *threat* of a lawsuit based on an unresolved circuit split. FTC Br. at 31-32; Receiver Br. at 24. The result would be that every potential non-party with any notion that its interests might be affected by a lawsuit would intervene prematurely to preserve its right to intervene *in the event* an actual lawsuit is filed, ***and*** *in the event* a circuit split is ever considered or resolved by the Supreme Court or by legislation. This result invites an unmanageable spike of intervention that Article III standing and constitutional principles are intended to prevent. *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) ("Article III of the Constitution empowers us to adjudicate only 'live cases or controversies,' not 'to issue advisory opinions [or] to declare rights in hypothetical cases.'"). Despite well-established constitutional principles, intervening before the Wells Fargo Litigation was filed would have necessarily required that the district court declare rights based on a hypothetical case, with hypothetical claims, and grounded on hypothetical legal

---

[6] The FTC's reliance on the mere fact that Wells Fargo has been subject to litigation brought by receivers appointed by the FTC in the past has no bearing on the fact that any injury to Wells Fargo was hypothetical until the Receiver actually filed suit. FTC Br. at 31 n.18.

theories. It was only after the Wells Fargo Litigation was filed in July 2021, that a concrete and particularized injury manifested, and a live case or controversy existed.

The Receiver's complaint in the Wells Fargo Litigation concedes that the Receiver is seeking damages "to satisfy the FTC judgments" in order to "make whole the consumers who were defrauded as a result of the Triangle and Triangle frauds that Wells Fargo facilitated," and to cover the FTC's costs of defending the *Triangle* and *Apex* matters (including Receivership costs in each matter). The Receiver also continues to seek treble and punitive damages, increasing the Receiver's claims to more than half a billion dollars to satisfy the FTC judgments. Opening Br. at 14; FER-44–50; FER-51–145. Before the Wells Fargo Litigation was filed, intervention would have been based on conjecture and hypothetical legal theories that Wells Fargo would have speculated would be the basis of any forthcoming suit. *Grondal v. United States*, 37 F.4th 610, 621-22 (9th Cir. 2022) (where there was only the threat of a lawsuit, "[t]here is no evidence in the record that any such lawsuit has been filed by Mill Bay, and conjectural or hypothetical injuries cannot create Article III standing.").

The FTC contends that Wells Fargo was on notice that its interests might be implicated when the FTC served a subpoena on Wells Fargo during its investigation of the Triangle Defendants and when Wells Fargo was served with third-party discovery seeking information about the Triangle accounts, thus purportedly

triggering the time to intervene. FTC Br. at 30. If this were true, all third-party financial institutions, and other non-parties, would be required to intervene in a government enforcement action every time the regulatory authority serves third-party discovery, so they could preserve a future right to intervene *in the event* the inquiry *could* implicate the non-parties 'interests. The SEC and FTC serve hundreds, if not thousands, of subpoenas every year. *See* SEC, *Investor Bulletin: SEC Investigations* (Oct. 22, 2014), https://www.sec.gov/oiea/investor-alerts-bulletins/ib_investigations (The SEC "works on hundreds of investigation each year" and can issue subpoenas requiring the production of documents and witness testimony.); Donald R. C. Pongrace, *Requirement of Notice of Third-Party Subpoenas Issued in SEC Investigations: A New Limitation on the Administrative Subpoena Power*, 33 Am. U. L. Rev. 701, 745 (1984) ("The SEC conducts as many as 1200 formal investigations a year, 1982 SEC ANN. REP. 118, and issues thousands of subpoenas in aid of these investigations."). It would be absurd to require the recipients of those hundreds or thousands of subpoenas to intervene when served with a subpoena and clog up the federal courts in an effort to preserve a speculative right that they *may* need to exercise in the future.

Similarly, the FTC contends that Wells Fargo was on notice that its interests might be implicated at various points: (1) by the Fall of 2018 because it was subject to other *unrelated* actions regarding allegations of improper account opening

practices; (2) when the Receiver sought court approval to hire contingency counsel, and (3) when the Receiver served Wells Fargo with a proposed complaint along with a mediation proposal. FTC Br. at 30-32. At the same time arguing that Wells Fargo was on notice that its interests might be implicated by these three events and should have intervened, the FTC admits that the Receiver's lawsuit against Wells Fargo at those points was speculative. FTC Br. at 31. The FTC admits the Receiver only filed suit against Wells Fargo after "having exhausted other options." *Id.* The FTC's contention that Wells Fargo should have intervened is an absurd suggestion that parties are required to intervene into actions when there is a speculation that a lawsuit *may* be initiated against them. *See Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1235 (9th Cir. 2017) (a proposed intervenor seeking relief different from the existing parties needs to have a concrete, particularized, and actual or imminent injury to satisfy Article III standing, and allegations of a possible future injury are not sufficient).

Finally, moving to intervene four months after the Receiver filed the Wells Fargo litigation is not untimely. This Court has held motions filed at or beyond four months to be timely. *See Aerojet Gen. Corp.*, 606 F.3d at 1149 (four-month delay not untimely); *United States v. Carpenter*, 298 F.3d 1122, 1125 (9th Cir. 2002) (reversing the district court's denial of intervention where it filed the motion eighteen months after the complaint was filed); *Idaho Farm Bureau Fed'n*, 58 F.3d

at 1397 (same); *Dilks*, 642 F.2d at 1156 (upholding district court's implied finding of timeliness of a motion to intervene filed eighteen months after a complaint was filed); *Citizens for Clean Air v. Wheeler*, No. C18-1803 TSZ, 2019 WL 3205851, at *2 (W.D. Wash. July 16, 2019) (six month delay in seeking intervention since the case was filed was found not untimely).

### 3. The District Court Abused Its Discretion in Finding that Wells Fargo Brought Its Motion Late in the Proceeding.

The district court abused its discretion in finding that intervention was untimely because the case was closed since November 2019. 1-ER-9. As an initial matter, the case is not closed. The district court has left the case open and has retained jurisdiction permitting the Receivership to continue to complete the Receiver's work. 2-ER-84.

Additionally, piggybacking on the district court's erroneous determination, the FTC argues that because the case is closed Wells Fargo's motions "runs the risk of undoing settlements that parties had entered into more than two years earlier."[7] FTC Br. at 33. But that is not supported by the record. In the same vein, the FTC and Receiver repeatedly, mistakenly claim that Wells Fargo seeks to vacate the

---

[7] The Receiver similarly argues that Wells Fargo's motion is tardy because the parties have settled their claims, citing *Snoqualmie Indian Tribe v. Wash.*, No. 3:19-CV-06227-RBL, 2020 WL 4729178, at *1 (W.D. Wash. Apr. 16, 2020), and *Montgomery v. United States*, No. 09-CV-1588 JLS WVG, 2012 WL 124854, at *8 (S.D. Cal. Jan 17, 2012). Receiver Br. at 29. However, unlike in those cases, Wells Fargo will not disturb the parties' settlement, unlike the proposed intervenors.

Stipulated Judgments. That is wrong. As Wells Fargo has stated multiple times in the underlying intervention briefing, and in its opening brief, Wells Fargo seeks intervention solely to challenge the district court's orders granting the Receiver authority to pursue monetary damages against Wells Fargo. *See* FER-9; FER-23; FER-24–25; FER-27; 2-ER-23; 2-ER-34; Opening Br. at 1, 14, 34, 40.

Put differently, it is an abuse of discretion for a district court to continue to authorize a Receiver, who was initially empowered under Section 13(b), to pursue a monetary judgment secured under Section 13(b), when *AMG Capital* held that no monetary judgments can be secured under Section 13(b). The question is simply whether a district court can properly act within its discretion to authorize a receiver – and in this case, a receiver empowered under Section 13(b) – to pursue future monetary relief based on that erroneous judgment post-*AMG Capital*. This is the question that Wells Fargo presents and is doing so without disturbing the prior Stipulated Judgments. The Stipulated Judgments will continue to stand – they just will not be buttressed by additional funds prospectively secured from Wells Fargo.

Not only does Wells Fargo's intervention not disturb the Stipulated Judgments it also does not disturb the Receiver's other, ongoing work to marshal the assets of the Triangle entities. Indeed, on November 9, 2018, the Receiver filed his Interim Status Report to the district court outlining his efforts to recover "Defendants' assets in the U.S. and internationally." FER-33. The Receiver has collected $1,025,796.51

from merchant accounts in the United States, assisted with the sale of defendant Brian Phillip's home, and other equipment and furniture. FER-41–43. Clearly, the Receiver's efforts are distinct from the Wells Fargo Litigation, and Wells Fargo's challenge to the Receiver's pursuit of Wells Fargo will have no effect of the Receiver's other, separate efforts as outlined in his report.

### 4. The District Court Abused its Discretion in Finding Prejudice.

Significantly, the district court's finding that Wells Fargo's motion to intervene was untimely did not properly assess the lack of prejudice to the parties on account of the timing of the motion. To properly assess timeliness, courts must analyze the prejudice to the other parties. *See Smith*, 830 F.3d at 854. A '"[m]ere lapse of time alone is not determinative'…prejudice to other parties in connection with the proposed intervention is a[n] … important factor in the timeliness determination." *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (citing *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986)). There is no support for the district court's improper determination that the FTC would be prejudiced because it is still empowered to pursue monetary judgement against Wells Fargo regardless of Section 13(b)'s applicability, and that if intervention was granted "the FTC would no doubt be forced to relitigate issues that have already been adjudicated in this case." 1-ER-8; 1-ER-10.

Contrary to the district court's findings, and the FTC and Receiver's

22

arguments, the FTC was not prejudiced by having to litigate the same issues twice, because Wells Fargo's motion is not predicated on the Stipulated Judgments but is predicated on the orders giving the Receiver authority to pursue Wells Fargo. In short, it is not the same issue. Despite the Receiver's contentions, Wells Fargo *is not seeking to modify or overturn the Stipulated Judgments*. *See, e.g.*, *United States v. State of Or.*, 745 F.2d 550, 553 (9th Cir. 1984) (finding no prejudice, in part, because the parties would not have to relitigate matters). It is false that "the judgments are Wells Fargo's real targets" and that the FTC would have to relitigate the *Triangle* judgment. Receiver Br. at 19-20. Wells Fargo does not agree with the FTC's contention that the receivership orders are "part and parcel" of the Stipulated Judgments. FTC Br. at 37. Wells Fargo does not seek to upset the agreed upon Stipulated Judgments. Remedying the erroneous construction of 13(b) that resulted in appointing the Receiver will have no effect on the Stipulated Judgments and the monetary amounts stipulated to therein, and therefore the FTC will not be forced to relitigate the Stipulated Judgements.[8]

Wells Fargo seeks to vacate or modify the orders authorizing the Receiver to prospectively pursue litigation against Wells Fargo based on those Stipulated Judgments. The district court has specifically kept the case open for the purpose of

---

[8] Moreover, the Receiver's argument that Wells Fargo lacks the ability under Federal Rule 60 to challenge the stipulated judgments not only misinterprets Wells Fargo's argument but impermissibly reaches the merits and is premature at this juncture.

monitoring to the Receiver's activity. 2-ER-84. A finding of prejudice on this basis is completely unsupported by the record and is an abuse of discretion.[9]

## CONCLUSION

For these reasons and those the opening brief, this Court should reverse the order denying Wells Fargo's motion for intervention.

Dated: June 29, 2023    Respectfully submitted,

        */s/ Brian D. Schmalzbach*
        Brian D. Schmalzbach
        MCGUIREWOODS LLP
        800 East Canal Street
        Richmond, VA 23219
        T: (804) 775-1000
        bschmalzbach@mcguirewoods.com

        David C. Powell
        Alicia A. Baiardo
        MCGUIREWOODS LLP
        Two Embarcadero Center
        Suite 1300
        San Francisco, CA 94111
        T: (415) 844-9944
        dpowell@mcguirewoods.com
        abaiardo@mcguirewoods.com

---

[9] Because the district court denied permissive intervention based on the same legal errors, the same analysis would require reconsideration of Wells Fargo's motion under Rule 24(b) on remand. *See* Opening Br. at 41.

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

*Counsel for Movants-Appellants Wells*
*Fargo & Co. and Wells Fargo Bank, N.A.*

### CERTIFICATE OF COMPLIANCE

1.    This brief complies with the length limitations in 9th Cir. R. 32-1(b) because it contains 6,076 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size Times New Roman font.

Dated: June 29, 2023               */s/ Brian D. Schmalzbach*
                                      Brian D. Schmalzbach

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2023, the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

Dated: June 29, 2023                          */s/ Brian D. Schmalzbach*
                                              Brian D. Schmalzbach